**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I.   **CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>SECOND</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>LEON</u>   COUNTY, FLORIDA

<u>Florida Department of Economic Opportunity</u>
Plaintiff

Case # __<u>2021 CA 001720</u>__
Judge _____

vs.
<u>Klausner Holding USA, Inc.</u>
Defendant

II.   **AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

III.   **TYPE OF CASE**      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

    **IV.**     **REMEDIES SOUGHT** (check all that apply):
    ☒ Monetary;
    ☐ Nonmonetary declaratory or injunctive relief;
    ☐ Punitive

    **V.**     **NUMBER OF CAUSES OF ACTION:** [   ]
    (Specify)

     1

    **VI.**     **IS THIS CASE A CLASS ACTION LAWSUIT?**
        ☐ yes
        ☒ no

    **VII.**     **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
        ☒ no
        ☐ yes If "yes," list all related cases by name, case number, and court.

    **VIII.**     **IS JURY TRIAL DEMANDED IN COMPLAINT?**
        ☒ yes
        ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Erik M. Figlio            Fla. Bar # 745251
        Attorney or party                (Bar # if attorney)

Erik M. Figlio              10/05/2021
  (type or print name)               Date

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT,
IN AND FOR LEON COUNTY, FLORIDA**

STATE OF FLORIDA,
DEPARTMENT OF ECONOMIC OPPORTUNITY,

     Plaintiff,

v.                                    Case No.: 2021 CA 001720

KLAUSNER HOLDING USA, INC.,

     Defendant.

_____/

## COMPLAINT

     Plaintiff, STATE OF FLORIDA DEPARTMENT OF ECONOMIC OPPORTUNITY ("DEO"), files this complaint against Defendant, KLAUSNER HOLDING USA, INC. ("Klausner"), and, in support thereof, alleges as follows:

I.
INTRODUCTION

     1.    This action arises out of Klausner's failure to perform its material contractual obligations under the Quick Action Closing Fund Agreement (the "Agreement"), attached hereto as Exhibit "A."

II.
THE PARTIES

     2.    Plaintiff, DEO is an agency of the Executive Branch of the State of Florida, created pursuant to section 20.60, Florida Statutes. DEO is the successor agency to the Office of Tourism, Trade, and Economic Development the original signatory on the Agreement. Among the agency's directives is to facilitate economic growth in Florida by promoting innovation, a pro-business climate, and business opportunity, utilizing a number of tools, including economic incentives. The

1

Quick Action Closing Fund (the "QACF") is one such incentive administered by DEO, through which DEO enters into a performance-based contract with a recipient that receives an up-front cash incentive that can be retained if specific milestones, outlined in the contract, are achieved.

3.      Defendant, Klausner, is a foreign for-profit holding company of Klausner Trading USA, Inc. The Klausner Group, of which Klausner and Klausner Trading USA, Inc, are a part of, incudes: Klausner Holding Deutschland GmbH, a parent company of Klausner Hobelwerk GmbH and Klausner Holz Thuringen GmbH, a parent company of Klausner Holz Niedersachsen GmbH and Klausner Holz Sachsen GmbH; Klausner Trading International GmbH; and Klausner Nordamerika Beteiligungs Holding GmbH, a parent company for Klausner Trading USA, Inc., and Klausner Lumber One, Inc. The Klausner Group is or was one of the largest wood-industry companies in the world. The Klausner Group sells or sold lumber products worldwide including in Europe, North America, and Asia. Pursuant to the Agreement, the Klausner Group established a sawmill in Suwannee County, Florida. Klausner Lumber One, LLC, was the name of the company located in Suwannee County, and was a 100% subsidiary of Klausner. Klausner's application for the QACF, the parties' communications, and a September 2019 amendment to the Agreement makes clear that the business relationship is between DEO and the Klausner Group, as a whole.

III.
JURISDICTION AND VENUE

4.      This is an action involving claims for damages in excess of $30,000.00, exclusive of attorneys' fees and costs.

5.      This Court has subject matter jurisdiction pursuant to article V, section 5(b) of the Florida Constitution.

6.     This Court has personal jurisdiction over Klausner under section 48.193(l)(a)(7), Florida Statutes, because Klausner breached a contract in this state by failing to perform acts required by a contract to be performed in this state.

7.     Venue is proper in Leon County, by agreement of the parties, pursuant to Paragraph 12(a) of the Agreement.

8.     All conditions precedent have occurred, been performed, and/or been waived or excused by the acts and/or omissions of Klausner.

IV.
FACTS

9.     In 1999, the Florida Legislature created the QACF in order to ensure that sufficient resources were "available to respond to extraordinary economic opportunities and to compete effectively for these high-impact business facilities." § 288.1088, Florida Statutes (2011). The QACF was intended to be a "deal closing" tool in highly competitive negotiations for projects where Florida's traditional incentives are not enough to win the deal. All QACF projects include a performance-based contract with the state, which outlines specific milestones that must be achieved.

10.     To be eligible for receipt of funds under the QACF, the business must, among other things, have a positive economic benefit ratio of at least 5:1, pay an average annual wage of at least 125 percent of the areawide or statewide private sector average wage, and be supported by the local community in which the project is to be located.

11.     After receiving an application, DEO, in conjunction with Enterprise Florida Inc. ("EFI"), must review the application and make a recommendation to the Governor.

12.     If the application is approved, DEO and the awardee are to enter into a performance-based contract providing for the payment of cash incentives in exchange for an

3

agreed-upon number of new Florida jobs at an-above average wage and the investment of a specified amount of capital.

13.     The contract is also required by statute to provide for sanctions for failure to meet these agreed-upon metrics.

14.     In or around June 2011, "United Pine" a to-be-formed subsidiary of Klausner applied for an award of funds under the QACF. Ultimately, the entity was named "Klausner Lumber One, LLC," however the Agreement is between Klausner and the Department.

15.      As justification for the award, Klausner stated that it intended to establish a state of the art saw and planing mill, including $150 million in capital investments. Klausner stated that it expected to create 350 jobs to support the sawmill, with an annualized average wage of $30,000. Klausner explained that that the proposed location for the sawmill in Florida, Suwannee County, had high unemployment, and that the proposed project would greatly impact the community by creating jobs, and bringing ancillary benefits to local businesses.

16.     In its application, Klausner also stated that it was considering locating the sawmill in North Carolina, Virginia, and South Carolina, but noted that any incentive awards from the State of Florida would help cover land improvements, offset taxes, and help Klausner quickly establish its sawmill operations. Klausner stated to DEO that without the funds provided through the QACF, Klausner would not have located its sawmill in the State of Florida.

17.     Klausner also stated that the Klausner Group had always been a good corporate citizen in the communities in which it operated worldwide, and had won numerous production awards in the European communities where it was located.

18.     Indeed, Klausner's application relied upon the Klausner Group's past experiences and credentials. When questioned about the relationship between Klausner and the Klausner

Group, a representative from Klausner Trading USA, Inc., explained that Klausner was a holding company for Klausner Trading USA, Inc., which was owned by the European holding company, which was owned entirely by Fritz Klausner.

19. Based on Klausner's application and the commitments contained therein, as well as the result of the economic impact analysis, DEO and EFI jointly recommended approving Klausner for an QACF award. The recommendation memorandum explained the history of the Klausner Group and noted the expected economic benefits.

20. On June 24, 2011, Governor Rick Scott approved an award of $3,000,000, pursuant to the QACF, to "Klausner Trading International GmbH."  The award was conditioned upon, among other things, Klausner meeting its job-creation, wage, and capital equipment investment requirements.

21. On June 30, 2011, DEO and Klausner executed the Agreement, which sets out the terms of the parties' obligations. The Agreement was amended a total of four times—on August 31, 2011, on January 9, 2013, on October 17, 2013, and on September 19, 2019.

22. The Agreement, as amended, provided that Klausner would need to meet certain requirements before receiving full payment, and that it would need to meet other enumerated requirements in order to avoid sanctions and/or termination of the Agreement.

23. Particularly relevant to this matter, the Agreement required Klausner to fulfill various annual reporting requirements, to create 350 new net full-time equivalent jobs by December 31, 2016, to maintain an average annual wage of at least $30,000, excluding benefits, and to invest a total of at least $150,000,000 in the new facility by December 31, 2016, and maintain that investment for an additional three years until December 31, 2019.

24.     With respect to the job and wage requirements, the job creation schedule was as follows: 86 jobs by December 31, 2014, a total of 250 jobs by December 31, 2015, and a total of 350 jobs by December 31, 2016. Klausner was obligated to maintain these jobs for additional three years, or at least until December 31, 2019.

25.     With respect to the capital investment requirements, the Agreement, as amended, required Klausner to submit evidence satisfactory to DEO, in its reasonable discretion, that Klausner made a capital investment (excluding the acquisition or leasing of real property) of least $150,000,000 in Suwannee County Florida, by no later than December 31, 2016, and that Klausner maintained that investment for an additional three years, until December 31, 2019.

26.     With respect to reporting requirements, Exhibit C of the Agreement specifically outlines what information must be submitted as employment and wage documentation on an annual basis. Klausner was also required to maintain personnel and financial records and reports related to jobs, wages, and capital investments, and submit an annual certification of its employment and annual average wage payment by January 31 of each fiscal year. Klausner further agreed to comply and cooperate with any monitoring procedures deemed appropriate by DEO.

27.     The Agreement specified that upon the failure of Klausner to comply with a material term or condition, including terms in the Agreement relating to reporting and compliance monitoring, DEO was entitled to terminate the Agreement and seek repayment of the entire award amount and a penalty. Interest is to be calculated based on the interest rate received by the State on mid-term investments at the time payment is due.

28.     For example, in any year in which Klausner failed to create at least 80% of the required jobs, Klausner was subject to a sanction equal to one-fifth of the QACF payment, plus interest.

29.     Similarly, if Klausner did not reach 80% of its capital investment requirement by December 31, 2016, Klausner was required to repay a prorated share of the closing fund award, plus interest.

30.     The Agreement also mandated that any requirement repayment, interest, or penalty was due within sixty days of receipt of written notice from DEO.

31.     The Agreement was executed on June 30, 2011, and, thereafter, DEO fulfilled its primary obligation under the Agreement by releasing $3,000,000 from an escrow account to Klausner.

32.     Several years following execution of the Agreement, Klausner ceased complying with its obligations under the Agreement. Namely, Klausner refused to cooperate with compliance monitoring procedures, and failed to provide satisfactory evidence that it had met its capital investment requirements for calendar years 2016, 2017, 2018, and 2019.

33.     Indeed, Klausner blatantly flouted its contractual obligations owed to DEO, both through its nonperformance of mandatory duties required by the Agreement and through its repeated refusal to respond in a timely manner, or respond at all, to letters from DEO demanding performance and ultimately imposing sanctions.

34.     For its failure to provide requested information relating to its 2016 performance, and, ultimately, for its failure to confirm that it satisfied its 2016 capital investment obligations, DEO sanctioned Klausner in the amount of $1,082,322.08.

35.     DEO notified Klausner of the sanction on June 17, 2020, and specified that payment was to be made within 60 days of receipt of the demand.

36.     Klausner received the demand on June 26, 2020. The demand went unanswered and unpaid.

37.     For its failure to provide requested information relating to its 2017 performance, and, ultimately, for its failure to confirm that it satisfied its 2017 capital investment obligations, DEO sanctioned Klausner in the amount of $1,086,606.90.

38.     DEO notified Klausner of the sanction on July 15, 2020, and specified that payment was to be made within 60 days of receipt of the demand.

39.     Klausner received the demand on July 21, 2020. The demand went unanswered and unpaid.

40.     For its failure to provide requested information relating to its 2018 performance, and, ultimately, for its failure to confirm that it satisfied its 2018 capital investment obligations, DEO sanctioned Klausner in the amount of $889,930.30.

41.     DEO notified Klausner of the sanction on September 23, 2020, and specified that payment was to be made within 60 days of receipt of the demand.

42.     Klausner received the demand on October 15, 2020. The demand went unanswered and unpaid.

43.     In January 2021, DEO sent Klausner and Klausner Trading International GmbH a final demand letter. The letter identified the previous demand letters and noted that these letters were only sent after multiple attempted by DEO to validate Klausner's satisfaction of the performance requirements set forth in the Agreement.

44.     As provided for under the Agreement, DEO demanded full repayment of the QACF award, plus interest, in the amount of $3,052,859.28, within 10 business days of the date of the letter. Klausner did not even acknowledge receipt of the letter.

45.     In light of Klausner's nonperformance, DEO is entitled to full repayment of the QACF award, plus interest, in accordance with the unambiguous terms of the Agreement.

46.     Moreover, because of Klausner's nonperformance, DEO has not received the expected return on investment and the expected economic benefit.

V.

COUNT I – BREACH OF CONTRACT

47.     DEO incorporates by reference the allegations previously set forth above.

48.     This is an action for breach of the Agreement between DEO and Klausner wherein Klausner materially failed to perform under the Agreement.

49.     DEO and Klausner entered into a valid contract.

50.     DEO has satisfied all of its material obligations under the Agreement.

51.     All conditions required by the Agreement for Klausner's performance have occurred.

52.     Without legal justification or excuse, Klausner has materially breached the contract by failing to meet the capital investment requirements under the Agreement, by failing to provide DEO the necessary documentation to demonstrate performance under the Agreement, and by failing to cooperate with monitoring procedures deemed appropriate by DEO.

53.     Without legal justification or excuse, Klausner has also materially breached the contract by failing to remit the sanction amount assessed in 2020, and by failing to return the full amount of QACF award, in the amount of $3,052,859.28, upon demand in 2021.

54.     DEO has suffered damages as a result of Klausner's breach.

WHEREFORE DEO requests that judgment be entered in its favor and against Klausner for damages, interest, costs, and such other relief as the Court deems just and proper.

VI.

PRAYER FOR RELIEF

WHEREFORE, the State of Florida, Department of Economic Opportunity, respectfully requests this Court:

        a.   Enter judgment against Klausner, for breach of contract and award reliance and/or expectation damages to DEO resulting from said breach, as well as any interest owed, as required by the Agreement;

        b.  Award DEO the reasonable costs and expenses incurred by DEO in prosecuting this action, and reasonable attorneys' fees if lawfully permitted;

        c.   Grant any further relief the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Dated this 5th day of October, 2021.

Respectfully submitted,

/s/ *Erik M. Figlio*

Robert N. Clarke, Jr.
Fla. Bar No. 592900
Erik M. Figlio
Fla. Bar No: 745251
Alexandra E. Akre
Fla Bar. No. 125179
AUSLEY McMULLEN, P.A.
123 South Calhoun Street
P.O. Box 391 (zip 32302)
Tallahassee, Florida 32301
(850) 224-9115 – telephone
(850) 222-7560 – facsimile
rfiglio@ausley.com
aakre@ausley.com

ATTORNEYS FOR PLAINTIFF

10

# EXHIBIT
# A

# STATE OF FLORIDA
# OFFICE OF THE GOVERNOR
## *QUICK ACTION CLOSING FUND AGREEMENT*

## AGREEMENT

**THIS AGREEMENT** (OT11-283) is made and entered into this __30__ day of __June__, 2011,
by and between the State of Florida, Executive Office of the Governor's Office of Tourism,
Trade, and Economic Development, hereinafter referred to as "OTTED," and Klausner Holding
USA Inc., hereinafter referred to as the "Closing Fund Awardee," pursuant to Section 288.1088,
Florida Statutes.

OTTED has determined that the Closing Fund Awardee has met all of the requirements
necessary to become certified to participate in the Quick Action Closing Fund (Closing Fund)
and that all statutorily required reviews and approvals have been obtained pursuant to Section
288.1088, Florida Statutes, and

The Enterprise Florida, Inc. Quick Action Closing Fund Request for Consideration and
the Closing Fund Awardee documentation, including any attachments, submitted in lieu of an
application, are attached hereto and incorporated as an integral part of this agreement, and will be
referred to as "Exhibit A."

**This Agreement is neither a general obligation of the State of Florida, nor is it
backed by the full faith and credit of the State of Florida. Payment of Closing Fund
Awards are conditioned on and subject to specific annual appropriations by the Florida
Legislature of funds sufficient to pay amounts authorized in Section 288.1088, Florida
Statutes, and**

1

In consideration for the mutual promises and agreements contained herein, and other valuable and good consideration, OTTED and the Closing Fund Awardee agree as follow:

**1.0 PARTIES**: The parties and their respective addresses for purposes of this Agreement are as follows:

> STATE OF FLORIDA
> OFFICE OF THE GOVERNOR
> OFFICE OF TOURISM, TRADE, AND ECONOMIC DEVELOPMENT
> THE CAPITOL, SUITE 2001
> TALLAHASSEE, FLORIDA 32399-0001
> FAX NUMBER: (850) 487-3014
>
> KLAUSNER HOLDING USA INC.
> 1230 PEACHTREE STREET, SUITE 3100
> ATLANTA, GA 30309
> FAX NUMBER: _____

**2.0 ADMINISTRATORS**:

The State's Closing Fund Agreement administrator is:

Timothy E. Proctor, Chief Analyst _____.

The Closing Fund Awardee Agreement administrator is:

_____

All approvals and notifications referenced in this Agreement must be obtained in writing from the parties' agreement administrators or their duly authorized designees.

**3.0 TERM**: The term of this Agreement shall commence upon the date of execution of this Agreement, and continue through June 30, 2019, for all terms except for the record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0), unless terminated prior to that time as provided for in this Agreement.  The record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0) of the Closing Fund Awardee shall continue through June 30, 2024, unless terminated prior to that time as provided for in this Agreement.

## 4.0 CLOSING FUND AWARDEE DESCRIPTION:

(a) The Closing Fund Awardee is or will be an operating unit of Klausner Holding USA Inc.. It is identified for unemployment compensation purposes under the unit name(s) of Klausner Holding USA Inc. _____; account number(s), _____.

(b) The Closing Fund Awardee understands and agrees that the requirements in Paragraphs 7.0, 9.0, 10.0 and 19.0 of this Agreement pertain only to the project described in Paragraph 5.0(a) of this Agreement for the business unit described in Paragraph 4.0(a) of this Agreement.

## 5.0 PROJECT DESCRIPTION AND AWARD CONDITIONS:

(a) This project will include the location of the Closing Fund Awardee's sawmill manufacturing operation in Suwannee County, Florida, as described in "Exhibit A."

(b) The "Award Conditions" for the release and placement of $3,000,000 to an Enterprise Florida, Inc. (EFI) escrow account to be held for future payment to the Closing Fund Awardee shall be met when the following have occurred:

(1) Execution of the Closing Fund Agreement on or prior to June 30, 2011;

(2) Execution of an Enterprise Florida, Inc. Escrow Agreement on or prior to June 30, 2011; and,

(3) Submission of an air permit application to the U.S. Environmental Protection Agency for the proposed project in Suwannee County, FL by August 30, 2011.

Unless otherwise noted, these conditions are expected to be achieved and supporting documentation submitted to OTTED for verification prior to September 1, 2011.

(c) The "Award Conditions" for the release and payment of $3,000,000 from the EFI escrow account to the Closing Fund Awardee shall be met when the following have occurred:

(1) Public announcement of the project's location in Suwannee County, Florida;

(2) Acquisition (ownership) by the Closing Fund Awardee of the land (approx. 100 to 175 acres) in Suwannee County, Florida; and,

(3) Capital investment of at least $12 million toward site preparation and other costs associated with construction of the new facility in Suwannee County, Florida.

Supporting documentation shall be submitted to OTTED for verification of the aforementioned conditions. Verification must be complete to OTTED's satisfaction prior to the disbursement of the payment. To receive payment, conditions are expected to be met by June 30, 2012; however, this date may be extended to no later than September 1, 2012, with the express written approval of OTTED.

(d) In order to remain qualified for the Closing Fund award payment authorized in this Agreement and to avoid sanctions, the Closing Fund Awardee must meet the conditions below:

(1) The total number of new full-time equivalent jobs in Suwannee County, Florida that the Closing Fund Awardee is, or will be, dedicating to this project is at least 350, and these jobs will be fully implemented by December 31, 2014. These jobs will be phased in, with the first phase consisting of the creation of at least 150 net new full-time equivalent

4

project jobs in Florida, fully implemented by December 31, 2013; and, the second and final phase consisting of the creation of at least an additional 200 project jobs for a cumulative total of at least 350 full-time equivalent project jobs in Florida, fully implemented by December 31, 2014; and maintain these jobs for an additional three (3) years or until at least December 31, 2017.

(2) The Base Period for this project's jobs will be the twelve full months June 1, 2010, through May 31, 2011;

(3) The average annual wage of project jobs specified in Paragraph 5.0(d)(1) above will be at least $30,000, excluding benefits; **and**

(4) The Closing Fund Awardee must invest a total of at least $150,000,000 in the new facility by December 31, 2014, and maintain that investment for an additional three (3) years, until December 31, 2017.  Documentation of this investment must be presented to OTTED or its agent by January 31, 2015, and continue to be presented to OTTED each year thereafter until January 31, 2018.

(e) The Closing Fund Awardee may make a one-time election to extend the job creation and investment schedule by one year.  This election must be communicated to OTTED, and approved by OTTED, in writing.  Exercising this option shall result in a one-year extension of the term of the performance requirements and sanctions.

**6.0 NOTICES**: All notices pertaining to this Agreement are in effect upon receipt by OTTED, shall be in writing and shall be transmitted either by personal hand delivery; United States Post Office, return receipt requested; or, overnight express mail delivery.  E-mail and facsimile transmission may be used if the notice is also transmitted by one of the preceding forms of delivery.  The addresses set forth above for the respective Parties shall be the places where notices shall be sent, unless prior written notice of change of address is given.

**7.0 <u>DUTIES OF THE CLOSING FUND AWARDEE</u>**: The Closing Fund Awardee agrees that to qualify and remain qualified for the Closing Fund Award payment authorized herein, the Closing Fund Awardee must:

(a) Undertake the project and meet all of the Award Conditions as specified in Paragraphs 5.0(b) and 5.0(c), as applicable, of this Agreement.

(b) Submit its request for the Closing Fund Award payment authorized in Section 9.0 of this Agreement in a letter format and clearly state that it certifies each of the specific requirements in Paragraphs 5.0(b) or 5.0(c), as applicable, of this Agreement have been met, and provide supporting documentation acceptable to OTTED.

(c) Submit annual certification of its employment and annual average wage payment using a Qualified Target Industry Tax Refund (QTI) Claim application or alternate equivalent documentation acceptable to OTTED, every State of Florida fiscal year by January 31 of said year. The QTI claim application or alternate equivalent documentation must be submitted annually through January 31, 2018.

(d) Certify and submit documentation that at least 80 percent of the total investment specified in Paragraph 5.0(d)(4) has been made in the facility in Suwannee County, Florida as of December 31, 2014, and continues to be located in Suwannee County, Florida as of December 31, 2017.

(e) Notify OTTED in writing of any material developments that impact the implementation or operation of this Agreement or the project that this Agreement covers. Such material developments will include, but not be limited to: announcements with regard to the project, cancellation of the project, or change in ownership of the Closing Fund Awardee.

(f) Maintain personnel and financial records and reports related to the jobs, wages, and cumulative investment that are the subject of this Agreement and submit reports to OTTED as requested.

**8.0 LIABILITY AND INDEMNIFICATION:** OTTED will not assume any liability for the acts, omissions to act, or negligence of the Closing Fund Awardee, its agents, servants, or employees; nor will the Closing Fund Awardee exclude liability for its own acts, omissions to act, or negligence to OTTED. In addition, the Closing Fund Awardee agrees to be responsible for any injury or property damage resulting from any activities conducted by the Closing Fund Awardee.

To the extent permitted by law, the Closing Fund Awardee agrees to indemnify and hold OTTED harmless from and against any and all claims or demands for damages resulting from personal injury, including death or damage to property, arising out of any activities performed under this Agreement and will investigate all claims at its own expense. However, neither OTTED nor any agency or subdivision of the State of Florida waives any defense of sovereign immunity or increases the limits of its liability upon entering into this contractual relationship.

**9.0 DUTIES OF OTTED:** OTTED agrees that the Closing Fund Awardee will be eligible to receive a total amount of **THREE MILLION DOLLARS ($3,000,000)** from the Quick Action Closing Fund contingent upon meeting the requirements established in Paragraphs 5.0(b) and 5.0(c), as applicable, of this Agreement. The payment will be paid within 30 days of verification by OTTED, or OTTED's designee, that the Closing Fund Awardee has met the conditions in Paragraphs 5.0(b) and 5.0(c), as applicable, of this Agreement, for the project specified in Paragraph 5.0(a) of this Agreement.

## 10.0 <u>TERMINATION AND SANCTIONS</u>:

(a) This Agreement may be terminated by OTTED upon failure of the Closing Fund Awardee to comply with any material term or condition of this Agreement or a decision by the Closing Fund Awardee either not to proceed with the project defined in Paragraph 5.0(a) of this Agreement or to proceed with that project in a location outside of Suwannee County, Florida.

(b) A termination will result in the loss of eligibility for receipt of the Closing Fund Award payment previously authorized. If the Closing Fund Award has been paid, the Closing Fund Awardee may be required to repay the grant amount and a penalty, as outlined below in (d), (e), (f), (g), and (h) of this section.

(c) Notwithstanding Paragraphs (a) and (b) above, in the event that OTTED fails to pay the Closing Fund Awardee a Closing Fund Award payment, to which the Closing Fund Awardee is entitled under this Agreement, as a result of insufficient state funds or for any reason whatsoever, the Closing Fund Awardee shall have the right to terminate this Agreement and may retain any Closing Fund Award payment that is not subject to conditions/sanctions under Paragraphs (d), (e), (f), (g), and (h) of this Section and was previously paid or awarded to the Closing Fund Awardee by OTTED under this Agreement.

(d) In any year in which the actual number of jobs for a job creation or maintenance phase scheduled in Paragraph 5.0(d)(1) of this agreement falls below 80 percent of the number of jobs so scheduled, the Closing Fund Awardee shall repay an amount equal to one-fifth of the Closing Fund Award payment plus interest on the amount repaid.

(e) If in any year the actual number of jobs is at least 80 percent of the jobs scheduled in Paragraph 5.0(d)(1) of this Agreement, but less than the required number of jobs, the Closing Fund Awardee shall repay a pro rated share of one-fifth of the Closing Fund Award payment plus interest, as determined in Paragraph 10.0(h), on the amount repaid.

(f) In any year the average wage falls below the average wage agreed to in Paragraph 5.0(d)(3) of this Agreement, the Closing Fund Awardee shall repay one-fifth of the Closing Fund Award plus interest, as determined in Paragraph 10.0(h), on the amount repaid.

(g) If the capital investment for the project specified in Paragraph 5.0(a) of this Agreement has not reached 80 percent of the investment scheduled in Paragraph 5.0(d)(4) of this Agreement by the periods specified in Paragraph 5.0(d)(4) of this Agreement, the Closing Fund Awardee shall repay a prorated share of the Closing Fund Award payment plus interest, as determined in Paragraph 10.0(h), on the amount repaid.

(h) The interest rate shall be determined by the average interest rate received by the State on mid-term investments at the time payment is due.

(i) In no year shall the amount required to be repaid exceed the larger of the individual amounts determined in Paragraphs 10.0(d), (e), (f), or (g), and total cumulative payments shall never exceed the value of the total award plus interest as determined in Paragraph 10.0.

(j) Any required repayment, interest and/or penalty, is due to OTTED within sixty (60) days of receipt of written notice from OTTED.

(k) OTTED, or its designated agent, may conduct on site visits of the Suwannee County, Florida facility to verify the Closing Fund Awardee's investment, employment and wage records.

**11.0 INDEPENDENT CAPACITY OF THE CLOSING FUND AWARDEE**: The parties agree that the Closing Fund Awardee, its officers, agents, and employees, in performance of this Agreement, will act in the capacity of an independent contractor and not as an officer, employee, or agent of the State. The Closing Fund Awardee is not entitled to accrue any benefits of State employment, including retirement benefits and any other rights or privileges connected with employment. The Closing Fund Awardee agrees to take such steps as may be necessary to ensure that each subcontractor of the Closing Fund Awardee will be deemed to be an independent contractor and will not be considered or permitted to be an agent of the State.

The Closing Fund Awardee has no authority to, and shall not pledge the State's credit or make OTTED a guarantor of payment or surety for any contract, debt, obligation, judgment lien, or any form of indebtedness.

**12.0 LEGAL REQUIREMENTS**:

(a) This Agreement is executed and entered into in the State of Florida, and will be construed, performed, and enforced in all respects in strict conformity with local, state, and federal laws, rules, and regulations. Each party will perform its obligations in accordance with the terms and conditions of this Agreement. Any and all litigation arising under this Agreement shall be brought in the appropriate court in Leon County, Florida, applying Florida law.

(b) If any term or provision of this Agreement is found to be illegal and unenforceable, the remainder of this Agreement will remain in full force and effect and such term or provision will be deemed stricken.

**13.0 PUBLIC ENTITY CRIMES**: The Closing Fund Awardee affirms that it is aware of the provisions of Section 287.133(2)(a), Florida Statutes, and that at no time has the Closing Fund Awardee been convicted of a Public Entity Crime. The Closing Fund Awardee agrees that

it shall not violate such law and further acknowledges and agrees that any conviction during the term of this Agreement may result in the termination of this Agreement.

**14.0   UNAUTHORIZED ALIENS**: OTTED will consider the employment of unauthorized aliens, by any contractor or subcontractor, as described by Section 274A(e) of the Immigration and Nationalization Act, cause for termination of this Agreement.

**15.0   NON-DISCRIMINATION**: The Closing Fund Awardee will not discriminate against any employee employed in the performance of this agreement, or against any applicant for employment because of age, ethnicity, race, religious belief, disability, national origin, or sex. The Closing Fund Awardee shall provide a harassment-free workplace, with any allegation of harassment given priority attention and action by management. The Closing Fund Awardee shall insert a similar provision in all subcontracts for services by this Agreement.

The Closing Fund Awardee affirms that it is aware of the provisions of Section 287.134(2)(a), Florida Statutes, and that at no time has the Closing Fund Awardee been placed on the Discriminatory Vendor List. The Closing Fund Awardee further agrees that it shall not violate such law and acknowledges and agrees that placement on the list during the term of this Agreement may result in the termination of this Agreement.

**16.0 ATTORNEY FEES**: Unless authorized by law and agreed to in writing by OTTED, OTTED will not be liable to pay attorney fees, interest, or cost of collection.

**17.0 TRAVEL**: There shall be no reimbursement of travel expenses exceeding the all-inclusive funds allocated in this Closing Fund Agreement.

**18.0 <u>PRESERVATION OF REMEDIES:</u>**  No delay or omission to exercise any right, power, or remedy accruing to either party upon breach or default by either party under this Agreement, will impair any such right, power or remedy of either party; nor will such delay or omission be construed as a waiver of any breach or default or any similar breach or default.

**19.0 <u>ACCOUNTING AND AUDITS</u>:**  The Closing Fund Awardee agrees:

(a) To maintain books, records, documents and other evidence according to generally accepted accounting principles, procedures, and practices that sufficiently and properly reflect all costs of any nature expended in the performance of this Agreement, and retain said copies for a period of five (5) years after termination of the conclusion of this Agreement.  If any litigation, claim, negotiation, audit or other action involving the records has been started before the expiration of the five (5) years, the records shall be retained until completion of the action and resolution of all issues which arise from it.

(b) To make the books, records, documents and other evidence available for inspection, review, or audit by state personnel of the Office of the Auditor General, Department of Financial Services, or other state personnel authorized by OTTED.  Copies of the reporting package required by this agreement shall be submitted by or on behalf of the recipient to OTTED and the State of Florida Auditor General.

(c) To include the aforementioned audit and record keeping requirements and the provisions contained in "Exhibit B" in contracts and sub-contracts entered into by the Closing Fund Awardee with any party for work required in the performance of this Agreement.

**20.0 <u>PUBLIC RECORDS</u>:** The Closing Fund Awardee must allow public access to all public records made or received by the Closing Fund Awardee in conjunction with the Closing Fund Award payment subject to the provisions of Chapter 119, Florida Statutes, except materials

that relate to methods of manufacture or production, potential trade secrets, potentially patentable material, actual trade secrets, business transactions, financial and proprietary information, and agreements or proposals to receive funding that are received, generated, ascertained, or discovered by OTTED, as exempted in Section 288.9520, Florida Statutes, or as exempted under Sections 288.075 and/or 288.9520, Florida Statutes. Refusal of the Closing Fund Awardee to allow access to records as provided in this Agreement shall constitute grounds for unilateral cancellation of this Agreement.

The Closing Fund Awardee must make publicly available, upon request, the following information: the name of the business, the amount of the Closing fund Award payment, the number of actual new full-time equivalent jobs created, and the amount of capital investment completed.

**21.0 LOBBYING:** Payments obtained under this Agreement may not be used for the purpose of lobbying the Legislature, the judicial branch, or a state agency, pursuant to Section 216.347, Florida Statutes.

**22.0 NON-ASSIGNMENT:** Neither party may assign, sublicense, nor otherwise transfer its rights, duties, or obligations under this Agreement without the prior written consent of the other party, which consent will not be unreasonably withheld. Any assignment, sublicense, or transfer occurring will be null and void; provided, however that OTTED will at all times be entitled to assign or transfer its rights, duties, or obligations under this Agreement to another governmental agency in the State of Florida, upon giving prior written notice to the Closing Fund Awardee. In the event that OTTED approves transfer of the Closing Fund Awardee's obligations, the Closing Fund Awardee remains responsible for all work performed and all expenses incurred in connection with this Agreement.

**23.0 <u>ENTIRE AGREEMENT</u>:** This instrument embodies the entire agreement of the parties.  There are no provisions, terms, condition, or obligations other than those contained in this agreement; and this agreement supersedes all previous communication, representation, or agreement, either verbal or written, between the parties.  No amendment will be effective unless reduced to writing and signed by an authorized officer of the Closing Fund Awardee and the authorized agent of OTTED.

**DUPLICATE ORIGINALS**: This Agreement is executed in duplicate originals.

In Witness whereof, OTTED and the Closing Fund Awardee have caused this agreement to be executed and delivered by their duly authorized representatives.

**STATE OF FLORIDA**
**OFFICE OF TOURISM, TRADE,**
**AND ECONOMIC DEVELOPMENT**

_____  6-30-11
AUTHORIZED SIGNATURE          Date

TITLE: _____

WITNESSES: _____

_____

**KLAUSNER HOLDING USA INC.**

_____  29th June 2011
AUTHORIZED SIGNATURE          Date

TITLE: Treasurer

WITNESSES: _____

_____

List of Exhibits:

Exhibit A: Enterprise Florida, Inc.'s Quick Action Closing Fund Request for Consideration and documentation from the Closing Fund Awardee in lieu of an application.

Exhibit B: Special Audit Requirements

Exhibit C: Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable)

Exhibit D: Enterprise Florida, Inc. Escrow Agreement between Enterprise Florida, the Closing Fund Awardee, and the Office of Tourism, Trade and Economic Development.

15

**DUPLICATE ORIGINALS**: This Agreement is executed in duplicate originals.

In Witness whereof, OTTED and the Closing Fund Awardee have caused this agreement to be executed and delivered by their duly authorized representatives.

**STATE OF FLORIDA
OFFICE OF TOURISM, TRADE,
AND ECONOMIC DEVELOPMENT**

**KLAUSNER HOLDING USA INC.**

_____
AUTHORIZED SIGNATURE        Date

_____ 29th June /2011
AUTHORIZED SIGNATURE        Date

TITLE: _____

TITLE: _Treasurer_____

WITNESSES:

WITNESSES:

_____

_____

_____

_____

List of Exhibits:

Exhibit A: Enterprise Florida, Inc.'s Quick Action Closing Fund Request for Consideration and documentation from the Closing Fund Awardee in lieu of an application.

Exhibit B: Special Audit Requirements

Exhibit C: Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable)

Exhibit D: Enterprise Florida, Inc. Escrow Agreement between Enterprise Florida, the Closing Fund Awardee, and the Office of Tourism, Trade and Economic Development.

15

# EXHIBIT   A

# GENERAL PROJECT OVERVIEW

United Pine (to be finalized)
_____
**Name of Business**

Project Christmas
_____
**Project Title or Code Name (1-5 word description)**

---

### FOR EFI USE ONLY

| 10|9|11 | | 6/9/11 |
|---|---|---|
| **Date Received** | **Date Revised** | **Date Completed** |

11-00129
**EFI Project Number**

---

Contact Enterprise Florida to discuss your project and application **before** submitting a formal proposal. The completed and signed application must be filed with:



*Enterprise Florida*

**The Atrium Building, Suite 201 ● 325 John Knox Road
Tallahassee, Florida 32303
Phone: 850.298.6620 ● Fax: 850.298.6659**
http://www.eflorida.com/

# GENERAL PROJECT OVERVIEW

## 1. BUSINESS INFORMATION

**A. Name of Applicant / Business Unit:**  United Pine (to be finalized)
*This should be the entity that will be party to the QTI agreement with the State of Florida. If multiple affiliates are involved, include an attachment listing affiliate name(s), Federal Employer Identification Number(s), Unemployment Compensation Number(s) and relationship to applicant.*

**B. Mailing Address:**  1297 Professional Drive, Suite 202
*Street Address*

| | | |
|---|---|---|
| Myrtle Beach | SC | 29577 |
| *City* | *State* | *Zip Code* |

**C. Name of Parent Company:**  Klausner Holdings USA JV

**D. Primary Business Unit Contact:**  Thomas Mende

**Title:**  President, Klausner Trading USA

**Mailing Address:**  1297 Professional Drive, Suite 202
*Street Address*

| | | |
|---|---|---|
| Myrtle Beach | SC | 29577 |
| *City* | *State* | *Zip Code* |

**Telephone:** 843.626.9600  **Fax:**

**Email:** Thomas.mende@klausner-group.com  **Website:** www.Klausner-Group.com

**E. Business Unit's Federal Employer Identification Number:**
(Please complete either the substitute W-9 Form at the end of this application or attach a completed IRS Form W-9.)   26-0256374

**F. Business Unit's Unemployment Compensation Number[1]:**   Not yet applied

**G. Business Unit's Florida Sales Tax Registration Number:**   Not yet applied

**H. Is the business unit minority owned?**

Yes ☐   No ☒   If yes, explain: _____

**I. What is the business unit's tax year** (ex: Jan 1 to Dec 31):   June 30

**J. Has this business unit, or any related entities, applied for and/or been approved for State incentives in the past?**

Yes ☐   No ☒   If yes, explain: _____

## 2. PROJECT OVERVIEW

**A. Which of the following best describes this business unit[2]:**
☒   New business unit to Florida
☐   Existing Florida business creating and / or retaining jobs[3].
_____   If an expansion, how many jobs are currently in the expanding business unit?

**B. How many individuals are employed at all Florida locations?**   350

---

[1] If multiple unemployment compensation reporting units or multiple worksites are involved, contact Enterprise Florida to discuss this structure or include an attachment listing the additional units and their relationship to the applicant.
[2] Must be a separate business unit or reporting unit of a business unit that is or will be registered with the State of Florida for unemployment compensation purposes.
[3] A QTI Tax Refund award cannot be granted for existing Florida jobs.

# GENERAL PROJECT OVERVIEW

**C.** **Are any jobs being transferred from other Florida locations[4]?**
Yes ☐   No ☒   If yes, how many jobs and from where? _____
Why are these jobs moving and why is it justified in light of the statutory language governing the applicable incentive program(s)?

**D.** Give a **full** description of this project, including a company overview, the primary activities / functions of this business unit and project, and the reasons for contemplating an expansion in / relocation to Florida.
Establish saw and planing mill; purchasing logs from local sources, cutting logs into desired lengths, drying rough cuts and then planing into final product. Expansion in the US due to supply of raw materials, ability to service US customer base and exports.   See attachment

**E.** In what Targeted Industry(ies) does the proposed project operate?[5]:   Home centers, treating plants, retailers and export markets

**F.** Break down the project's primary function(s) and the corresponding wages:

| Business Unit Activities | 5 Digit NAICS Code(s) | Project Function (total = 100%) | Annualized Wage ($) |
|---|---|---|---|
| Saw Milling /planing operation | 321113 | 100% | $10.05mil |
|  |  | % | $ |
|  |  | % | $ |

**G.** What is the project's proposed location address:

_____
Street Address
Live Oak                              FL
City                                       State                    Zip Code

What is the project's current location address (if different):

_____
Street Address

_____
City                                       State                    Zip Code

**H.** **Is the project location within a current or proposed Brownfield site / area?**
Yes ☐   No ☐   If yes, attach a copy of the official document designating the Brownfield area.
**Is the project location in an Enterprise Zone?**
Yes ☒   No ☐   If yes, which zone? _____
**Is the project location in a designated Rural area?**
Yes ☒   No ☐   If yes, which Rural area?  Suwannee County
**Is the project location in an Urban area[6]?**
Yes ☐   No ☒   If yes, describe?

**I.** Which of the following describes the applicant's operations (select all that apply):
☒   Multi-state business enterprise
☐   Multinational business enterprise

---

[4] Incentives may not be used in connection with a project that involves the relocation of jobs from one Florida community to another except in certain circumstances as described in statute.
[5] Refer to the QTI Target Industry list.
[6] An Urban area may include a Community Redevelopment Area (CRA), Urban Job Tax Credit eligible area, Urban Enterprise Zone, Federal Empowerment Zone, an Urban revitalization area, etc.

# GENERAL PROJECT OVERVIEW

☐ Florida business enterprise (eligible for Brownfield Redevelopment Bonus Incentive only)

**J. Which of the following describes this <u>business unit</u> (select all that apply):**
- ☐ Regional headquarters office
- ☐ National headquarters office
- ☐ International headquarters office
- ☒ This is not a dedicated headquarters office

**K. What is the estimated percentage of gross receipts or final sales resulting from this project that will be made <u>outside of Florida</u> (if sales is not a reasonable measure, use another basis for measure and provide explanation below):**
<u>90%</u>        Explain, if necessary: _____

## 3. JOB AND WAGE OVERVIEW

**A. How many Florida jobs[7] are expected to be <u>created</u> as part of this project?**                                    350

**B. If an existing business unit, how many Florida jobs are expected to be <u>retained</u> as part of this project?** (jobs in jeopardy of leaving Florida should only be included here; these jobs are <u>not</u> eligible for QTI)                                    Ø

**C. What is the anticipated annualized average wage (excluding benefits) of the new to Florida jobs created as part of this project?** (Cash payments to the employees such as performance bonuses and overtime should be included. The wage reported here is only an estimate of the average wage to be paid and will not be used in the certification, agreement, and claim evaluation process.)                                    $30,000

**D. What is the annualized average value of benefits associated with each new job created as part of this project?**                                    $8000

**E. What benefits are included in this value?** (health insurance, 401(k) contributions, vacation and sick leave, etc.)
Health/dental/life co-share, approved leaves, 401k or other retirement scheme

## 4. CAPITAL INVESTMENT OVERVIEW

**A. Describe the capital investment in real and personal property** (Examples: construction of new facility; remodeling of facility; upgrading, replacing, or buying new equipment.):
$96mil in machinery/equipment; $54 mil in buildings, property and property improvements

**B. Will this facility be:**
- ☐ Leased space with renovations or build out
- ☒ Land purchase and construction of a new building
- ☐ Purchase of existing building(s) with renovations
- ☐ Addition to existing building(s) (already owned)
- ☐ Other (please describe in 4A above)

**C. List the anticipated amount and type of major capital investment to be made by the applicant in connection with this project:**

---

[7] A "full time equivalent job" means at least 35 hours of paid work per week.

# GENERAL PROJECT OVERVIEW

| Calendar Year : | 2011 | 2012 | | | | Total |
|---|---|---|---|---|---|---|
| Land or Building Purchase | $ | $ | $ | $ | $ | $ |
| Construction / Renovations | $ | $ | $ | $ | $ | $ |
| Manufacturing Equipment | $ | $95mil | $ | $ | $ | $ |
| R&D Equipment | $ | $ | $ | $ | $ | $ |
| Other Equipment (computer equipment, office furniture, etc.) | $ | $1mil | $ | $ | $ | $ |
| Total Capital Investment | $ | $96m | $ | $ | $ | $ 150m |

D. **What is the estimated cost of machinery and equipment or other resources for this project expected to be purchased <u>outside</u> of Florida?**

$95mil

E. **Describe the type(s) of machinery and / or other resources to be purchased <u>outside</u> of Florida.**

Saw line and planing equipment

F. **What is the estimated square footage of the new or expanded facility?**

100 Acres

G. **When is the final location decision anticipated** (date)?

June 30, 2011

H. **What is the anticipated date construction will begin?**

Once EPA complete

I. **What is the anticipated date operations will commence?**

8 months from start

## 5. COMPETITIVE LANDSCAPE

A. **What role will the incentive(s) play in the business unit's decision to locate, expand, or remain in Florida?**

Incentives, when combined with log source, is a primary factor for decision makers

B. **How will the incentive dollars be used by the business?**

To cover land improvements and offset taxes

C. **What other cities, states, or countries are being considered for this project?**

NC, VA, SC

D. **What advantages or incentives offered by these locations do you consider important in your decision?**

Land and Cash grants for land improvements

E. **What advantages or disadvantages offered by the proposed Florida location do you consider important in your decision?**

Property tax and corporate tax rates were higher in FL.

F. **Indicate any additional internal or external competitive issues impacting this project's location decision?**

External competitive issues exist for the commodity we produced and the Florida incentives will help us to quickly establish our operations..

## 6. ECONOMIC IMPACT AND CORPORATE RESPONSIBILITY

A. **Provide a brief synopsis of the special impacts the project is expected to stimulate in the community, the state, and the regional economy.** Include the impact on indicators such as unemployment rate, poverty rate, and per capita income.

# GENERAL PROJECT OVERVIEW

The location in a rural area that has high unemployment.  The project will greatly impact the community in which it operates through hiring of unemployed and ancillary benefits to local businesses  Additionally, the proposed operations will be state of the art, with production five time greater than any existing mill and comparable to the inputs of a pulp mill.  Timber market conditions will be greatly enhanced through this site which will increase timber land values and the attraction of other wood cluster synergy operations.

**B.  Provide a summary of past activities in Florida and in other states.** For example, what kind of corporate citizen has the applicant been? Also list awards or commendations. Klausner Group has always been a good corporate citizen in the communities in which it operates worldwide.  The Group has won numerous production awards in its European locations which has instilled a sense of pride amongst workers and the community.

**C.  List and explain any criminal or civil fines or penalties, recent or ongoing investigations and lawsuits, federal, state and/or local tax liens, and environmental issues that have been imposed upon the company, its executives, or its affiliates and any recent bankruptcy proceedings of the applicant or its parent company.** Failure to disclose relevant information may mean automatic disqualification. If there are no issues to be identified, answer "<u>None</u>". Do not leave this question blank.
None

**D.  Provide any additional information you wish to be considered as part of this incentive application or items that may provide supplementary background information on your project or company.**

## 7. CONFIDENTIALITY

**A.  You may request that your project information (including information contained in this application) be confidential per F.S. 288.075, Confidentiality of Records for a 12 month period, with an additional 12 month extension available upon request for projects still under consideration.**

**Please indicate your confidentiality preference:** (Does not apply to SDST sales tax exemption applicants)

☒      Yes
☐      No

**\*\*\*Be sure to attach the proper incentive attachment sheet(s)\*\*\***

# GENERAL PROJECT OVERVIEW

## 8. SIGNATURES

| Application Completed By: | To the best of my knowledge, the information included in this application is accurate. |
|---|---|

Signature

**06/06/2011**
Date

**Thomas Mende**
Name

**President**
Title

**Klausner Trading USA, Inc**
Company

**same**
Address, if different than mailing address

**843.626.9600**
Phone Number

Fax Number

**Jeanne.Lynch@Klausner-Group.com**
Email Address

Name of contact person, if different than above

Phone Number

Address

Email Address

---

Signature (Authorized Company Officer) **REQUIRED**

**06/06/2011**
Date

**Thomas Mende**
Name

**President**
Title

**Klausner Trading USA, Inc**
Company

Address, if different than mailing address

**843.626.9600**
Phone Number

Fax Number

**Thomas.Mende@Klausner-Group.com**
Email Address



**STATE OF FLORIDA**
**Department of Financial Services – Chief Financial Officer**
Bureau of Accounting, 200 East Gaines Street, Tallahassee, FL 32399-0354
Telephone (850) 413-5519 Fax (850) 413-5550
**Substitute Form W-9**

In order to comply with IRS regulations, we are requesting Taxpayer Identification information that will be used to determine whether you will receive a Form 1099 for payment(s) made to you by an agency of the State of Florida. For questions regarding this form, please use the address or telephone number provided above. In order to comply with the IRS rules, please provide us with your social security (SSN) or federal employer identification number (FEIN). This is not a request for state sales tax exemption.

In the event this information is not provided, or should the IRS notify us that the provided information is incorrect, all payments made to you may become subject to a 28% Backup Withholding Tax Rate. Please print clearly or type.

**PART 1** – Please provide the correct Tax Identification Number (**TIN**), be it FEIN –or- SSN, and the applicable name and address **as shown on your income tax return.**

The TIN is (check one) X_ FEIN _____ SSN

Federal Employer Identification Number (FEIN) 26-0256374 or -
Example 9 9 – 9 9 9 9 9 9 9

Social Security Number (SSN) _____
▮▮▮▮▮▮▮ – 9 9 9 9

NAME (as shown on your income tax return) Klausner Lumber One (name to change to United Pine)

Business name if sole proprietor _____

ADDRESS 1230 Peachtree Street

CITY, STATE, ZIP Atlanta, GA 30309

**PART 2** - Below, circle one number that accurately describes the business or the individual:
**1 - CORPORATION, PROFESSIONAL ASSOCIATION OR PROFESSIONAL CORPORATION**
   (A corporation formed under the laws of any state within the United States.)
**2 - NOT FOR PROFIT CORPORATION** (Section 501(c) (3) Internal Revenue Code)
**3 - PARTNERSHIP, JOINT VENTURE, ESTATE, TRUST OR MULTIPLE MEMBER LLC**
**4 - INDIVIDUAL, SOLE PROPRIETOR, SELF EMPLOYED OR SINGLE MEMBER LLC**
   (Circle #4 if you are an individual that benefited from a student loan forgiveness payment)
**5 - NONCORPORATE RENTAL AGENT**
**6 - GOVERNMENTAL ENTITY** (City, County, State or U.S. Government)
**7 - FOREIGN CORPORATION OR ENTITY** (A foreign entity formed under the laws of a country other than the United States.) If YES is marked below, complete and attach Form W-8ECI.
   Is income effectively connected with business in the United States? _____YES _____NO
**8 - NONRESIDENT ALIEN** (An individual temporarily in the U. S. who is not a U.S. citizen or resident.)

Under the penalties of perjury, I certify that I have examined this request and to the best of my knowledge and belief, it is true, correct and complete.

Signature _____   Date 6/5/2011   Telephone Number 843.626.9600

Title : Controller     Jeanne Lynch

email (optional) Jeanne.Lynch@Klausner-Group.com

# Quick Action Closing Fund
## Attachment to the General Project Overview

### United Pine (Not yet Finalized)
**Name of Business**

FOR EFI USE ONLY

| 6/9/11 | | 6/9/11 |
|---|---|---|
| Date Received | Date Revised | Date Completed |

*Must be a separate __business unit__ or reporting unit of a __business unit__ that is or will be registered with the State of Florida for unemployment compensation purposes.*

**IMPORTANT NOTE:** This application must be filed and the incentive approved ***prior*** to making the decision to expand an existing Florida business unit or to locate a new business unit in Florida.

\* \* \*Be sure to attach the General Project Overview\* \* \*

## 1. PROJECT OVERVIEW

**A.** Site location decision date:  JUNE 30 2011

**B.** What is the total number of net new full-time equivalent Florida jobs to be <u>created</u> and/or <u>retained</u> by the project at the business unit?

Jobs Created:   1350   350 *> see below*

Jobs Retained:   350   Ø

**C.** Provide the job creation schedule to which you commit: (Please limit job creation to no less than ten jobs in the first year and the phases to a maximum of three consecutive years unless extraordinary circumstances warrant consideration of additional phases).

*per 6/4/11 email from Company*

| Phase | Number of net new full-time equivalent Florida Jobs | | Date by which jobs will be implemented |
|---|---|---|---|
| | **Created** | **Retained** | |
| I | 1000**see below | 0 | 12/31/2012 |
| II | 150 | 350 | 12/31/2013 |
| III | 200 | | 12/31/2014 |
| Total | 350 | | |

\*\*includes indirect job creation, site construction, administration, etc. · *not included in Company commitment*

**D.** For the purposes of certification, agreement, and claim review, indicate the average wage to which you commit:   $30,000.

## 2. PROJECT NEEDS AND IMPACTS

**A.** Provide a quantitative measure of Florida's competitive disadvantage and identify the major source(s) of that disadvantage:
Transportation and road infrastructure increased cost $4mil; Lack of trained workforce $1mil, Local and state taxes higher than other bid states ($2mil over 10years), climate – use of more energy to operate facility ($3mil est over 10 years),

**B.** Indicate the type and amount of financial or other support to be provided by the local community for this project:
Donated/graded site including the full infrastructure (full rail layout, roads, utilities), and ad-valorem tax abatement.

**C.** Specify the project needs that will be satisfied by the requested funds:
See B.

# Quick Action Closing Fund
## Attachment to the General Project Overview

D. **Identify special impacts the facility is expected to stimulate in a particular business sector, the state or regional economy, and in state universities and community colleges:**

The establishment of this type of facility will impact forestry due to supply the mill would remove from the current market; trucking for the transportation of logs and finished product; rail for exported products; and local retail for the influx of employees, vendors and customers.

## 3. SIGNATURES

_____     6/8/2011
Signature of Individual Completing this Attachment        Date
(if different from General Project Overview)


_____
Address (if different)

843 626 9600
_____
Phone Number (if different)


_____     June 8, 2011
Signature (Authorized Company Officer) REQUIRED        Date

Thomas Mende, President, Klausner Trading USA, Inc.
_____
Name and Title of Authorized Officer

## 4. KEY QUICK ACTION CLOSING FUND PROGRAM INFORMATION

- The Quick Action Closing Fund is a grant paid to a business upon achievement of pre-defined "payment criteria". Enterprise Florida will work with the company and OTTED to determine appropriate payment criteria for this project.
- Enterprise Florida will also work with the company and OTTED to determine "performance criteria", which are criteria that must be met in order for the company to retain the funds. If the performance criteria are not met, penalty sanctions may be imposed that include repayment of a portion or the entire Closing Fund award, with interest.
- Projects eligible for receipt of funds from the Quick Action Closing Fund shall:
  A. Be in an industry as referenced in s. 288.106 [Qualified Target Industry].
  B. Have a positive payback ratio of at least 5 to 1.
  C. Be an inducement to the project's location or expansion in the state.
  D. Pay an average annual wage of at least 125 percent of the areawide or statewide private sector average wage.
  E. Be supported by the local community in which the project is to be located.
- Quick Action Closing Fund: Section 288.1088, Florida Statutes

## Marty Wilson

| | |
|---|---|
| **From:** | Lynch, Jeanne <Jeanne.Lynch@klausner-group.com> |
| **Sent:** | Thursday, June 09, 2011 4:45 PM |
| **To:** | Marty Wilson |
| **Cc:** | Mende, Thomas |
| **Subject:** | FW: Applications - financials to follow |
| **Attachments:** | QTIAttach.docx |

Hello Marty,

Please see comments below -

-----Original Message-----
From: Marty Wilson [mailto:mwilson@eflorida.com]
Sent: Thursday, June 09, 2011 1:58 PM
To: Lynch, Jeanne; Mende, Thomas
Cc: Joel Gunter
Subject: RE: Applications - financials to follow

Jeanne & Thomas, <<QTIAttach.docx>>

I have a few follow-up questions after reviewing the applications. I have also drafted
some proposed payment and performance criteria for the $3 million Closing Fund incentive
(also below). The process here is the $3 million would be placed into an escrow account
once the first two items below are achieved (execution of agreement and submission of air
permit). These must be achieved by August 31, 2011, due to state budget requirements. The
second three items are the milestones that will trigger the $3 million to be paid to
United Pine from the escrow account and the last three items are the ultimate performance
conditions. The first five items may be adjusted, just let me know what you would like to
see instead.

Application Questions:

- Question 2D of the General Project Overview references an attachment. Is this
attachment something we already have or is there an additional document? Already attached
- 3 slides

- Question 1B of the QTI Attachment - given the significant scope of this project, I want
to be sure the end of 2012 is sufficient time to create the first phase of 200 new jobs.
Just for the purposes of the incentives, you might want to consider consolidating the job
schedule into 2013 in order to give a little more time to create the jobs.

Marty – thanks point well taken    QACF made consistent w/ QTI

We based our dates on critical paths – But as you note, it is ambitious – we need
permitting first and then we do not want to be in the middle of grading during hurricane
season – so can we move it to the end of 2013 for all the eventualities. I revised the
numbers – can you switch out the pages

-There is one more short document we need to have completed (attached). Please complete,
sign and send back at your convenience.

1

- Can you explain more about ... corporate structure of Klausne. Trading USA, Klausner Holdings USA JV and United Pine? Will United Pine be a subsidiary of Klausner Holdings USA JV? What role does Södra play in these entities?

Klausner Holding USA is the holding company of Klausner Trading USA.  It is owned by a holding in Europe which in turn is owned singularly by Mr. Klausner.  Soedra is proposing to purchase 50% of Klausner Holding USA from the European Holding company and therefore 50% of KTU.  The company Klausner Holding USA will then become United Pine Holding and KTU will become United Pine Trading USA.

Closing Fund Payment:

Payment of the $3,000,000 Closing Fund award on behalf of United Pine is to be paid from the State into an escrow account managed by Enterprise Florida, Inc. upon achievement of the following:

1.      Execution of the Closing Fund Agreement with OTTED prior to June 30, 2011; and

2.      Submission of air permit application to the U.S. Environmental Protection Agency for the proposed project in Suwannee County, FL.

Payment of $3 million in escrowed funds will be released from Enterprise Florida, Inc. to United Pine upon achievement of the following:

1.      Public announcement of the project's location in Suwannee County, FL;

2.      Acquisition (ownership) of the land (approximately 100 to 175 acres) in Suwannee County, Florida; and

3.      Capital investment of at least $12 million toward site preparation and other costs associated with construction of the new facility in Suwannee County, Florida;

Performance conditions that must be met to avoid sanctions will include achievement of the following project goals:

1.      Creation of 350 new jobs in accordance with the QTI Tax Refund Agreement;

2.      Average wage of at least $30,000 for all 350 jobs; and

3.      Capital investment for this project of at least $150 million by December 31, 2013. (2015)

Standard sanctions to include repayment of funds plus interest will apply and be delineated in the Closing Fund Agreement. Payment criteria must be achieved prior to August 31, 2011.

Thank you very much and I look forward to hearing back from you.

Regards,

Marty

-----Original Message-----

From: Lynch, Jeanne [mailto:Jeanne.Lynch@klausner-group.com]

Sent: Thursday, June 09, 2011 12:22 PM

To: Joel Gunter; Marty Wilson

Cc: Mende, Thomas

Subject: Applications - financials to follow


Hello Joel, Marty

Financials to follows

Best regards

Jeanne Lynch

Controller

Klausner Trading USA, Inc.

1297 Professional Drive, Suite 202

Myrtle Beach, SC 29577

USA

P: +1 843 443 9625

F: +1 843 626 9629

C: +1 434 391 4955

jeanne.lynch@klausner-group.com

www.klausner-group.com

NOTICE: This message (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. § 2510-2521, is CONFIDENTIAL, and is intended only for the individual to whom it is addressed. If you are not the named addressee or an employee or agent responsible for delivering this message to the named addressee, you are hereby notified that you have received this message in error and that any review, retention, dissemination, distribution, copying or use of this communication is strictly prohibited. Please reply to the sender that you received this message in error and then delete it. Thank you.

-----Original Message-----

From: ktucop1@klausner-group.com [mailto:ktucop1@klausner-group.com]

Sent: Donnerstag, 9. Juni 2011 13:11

To: Lynch, Jeanne

Subject: Scan from KTUCOP1[1/2]

Number of Images: 15

March 10, 2011


**JOEL GUNTER**
**Director, Business Development**
**Business Retention and Recruitment**
Enterprise Florida
800 N. Magnolia Ave. Suite 1100
Orlando, Florida 32803

Dear JOEL:

We request that any and all documents, records, reports, correspondence, conversations, applications, data and other sources of information concerning our business plans, interests, or intentions to evaluate or locate in Florida be kept confidential as authorized in Section 288.075, Florida Statutes.


Sincerely,

(Authorized Signature)

Thomas Mende
President
International Business Development
Klausner Trading USA, Inc.

**Budget Amendment Request**
**Fiscal Year 2010-11**
**Current Status: Approved -**
**EOG Log Number: B0710**
**Executive Office of the Governor**

**Agency Log Number**   2011-037

**Request Type(s)**

GM - Establish General Revenue budget from unbudgeted reserve - Quick Action Closing (QAC) in Excess of $2,000,000 - Stat. Auth.288.1088 (3)(c), F.S.

**Request Summary**

Request Release for the Quick Action Closing Fund Pursuant to s. 288.1088, F.S.

**LBC Approval is required**

**Consultation/Review Period**   14 Consecutive Day Consultation    **Dates:** 6/15/2011 - 6/29/2011

**Signature**

_____

**Kelley Sasso**

**Executive Office of the Governor**    6/14/2011 6:33:08 PM

**Agency Fund Summary**

| Fund Title | Net Total for this Request | | |
|---|---|---|---|
| | Appropriation | Reserve | Release |
| General Revenue Fund | $0 | ($3,000,000) | $3,000,000 |

**Agency Budget Detail**

| Req Type | Line Item # | Budget Entity | Appropriation Category | Acct Code Yr | Fund | Cert Fwd | Appropriation | Reserve | Release |
|---|---|---|---|---|---|---|---|---|---|
| **Governor, Executive Office** | | | | | | | | | |
| **Pgm: Tour, Trade/Econo Dev** | | | | | | | | | |
| GM | 2656 | 31800600 Economic Dev Pgms & Proj | 100259 Quick Action Closing Fund | 0000 | 1000 General Revenue Fund | | $0 | ($3,000,000) | $3,000,000 |
| | | | | | | Total | $0 | ($3,000,000) | $3,000,000 |

**Agency Problem Statement**

The Quick Action Closing Fund was created to help attract, retain, and provide favorable conditions for the growth of high-impact business facilities which provide widespread economic benefits to the state.  Diversifying Florida's economy helps to foster a sustainable business environment, leading to quality employment opportunities for Floridians. In the global economy, there exists competition for these facilities, and in most instances, when all available resources for economic development have been used, the state continues to encounter competitive disadvantages in competing for these business facilities.

The Quick Action Closing Fund provides the state the ability to offer incentives to recruit businesses to the state. When local communities are vying for high-value projects, these funds are used to overcome a documented competitive disadvantage as compared to other non-Florida locations. The Legislature appropriated $16,000,000 for the Quick Action Closing Fund for the 2010-2011 fiscal year to respond to extraordinary economic opportunities and to compete effectively for these high impact business facilities.

Pursuant to section 288.1088, Florida Statutes, the Office of Tourism, Trade, and Economic Development (OTTED) may request approval for the release of funds as needed.  OTTED is prepared to enter into a contract with the prospective business, referred to for confidentiality purposes as "Project Christmas".   Contract payments are estimated at $3,000,000 based on preliminary negotiations.

**Agency Request**

The Executive Office of the Governor requests a release of $3,000,000 from unbudgeted reserve in the General Revenue Fund to execute a Quick Action Closing Fund contract.

**Fiscal Impact**

Amendment requests the release of General Revenue funds from unbudgeted reserve.

**Other Considerations**

| Uploaded Documents | Description | Uploaded By | Uploaded On |
|---|---|---|---|
| Ledger11-b0710.txt | appropriation ledger | CJR | 6/15/2011  8:01:20AM |

**Criteria for Approval**

The agency certifies that this request complies with all Criteria for Approval.

**OPB Budget Detail**

| Req Type | Line Item # | Budget Entity | Appropriation Category | Acct Code Yr | Fund | Cert Fwd | Appropriation | Reserve | Release |
|---|---|---|---|---|---|---|---|---|---|
| **Governor, Executive Office** | | | | | | | | | |
| **Pgm: Tour, Trade/Econo Dev** | | | | | | | | | |
| GM | 2656 | 31800600 Economic Dev Pgms & Proj | 100259 Quick Action Closing Fund | 0000 | 1000 General Revenue Fund | | $0 | ($3,000,000) | $3,000,000 |
| | | | | | | Total | $0 | ($3,000,000) | $3,000,000 |

**OPB Budget Explanation/Purpose**

Provides for the release of General Revenue funds from unbudgeted reserve to allow the Office of Tourism, Trade and Economic Development (OTTED), within the Executive Office of the Governor, to execute a Quick Action Closing Fund contract.

**OPB Problem Statement**

The Quick Action Closing Fund was created to help attract, retain, and provide favorable conditions for the growth of high-impact business facilities which provide widespread economic benefits to the state.  Diversifying Florida's economy helps to foster a sustainable business environment, leading to quality employment opportunities for Floridians. In the global economy, there exists competition for these facilities, and in most instances, when all available resources for economic development have been used, the state continues to encounter competitive disadvantages in competing for these business facilities.

The Quick Action Closing Fund provides the state the ability to offer incentives to recruit businesses to the state.  When local communities are vying for high-value projects, these funds are used to overcome a documented competitive disadvantage as compared to other non-Florida locations. The Legislature appropriated $16,000,000 for the Quick Action Closing Fund for the 2010-2011 fiscal year to respond to extraordinary economic opportunities and to compete effectively for these high impact business facilities.

Pursuant to section 288.1088, Florida Statutes, the Office of Tourism, Trade, and Economic Development (OTTED), within the Executive Office of the Governor, may request approval for the release of funds as needed.  OTTED is prepared to enter into a contract with the prospective business, referred to for confidentiality purposes as "Project Christmas."   Contract payments are estimated at $3,000,000 based on preliminary negotiations.

**OPB Agency Request**

The Executive Office of the Governor requests a release of $3,000,000 from unbudgeted reserve in the General Revenue Fund to execute a Quick Action Closing Fund contract.

**OPB Fiscal Impact**

Amendment requests the release of General Revenue funds from unbudgeted reserve.

**OPB Other Considerations**

The Governor approved this project after consulting with legislative leadership.

**LBC Budget Detail**

| Line Item | Budget Entity | Appropriation Category | Acct Code Yr | Fund | Cert Fwd | Appropriation | Reserve | Release |
|---|---|---|---|---|---|---|---|---|
| **Governor, Executive Office** | | | | | | | | |
| **Pgm: Tour, Trade/Econo Dev** | | | | | | | | |
| 2656 | 31800600 Economic Dev Pgms & Proj | 100259 Quick Action Closing Fund | 0000 | 1000 General Revenue Fund | | $0 | ($3,000,000) | $3,000,000 |
| | | | | | Total | $0 | ($3,000,000) | $3,000,000 |

**LBC Problem Statement**

The Quick Action Closing Fund was created to help attract, retain, and provide favorable conditions for the growth of high-impact business facilities which provide widespread economic benefits to the state.  Diversifying Florida's economy helps to foster a sustainable business environment, leading to quality employment opportunities for Floridians. In the global economy, there exists competition for these facilities, and in most instances, when all available resources for economic development have been used, the state continues to encounter competitive disadvantages in competing for these business facilities.

The Quick Action Closing Fund provides the state the ability to offer incentives to recruit businesses to the state. When local communities are vying for high-value projects, these funds are used to overcome a documented competitive disadvantage as compared to other non-Florida locations. The Legislature appropriated $16,000,000 for the Quick Action Closing Fund for the 2010-2011 fiscal year to respond to extraordinary economic opportunities and to compete effectively for these high impact business facilities.

Pursuant to section 288.1088, Florida Statutes, the Office of Tourism, Trade, and Economic Development (OTTED), within the Executive Office of the Governor, may request approval for the release of funds as needed.  OTTED is prepared to enter into a contract with the prospective business, referred to for confidentiality purposes as "Project Christmas."   Contract payments are estimated at $3,000,000 based on preliminary negotiations.

**LBC Agency Request**

The Executive Office of the Governor requests a release of $3,000,000 from unbudgeted reserve in the General Revenue Fund to execute a Quick Action Closing Fund contract.

**Summary of the Governor's Recommendations**

Recommend approval to release $3,000,000 in General Revenue funds from unbudgeted reserve to execute a Quick Action Closing Fund contract.

Recommend approval to release $3,000,000 in General Revenue funds from unbudgeted reserve to execute a Quick Action Closing Fund contract.

CONFIDENTIAL: Per section 288.075,  'a Statutes                     June LBC   ing DRAFT—Subject to Updates

**CONFIDENTIAL Name: Project Christmas**
**Company:  Klausner Trading International GmbH**

| | |
|---|---|
| Headline: | Sawmill Operations Location Project. |
| Options: | Suwannee County or North Carolina and South Carolina. |
| Jobs Created: | 350 |
| Jobs Retained: | 0 |
| Total Jobs: | 350 |
| Capital Investment: | $150,000,000 |
| Average Wage: | $30,000 (119% of Suwannee County and 75% of the statewide average wage) |
| Closing Fund Request: | $3,000,000 |

The Klausner-Group is one of the largest wood-industry companies in the world. The company operates four sawmills in Germany and is Europe's second largest supplier of soft woods. The company sells lumber products worldwide: mainly in Europe, North America and Asia. As part of an effort to diversify operations and tap into the US lumber market, Södra plans on purchasing a 50 percent stake in Klausner Holding USA (and therefore Klausner Trading USA). The new entity will be United Pine Holding (with United Pine Trading USA as the new subsidiary). The two companies are looking to establish one of the largest sawmill operations in the world at the rural catalyst site in Suwannee County Florida, which will ultimately be operated by United Pine. Both the North Carolina and South Carolina sites are reportedly 250 acres (75 acres larger than the proposed Florida site) and are being offered to the company at no cost and complete with all necessary infrastructure in place. Several of Florida's incentives originally proposed for this project will have no value and therefore were removed as part of the incentive package. While this demonstrates Florida's low-tax based structure, both North Carolina and South Carolina offer incentives that rebate a portion of employees' personal income tax withholding. This is a direct benefit to the Company and is in addition to offsets of other taxes such as corporate income and ad valorem. The company advised that without the funds provided through the QACF program they will not be able to undertake this project in Florida.

This project **does not meet the average wage requirement in s.288.1088, F.S.** and will require a waiver.

| | | | | |
|---|---|---|---|---|
| Tax Abatement | $ 8,860,000 | QTI Tax Refund | $ 1,680,000 |
| Regional Workforce Board Grant | $  250,000 | Sales Tax Exemption | $ 7,189,000 |
| Land Donation | $ 3,500,000 | Quick Response Training Grant | $  875,000 |
| Total Local Incentives | $12,610,000 | Incumbent Worker Training Grant | $  150,000 |
| | | Governor Exigency Fund | $  125,000 |
| | | EDTF | $ 3,000,000 |
| | | Rural Infrastructure Fund | $  395,000 |
| | | Closing Fund | $ 3,000,000 |
| | | Total State Incentives | $16,414,000 |
| | | | |
| | | Total Incentives: | $29,024,000 |

The 10 year payback ratio on the State's investment is 2.96 to 1, and **does not meet the ratio required in s.288.1088, F.S.** and will require a waiver.

_____ / 6/14/2011
(OTTED Director's Signature)        (Date)

**GOVERNOR'S DECISION:**

☑ Concur and approve this Quick Action Closing application at: $3,000,000. I have approved this project after consulting with the President of the Senate and Speaker of the House.

☐ Do not concur and find: _____

_____ / _____
(Signature)                (Date)

# EXHIBIT   B

# EXHIBIT B

# SPECIAL AUDIT REQUIREMENTS

The administration of funds awarded by the Office of Tourism, Trade, and Economic Development (OTTED) to Klausner Holding USA Inc. may be subject to audits and/or monitoring by OTTED, as described in this section.

## MONITORING

By entering into this agreement, Klausner Holding USA Inc. agrees to comply and cooperate with any monitoring procedures/processes deemed appropriate by OTTED.  In the event OTTED determines that a limited scope audit of the recipient is appropriate, Klausner Holding USA Inc. agrees to comply with any additional instructions provided by OTTED to Klausner Holding USA Inc. regarding such audit.  Klausner Holding USA Inc. further agrees to comply and cooperate with any inspections, reviews, investigations, or audits deemed necessary by the Chief Financial Officer, Auditor General, or Chief Inspector General.  Klausner Holding USA Inc. shall permit access to its records and independent auditor's working papers as necessary to comply with the requirements of this Agreement.

## AUDITS

1. In the event that Klausner Holding USA Inc. expends a total amount of State awards (i.e., State financial assistance provided to the recipient to carry out a State project) equal to or in excess of $500,000 in any fiscal year of Klausner Holding USA Inc., must have a State single or project-specific audit for such fiscal year in accordance with Section 215.97, Florida Statutes (the Single Audit Act); applicable rules of the Executive Office of the Governor and the Chief Financial Officer, and Chapter 69I-5, Rules of the Department of Financial Services.  In determining the State financial assistance expended in its fiscal year, Klausner Holding USA Inc. shall consider all sources of State awards, including State funds received from OTTED, except that State financial assistance received by a non-state entity for Federal program matching requirements shall be excluded from consideration.

2. In connection with the audit requirements, Klausner Holding USA Inc. shall ensure that the audit complies with the requirements of Section 215.97(8), Florida Statutes. This includes submission of a reporting package as defined by Section 215.97(8)(g), Florida Statutes, and Chapter 69I-5, Rules of the Department of Financial Services.

3. If Klausner Holding USA Inc. expends less than $500,000 in State financial assistance in its fiscal year, an audit conducted in accordance with the provisions of the Single Audit Act is not required.  In the event that Klausner Holding USA Inc. expends less than $500,000 in State financial assistance in its fiscal year and elects to have an audit conducted in accordance with the provisions of the Single Audit Act, the cost of the audit must be paid from non-State funds (i.e., the cost of such an audit must be paid from Klausner Holding USA Inc. funds obtained from other-than-State entities).

**Exhibit B**
**Special Audit Requirements**
**Page Two**

4. Klausner Holding USA Inc. must include the record keeping requirements found herein in sub-recipient contracts and subcontracts entered into by Klausner Holding USA Inc. for work required under terms of this Agreement.  In the executed subcontract, Klausner Holding USA Inc. shall provide each sub-recipient of state financial assistance the information needed by the sub-recipient to comply with the requirements of the Single Audit Act.  Pursuant to Section 215.97(7), Florida Statutes, Klausner Holding USA Inc. shall review and monitor sub-recipient audit reports and perform other procedures as specified in the agreement with the sub-recipient, which may include onsite visits. Klausner Holding USA Inc. shall require sub-recipients, as a condition of receiving state financial assistance, to permit the independent auditor of the recipient, the state awarding agency, the Chief Financial Officer, the Chief Inspector General, and the Auditor General access to the sub-recipient's records and independent auditor's working papers as necessary to comply with the requirements of the Single Audit Act.

5. For information regarding the Florida Single Audit Act, including the Florida Catalog of State Financial Assistance (CSFA), Klausner Holding USA Inc. should access the website for the Florida Department of Financial Services located at https://apps.fldfs.com/fsaa/ for assistance.  In addition to the above website, the following websites may be accessed for additional information:  The Florida Legislature's website http://www.leg.state.fl.us/ and the Florida Auditor General's website http://www.state.fl.us/audgen.

6. The CSFA number for this project is: 31.009.

**REPORT SUBMISSION**

Copies of audit reports conducted in accordance with the audit requirements contained herein shall be submitted to the parties set out below. The annual financial audit report shall include all management letters and Klausner Holding USA Inc.'s response to all findings, including corrective actions to be taken.  The annual financial audit report shall include a schedule of financial assistance specifically identifying all Agreement and other revenue by sponsoring agency and Agreement number.

**Exhibit B**
**Special Audit Requirements**
**Page Three**


The complete financial audit report, including all items specified above, shall be sent directly to:

Ms. Alberta Simmons
Sharpton, Brunson and Company, P.A.
215 South Monroe Street, Suite 750
Tallahassee, Florida 32301

**And**

State of Florida Auditor General
Attn:  Marilyn Rosetti
Room 574, Claude Pepper Building
111 West Madison Street
Tallahassee, Florida 32302-1450


## RECORD RETENTION

**Klausner Holding USA Inc.** shall retain all grant records and shall ensure the retention of its independent auditor's working papers for a period of five (5) years from the date of submission of the final project report.  If any litigation, claim, negotiation, audit, or other action involving the records has been started before the expiration of the five (5) year period, the records shall be retained until completion of the action and resolution of all issues which arise from it, or until the end of the five (5) years period, whichever is later.

**EXHIBIT B**
**ATTACHMENT 1**

FUNDS AWARDED TO THE RECIPIENT PURSUANT TO THIS AGREEMENT CONSIST OF THE FOLLOWING:

**State Resources Awarded to the Recipient Pursuant to this Agreement Consist of the Following Resources Subject to Section 215.97, F.S.:**

| State Program Number | Funding Source | State Fiscal Year | CSFA Number | CSFA Title or Funding Source Description | Funding Amount | State Appropriation Category |
|---|---|---|---|---|---|---|
| 11-00129 | QACF | 2010/11 | 31.009 | Quick Action Closing Fund | $3,000,000.00 | 100259 |
| | | | | | | |
| | | | | | | |
| | | | Total Award | | $3,000,000.00 | |

For each program identified above, the recipient shall comply with the program requirements described in the Catalog Florida Catalog of State Financial Assistance (CSFA) [https://apps.fldfs.com/fsaa/catalog.aspx]. The services/purposes for which the funds are to be used are included in the Contract scope of services/work. Any match required by the recipient is clearly indicated in the Contract.

# EXHIBIT   C

# EXHIBIT C

Klausner Holding USA Inc.

Criteria for Measurement of Achievement of Terms for
New Full-time Equivalent Jobs, Average Annual Wage
(where applicable)

Annual certification, as authorized in Section 7.0(c) of this Agreement, must be made in a **letter format clearly certifying the applicable requirements set in 5.0(d),** which shall include the following information and documentation. (For Closing Fund Awardees certified as a QTI Business, submittal of the required QTI Claim Application and relevant documentation is required.) Section I of this Exhibit explains how the Annual Certification Period, used in the calculation of full-time equivalent jobs, average annual wages and the Base Period for those jobs, is determined. Sections II, III, and IV explain the method that will to be used to determine the number of **full-time equivalent jobs** working on the project and the **average annual wage** of those project jobs, and the **documentation required** for jobs and wages.

*Although it is not necessary to submit copies of all documentation to support information included in Annual Certifications (information such as project jobs and related wages/salaries), the Closing Fund Awardee must maintain all related forms and supporting documentation and make these materials available to OTTED as required in Sections 7.0(f) and 19.0 of this Agreement.*

## Section I.  REFUND AND BASE PERIODS

A.  <u>Annual Certification Period</u> -- The Annual Certification Period, for purposes of this Agreement, is the period from the month the previous certification was submitted until the effective date of the current certification. For the first certification, the Annual Certification Period is defined as the period from October 1 to December 31 of the year the first new jobs are scheduled to be measured as specified in Paragraph 5.0(b) of this Agreement.

For subsequent years the Annual Certification Period is January 1 to December 31 of the current certification year. (See Sections II and III for more detailed discussion of the method that will be use to evaluate jobs and wages for these periods.)

B.  <u>Base Period</u> -- The Base Period will be used to calculate the net new jobs. The Base Period will be the 12 months preceding the effective date of the Letter of Certification, or, if applicable, the Preservation of Inducement, unless otherwise specified within this agreement.

**Exhibit C**
**Klausner Holding USA Inc.**
**Quick Action Closing Fund**
**Page 2**

## Section II.  PROJECT JOBS DETERMINATION

The following definitions and procedures must be used in determining and reporting the number of full-time equivalent jobs dedicated to the project.  The full-time equivalent jobs must work at the project location within the local government area indicated in Paragraph 5.0(a).

A.    Job Definitions:

1.  Full-time equivalent jobs -- A "full-time equivalent job" for purposes of this Agreement means at least 35 hours of paid work a week.  In tabulating hours worked, any paid leave an employee takes during the pay period, such as vacation or sick leave, may be included.  The total number of full-time equivalent jobs may include **both direct and support** jobs for this project.

2.  Direct jobs -- For purposes of this Agreement, "direct jobs" may include operational or production and related workers assigned directly to the Closing Fund project.

3.  Support jobs -- For purposes of this Agreement, "support jobs" include non-production, support or overhead workers, such as legal, administrative and clerical, working at the Closing Fund-approved business unit.  The concept for support jobs is generally only relevant for businesses working on defense or other government contracts or sub-contracts.

4.  New Full-time Equivalent Job -- Full-time equivalent jobs may be counted as new full-time equivalent jobs only if they result in a net increase in full-time equivalent jobs at the Closing Fund business over the average full-time equivalent jobs for the base period, unless otherwise specified in this Agreement.  In no case may jobs or job functions be counted as new, full-time equivalent project jobs if they are moved from a related business in Florida (including a business related by virtue of a merger, purchase, or any form of acquisition) to the Closing Fund Awardee, from another Florida location of the Closing Fund Awardee to the project location, or from any other Florida business unit.  In addition, no temporary construction jobs involved with the construction of facilities for the project nor any jobs which have been previously included in any approved application for annual certification or claims under Sections 288.104, 288.1045 288.106 or 288.1088, Florida Statutes, may be included in full-time equivalent project jobs.

5.  Full-time equivalent direct project jobs -- Full-time equivalent **direct** jobs for the project may be counted as (a) all direct employees working full time (at least 35 hours a week) on the project, such as production or related work, assigned to and working exclusively on the project described in this Agreement or (b) the total of the hours of direct production or related work assigned to the project divided by 35.

Exhibit C
**Klausner Holding USA Inc.**
**Quick Action Closing Fund**
**Page 3**

6. <u>Full-time equivalent support project jobs</u> -- Full-time equivalent support jobs may be counted for the project if they are (a) exclusively assigned to and working at least 35 hours a week on the project described in this Agreement or (b) they may be estimated by multiplying the **total number of all full-time "support" jobs"** at the business by the **ratio** of the number of **"full-time direct"** project jobs to the total of **all "full-time direct" jobs** at the business.

B.    <u>Full-Time Equivalent Jobs Calculation</u>:

The following method, or a method approved by OTTED which will yield comparable results, should be used to determine full-time-equivalent employment for each period.

1. **<u>Total full-time equivalent project jobs for the Base Period and Annual Certification Period</u>** – For each week in the period, the number of full-time equivalent project **support** jobs (as defined above) may be added to the number of full-time equivalent **direct** project jobs (as defined above) to obtain total **full-time equivalent project employment for each pay period**.

2. **<u>Average full-time equivalent project jobs for the Base Period and Annual Certification Period</u>** – Add the project full-time equivalent employment for all pay periods and divide by the number of pay periods to determine the average full-time equivalent project employment for the period.   This is the full-time equivalent project jobs that should be reported as annual certification.

3. <u>Net New Job Calculation</u> – To qualify for the annual certification, the difference between Annual Certification Period and the Base Period, the net increase in jobs, must be at least as great as the number of full-time equivalent net new jobs specified in Section 5.0(d)(1) of this Agreement for the Annual Certification Period.

If the job creation schedule in the Agreement specifies an increase in net new jobs as a result of a new employment phase since the previous Annual Certification Period, the actual average employment for the new Annual Certification Period will be **evaluated against** an adjusted employment requirement. This **adjusted employment requirement** is obtained by averaging the required full time equivalent employment specified for the previous employment phase for the first nine months of the year and the new employment phase for last three months of the year.   That is, the Closing Fund Awardee will be expected to maintain the employment established for the first phase of the project throughout the year, but will only be evaluated against the additional jobs for the new phase for the final 3 months of the year.   Averages are used rather than a strict month-to-month comparison because it is understood that there are month-to-month fluctuations in employment due to turnover and other reasons beyond the control of the business.

Exhibit C
Klausner Holding USA Inc.
Quick Action Closing Fund
Page 4

**Example:**  If the Closing Fund project involved the expansion of an existing Florida business with a base full time equivalent employment of 200 and the business had agreed to create 50 net new jobs by December 31 of the first year and an additional 65 net new jobs by December 31 of second year, the annual certification would be evaluated as follows:

1. The evaluation for the first year would compare average employment for period October 1 through December 31 of year 1 against a required number of jobs of 250 (the 200 base jobs, plus the 50 net new jobs scheduled in the agreement).

2. The second year evaluation would compare the average of actual employment for the period October 1 through December 31 against the 315 cumulative jobs scheduled for that phase.  In addition, to be sure that the jobs for the previous phase were maintained throughout the year, the average of actual full time equivalent jobs for the period January 1 through December 31 of the second year would be compared to an adjusted job requirement obtained by averaging the scheduled employment for the previous employment phase for nine months and the new employment phase for three months.  In this example the adjusted job requirement for the second year would be an average of 250 for nine months and 315 for three months or $((9*250+3*315)/12) = 266$.

Once the final phase of a project is reached, the evolution of the remaining certification will be based on a simple comparison of the actual full time equivalent employment against the maintenance of the cumulative full time equivalent employment specified for the final phase.

Worksheets, hard copy and electronic format (MS Excel format preferred), showing these calculations should be submitted with the certification.  All hard copies of worksheets should be signed.

Exhibit C
Klausner Holding USA Inc.
Quick Action Closing Fund
Page 5


## Section III.   AVERAGE ANNUAL WAGE DETERMINATION

A.   Definition – In calculating the project's average annual wage for the Annual Certification Period (the average wage is not required for the Base Period), the following payments may be included for all project jobs as determined in Section II of this Exhibit:

Wages
Salaries
Commissions
Bonuses
Drawing Accounts (advances to employees against future earnings)
Prizes and Awards (if given by employer for employment)
Vacation Pay
Payment to Employees of Difference Between Regular Pay and Jury Pay
Payments to Employees Temporarily Absent While in Military Service
Wages Earned Before Death but Paid After Death
Dismissal Pay
Sick Pay (not made under a plan or system)
Supplemental Payments (difference between workers' compensation and
   employee's salary).

Other benefits may only be included in the wage calculation **IF**, as a business policy, the employee has the option of accepting the value of the benefits in the form of cash payments, or can convert the benefit to cash within 12 months of receipt of the benefit.

B.   Calculation of the Average Annual Wage per Full-Time Equivalent Job:

The average annual wage for the Annual Certification Period must be determined in a manner consistent with the following procedure:

1.   Total project wages for certification period -- Actual wages, salaries and other payments (as listed in Paragraph A above) for **all full-time equivalent direct project jobs** (as defined in Section II-A. of this Exhibit) for each pay period during the certification period are **added to an estimate of support project wages** (as determined in Paragraph 2 of this section).

2.   Support project wages for certification period -- The total of wages, salaries and other payments (as listed in Paragraph A) for all **support** jobs at the business (as defined in Section II-A.) times the **ratio** of the number of "full-time direct" project jobs to the total of all "full-time direct" jobs at the business, calculated in Section II-A.3. of this Exhibit.

**Exhibit C**
**Klausner Holding USA Inc.**
**Quick Action Closing Fund**
**Page 6**

a. If the Closing Fund Awardee defined in this agreement meets the conditions outlined in Section IV-A. below, the Closing Fund Awardee may simply sum the quarterly payroll figures reported for unemployment compensation purposes and divide by the average number of employees (presumed to be full time equivalent employees if the conditions specified in Section IV-A. exist). If the number of quarters is less than four, this number should be multiplied by the inverse of the ratio of the number of quarters in the Annual Certification Period to four. If any of the quarters in the period has fewer than three months of employment, that quarter's payroll data should first be adjusted by multiplying the reported payroll for that period by the inverse of the ratio of the number of months for which employment data is reported to three.

3. <u>Annualized project wages</u> – Since the first Annual Certification Period is less than 12 months and some employees may work for less than 12 months during any Annual Certification Period, it is sometimes necessary to annualize the average wage for the Closing Fund Awardee or the wages of individual employees used to calculate the average annual wage. One of the following methods should be used for that purpose:

a. If the Closing Fund Awardee does not meet the conditions outlined in Section IV-A, the Closing Fund Awardee must submit the information indicated in Section IV-B and calculate the average wage by annualizing the actual wages paid to all Closing Fund Awardee employees during the Annual Certification Period and summing those figures to obtain a "total annualize payroll" for the period and dividing by the total number of employees included in the calculation of the "total annualized payroll" for that Annual Certification Period. (Note: The total number of employees used in the annualized payroll calculation may be substantially larger than the average employment for the Annual Certification Period.

Worksheets, hard copy and electronic format (MS Excel format preferred), showing these calculations should be submitted with the claim. All hard copies of worksheets should be signed.

Exhibit C
Klausner Holding USA Inc.
Quick Action Closing Fund
Page 7

## Section IV.  EMPLOYMENT AND WAGE DOCUMENTATION

Documentation to support both **base period** jobs and **refund period** jobs should include the following information:

A. If the Closing Fund Awardee is registered as a separate business unit or worksite, for unemployment compensation purposes, and the employment information reported reflects the number of full-time-equivalent employees at the business unit or worksite, the Closing Fund Awardee may simply submit a copy of the forms that have been submitted for unemployment compensation purposes (the forms are due to the unemployment compensation agency on the fifteenth of the month following the end of each quarter) with the applicable certification documents. The reports submitted should cover the Base Period defined in Section 5.0(1)(a) of this agreement, and the twelve months preceding the December 31 certification date.

B. If the Closing Fund Awardee is not registered as a separate business or reporting unit, or if there is substantial part-time employment or employee turnover during pay periods, then in addition to the information listed in Section IV-A above for the Closing Fund Awardee, or the business unit of which the Closing Fund Awardee is a part, the Closing Fund Awardee must submit a list of all employees at the business unit or reporting unit, identifying those employees working at the Closing Fund business during the Base Period **and** for the twelve months proceeding the December 31 annual certification date.

If an employee was not employed for a full 12 month period, the list should include the date employment began and/or ended.  The list should also identify the employee's position, title, or job description.  If the employee is paid by the hour, the list should include the number of hours the employee actually worked during each pay period during the Base Period and during the 12 months preceding the December 31 annual certification date.

This information should be supplied in both the signed hard copy and electronic format. (See also wage and salary information referenced in Section III-B3. that needs to be included in this list.)  In addition, the Closing Fund Awardee should clearly explain, as a part of the Closing Fund submission, how the information they are submitting may be different from the information submitted for unemployment compensation purposes.  For example, it might be the case that the business has a number of part time workers and therefore the unemployment compensation information overstates the number of full-time equivalent employees and understates the average wage.  Or, it may be the case that the Closing Fund business is a part of a larger or statewide reporting unit and the Closing Fund Awardee cannot be identified within the information submitted for unemployment compensation purposes.  A situation such as this should be clearly explained in the documentation.

**Exhibit C**
**Klausner Holding USA Inc.**
**Quick Action Closing Fund**
**Page 8**

## Section V.  INVESTMENT

Investment must be documented on a spreadsheet that lists the items, vendors, payment dates, amount of payments, and check numbers or unique identification of other means of payment and is accompanied with copies of canceled checks (or documentation of other forms of payment) for each item.  Please submit a signed hard copy as well as an electronic version of the spreadsheet (MS Excel format preferred).

# EXHIBIT D

# ESCROW AGREEMENT

By and Between

## THE GOVERNOR'S OFFICE OF TOURISM, TRADE, AND ECONOMIC DEVELOPMENT (OTTED)
(RE: OTTED Contract OT11-283)

AND

## ENTERPRISE FLORIDA, INC. (EFI)
as Escrow Agent

AND

## KLAUSNER HOLDING USA INC.
as Closing Fund Awardee

**Dated as of:   June 30, 2011   .**

# TABLE OF CONTENTS

Page

Section  1.    Appointment of Escrow Agent ..................................................................... 1
Section  2.    Establishment of Escrow .......................................................................... 2
Section  3.    Term o Escrow Agreement ........................................................................ 2
Section  4.    Direction of Escrow Agent ........................................................................ 2
Section  5.    Holding of the Award Funds .................................................................... 2
Section  6.    Receipt ....................................................................................................... 2
Section  7.    Rights in the Escrow Account ................................................................... 3
Section  8.    Disbursement Into Court .......................................................................... 3
Section  9.    Resignation and Removal of Escrow Agent ............................................ 3
Section 10.    Liability of Escrow Agent ......................................................................... 4
Section 11.    Miscellaneous ........................................................................................... 4
        11.1    Expenses .................................................................................................... 4
        11.2    Dispute Resolution .................................................................................... 4
        11.3    Notice ......................................................................................................... 4
        11.4    Amendment or Waiver .............................................................................. 5
        11.5    Severability ................................................................................................ 5
        11.6    Governing Law ........................................................................................... 5
        11.7    Entire Agreement: Assignment ................................................................ 5
        11.8    Binding Effect ............................................................................................ 6
        11.9    Execution in Counterparts ........................................................................ 6
        11.10   Descriptive Headings ................................................................................ 6
        11.11   Person and Gender .................................................................................... 6
        11.12   Construction ............................................................................................... 6

# ESCROW AGREEMENT

THIS ESCROW AGREEMENT (the "Escrow Agreement"), dated as of ___June 30___, 2011, by and among (i) The Office of Tourism, Trade, and Economic Development ("OTTED"), (ii) Enterprise Florida, Inc., a Florida corporation ("Enterprise Florida" or "Escrow Agent")., and (iii) Klausner Holding USA Inc. (the "Closing Fund Awardee").

Capitalized terms used herein without definition shall have the meanings set forth in the Funding Agreement (as hereinafter defined).

## WITNESSETH:

WHEREAS, the Florida Legislature established the Quick Action Closing Fund pursuant to Section 288.1088, Florida Statutes (the "Closing Fund"), to ensure that sufficient resources are available to allow the State to respond expeditiously to extraordinary economic opportunities and to compete effectively for high-value research and development and innovation business projects;

WHEREAS, the Closing Fund Awardee and OTTED have entered into a Quick Action Closing Fund Agreement (the "Funding Agreement"), which awards to the Closing Fund Awardee  DOLLARS ($) (the "Award Funds") pursuant to the Quick Action Closing Fund Program;

WHEREAS, the Florida Legislature created Enterprise Florida pursuant to Section 288.901 *et. al.*, Florida Statutes, to serve as the principal economic development organization for the State and delegated to it the responsibility to provide leadership for business development in Florida by aggressively assisting in the creation of new businesses;

WHEREAS, the Funding Agreement sets forth certain conditions that the Closing Fund Awardee must meet before the payment of certain portions of the Award Funds;

WHEREAS, OTTED, on behalf of the Executive Office of the Governor, recommended the approval of the project and the release of the funds pursuant to the legislative review requirements set forth in Section 216.177, Florida Statutes.

WHEREAS, OTTED received the Award Funds from the Legislature and has agreed to transfer the said Funds to Enterprise Florida, which shall be held by Enterprise Florida in escrow for the sole purpose of disbursing Funds to the Closing Fund Awardee in accordance with the Funding Agreement; and

NOW, THEREFORE, in consideration of the consummation of the transactions contemplated by the Funding Agreement and the mutual covenants and agreements contained herein, the parties hereto agree as follows:

Section 1.    Appointment of Escrow Agent   OTTED and Closing Fund Awardee hereby appoint Enterprise Florida as the Escrow Agent under this Escrow Agreement. The Escrow Agent is hereby authorized to take any and all actions indicated in this Escrow Agreement to be taken by the Escrow Agent and all such further actions consistent herewith as it shall deem necessary or desirable to implement the provisions hereof. The Escrow Agent represents and warrants to OTTED and the Closing Fund Awardee that it has all legal power and authority to act in the manner contemplated by this Escrow Agreement. OTTED and the Closing Fund Awardee agree that the authorization and designation of the Escrow Agent under this Section 1 shall be irrevocable and shall be binding upon their successors and assigns.

Section 2.    Establishment of Escrow   Upon completion of the conditions set forth in Section 5 (b) of the Funding Agreement, OTTED shall transfer the Award Funds to the Escrow Agent, which shall immediately deposit and invest any and all funds advanced by OTTED for payments in an independent and separate interest bearing account(s).   The Escrow Agent shall hold the Award Funds solely for the purpose of disbursing the Award Funds to the Closing Fund Awardee in accordance with the terms and conditions set forth in the Funding Agreement and herein.   Escrow Agent shall provide OTTED the account number(s) of all such accounts, and shall also provide all other information regarding the account(s) as OTTED requests.

Section 3.    Term of Escrow Agreement   This Escrow Agreement shall continue in effect from the date hereof until the Award Funds have been fully disbursed pursuant to Section 5 hereof.

Section 4.    Direction of Escrow Agent   All directions made to the Escrow Agent to take or refrain from taking any action pursuant to this Escrow Agreement shall be made in writing and shall be executed by OTTED and the Closing Fund Awardee and the Escrow Agent shall be entitled to conclusively rely on such instruction without further investigation of any kind.

Section 5.    Holding of the Award Funds   With respect to the request for Award Funds, OTTED shall submit to the Escrow Agent the following: (i) a completed written disbursement request, received from the Closing Fund Awardee, executed by the President of the Closing Fund Awardee or other authorized officer, substantially in the form attached hereto as Exhibit A and (ii) a written acknowledgment executed by the Director of OTTED, substantially in the form attached hereto as Exhibit B, that certifies that the Closing Fund Awardee has satisfied the conditions set forth in the Funding Agreement for disbursement of the requested Award Funds.

(b)     Escrow Agent shall return to OTTED all interest income derived from the interest bearing account, on a quarterly basis, based on fiscal year quarters. Enterprise Florida shall remit such amounts in the form of checks payable to the State of Florida and mailed to OTTED at the address provided in Article 1 above, Attention: Timothy E. Proctor.  The payments shall be accompanied by (i) the amount of interest earned by the deposits, the name of the depository(ies), and interest rate(s); (ii) copies of all bank or investment statements and computational worksheets; and (iii) any other applicable information requested by OTTED.

(c)     Any and all cash remaining after payment of all amounts due to the Closing Fund Awardee pursuant to the Funding Agreement shall be distributed to OTTED.

Section 6.     Receipt  Delivery by the Escrow Agent of a signed and dated signature page hereto shall serve as acknowledgment by the Escrow Agent of receipt of the Award Funds (and any related instruments of transfer) on the date hereof and acceptance of the Award Funds in escrow.

Section 7.     Rights in the Escrow Account  While any amount of the Award Funds is held by the Escrow Agent, and pending the release thereof in accordance with Section 5 hereof, OTTED shall retain all right, title and interest in and to the Award Funds.

Section 8.     Disbursement Into Court  If, at any time, there shall exist any dispute between OTTED and the Closing Fund Awardee with respect to the holding or disposition of any portion of the Award Funds or any other obligations of Escrow Agent hereunder, or if at any time Escrow Agent is unable to determine, to Escrow Agent's sole satisfaction, the proper disposition of any portion of the Award Funds or Escrow Agent's proper actions with respect to its obligations hereunder, or if OTTED has not within thirty (30) days of the furnishing by Escrow Agent of a notice of resignation pursuant to Section 9 hereof, appointed a successor Escrow Agent to act hereunder, then Escrow Agent may, in its sole discretion, take either or both of the following actions:

(a)     suspend the performance of any of its obligations under this Escrow Agreement until such dispute or uncertainty shall be resolved to the sole satisfaction of Escrow Agent or until a successor Escrow Agent shall have been appointed (as the case may be); and/or

(b)     petition (by means of an interpleader action or any other appropriate method) any court of competent jurisdiction in Leon County, Florida, for instructions with respect to such dispute or uncertainty.

Escrow Agent shall have no liability to OTTED or the Closing Fund Awardee or to any other person with respect to any such suspension of performance or disbursement into court, specifically including any liability or claimed liability that may arise, or be alleged to have arisen, out of or as a result of, any delay in the disbursement of the Award Funds or any delay in or with respect to any other action required or requested of Escrow Agent.

Section 9.    Resignation and Removal of Escrow Agent   Escrow Agent may resign from the performance of its duties hereunder at any time by giving sixty (60) days' prior written notice to OTTED and the Closing Fund Awardee or may be removed, with or without cause, by OTTED, at any time by the giving of sixty (60) days prior written notice to Escrow Agent. Such resignation or removal shall take effect upon the appointment of a successor Escrow Agent as provided herein below. Upon any such notice of resignation or removal, OTTED shall appoint a successor Escrow Agent hereunder. Upon the acceptance in writing of any appointment as Escrow Agent hereunder by a successor Escrow Agent, such successor Escrow Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Escrow Agent, and the retiring Escrow Agent shall be discharged from its duties and obligations under this Escrow Agreement, but shall not be discharged from any liability for actions taken as Escrow Agent hereunder prior to such succession. After any retiring Escrow Agent's resignation or removal, the provisions of this Escrow Agreement shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Escrow Agent under this Escrow Agreement.

Section 10.    Liability of Escrow Agent.

(a)    Escrow Agent shall have no liability or obligation with respect to the Award Funds, except for Escrow Agent's willful misconduct or gross negligence. Escrow Agent's sole responsibility shall be for the safekeeping and disbursement of the Award Funds in accordance with the terms of this Escrow Agreement. Escrow Agent shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. Escrow Agent may rely upon any instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall in good faith believe to be genuine, to have been signed or presented by the person or parties purporting to sign the same and to conform to the provisions of this Escrow Agreement. Escrow Agent shall not be obligated to take any legal action or commence any proceeding in connection with the Award Funds, this Escrow Agreement or the Funding Agreement, or to appear in, prosecute or defend any such legal action or proceeding. Escrow Agent may consult legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or of any other agreement or of its duties hereunder, and shall incur no liability whatsoever in acting in accordance with the opinion or instruction of such counsel.

(b)    The Escrow Agent is authorized, in its sole discretion, to comply with orders issued or process entered by any court with respect to the Award Funds. If any portion of the Award Funds is at any time attached, garnished or levied upon under any court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any court order, or in case any order, judgment or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, the Escrow Agent is authorized, in its sole discretion, to rely upon and comply with any such order, writ, judgment or decree, which it is advised by legal counsel selected by it, is binding upon it, without the need for appeal or other action; and if the Escrow Agent complies with any such order, writ, judgment or decree, it shall not be liable to any of the parties hereto or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

Section 11.     Miscellaneous.

11.1.     Expenses.  All costs and expenses incurred in connection with this Escrow Agreement and the transactions contemplated hereby shall be paid by the party incurring such expenses.

11.2.     Dispute Resolution.  Any controversy or claim arising out of or relating to this Escrow Agreement, or any alleged breach hereof, shall be resolved in accordance with Florida Law.

11.3.     Notice.  All notices and other communications hereunder shall be in writing and shall be deemed to have been validly served, given or delivered five (5) days after deposit in the United States mails, by certified mail with return receipt requested and postage prepaid, when delivered personally, one (1) day after delivery to any overnight courier, or when transmitted by facsimile transmission facilities, and addressed to the party to be notified as follows:

If to OTTED to:

> EOG/OTTED
> 400 South Monroe Street
> The Capitol, Suite 2001
> Tallahassee, Florida 32399-0001
> Attn: Timothy E. Proctor
> Fax: (850) 487-3014

If to Closing Fund Awardee, to:

> Klausner Holding USA Inc.
> 1297 Professional Drive, Suite 202
> Myrtle Beach, SC 29577
> Attn:   Thomas Mende           .
> Fax: _____

If to Escrow Agent, to:

> Enterprise Florida, Inc.
> 800 North Magnolia Avenue, Suite 1100
> Orlando, Florida 32803
> Attn: Louis Laubscher
> Fax: (407) 316-4599

11.4.    Amendment or Waiver.  This Escrow Agreement may be changed, waived, discharged or terminated only by a writing signed by each of OTTED, Closing Fund Awardee, and Escrow Agent.  No delay or omission by any party in exercising any right with respect hereto shall operate as a waiver.  A waiver on any one occasion shall not be construed as a bar to, or waiver of, any right or remedy on any future occasion.

11.5.    Severability.   To the extent any provision of this Escrow Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Escrow Agreement.

11.6.    Governing Law.  This Escrow Agreement shall be construed and interpreted in accordance with the internal laws of the State of Florida without giving effect to the conflict of laws principles thereof.

11.7.    Entire Agreement: Assignment.  This Escrow Agreement (a) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, among the parties or any of them, with respect to the subject matter hereof; (b) is not intended to confer upon any other person any rights or remedies hereunder; and (c) shall not be assigned by operation of law or otherwise except in accordance with its terms.

11.8.    Binding Effect.  All of the terms of this Escrow Agreement, as amended from time to time, shall be binding upon, inure to the benefit of, and be enforceable by the respective heirs, successors and assigns of OTTED, Closing Fund Awardee, and Escrow Agent.

11.9.    Execution in Counterparts.  This Escrow Agreement and any Joint Written Direction may be executed in two or more counterparts, which when so executed shall constitute one and the same agreement or direction.

11.10.    Descriptive Headings.  The headings contained in this Escrow Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Escrow Agreement.

11.11.   Person and Gender.   The masculine gender shall include the feminine and neuter genders, the singular shall include the plural.

11.12.   Construction.   This Escrow Agreement shall be interpreted without regard to any presumption or rule requiring construction against the party causing this Escrow Agreement to be drafted.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals on the day first above written.

| OFFICE OF TOURISM, TRADE AND ECONOMIC DEVELOPMENT | KLAUSNER ~~TRADING~~ *Holding USA Inc.* ~~INTERNATIONAL GMBH~~ |
|---|---|
| By: _____ (signature) | By: _____ (signature) |
| Name: Michelle L Dennard | Name: Richard Bujok |
| Title: Sr Attorney | Title: Treasurer |
| ENTERPRISE FLORIDA, INC., a Florida corporation | |
| By: _____ (signature) | |
| Name: Louis E. Laubscher | |
| Title: SVP & COO | |

# STATE OF FLORIDA
# DEPARTMENT OF ECONOMIC OPPORTUNITY
## DIVISION OF STRATEGIC BUSINESS DEVELOPMENT
### *QUICK ACTION CLOSING FUND AGREEMENT*

## AMENDMENT NUMBER 1

This First Amendment to DSBD Agreement OT11-283 is made and entered into this _31_ day of _August_ , 2011, by and between the State of Florida, Department of Economic Opportunity's Division of Strategic Business Development, hereinafter referred to as "DSBD," and Klausner Holding USA Inc., hereinafter referred to as "Closing Fund Awardee," pursuant to Section 288.1088, Florida Statutes. DSBD and the Closing Fund Awardee are sometimes also hereinafter referred to as a "Party" and collectively as the "Parties."

This Amendment is entered into for the purpose of modifying the Agreement as requested by the Closing Fund Awardee and consistent with DSBD policy. The Parties wish to amend the Agreement to ensure that the terms of the Agreement comply with current law and DSBD office procedures. The number of jobs to be created and the funding amount the Closing Fund Awardee is eligible to receive shall remain the same as initially agreed upon.

The Enterprise Florida, Inc. Quick Action Closing Fund Request for Consideration and the Closing Fund Awardee documentation, including any attachments, submitted in lieu of an application, are attached hereto and incorporated as an integral part of this agreement, and will be referred to as "Exhibit 1."

In consideration of the mutual promises and agreements contained herein, the Parties agree to amend the Agreement as follows:

1. **Paragraph 5.0(b)(3) is hereby deleted and replaced by the following:**

(3) Submission of modeling protocol to the Florida Department of Environmental Protection for the proposed project in Suwannee County, FL, as a precursor to the air permit by August 30, 2011.

**DUPLICATE ORIGINALS**: This Agreement is executed in duplicate originals.

In Witness whereof, DSBD and the Closing Fund Awardee have caused this agreement to be executed and delivered by their duly authorized representatives.

**STATE OF FLORIDA DIVISION OF STRATEGIC BUSINESS DEVELOPMENT**

AUTHORIZED SIGNATURE                        Date

TITLE: Senior Attorney  ~~Division Director~~

WITNESSES:

**KLAUSNER HOLDING USA INC.**

AUTHORIZED SIGNATURE                        Date

TITLE: PRESIDENT

WITNESSES:

List of Exhibits:

| | |
|---|---|
| Exhibit 1 | Original Quick Action Closing Fund Agreement |
| Exhibit 2 | Special Audit Requirements |
| Exhibit 3: | Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable) |

2

# STATE OF FLORIDA
# DEPARTMENT OF ECONOMIC OPPORTUNITY
*QUICK ACTION CLOSING FUND AGREEMENT*

## AMENDMENT NUMBER TWO

This Second Amendment to DSBD Agreement OT11-283 is made and entered into this 9 day of January, 2012, by and between the State of Florida, Department of Economic Opportunity's Division of Strategic Business Development, hereinafter referred to as "DSBD," and Klausner Holding USA, Inc., hereinafter referred to as "Closing Fund Awardee," pursuant to Section 288.1088, Florida Statutes. DSBD and the Closing Fund Awardee are sometimes also hereinafter referred to as a "Party" and collectively as the "Parties."

This Amendment is entered into for the purpose of modifying the Agreement as requested by the Closing Fund Awardee and consistent with DSBD policy. The Parties wish to amend the Agreement to extend by one year the job-creation and capital investment schedules; adjust the annual job-creation commitments; and update the terms of the Agreement to comply with current law and DSBD policies. The number of jobs to be created and the funding amount the Closing Fund Awardee is eligible to receive shall remain the same as initially agreed upon.

The initial Agreement executed June 30, 2011, and all of its attachments and Exhibits are attached hereto and incorporated as an integral part of this agreement, and will be referred to as "Exhibit 1."

In consideration of the mutual promises and agreements contained herein, the Parties agree to amend the Agreement as follows:

1

1. Section 1.0 is hereby deleted and replaced by the following:

     **1.0 PARTIES**: The parties and their respective addresses for purposes of this Agreement are as follows:

> STATE OF FLORIDA
> DEPARTMENT OF ECONOMIC OPPORTUNITY
> DIVISION OF STRATEGIC BUSINESS DEVELOPMENT
> THE CAPITOL, SUITE 2001
> TALLAHASSEE, FLORIDA 32399-0001
>
> KLAUSNER HOLDING USA, INC.
> 1297 PROFESSIONAL DRIVE, SUITE 202
> MYRTLE BEACH, SC 29577

2. Section 2.0 is hereby deleted and replaced by the following:

     **2.0 ADMINISTRATORS**:

The State's Closing Fund Agreement administrator is:

    Karl Blischke, Chief Analyst

The Closing Fund Awardee Agreement administrator is:

    All approvals and notifications referenced in this Agreement must be obtained in writing from the parties' agreement administrators or their duly authorized designees.

3. Section 3.0 is hereby deleted and replaced by the following:

     **3.0 TERM**: The term of this Agreement shall commence upon the date of execution of this Agreement, and continue through June 30, 2020, for all terms except for the record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0), unless terminated prior to that time as provided for in this Agreement.  The record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0) of the Closing Fund Awardee shall continue through June 30, 2025, unless terminated prior to that time as provided for in this Agreement.

4. **Paragraphs 5.0(d) and 5.0(e) are hereby deleted and replaced by the following:**

**5.0 PROJECT DESCRIPTION AND AWARD CONDITIONS:**

(d) In order to remain qualified for the Closing Fund award payment authorized in this Agreement and to avoid sanctions, the Closing Fund Awardee must meet the conditions below:

(1) Creation and maintenance of at least 350 net new project jobs in Suwannee County, Florida, by December 31, 2015, in accordance with the schedule provided in the QTI Tax Refund Application. These jobs will be phased in, with the first phase consisting of the creation of at least 86 net-new full-time equivalent project jobs in Florida, fully implemented by December 31, 2013; the second phase, consisting of the creation of at least an additional 164 net-new project jobs for a cumulative total of at least 250 net-new full-time equivalent project jobs in Florida, fully implemented by December 31, 2014; and the third phase, consisting of the creation of at least an additional 100 net-new project jobs for a cumulative total of at least 350 full-time equivalent project jobs in Florida, fully implemented by December 31, 2015. These jobs must be maintained for at least an additional three years, until December 31, 2018.

(2) The Base Period for this project's jobs remains June 1, 2010 through May 31, 2011;

(3) The average annual wage of project jobs specified in Paragraph 5.0(d)(1) above will remain at least $30,000, excluding benefits; and

(4) The Closing Fund Awardee must invest a total of at least $150,000,000 in the new facility in Suwannee County by December 31, 2015, and maintain that investment for an additional three (3) years, until December 31, 2018. Documentation of this investment must

3

be presented to DSBD or its agent by January 31, 2016, and continue to be presented to DSBD each year thereafter until January 31, 2019.

(e) The Closing Fund Awardee has made a one-time election to extend the job creation and investment schedule by one year. Execution of this Amendment eliminates the Closing Fund Awardee's eligibility for another extension of the term of the performance requirements and sanctions.

5. **Paragraphs 7.0(c) and 7.0(d) are hereby deleted and replaced by the following, and Paragraph 7.0(g) is added:**

(c) Submit annual certification of its employment and annual average wage payment using a Qualified Target Industry Tax Refund (QTI) Claim application or alternate equivalent documentation acceptable to DSBD, every State of Florida fiscal year by January 31 of said year. The QTI claim application or alternate equivalent documentation must be submitted annually through January 31, 2019.

(d) Certify and submit documentation that at least 80 percent of the total investment specified in Paragraph 5.0(c)(4) has been made in the facility in Suwannee County, Florida, as of December 31, 2015, and continues to be located in Suwannee County, Florida, as of December 31, 2018.

(g) Expend the award on purposes consistent with Project commitments.

6. **Paragraph 19.0(b) is hereby deleted and replaced by the following:**

(b) The books, records, documents and other evidence shall be subject at all times to inspection, review, or audit by DSBD or its designee, or by state personnel of the Office of the Auditor General or Department of Financial Services. Copies of the reporting package required

by this agreement shall be submitted by or on behalf of the recipient to DSBD and the State of Florida Auditor General.

7. **Section 20.0 is hereby deleted and replaced by the following:**

20.0 <u>**PUBLIC RECORDS**</u>: All public records made or received by the Closing Fund Awardee in conjunction with the Quick Action Closing Fund Award are subject to the provisions of Chapter 119, Florida Statutes.  Materials that relate to methods of manufacture or production, potential trade secrets, potentially patentable material, actual trade secrets, business transactions, financial and proprietary information, and agreements or proposals to receive funding that are received, generated, ascertained, or discovered by DSBD, as exempted in Section 288.9520, Florida Statutes, or as exempted under Sections 288.075 and/or 288.9520, Florida Statutes shall remain confidential and exempt from public disclosure.  Such confidential and exempt information should be marked by the Closing Fund Awardee as confidential.

8. **This Amendment is not intended to increase the maximum amount that may be paid to the Closing Fund Awardee under the original Agreement.**

9. **The Parties reaffirm all portions of Exhibit 1 not in conflict with this Amendment. Performance in accordance with this Amendment will be considered performance of the Agreement.**

5

**DUPLICATE ORIGINALS**: This Agreement is executed in duplicate originals.

In Witness whereof, DSBD and the Closing Fund Awardee have caused this agreement to be executed and delivered by their duly authorized representatives.

**STATE OF FLORIDA**
**DIVISION OF STRATEGIC**
**BUSINESS DEVELOPMENT**

_____   1.9.13
AUTHORIZED SIGNATURE          Date

TITLE:          Division Director
_____

WITNESSES:
_____
_____

**KLAUSNER HOLDING USA,**
**INC.**

_____
AUTHORIZED SIGNATURE          Date

TITLE:
_____

WITNESSES:
_____
_____

Approved as to form and legal
sufficiency, subject only to full and
proper execution by the parties

Office of the General Counsel
Department of Economic Opportunity

By: _____

Approved Date:  01|08|2013

List of Exhibits:

| | |
|---|---|
| Exhibit 1 | Original Quick Action Closing Fund Agreement |
| Exhibit 2 | Special Audit Requirements |
| Exhibit 3: | Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable) |

**DUPLICATE ORIGINALS**: This Agreement is executed in duplicate originals.

In Witness whereof, DSBD and the Closing Fund Awardee have caused this agreement to be executed and delivered by their duly authorized representatives.

**STATE OF FLORIDA
DIVISION OF STRATEGIC
BUSINESS DEVELOPMENT**

**KLAUSNER HOLDING USA, INC.**

_____
**AUTHORIZED SIGNATURE          Date**

_____
**AUTHORIZED SIGNATURE          Date**

**TITLE:**          Division Director

**TITLE:**   _Director_

**WITNESSES:**

_____

_____

**WITNESSES:** _____

_____

Approved as to form and legal
sufficiency, subject only to full and
proper execution by the parties

Office of the General Counsel
Department of Economic Opportunity

By:

Approved Date:

List of Exhibits:

| | |
|---|---|
| Exhibit 1 | Original Quick Action Closing Fund Agreement |
| Exhibit 2 | Special Audit Requirements |
| Exhibit 3: | Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable) |

6

# STATE OF FLORIDA
# DEPARTMENT OF ECONOMIC OPPORTUNITY
## *QUICK ACTION CLOSING FUND AGREEMENT*

## AMENDMENT NUMBER 3

This Third Amendment to Agreement OT11-283 ("Agreement") is made and entered into this _17_ day of _October_, 2013, by and between the State of Florida's Department of Economic Opportunity, Division of Strategic Business Development ("DSBD") and Klausner Holding USA, Inc. ("Closing Fund Awardee"). DSBD and the Closing Fund Awardee are sometimes also hereinafter referred to individually as a "Party" and collectively as the "Parties."

**WHEREAS**, pursuant to 288.0656, Florida Statutes, it is the Legislature's intent to "encourage and facilitate the location and expansion of major economic development projects of significant scale" in rural communities;

**WHEREAS**, this project is locating in Suwannee County, Florida, a designated "rural area of critical concern", within a "catalyst site" as defined in 288.0656(2)(b), Florida Statutes;

**WHEREAS**, this project is a designated "catalyst project" as defined in 288.0656(2)(a), Florida Statutes;

**WHEREAS**, Suwannee County and the Closing Fund Awardee acknowledge this project has been delayed due to circumstances beyond their control (necessary site preparation due to possibility of sinkhole activity); and,

**WHEREAS**, DSBD, in an effort to facilitate the location and success of this project in a rural area of critical concern, is amending this Agreement to extend the time by which the

1

Closing Fund Awardee may request its Closing Fund award from the Enterprise Florida, Inc. escrow account and meet its subsequent Performance Conditions.

  **NOW THEREFORE**, in consideration of the mutual covenants and obligations set forth herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to amend the Agreement as follows:

 **1. Section 1.0 is hereby deleted and replaced by the following:**

  **1.0 PARTIES**: The parties and their respective addresses for purposes of this Agreement are as follows:

> **STATE OF FLORIDA**
> **DEPARTMENT OF ECONOMIC OPPORTUNITY**
> **DIVISION OF STRATEGIC BUSINESS DEVELOPMENT**
> **107 EAST MADISON STREET**
> **THE CALDWELL BUILDING, MSC-80**
> **TALLAHASSEE, FLORIDA 32399**
> **FAX NUMBER: (850) 410-4770**
>
> **KLAUSNER HOLDING USA, INC.**
> **1297 PROFESSIONAL DRIVE, SUITE 202**
> **MYRTLE BEACH, SOUTH CAROLINA  29577**
> **FAX NUMBER: (843) 626-9629**

 **2. Section 2.0 is hereby deleted and replaced by the following:**

  **2.0 ADMINISTRATORS**:

The State's Closing Fund Agreement administrator is:

  Karl Blischke, Chief for Bureau of Compliance & Accountability

The Closing Fund Awardee Agreement administrator is:

All approvals and notifications referenced in this Agreement must be obtained in writing from the parties' agreement administrators or their duly authorized designees.



2

3. Section 3.0 is hereby deleted and replaced by the following:

    3.0 **TERM**: The term of this Agreement shall commence upon the date of execution of this Agreement, and continue through June 30, 2021, for all terms except for the record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0), unless terminated prior to that time as provided for in this Agreement. The record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0) of the Closing Fund Awardee shall continue through June 30, 2026, unless terminated prior to that time as provided for in this Agreement.

4. Paragraphs 5.0(c) and 5.0(d) are hereby deleted and replaced by the following:

    5.0 **PROJECT DESCRIPTION AND AWARD CONDITIONS**:

        (c) The "Award Conditions" for the release and payment of $3,000,000 from the EFI escrow account to the Closing Fund Awardee shall be met when the following have occurred:

        (1) Public announcement of the project's location in Suwannee County, Florida;

        (2) Acquisition (ownership) by the Closing Fund Awardee of the land (approximately 100 to 175 acres) in Suwannee County, Florida; and,

        (3) Capital investment of at least $12 million toward site preparation and other costs associated with construction of the new facility in Suwannee County, Florida.

        Supporting documentation shall be submitted to DSBD for verification of the aforementioned conditions. Verification must be complete to DSBD's satisfaction prior to disbursement of the payment. To receive payment from the EFI escrow account, Award Conditions shall be met and payment shall be requested no later than June 30, 2014.



3

(d) In order to remain qualified for the Closing Fund award payment authorized in this Agreement and to avoid sanctions, the Closing Fund Awardee must meet the conditions below:

(1) Creation and maintenance of at least 350 net new project jobs by December 31, 2016, in accordance with the schedule provided in the QTI Tax Refund Application, if applicable. (These jobs will be phased in, with the first phase consisting of the creation of at least 86 net new full-time equivalent project jobs in Florida, fully implemented by December 31, 2014; the second phase, consisting of the creation of at least an additional 164 project jobs for a cumulative total of at least 250 full-time equivalent project jobs in Florida, fully implemented by December 31, 2015; and, the third and final phase, consisting of the creation of at least an additional 100 project jobs for a cumulative total of at least 350 full-time equivalent project jobs in Florida, fully implemented by December 31, 2016. These jobs must be maintained (averaged over each reporting year) for at least an additional three (3) years, until December 31, 2019.

(2) The Base Period for this project's jobs is June 1, 2010, through May 31, 2011, and the Base Job number is set to zero (0);

(3) The average annual wage of project jobs specified in Paragraph 5.0(d)(1) above is at least $30,000, excluding benefits; **and**

(4) The Closing Fund Awardee must invest a total of at least $150,000,000 in the new facility by December 31, 2016, and maintain that investment for an additional three (3) years, until December 31, 2019. Documentation of this investment must be presented to DSBD by January 31, 2017, and continue to be presented to DSBD each year thereafter until January 31, 2020.

4



(e) As reflected in Amendment Two, the Closing Fund Awardee used the one-time extension that was available to the Closing Fund Awardee to extend the job creation and investment schedule by one year. However, as additional delay has resulted from site conditions discovered at the catalyst site after entering the Agreement, in furtherance of the stated objective of section 288.0565, F.S., to encourage and facilitate the location and expansion of major economic development projects of significant scale in rural areas of critical economic concern, the Closing Fund Awardee's job creation and investment schedule requirements have been extended an additional year.

5. **Paragraphs 7.0(c) and 7.0(d) are hereby deleted and replaced by the following:**

(c) Submit annual certification of its employment and annual average wage payment using a Qualified Target Industry Tax Refund (QTI) Claim application or alternate equivalent documentation acceptable to DSBD, every State of Florida fiscal year by January 31 of said year. The QTI claim application or alternate equivalent documentation must be submitted annually through January 31, 2020.

(d) Certify and submit documentation that at least 80 percent of the total investment specified in Paragraph 5.0(d)(4) has been made in the facility in Suwannee County, Florida as of December 31, 2016, and continues to be located in Suwannee County, Florida as of December 31, 2019.

6. **Section 8.0 is hereby deleted and replaced by the following:**

8.0 **INDEMNIFICATION:** The Closing Fund Awardee shall be fully liable for the actions of its agents, employees, partners, or subcontractors and shall fully indemnify, defend, and hold harmless the State and DEO, and their officers, agents, and employees, from suits, actions, damages, and costs of every name and description, including attorneys' fees, arising



from or relating to: (i) personal injury and damage to real or personal tangible property alleged to be caused in whole or in part by the Closing Fund Awardee, its agents, employees, partners, or subcontractors, provided, however, that the Closing Fund Awardee shall not indemnify for that portion of any loss or damages proximately caused by the negligent act or omission of the State or DEO; (ii) the breach of any representation, warranty, covenant or agreement made by the Closing Fund Awardee in this Agreement or the application for the Closing Fund award, or any allegation by a third party that, if true, would constitute such a breach; and, (iii) any arrangement made by or on behalf of the Closing Fund Awardee or any of its affiliates with any broker, finder or agent in connection with this Agreement or the transactions contemplated hereby.

7. **Paragraph 10.0(h) is hereby deleted and replaced by the following:**

(h) The interest rate shall be determined by the annualized interest rate received by the State on funds in the State's Special Purpose Investment Account in January of the year in which the performance standard was not satisfied by the Closing Fund Awardee. This rate is published online at http://fltreasury.org/fs_01.html

8. **Section 14.0 is hereby deleted and replaced by the following:**

14.0 <u>**UNAUTHORIZED ALIENS**</u>:  DSBD will consider the knowing employment by the Closing Fund Awardee of unauthorized aliens, as described in 8 U. S. C. Section 1324a of the Immigration and Naturalization Act, cause for termination of this Agreement.

9. **Paragraph 17.0 is hereby deleted and replaced by the following:**

17.0 <u>**EXPENSES**</u>:  All costs and expenses incurred by the Closing Fund Awardee in connection with this Agreement and the transactions contemplated hereby shall be the responsibility of the Closing Fund Awardee.



**10.  Section 19.0, Accounting, Reports, and Audits, is hereby deleted and replaced by the following:**

### 19.0 RECORD-KEEPING AND AUDIT-RELATED OBLIGATIONS:

(a) Records pertaining to this Agreement, which include, without limitation, supporting documentation for the application process, the General Project Overview and its attachment, documentation pertaining to the Award, and records sufficient to demonstrate compliance with the terms of this Agreement, including personnel and financial records and reports related to the Project Job, Average Project Wage and Capital Investment Requirements, shall be retained by the Closing Fund Awardee for the longer of (i) five (5) state fiscal years after the term of this Agreement, which includes satisfaction of all reporting requirements and receipt of all payments due under this Agreement; provided, that all applicable audits have been released, or (ii) five (5) years after the date that the last audit report is released.  If any litigation, claim, negotiation, or other action involving records has been started before the expiration of the controlling period as identified above, the records shall be retained until completion of the action and resolution of all issues which arise from it, or until the end of the controlling period as identified above, whichever is longer. The Closing Fund Awardee shall maintain these records according to generally accepted accounting principles, procedures, and practices.

(b) The records identified in Section 19.0(a) shall be subject at all times to inspection, review, or audit by DSBD or its designee, or by state personnel of the Office of the Auditor General or Department of Financial Services, or by other state personnel.  Copies of the reporting package required by this Agreement shall be submitted by or on behalf of the Closing Fund Awardee to DSBD and the State of Florida Auditor General.  The Closing Fund Awardee shall, upon the request of DSBD, afford to DSBD and each of its respective employees, advisors, counsel and other authorized representatives, during normal business hours, reasonable access, upon reasonable advance notice, to all of the books, records and properties of the Closing Fund Awardee are reasonably related to this Agreement and to all managers and employees of the Closing Fund Awardee reasonably necessary to conduct such on-site inspection, review, or audit.



11. Section 20.0 is hereby deleted and replaced by the following:

20.0 **PUBLIC RECORDS**: The Closing Fund Awardee shall allow public access to all records made or received by the Closing Fund Awardee in conjunction with the Quick Action Closing Fund or this Agreement, unless such records are exempt from section 24(a) of Article 1 of the State Constitution and Subsection 119.07(1), Florida Statutes. It is expressly understood that DSBD may unilaterally cancel this Agreement for the Closing Fund Awardee's refusal to comply with this provision. If the Closing Fund Awardee submits records to DSBD that are confidential and exempt from public disclosure pursuant to Section 288.075, Florida Statutes, as trade secrets or proprietary confidential business information, such records should be marked by the Closing Fund Awardee as confidential prior to submittal to DSBD.

12. Section 22.0 is hereby deleted and replaced by the following:

22.0 **NON-ASSIGNMENT**: The Closing Fund Awardee shall not assign, sublicense, nor otherwise transfer its rights, duties, or obligations under this Agreement without the prior written consent of DSBD, which consent will not be unreasonably withheld. DSBD will at all times be entitled to assign or transfer its rights, duties, or obligations under this Agreement to another governmental agency in the State of Florida, upon giving prior written notice to the Closing Fund Awardee. In the event that DSBD approves transfer of the Closing Fund Awardee's obligations, the Closing Fund Awardee remains responsible for all work performed and all expenses incurred in connection with this Agreement.

13. All references in the Agreement and its Exhibits to the "Executive Office of the Governor" are hereby replaced with the "Department of Economic Opportunity" and all references in the Agreement and its Exhibits to the "Office of Tourism, Trade, and



Economic Development" or "OTTED" are hereby replaced with the "Division of Strategic Business Development" or "DSBD", respectively.

14.   This Amendment does not increase the maximum amount that may be paid to the Closing Fund Awardee under the original Agreement.

15.   Exhibit 2 of Amendment Two (2), Special Audit Requirements, is hereby deleted and replaced with Attachment 1, titled, "Exhibit B, Special Audit Requirements," and incorporated by reference herein.

16.   **Exhibit 3 of Amendment Two (2), Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Wage, is hereby deleted and replaced with the Attachment 2, titled "Exhibit C, Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Wage," and incorporated by reference herein.**

17.   **The Parties reaffirm all portions of Agreement OT11-283 not in conflict with this Amendment.   Performance in accordance with this Amendment will be considered performance of the Agreement.**

18.   **Section 12.0, Legal Requirements, is hereby incorporated by reference as if fully restated herein.**

*[The remainder of this page has been intentionally left blank.]*



**COUNTERPARTS**: This Amendment may be executed in one or more counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts taken together will constitute one and the same instrument.

**IN WITNESS WHEREOF,** by their signatures below, the signatories affirm the approval of all paragraphs contained herein, attest to their authority to bind their respective Parties to this Amendment, and cause this Amendment to be executed.

**STATE OF FLORIDA
DEPARTMENT OF ECONOMIC
OPPORTUNITY, DIVISION OF
STRATEGIC BUSINESS DEVELOPMENT**

_____   10,17,13

**AUTHORIZED SIGNATURE**          **Date**

**TITLE:**          **Division Director**

**KLAUSNER HOLDINGS USA, INC.**

_____

**AUTHORIZED SIGNATURE**          **Date**

**TITLE:**

List of Attachments:
   **Attachment 1: Exhibit B,   Special Audit Requirements**
   **Attachment 2: Exhibit C,   Criteria for Measurement of Achievement of Terms for
         New Full-time Equivalent Jobs and Average Annual Wage (where
         applicable)**

Approved as to form and legal
sufficiency, subject only to full and
proper execution by the Parties

Office of the General Counsel
Department of Economic Opportunity

By:_____

Approved Date: 10-15-13

10



**STATE OF FLORIDA**
**DEPARTMENT OF ECONOMIC OPPORTUNITY**
*QUICK ACTION CLOSING FUND*
*AGREEMENT*

**AMENDMENT NUMBER FOUR**

This Amendment (the "Amendment") amends that certain Quick Action Closing Fund (QACF) Agreement (OT11-283) dated as of October 17, 2013, as amended (the "Agreement"), by and between the Division of Strategic Business Development of the Florida Department of Economic Opportunity ("DSBD") and Klausner Holding USA, Inc, and any Subsidiary QACF Business and Affiliate QACF Business (as such terms are hereinafter defined) (collectively with the Company, the "QACF Business" and collectively with DSBD, the "Parties"). Capitalized terms used, but not otherwise defined, in this Amendment shall have the meanings ascribed to such terms in the Agreement.

**RECITALS**

WHEREAS, this Amendment is entered into for the purposed of modifying the Agreement as requested by the QACF Business and consistent with DSBD policy; and

WHEREAS, the number of jobs to be created, annual average wages to be paid, and capital investment to be made shall remain the same as initially agreed upon.

NOW THERFORE, in consideration of the mutual covenants and obligations set forth herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to amend the Agreement as follows:

1. **Paragraph 5.0(d)(4) is hereby deleted and replaced by the following:**

(4)     The Closing Fund Awardee shall provide evidence satisfactory to DSBD in its reasonable discretion that a capital investment (excluding the acquisition or leasing of real property) of at least $150,000,000 in Suwannee County, Florida, as determined in accordance with this Agreement, has been made by or on behalf of the Closing Fund Awardee in connection with the Project by no later than December 31, 2016 (the "Capital Investment Schedule") and maintain that investment for an additional three (3) years until December 31, 2019.

2. **The Parties reaffirm all portions of Agreement OT11-283 as previously amended not in conflict with this Amendment.**

*[The remainder of this page has been intentionally left blank]*

**COUNTERPARTS**. This Amendment may be executed in one or more counterparts, any one of which need not contain the signature of more than one Party, but all such counterparts taken together will constitute one and the same instrument.

**IN WITNESS WHEREOF**, the Parties have duly executed and delivered this Amendment as of the date last executed, below.

QACF BUSINESS

KLAUSNER HOLDING USA, INC.

By: _____

    Name:   Stephan

    Title:    CEO

    Date:   Sep. 11 / 2019

**DSBD**

**FLORIDA DEPARTMENT OF ECONOMIC OPPORTUNITY, DIVISION OF STRATEGIC BUSINESS DEVELOPMENT**

By: _____

    Name:  Brian McManus

    Title:   Chief of Staff

    Date:  9-19-19

Approved as to form and legal sufficiency, subject only to full and proper execution by the Parties.

**Office of the General Counsel**
**Department of Economic Opportunity**

By: _____

Approved Date: 09/13/2019

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT,
IN AND FOR LEON COUNTY, FLORIDA**

STATE OF FLORIDA,
DEPARTMENT OF ECONOMIC OPPORTUNITY,

        Plaintiff,

v.                                  Case No.:  2021 CA 001720

KLAUSNER HOLDING USA, INC.,

        Defendant.

_____/

## SUMMONS

**TO:   KLAUSNER HOLDING USA, INC.**
       **c/o Leopold Stephan**
       **17152 46th Trace**
       **Live Oak, FL  32060**

### IMPORTANT

A lawsuit has been filed against you in this court.  You have 20 calendar days after receiving this summons to file your written response to the attached complaint.  This response must be filed with the clerk of the court at the address below.

If you do not file your response on time, you may lose your case.  (The court could enter a judgment in favor of the plaintiff and you could lose wages, money and property without further warning).

You may want to contact an attorney right away, as court proceedings can get involved and advice of counsel could be very important to you.  If you do not know an attorney, you may call an attorney referral service or a legal aid office listed in the telephone directory.  If you do not hire an attorney and chose to represent yourself in court, make sure that your response contains the case number and the names of the parties (as shown at the top of this page).

**The original of your response must be filed with:**
        **Gwen Marshall - Leon County Clerk of Court**
        **ATTN: Circuit Civil Division**
        **Leon County Courthouse**
        **301 South Monroe Street, Room 232**
        **Post Office Box 726**
        **Tallahassee, Florida   32301**

**A copy of your response must also be mailed or delivered to the plaintiff's attorney:**
**Erik M. Figlio**
**Ausley & McMullen, P.A.**
**Post Office Box 391**
**Tallahassee, Florida 32302**
**(850) 224-9115**

Remember to keep a copy of your response for your own referral.

### IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, pueded llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

### IMPORTANTE

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre response ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre response ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalegment, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre response ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

**In accordance with the Americans With Disabilities Act, persons with disabilities needing a special accommodation to participate in this proceeding should contact Court Administration, at the Leon County Courthouse, Clerk of the Circuit Court, Tallahassee, Florida 32301, telephone number (850) 577-4000, not later than seven (7) days prior to the proceeding. If hearing impaired (TDD) 1-800-955-8771, or Voice (V) 1-800-955-8770, via Florida Relay Service.**

**THE STATE OF FLORIDA**

**TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and a copy of the Complaint in this lawsuit on the above-named Defendant.**

**WITNESS MY HAND AND SEAL OF SAID COURT:**

**Dated on** _____

**GWEN MARSHALL**
**CLERK OF THE CIRCUIT COURT**

By: _____  10/07/2021

**Deputy Clerk**

**SEAL**

3

IN THE SECOND JUDICIAL CIRCUIT IN AND FOR LEON COUNTY, FLORIDA

**FLORIDA DEPARTMENT OF ECONOMIC OPPORTUNITY**

     Plaintiff

vs                                     CASE NO.: 2021 CA 001720

**KLAUSNER HOLDING USA, INC.**

     Defendant

_____/

### UNIFORM ORDER FOR ACTIVE, DIFFERENTIAL CIVIL CASE MANAGEMENT

In compliance with Florida Supreme Court directives on active, differential civil case management established in Supreme Court Administrative Order AOSC20-23, Amendment 12, and Second Judicial Circuit Administrative Order 21 - 04, all parties in the above-styled cause are bound by this Case Management Order.

**Plaintiff shall serve this order on all parties with service of the original complaint. Strict enforcement is required unless good cause is shown for an exception or as otherwise required by law.**

**I. PROJECTED TRIAL DATE**

All COUNTY COURT Civil cases are designated STREAMLINED CASES with a projected trial date of 360 days from the date of filing of the complaint.

All CIRCUIT COURT Civil cases for which the complaint does not demand trial by jury are designated STREAMLINED CASES with a projected trial date of 360 days from the date of filing of the complaint.

All CIRCUIT COURT Civil cases for which the complaint demands trial by jury are GENERAL CASES with a projected trial date of 540 days from the date of filing of the complaint.

A change in the above designations may be made by the presiding judge on the judge's own initiative or upon motion of any party. Should any party assert that a civil case should be treated other than designated above, such party shall file a written motion requesting such change and the motion shall be expeditiously resolved by the

presiding Judge.

## II. Notice that Cause is at Issue and Firm Trial Date

The parties must file a Joint Notice that the Cause is at Issue no later than 15 days after the pleadings are closed. In the event of a dispute, either party may file a motion and request a hearing to determine if the cause is at issue.

Upon joint notice or judicial determination that the cause is at issue, the Court will schedule a Firm Trial Date consistent with the Projected Trial Date above unless either party requests a different date in their Notice that the Cause is at Issue. Should either party request a Firm Trial Date different than the Projected Trial Date, the Plaintiff shall expeditiously set a case management conference to determine the Firm Trial Date.

## III. Mandatory Deadlines for Streamlined Cases

If this case is designated as a STREAMLINED CASE, the following deadlines shall apply and, by directive of the Florida Supreme Court, must be strictly enforced unless good cause is shown for an exception or as otherwise required by law:

> 120 days after filing: Service of Complaints
> 150 days after filing: Service under any Extension of Time
> 180 days after filing: Adding New Parties
> 210 days after filing: Resolution of Objections to Pleadings and Motions to Dismiss
> 270 days after filing: Completion of Fact and Expert Discovery
> 270 days after filing: Resolution of Pretrial Motions, including Motions for Summary Judgment

## IV. Mandatory Deadlines for General Cases

If this case is designated as a GENERAL CASE, the following deadlines shall apply and, by directive of the Florida Supreme Court, must be strictly enforced unless good cause is shown for an exception or as otherwise required by law:

> 120 days after filing: Service of Complaints
> 180 days after filing: Service under any Extension of Time
> 210 days after filing: Adding New Parties
> 270 days after filing: Resolution of Objections to Pleadings and Motions to Dismiss
> 400 days after filing: Completion of Fact and Expert Discovery
> 450 days after filing: Resolution of Pretrial Motions, including Motions for Summary Judgment

## V. Mediation

All parties must mediate unless excused by court order for good cause shown or as otherwise required by law and in compliance with Rules of Civil Procedure 1.700 - 1.730.

## VI. Noncompliance

**By Order of the Florida Supreme Court, strict, good faith compliance with this Uniform Order for Active, Differential Civil Case Management is required unless good cause is shown for an exception or as otherwise required by law. These procedures and time standards do not supplant any existing rule, statute, or law.**

**Failure to appear at the pretrial conference or failure to comply with the terms of this order may result in such sanctions as are just and lawful including: an  immediate ex parte hearing and entry of final judgment of default or dismissal, limitation of witnesses or other evidence, striking of claims or defenses, or imposition of attorney fees or costs.**

## VII. Hearings by Audio-Video Technology

During the COVID-19 Public Health Emergency, all hearings other than jury selection and trial shall be conducted consistent with Florida Supreme Court andSecond Circuit Administrative Order by audio-video technology. Each judge isresponsible to establish the process for such audio-video technology hearings bynotice of hearing including technology access.After the conclusion of the COVID-19 Public Health Emergency all hearings otherthan jury selection and trial may be conducted by audio-video technology. Eachjudge is responsible to establish the process for such audio-video technologyhearings by notice of hearing including technology access.

Wednesday, October 6, 2021
ANGELA C DEMPSEY CIRCUIT JUDGE

ANGELA C DEMPSEY
Circuit Judge

## SUPPLEMENT TO CIVIL CASE MANAGEMENT ORDER

If, at the time the Uniform Order For Active Differential Civil Case Management ("Order") is filed, service on the Defendant(s) has already been made or process provided to a process server, the Plaintiff may comply with the second (in bold) paragraph of the Order by promptly providing a copy of the Order to the Defendant(s) by U.S. Mail or by Electronic Mail. The Plaintiff shall then file a certificate of service documenting that this Order has been provided to the Defendant(s) in this manner.

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT,
IN AND FOR LEON COUNTY, FLORIDA**

STATE OF FLORIDA,
DEPARTMENT OF ECONOMIC OPPORTUNITY,

      Plaintiff,

v.                                  Case No.: 2021-CA-001720

KLAUSNER HOLDING USA, INC.,

      Defendant.

_____/

## SUMMONS

**TO:**    **KLAUSNER HOLDING USA, INC.**
        **c/o Secretary of State**
        **P.O. Box 6327**
        **Tallahassee, FL  32314**

### IMPORTANT

A lawsuit has been filed against you in this court.  You have 20 calendar days after receiving this summons to file your written response to the attached complaint.  This response must be filed with the clerk of the court at the address below.

If you do not file your response on time, you may lose your case.  (The court could enter a judgment in favor of the plaintiff and you could lose wages, money and property without further warning).

You may want to contact an attorney right away, as court proceedings can get involved and advice of counsel could be very important to you.  If you do not know an attorney, you may call an attorney referral service or a legal aid office listed in the telephone directory.  If you do not hire an attorney and chose to represent yourself in court, make sure that your response contains the case number and the names of the parties (as shown at the top of this page).

      **The original of your response must be filed with:**
          **Gwen Marshall - Leon County Clerk of Court**
          **ATTN: Circuit Civil Division**
          **Leon County Courthouse**
          **301 South Monroe Street, Room 232**
          **Post Office Box 726**
          **Tallahassee, Florida  32301**

**A copy of your response must also be mailed or delivered to the plaintiff's attorney:**
**Erik M. Figlio**
**Ausley & McMullen, P.A.**
**Post Office Box 391**
**Tallahassee, Florida  32302**
**(850) 224-9115**

Remember to keep a copy of your response for your own referral.

### IMPORTANTE

Usted ha sido demandado legalmente.  Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, pueded llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

### IMPORTANTE

Des poursuites judiciares ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce tribunal.  Un simple coup de telephone est insuffisant pour vous proteger.  Vous etes obliges de deposer votre response ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause.  Si vous ne deposez pas votre response ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalegment, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre response ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

**In accordance with the Americans With Disabilities Act, persons with disabilities needing a special accommodation to participate in this proceeding should contact Court Administration, at the Leon County Courthouse, Clerk of the Circuit Court, Tallahassee, Florida  32301, telephone number (850) 577-4000, not later than seven (7) days prior to the proceeding.  If hearing impaired (TDD) 1-800-955-8771, or Voice (V) 1-800-955-8770, via Florida Relay Service.**

**THE STATE OF FLORIDA**

**TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and a copy of the Complaint in this lawsuit on the above-named Defendant.**

**WITNESS MY HAND AND SEAL OF SAID COURT:**

**Dated on** ___11/8/2021___

**GWEN MARSHALL**
**CLERK OF THE CIRCUIT COURT**

**By:** ___Yolanda Smith___
           **Deputy Clerk**



**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT,
IN AND FOR LEON COUNTY, FLORIDA**

STATE OF FLORIDA,
DEPARTMENT OF ECONOMIC OPPORTUNITY,

     Plaintiff,

v.                                   Case No.: 2021-CA-001720

KLAUSNER HOLDING USA, INC.,

     Defendant**.**

_____/

## AMENDED COMPLAINT

Plaintiff, STATE OF FLORIDA DEPARTMENT OF ECONOMIC OPPORTUNITY ("DEO"), files this amended complaint against Defendant, KLAUSNER HOLDING USA, INC. ("Klausner"), and, in support thereof, alleges as follows:

I.
INTRODUCTION

1.    This action arises out of Klausner's failure to perform its material contractual obligations under the Quick Action Closing Fund Agreement (the "Agreement"), attached hereto as Exhibit "A."

II.
_____    THE PARTIES

2.    Plaintiff, DEO is an agency of the Executive Branch of the State of Florida, created pursuant to section 20.60, Florida Statutes. DEO is the successor agency to the Office of Tourism, Trade, and Economic Development the original signatory on the Agreement. Among the agency's directives is to facilitate economic growth in Florida by promoting innovation, a pro-business climate, and business opportunity, utilizing a number of tools, including economic incentives. The

1

Quick Action Closing Fund (the "QACF") is one such incentive administered by DEO, through which DEO enters into a performance-based contract with a recipient that receives an up-front cash incentive that can be retained if specific milestones, outlined in the contract, are achieved.

3.     Defendant, Klausner, is a foreign for-profit holding company of Klausner Trading USA, Inc. The Klausner Group, of which Klausner and Klausner Trading USA, Inc, are a part of, includes: Klausner Holding Deutschland GmbH, a parent company of Klausner Hobelwerk GmbH and Klausner Holz Thuringen GmbH, a parent company of Klausner Holz Niedersachsen GmbH and Klausner Holz Sachsen GmbH; Klausner Trading International GmbH; and Klausner Nordamerika Beteiligungs Holding GmbH, a parent company for Klausner Trading USA, Inc., and Klausner Lumber One, Inc. The Klausner Group is or was one of the largest wood-industry companies in the world. The Klausner Group sells or sold lumber products worldwide including in Europe, North America, and Asia. Pursuant to the Agreement, the Klausner Group established a sawmill in Suwannee County, Florida. Klausner Lumber One, LLC, was the name of the company located in Suwannee County, and was a 100% subsidiary of Klausner. Klausner's application for the QACF, the parties' communications, and a September 2019 amendment to the Agreement makes clear that the business relationship is between DEO and the Klausner Group, as a whole.

III.
JURISDICTION AND VENUE

4.     This is an action involving claims for damages in excess of $30,000.00, exclusive of attorneys' fees and costs.

5.     This Court has subject matter jurisdiction pursuant to article V, section 5(b) of the Florida Constitution.

2

6.       This Court has personal jurisdiction over Klausner under section 48.193(l)(a)(7), Florida Statutes, because Klausner breached a contract in this state by failing to perform acts required by a contract to be performed in this state.

7.       Venue is proper in Leon County, by agreement of the parties, pursuant to Paragraph 12(a) of the Agreement.

8.       All conditions precedent have occurred, been performed, and/or been waived or excused by the acts and/or omissions of Klausner.

9.       Pursuant to section 48.181, Florida Statutes, substitute service is proper. Klausner is a foreign corporation that conducted business in the State of Florida, and that does not have a resident agent or officer in the state, and, therefore, through its actions, has appointed the Florida Secretary of State as its agent on whom all process in any action or proceeding against it arising out of any transaction or operation connected with or incidental to the business or business venture may be served.

10.       Further, upon information and belief, Klausner is no longer a resident of the state, or is otherwise concealing its whereabouts.

11.       The Department has exercised due diligence in attempting to locate Klausner. Specifically, the Department initially attempted to serve Klausner on October 9, 2021, at the "principal office address" listed on Georgia's corporation division's website.

12.       Thereafter, the Department attempted to contact counsel that represents Klausner in an unrelated case, and, after several phone calls and emails, was informed by counsel that they did not represent Klausner in this matter.

13.     The Department asked counsel for an address to which the Department could serve the complaint, or, alternatively, the identity of Klausner's counsel in this matter, if any, but received no response.

14.     On October 25, 2021, the Department, using the last known email addresses of Klausner's officers, contacted Klausner directly asking for an address to effect service or the contact information for counsel. Upon information and belief, this email was read, but no response was received.

15.     Contemporaneously, the Department served via email evidence preservation letters on Klausner, and its affiliated entities, with a copy of the complaint attached and instructions to contact the undersigned counsel. Upon information and belief, officers for Klausner read the email, but failed to respond.

16.     Thus, to the extent there is a failure of delivery, that failure is directly and solely attributable to Klausner.

17.     Upon information and belief, the individuals upon whom service was attempted are actually aware of this action, and the Department's attempts to serve them, and are avoiding service.

IV.
FACTS

18.     In 1999, the Florida Legislature created the QACF in order to ensure that sufficient resources were "available to respond to extraordinary economic opportunities and to compete effectively for these high-impact business facilities." § 288.1088, Florida Statutes (2011). The QACF was intended to be a "deal closing" tool in highly competitive negotiations for projects where Florida's traditional incentives are not enough to win the deal. All QACF projects include

a performance-based contract with the state, which outlines specific milestones that must be achieved.

19.     To be eligible for receipt of funds under the QACF, the business must, among other things, have a positive economic benefit ratio of at least 5:1, pay an average annual wage of at least 125 percent of the areawide or statewide private sector average wage, and be supported by the local community in which the project is to be located.

20.     After receiving an application, DEO, in conjunction with Enterprise Florida Inc. ("EFI"), must review the application and make a recommendation to the Governor.

21.     If the application is approved, DEO and the awardee are to enter into a performance-based contract providing for the payment of cash incentives in exchange for an agreed-upon number of new Florida jobs at an-above average wage and the investment of a specified amount of capital.

22.     The contract is also required by statute to provide for sanctions for failure to meet these agreed-upon metrics.

23.     In or around June 2011, "United Pine," a to-be-formed subsidiary of Klausner, applied for an award of funds under the QACF. Ultimately, the entity was named "Klausner Lumber One, LLC," however the Agreement is between Klausner and the Department.

24.      As justification for the award, Klausner stated that it intended to establish a state of the art saw and planing mill, including $150 million in capital investments. Klausner stated that it expected to create 350 jobs to support the sawmill, with an annualized average wage of $30,000. Klausner explained that that the proposed location for the sawmill in Florida, Suwannee County, had high unemployment, and that the proposed project would greatly impact the community by creating jobs, and bringing ancillary benefits to local businesses.

25.     In its application, Klausner also stated that it was considering locating the sawmill in North Carolina, Virginia, and South Carolina, but noted that any incentive awards from the State of Florida would help cover land improvements, offset taxes, and help Klausner quickly establish its sawmill operations. Klausner stated to DEO that without the funds provided through the QACF, Klausner would not have located its sawmill in the State of Florida.

26.     Klausner also stated that the Klausner Group had always been a good corporate citizen in the communities in which it operated worldwide, and had won numerous production awards in the European communities where it was located.

27.     Indeed, Klausner's application relied upon the Klausner Group's past experiences and credentials. When questioned about the relationship between Klausner and the Klausner Group, a representative from Klausner Trading USA, Inc., explained that Klausner was a holding company for Klausner Trading USA, Inc., which was owned by the European holding company, which was owned entirely by Fritz Klausner.

28.     Based on Klausner's application and the commitments contained therein, as well as the result of the economic impact analysis, DEO and EFI jointly recommended approving Klausner for an QACF award. The recommendation memorandum explained the history of the Klausner Group and noted the expected economic benefits.

29.     On June 24, 2011, Governor Rick Scott approved an award of $3,000,000, pursuant to the QACF, to "Klausner Trading International GmbH."  The award was conditioned upon, among other things, Klausner meeting its job-creation, wage, and capital equipment investment requirements.

30.     On June 30, 2011, DEO and Klausner executed the Agreement, which sets out the terms of the parties' obligations. The Agreement was amended a total of four times—on August 31, 2011, on January 9, 2013, on October 17, 2013, and on September 19, 2019.

31.     The Agreement, as amended, provided that Klausner would need to meet certain requirements before receiving full payment, and that it would need to meet other enumerated requirements in order to avoid sanctions and/or termination of the Agreement.

32.     Particularly relevant to this matter, the Agreement required Klausner to fulfill various annual reporting requirements, to create 350 new net full-time equivalent jobs by December 31, 2016, to maintain an average annual wage of at least $30,000, excluding benefits, and to invest a total of at least $150,000,000 in the new facility by December 31, 2016, and maintain that investment for an additional three years until December 31, 2019.

33.     With respect to the job and wage requirements, the job creation schedule was as follows: 86 jobs by December 31, 2014, a total of 250 jobs by December 31, 2015, and a total of 350 jobs by December 31, 2016. Klausner was obligated to maintain these jobs for additional three years, or at least until December 31, 2019.

34.     With respect to the capital investment requirements, the Agreement, as amended, required Klausner to submit evidence satisfactory to DEO, in its reasonable discretion, that Klausner made a capital investment (excluding the acquisition or leasing of real property) of least $150,000,000 in Suwannee County Florida, by no later than December 31, 2016, and that Klausner maintained that investment for an additional three years, until December 31, 2019.

35.     With respect to reporting requirements, Exhibit C of the Agreement specifically outlines what information must be submitted as employment and wage documentation on an annual basis. Klausner was also required to maintain personnel and financial records and reports

related to jobs, wages, and capital investments, and submit an annual certification of its employment and annual average wage payment by January 31 of each fiscal year. Klausner further agreed to comply and cooperate with any monitoring procedures deemed appropriate by DEO.

36.     The Agreement specified that upon the failure of Klausner to comply with a material term or condition, including terms in the Agreement relating to reporting and compliance monitoring, DEO was entitled to terminate the Agreement and seek repayment of the entire award amount and a penalty. Interest is to be calculated based on the interest rate received by the State on mid-term investments at the time payment is due.

37.     For example, in any year in which Klausner failed to create at least 80% of the required jobs, Klausner was subject to a sanction equal to one-fifth of the QACF payment, plus interest.

38.     Similarly, if Klausner did not reach 80% of its capital investment requirement by December 31, 2016, Klausner was required to repay a prorated share of the closing fund award, plus interest.

39.     The Agreement also mandated that any requirement repayment, interest, or penalty was due within sixty days of receipt of written notice from DEO.

40.     The Agreement was executed on June 30, 2011, and, thereafter, DEO fulfilled its primary obligation under the Agreement by releasing $3,000,000 from an escrow account to Klausner.

41.     Several years following execution of the Agreement, Klausner ceased complying with its obligations under the Agreement. Namely, Klausner refused to cooperate with compliance monitoring procedures, and failed to provide satisfactory evidence that it had met its capital investment requirements for calendar years 2016, 2017, 2018, and 2019.

42.     Indeed, Klausner blatantly flouted its contractual obligations owed to DEO, both through its nonperformance of mandatory duties required by the Agreement and through its repeated refusal to respond in a timely manner, or respond at all, to letters from DEO demanding performance and ultimately imposing sanctions.

43.     For its failure to provide requested information relating to its 2016 performance, and, ultimately, for its failure to confirm that it satisfied its 2016 capital investment obligations, DEO sanctioned Klausner in the amount of $1,082,322.08.

44.     DEO notified Klausner of the sanction on June 17, 2020, and specified that payment was to be made within 60 days of receipt of the demand.

45.     Klausner received the demand on June 26, 2020. The demand went unanswered and unpaid.

46.     For its failure to provide requested information relating to its 2017 performance, and, ultimately, for its failure to confirm that it satisfied its 2017 capital investment obligations, DEO sanctioned Klausner in the amount of $1,086,606.90.

47.     DEO notified Klausner of the sanction on July 15, 2020, and specified that payment was to be made within 60 days of receipt of the demand.

48.     Klausner received the demand on July 21, 2020. The demand went unanswered and unpaid.

49.     For its failure to provide requested information relating to its 2018 performance, and, ultimately, for its failure to confirm that it satisfied its 2018 capital investment obligations, DEO sanctioned Klausner in the amount of $889,930.30.

50.     DEO notified Klausner of the sanction on September 23, 2020, and specified that payment was to be made within 60 days of receipt of the demand.

51.    Klausner received the demand on October 15, 2020. The demand went unanswered and unpaid.

52.    In January 2021, DEO sent Klausner and Klausner Trading International GmbH a final demand letter. The letter identified the previous demand letters and noted that these letters were only sent after multiple attempted by DEO to validate Klausner's satisfaction of the performance requirements set forth in the Agreement.

53.    As provided for under the Agreement, DEO demanded full repayment of the QACF award, plus interest, in the amount of $3,052,859.28, within 10 business days of the date of the letter. Klausner did not even acknowledge receipt of the letter.

54.    In light of Klausner's nonperformance, DEO is entitled to full repayment of the QACF award, plus interest, in accordance with the unambiguous terms of the Agreement.

55.    Moreover, because of Klausner's nonperformance, DEO has not received the expected return on investment and the expected economic benefit.

V.
COUNT I – BREACH OF CONTRACT

56.    DEO incorporates by reference the allegations previously set forth above.

57.    This is an action for breach of the Agreement between DEO and Klausner wherein Klausner materially failed to perform under the Agreement.

58.    DEO and Klausner entered into a valid contract.

59.    DEO has satisfied all of its material obligations under the Agreement.

60.    All conditions required by the Agreement for Klausner's performance have occurred.

61.    Without legal justification or excuse, Klausner has materially breached the contract by failing to meet the capital investment requirements under the Agreement, by failing to provide

DEO the necessary documentation to demonstrate performance under the Agreement, and by failing to cooperate with monitoring procedures deemed appropriate by DEO.

62.     Without legal justification or excuse, Klausner has also materially breached the contract by failing to remit the sanction amount assessed in 2020, and by failing to return the full amount of QACF award, in the amount of $3,052,859.28, upon demand in 2021.

63.     DEO has suffered damages as a result of Klausner's breach.

WHEREFORE DEO requests that judgment be entered in its favor and against Klausner for damages, interest, costs, and such other relief as the Court deems just and proper.

## VI.
## PRAYER FOR RELIEF

WHEREFORE, the State of Florida, Department of Economic Opportunity, respectfully requests this Court:

a.   Enter judgment against Klausner, for breach of contract and award reliance and/or expectation damages to DEO resulting from said breach, as well as any interest owed, as required by the Agreement;

b.   Award DEO the reasonable costs and expenses incurred by DEO in prosecuting this action, and reasonable attorneys' fees if lawfully permitted;

c.   Grant any further relief the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Dated this 5th day of November, 2021.

Respectfully submitted,

/s/ *Erik M. Figlio*
Robert N. Clarke, Jr.
Fla. Bar No. 592900
Erik M. Figlio
Fla. Bar No: 745251
Alexandra E. Akre
Fla Bar. No. 125179
AUSLEY McMULLEN, P.A.
123 South Calhoun Street
P.O. Box 391 (zip 32302)
Tallahassee, Florida 32301
(850) 224-9115 – telephone
(850) 222-7560 – facsimile
rfiglio@ausley.com
aakre@ausley.com
ATTORNEYS FOR PLAINTIFF

# EXHIBIT A

# STATE OF FLORIDA
# OFFICE OF THE GOVERNOR
## *QUICK ACTION CLOSING FUND AGREEMENT*

## AGREEMENT

**THIS AGREEMENT** (OT11-283) is made and entered into this __30__ day of __June__, 2011, by and between the State of Florida, Executive Office of the Governor's Office of Tourism, Trade, and Economic Development, hereinafter referred to as "OTTED," and Klausner Holding USA Inc., hereinafter referred to as the "Closing Fund Awardee," pursuant to Section 288.1088, Florida Statutes.

OTTED has determined that the Closing Fund Awardee has met all of the requirements necessary to become certified to participate in the Quick Action Closing Fund (Closing Fund) and that all statutorily required reviews and approvals have been obtained pursuant to Section 288.1088, Florida Statutes, and

The Enterprise Florida, Inc. Quick Action Closing Fund Request for Consideration and the Closing Fund Awardee documentation, including any attachments, submitted in lieu of an application, are attached hereto and incorporated as an integral part of this agreement, and will be referred to as "Exhibit A."

**This Agreement is neither a general obligation of the State of Florida, nor is it backed by the full faith and credit of the State of Florida. Payment of Closing Fund Awards are conditioned on and subject to specific annual appropriations by the Florida Legislature of funds sufficient to pay amounts authorized in Section 288.1088, Florida Statutes, and**

In consideration for the mutual promises and agreements contained herein, and other valuable and good consideration, OTTED and the Closing Fund Awardee agree as follow:

**1.0 PARTIES**: The parties and their respective addresses for purposes of this Agreement are as follows:

> STATE OF FLORIDA
> OFFICE OF THE GOVERNOR
> OFFICE OF TOURISM, TRADE, AND ECONOMIC DEVELOPMENT
> THE CAPITOL, SUITE 2001
> TALLAHASSEE, FLORIDA 32399-0001
> FAX NUMBER: (850) 487-3014
>
> KLAUSNER HOLDING USA INC.
> 1230 PEACHTREE STREET, SUITE 3100
> ATLANTA, GA 30309
> FAX NUMBER: _____

**2.0 ADMINISTRATORS**:

The State's Closing Fund Agreement administrator is:

> Timothy E. Proctor, Chief Analyst                                   :

The Closing Fund Awardee Agreement administrator is:

All approvals and notifications referenced in this Agreement must be obtained in writing from the parties' agreement administrators or their duly authorized designees.

**3.0 TERM**: The term of this Agreement shall commence upon the date of execution of this Agreement, and continue through June 30, 2019, for all terms except for the record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0), unless terminated prior to that time as provided for in this Agreement. The record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0) of the Closing Fund Awardee shall continue through June 30, 2024, unless terminated prior to that time as provided for in this Agreement.

## 4.0 CLOSING FUND AWARDEE DESCRIPTION:

(a) The Closing Fund Awardee is or will be an operating unit of Klausner Holding USA Inc..  It is identified for unemployment compensation purposes under the unit name(s) of Klausner    Holding    USA    Inc.                        ;    account    number(s), _____.

(b) The Closing Fund Awardee understands and agrees that the requirements in Paragraphs 7.0, 9.0, 10.0 and 19.0 of this Agreement pertain only to the project described in Paragraph 5.0(a) of this Agreement for the business unit described in Paragraph 4.0(a) of this Agreement.

## 5.0 PROJECT DESCRIPTION AND AWARD CONDITIONS:

(a) This project will include the location of the Closing Fund Awardee's sawmill manufacturing operation in Suwannee County, Florida, as described in "Exhibit A."

(b) The "Award Conditions" for the release and placement of $3,000,000 to an Enterprise Florida, Inc. (EFI) escrow account to be held for future payment to the Closing Fund Awardee shall be met when the following have occurred:

(1) Execution of the Closing Fund Agreement on or prior to June 30, 2011;

(2) Execution of an Enterprise Florida, Inc. Escrow Agreement on or prior to June 30, 2011; and,

(3) Submission of an air permit application to the U.S. Environmental Protection Agency for the proposed project in Suwannee County, FL by August 30, 2011.

Unless otherwise noted, these conditions are expected to be achieved and supporting documentation submitted to OTTED for verification prior to September 1, 2011.

(c) The "Award Conditions" for the release and payment of $3,000,000 from the EFI escrow account to the Closing Fund Awardee shall be met when the following have occurred:

(1) Public announcement of the project's location in Suwannee County, Florida;

(2) Acquisition (ownership) by the Closing Fund Awardee of the land (approx. 100 to 175 acres) in Suwannee County, Florida; and,

(3) Capital investment of at least $12 million toward site preparation and other costs associated with construction of the new facility in Suwannee County, Florida.

Supporting documentation shall be submitted to OTTED for verification of the aforementioned conditions. Verification must be complete to OTTED's satisfaction prior to the disbursement of the payment. To receive payment, conditions are expected to be met by June 30, 2012; however, this date may be extended to no later than September 1, 2012, with the express written approval of OTTED.

(d) In order to remain qualified for the Closing Fund award payment authorized in this Agreement and to avoid sanctions, the Closing Fund Awardee must meet the conditions below:

(1) The total number of new full-time equivalent jobs in Suwannee County, Florida that the Closing Fund Awardee is, or will be, dedicating to this project is at least 350, and these jobs will be fully implemented by December 31, 2014. These jobs will be phased in, with the first phase consisting of the creation of at least 150 net new full-time equivalent

project jobs in Florida, fully implemented by December 31, 2013; and, the second and final phase consisting of the creation of at least an additional 200 project jobs for a cumulative total of at least 350 full-time equivalent project jobs in Florida, fully implemented by December 31, 2014; and maintain these jobs for an additional three (3) years or until at least December 31, 2017.

(2) The Base Period for this project's jobs will be the twelve full months June 1, 2010, through May 31, 2011;

(3) The average annual wage of project jobs specified in Paragraph 5.0(d)(1) above will be at least $30,000, excluding benefits; **and**

(4) The Closing Fund Awardee must invest a total of at least $150,000,000 in the new facility by December 31, 2014, and maintain that investment for an additional three (3) years, until December 31, 2017.  Documentation of this investment must be presented to OTTED or its agent by January 31, 2015, and continue to be presented to OTTED each year thereafter until January 31, 2018.

(e) The Closing Fund Awardee may make a one-time election to extend the job creation and investment schedule by one year.  This election must be communicated to OTTED, and approved by OTTED, in writing.  Exercising this option shall result in a one-year extension of the term of the performance requirements and sanctions.

**6.0 NOTICES:** All notices pertaining to this Agreement are in effect upon receipt by OTTED, shall be in writing and shall be transmitted either by personal hand delivery; United States Post Office, return receipt requested; or, overnight express mail delivery.  E-mail and facsimile transmission may be used if the notice is also transmitted by one of the preceding forms of delivery.  The addresses set forth above for the respective Parties shall be the places where notices shall be sent, unless prior written notice of change of address is given.

**7.0 <u>DUTIES OF THE CLOSING FUND AWARDEE</u>**: The Closing Fund Awardee agrees that to qualify and remain qualified for the Closing Fund Award payment authorized herein, the Closing Fund Awardee must:

(a) Undertake the project and meet all of the Award Conditions as specified in Paragraphs 5.0(b) and 5.0(c), as applicable, of this Agreement.

(b) Submit its request for the Closing Fund Award payment authorized in Section 9.0 of this Agreement in a letter format and clearly state that it certifies each of the specific requirements in Paragraphs 5.0(b) or 5.0(c), as applicable, of this Agreement have been met, and provide supporting documentation acceptable to OTTED.

(c) Submit annual certification of its employment and annual average wage payment using a Qualified Target Industry Tax Refund (QTI) Claim application or alternate equivalent documentation acceptable to OTTED, every State of Florida fiscal year by January 31 of said year. The QTI claim application or alternate equivalent documentation must be submitted annually through January 31, 2018.

(d) Certify and submit documentation that at least 80 percent of the total investment specified in Paragraph 5.0(d)(4) has been made in the facility in Suwannee County, Florida as of December 31, 2014, and continues to be located in Suwannee County, Florida as of December 31, 2017.

(e) Notify OTTED in writing of any material developments that impact the implementation or operation of this Agreement or the project that this Agreement covers. Such material developments will include, but not be limited to: announcements with regard to the project, cancellation of the project, or change in ownership of the Closing Fund Awardee.

(f) Maintain personnel and financial records and reports related to the jobs, wages, and cumulative investment that are the subject of this Agreement and submit reports to OTTED as requested.

**8.0 <u>LIABILITY AND INDEMNIFICATION:</u>** OTTED will not assume any liability for the acts, omissions to act, or negligence of the Closing Fund Awardee, its agents, servants, or employees; nor will the Closing Fund Awardee exclude liability for its own acts, omissions to act, or negligence to OTTED. In addition, the Closing Fund Awardee agrees to be responsible for any injury or property damage resulting from any activities conducted by the Closing Fund Awardee.

To the extent permitted by law, the Closing Fund Awardee agrees to indemnify and hold OTTED harmless from and against any and all claims or demands for damages resulting from personal injury, including death or damage to property, arising out of any activities performed under this Agreement and will investigate all claims at its own expense. However, neither OTTED nor any agency or subdivision of the State of Florida waives any defense of sovereign immunity or increases the limits of its liability upon entering into this contractual relationship.

**9.0 <u>DUTIES OF OTTED:</u>** OTTED agrees that the Closing Fund Awardee will be eligible to receive a total amount of **THREE MILLION DOLLARS ($3,000,000)** from the Quick Action Closing Fund contingent upon meeting the requirements established in Paragraphs 5.0(b) and 5.0(c), as applicable, of this Agreement. The payment will be paid within 30 days of verification by OTTED, or OTTED's designee, that the Closing Fund Awardee has met the conditions in Paragraphs 5.0(b) and 5.0(c), as applicable, of this Agreement, for the project specified in Paragraph 5.0(a) of this Agreement.

## 10.0 <u>TERMINATION AND SANCTIONS</u>:

(a) This Agreement may be terminated by OTTED upon failure of the Closing Fund Awardee to comply with any material term or condition of this Agreement or a decision by the Closing Fund Awardee either not to proceed with the project defined in Paragraph 5.0(a) of this Agreement or to proceed with that project in a location outside of Suwannee County, Florida.

(b) A termination will result in the loss of eligibility for receipt of the Closing Fund Award payment previously authorized.  If the Closing Fund Award has been paid, the Closing Fund Awardee may be required to repay the grant amount and a penalty, as outlined below in (d), (e), (f), (g), and (h) of this section.

(c) Notwithstanding Paragraphs (a) and (b) above, in the event that OTTED fails to pay the Closing Fund Awardee a Closing Fund Award payment, to which the Closing Fund Awardee is entitled under this Agreement, as a result of insufficient state funds or for any reason whatsoever, the Closing Fund Awardee shall have the right to terminate this Agreement and may retain any Closing Fund Award payment that is not subject to conditions/sanctions under Paragraphs (d), (e), (f), (g), and (h) of this Section and was previously paid or awarded to the Closing Fund Awardee by OTTED under this Agreement.

(d) In any year in which the actual number of jobs for a job creation or maintenance phase scheduled in Paragraph 5.0(d)(1) of this agreement falls below 80 percent of the number of jobs so scheduled, the Closing Fund Awardee shall repay an amount equal to one-fifth of the Closing Fund Award payment plus interest on the amount repaid.

(e) If in any year the actual number of jobs is at least 80 percent of the jobs scheduled in Paragraph 5.0(d)(1) of this Agreement, but less than the required number of jobs, the Closing Fund Awardee shall repay a pro rated share of one-fifth of the Closing Fund Award payment plus interest, as determined in Paragraph 10.0(h), on the amount repaid.

(f) In any year the average wage falls below the average wage agreed to in Paragraph 5.0(d)(3) of this Agreement, the Closing Fund Awardee shall repay one-fifth of the Closing Fund Award plus interest, as determined in Paragraph 10.0(h), on the amount repaid.

(g) If the capital investment for the project specified in Paragraph 5.0(a) of this Agreement has not reached 80 percent of the investment scheduled in Paragraph 5.0(d)(4) of this Agreement by the periods specified in Paragraph 5.0(d)(4) of this Agreement, the Closing Fund Awardee shall repay a prorated share of the Closing Fund Award payment plus interest, as determined in Paragraph 10.0(h), on the amount repaid.

(h) The interest rate shall be determined by the average interest rate received by the State on mid-term investments at the time payment is due.

(i) In no year shall the amount required to be repaid exceed the larger of the individual amounts determined in Paragraphs 10.0(d), (e), (f), or (g), and total cumulative payments shall never exceed the value of the total award plus interest as determined in Paragraph 10.0.

(j) Any required repayment, interest and/or penalty, is due to OTTED within sixty (60) days of receipt of written notice from OTTED.

(k) OTTED, or its designated agent, may conduct on site visits of the Suwannee County, Florida facility to verify the Closing Fund Awardee's investment, employment and wage records.

**11.0 INDEPENDENT CAPACITY OF THE CLOSING FUND AWARDEE**: The parties agree that the Closing Fund Awardee, its officers, agents, and employees, in performance of this Agreement, will act in the capacity of an independent contractor and not as an officer, employee, or agent of the State. The Closing Fund Awardee is not entitled to accrue any benefits of State employment, including retirement benefits and any other rights or privileges connected with employment. The Closing Fund Awardee agrees to take such steps as may be necessary to ensure that each subcontractor of the Closing Fund Awardee will be deemed to be an independent contractor and will not be considered or permitted to be an agent of the State.

The Closing Fund Awardee has no authority to, and shall not pledge the State's credit or make OTTED a guarantor of payment or surety for any contract, debt, obligation, judgment lien, or any form of indebtedness.

**12.0 LEGAL REQUIREMENTS**:

(a) This Agreement is executed and entered into in the State of Florida, and will be construed, performed, and enforced in all respects in strict conformity with local, state, and federal laws, rules, and regulations. Each party will perform its obligations in accordance with the terms and conditions of this Agreement. Any and all litigation arising under this Agreement shall be brought in the appropriate court in Leon County, Florida, applying Florida law.

(b) If any term or provision of this Agreement is found to be illegal and unenforceable, the remainder of this Agreement will remain in full force and effect and such term or provision will be deemed stricken.

**13.0 PUBLIC ENTITY CRIMES**: The Closing Fund Awardee affirms that it is aware of the provisions of Section 287.133(2)(a), Florida Statutes, and that at no time has the Closing Fund Awardee been convicted of a Public Entity Crime. The Closing Fund Awardee agrees that

it shall not violate such law and further acknowledges and agrees that any conviction during the term of this Agreement may result in the termination of this Agreement.

**14.0   UNAUTHORIZED ALIENS**: OTTED will consider the employment of unauthorized aliens, by any contractor or subcontractor, as described by Section 274A(e) of the Immigration and Nationalization Act, cause for termination of this Agreement.

**15.0   NON-DISCRIMINATION**: The Closing Fund Awardee will not discriminate against any employee employed in the performance of this agreement, or against any applicant for employment because of age, ethnicity, race, religious belief, disability, national origin, or sex. The Closing Fund Awardee shall provide a harassment-free workplace, with any allegation of harassment given priority attention and action by management. The Closing Fund Awardee shall insert a similar provision in all subcontracts for services by this Agreement.

The Closing Fund Awardee affirms that it is aware of the provisions of Section 287.134(2)(a), Florida Statutes, and that at no time has the Closing Fund Awardee been placed on the Discriminatory Vendor List. The Closing Fund Awardee further agrees that it shall not violate such law and acknowledges and agrees that placement on the list during the term of this Agreement may result in the termination of this Agreement.

**16.0 ATTORNEY FEES**: Unless authorized by law and agreed to in writing by OTTED, OTTED will not be liable to pay attorney fees, interest, or cost of collection.

**17.0 TRAVEL**: There shall be no reimbursement of travel expenses exceeding the all-inclusive funds allocated in this Closing Fund Agreement.

**18.0 <u>PRESERVATION OF REMEDIES:</u>** No delay or omission to exercise any right, power, or remedy accruing to either party upon breach or default by either party under this Agreement, will impair any such right, power or remedy of either party; nor will such delay or omission be construed as a waiver of any breach or default or any similar breach or default.

**19.0 <u>ACCOUNTING AND AUDITS</u>:** The Closing Fund Awardee agrees:

(a) To maintain books, records, documents and other evidence according to generally accepted accounting principles, procedures, and practices that sufficiently and properly reflect all costs of any nature expended in the performance of this Agreement, and retain said copies for a period of five (5) years after termination of the conclusion of this Agreement. If any litigation, claim, negotiation, audit or other action involving the records has been started before the expiration of the five (5) years, the records shall be retained until completion of the action and resolution of all issues which arise from it.

(b) To make the books, records, documents and other evidence available for inspection, review, or audit by state personnel of the Office of the Auditor General, Department of Financial Services, or other state personnel authorized by OTTED. Copies of the reporting package required by this agreement shall be submitted by or on behalf of the recipient to OTTED and the State of Florida Auditor General.

(c) To include the aforementioned audit and record keeping requirements and the provisions contained in "Exhibit B" in contracts and sub-contracts entered into by the Closing Fund Awardee with any party for work required in the performance of this Agreement.

**20.0 <u>PUBLIC RECORDS</u>:** The Closing Fund Awardee must allow public access to all public records made or received by the Closing Fund Awardee in conjunction with the Closing Fund Award payment subject to the provisions of Chapter 119, Florida Statutes, except materials

that relate to methods of manufacture or production, potential trade secrets, potentially patentable material, actual trade secrets, business transactions, financial and proprietary information, and agreements or proposals to receive funding that are received, generated, ascertained, or discovered by OTTED, as exempted in Section 288.9520, Florida Statutes, or as exempted under Sections 288.075 and/or 288.9520, Florida Statutes.  Refusal of the Closing Fund Awardee to allow access to records as provided in this Agreement shall constitute grounds for unilateral cancellation of this Agreement.

The Closing Fund Awardee must make publicly available, upon request, the following information:  the name of the business, the amount of the Closing fund Award payment, the number of actual new full-time equivalent jobs created, and the amount of capital investment completed.

**21.0 LOBBYING:**  Payments obtained under this Agreement may not be used for the purpose of lobbying the Legislature, the judicial branch, or a state agency, pursuant to Section 216.347, Florida Statutes.

**22.0 NON-ASSIGNMENT:** Neither party may assign, sublicense, nor otherwise transfer its rights, duties, or obligations under this Agreement without the prior written consent of the other party, which consent will not be unreasonably withheld.  Any assignment, sublicense, or transfer occurring will be null and void; provided, however that OTTED will at all times be entitled to assign or transfer its rights, duties, or obligations under this Agreement to another governmental agency in the State of Florida, upon giving prior written notice to the Closing Fund Awardee.  In the event that OTTED approves transfer of the Closing Fund Awardee's obligations, the Closing Fund Awardee remains responsible for all work performed and all expenses incurred in connection with this Agreement.

23.0 **ENTIRE AGREEMENT:** This instrument embodies the entire agreement of the parties.  There are no provisions, terms, condition, or obligations other than those contained in this agreement; and this agreement supersedes all previous communication, representation, or agreement, either verbal or written, between the parties.  No amendment will be effective unless reduced to writing and signed by an authorized officer of the Closing Fund Awardee and the authorized agent of OTTED.

**DUPLICATE ORIGINALS**: This Agreement is executed in duplicate originals.

In Witness whereof, OTTED and the Closing Fund Awardee have caused this agreement to be executed and delivered by their duly authorized representatives.

**STATE OF FLORIDA**
**OFFICE OF TOURISM, TRADE,**
**AND ECONOMIC DEVELOPMENT**

_____    6·30·11
AUTHORIZED SIGNATURE        Date

TITLE: _____

WITNESSES: _____

_____

**KLAUSNER HOLDING USA INC.**

_____    29th June 2011
AUTHORIZED SIGNATURE        Date

TITLE: _Treasurer_

WITNESSES: _____

_____

_____

List of Exhibits:

Exhibit A: Enterprise Florida, Inc.'s Quick Action Closing Fund Request for Consideration and documentation from the Closing Fund Awardee in lieu of an application.

Exhibit B: Special Audit Requirements

Exhibit C: Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable)

Exhibit D: Enterprise Florida, Inc. Escrow Agreement between Enterprise Florida, the Closing Fund Awardee, and the Office of Tourism, Trade and Economic Development.

15

**DUPLICATE ORIGINALS**: This Agreement is executed in duplicate originals.

In Witness whereof, OTTED and the Closing Fund Awardee have caused this agreement to be executed and delivered by their duly authorized representatives.

**STATE OF FLORIDA**
**OFFICE OF TOURISM, TRADE,**
**AND ECONOMIC DEVELOPMENT**

**KLAUSNER HOLDING USA INC.**

_____  _____
AUTHORIZED SIGNATURE          Date

_____  29th June 2011
AUTHORIZED SIGNATURE          Date

TITLE: _____

TITLE: Treasurer _____

WITNESSES: _____

WITNESSES: _____

_____

_____

_____

_____


List of Exhibits:

Exhibit A: Enterprise Florida, Inc.'s Quick Action Closing Fund Request for Consideration and documentation from the Closing Fund Awardee in lieu of an application.

Exhibit B: Special Audit Requirements

Exhibit C: Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable)

Exhibit D: Enterprise Florida, Inc. Escrow Agreement between Enterprise Florida, the Closing Fund Awardee, and the Office of Tourism, Trade and Economic Development.

# EXHIBIT A

# GENERAL PROJECT OVERVIEW

United Pine (to be finalized)
**Name of Business**

**Project Christmas**
**Project Title or Code Name (1-5 word description)**

---

**FOR EFI USE ONLY**

6/9/11
**Date Received**

6/9/11
**Date Completed**

**Date Revised**

11-02129
**EFI Project Number**

---

Contact Enterprise Florida to discuss your project and application **before** submitting a formal proposal. The completed and signed application must be filed with:



*Enterprise Florida*

**The Atrium Building, Suite 201 • 325 John Knox Road**
**Tallahassee, Florida 32303**
**Phone: 850.298.6620 • Fax: 850.298.6659**
http://www.eflorida.com/

# GENERAL PROJECT OVERVIEW

**1. BUSINESS INFORMATION**

**A. Name of Applicant / Business Unit:**   United Pine (to be finalized)
*This should be the entity that will be party to the QTI agreement with the State of Florida. If multiple affiliates are involved, include an attachment listing affiliate name(s), Federal Employer Identification Number(s), Unemployment Compensation Number(s) and relationship to applicant.*

**B. Mailing Address:**   1297 Professional Drive, Suite 202
*Street Address*

| | | |
|---|---|---|
| Myrtle Beach | SC | 29577 |
| *City* | *State* | *Zip Code* |

**C. Name of Parent Company:**   Klausner Holdings USA JV

**D. Primary Business Unit Contact:**   Thomas Mende

**Title:**   President, Klausner Trading USA

**Mailing Address:**   1297 Professional Drive, Suite 202
*Street Address*

| | | |
|---|---|---|
| Myrtle Beach | SC | 29577 |
| *City* | *State* | *Zip Code* |

**Telephone:**  843.626.9600          **Fax:**

**Email:**  Thomas.mende@klausner-group.com     **Website:**  www.Klausner-Group.com

**E. Business Unit's Federal Employer Identification Number:**
(Please complete either the substitute W-9 Form at the end of this
application or attach a completed IRS Form W-9.)          26-0256374

**F. Business Unit's Unemployment Compensation Number[1]:**   Not yet applied

**G. Business Unit's Florida Sales Tax Registration Number:**   Not yet applied

**H. Is the business unit minority owned?**

Yes ☐   No ☒   If yes, explain: _____

**I. What is the business unit's tax year** (ex: Jan 1 to Dec 31):   June 30

**J. Has this business unit, or any related entities, applied for and/or been approved for State incentives in the past?**

Yes ☐   No ☒   If yes, explain: _____

**2. PROJECT OVERVIEW**

**A. Which of the following best describes this business unit[2]:**
   ☒   New business unit to Florida
   ☐   Existing Florida business creating and / or retaining jobs[3].
         If an expansion, how many jobs are currently in the expanding
   _____  business unit?

**B. How many individuals are employed at all Florida locations?**   350

---

[1] If multiple unemployment compensation reporting units or multiple worksites are involved, contact Enterprise Florida to discuss this structure or include an attachment listing the additional units and their relationship to the applicant.
[2] Must be a separate business unit or reporting unit of a business unit that is or will be registered with the State of Florida for unemployment compensation purposes.
[3] A QTI Tax Refund award cannot be granted for existing Florida jobs.

# GENERAL PROJECT OVERVIEW

**C. Are any jobs being transferred from other Florida locations[4]?**
Yes ☐   No ☒   If yes, how many jobs and from where? _____
Why are these jobs moving and why is it justified in light of the statutory language governing the applicable incentive program(s)?

**D. Give a __full__ description of this project, including a company overview, the primary activities / functions of this business unit and project, and the reasons for contemplating an expansion in / relocation to Florida.**
Establish saw and planing mill; purchasing logs from local sources, cutting logs into desired lengths, drying rough cuts and then planing into final product. Expansion in the US due to supply of raw materials, ability to service US customer base and exports.   See attachment

**E. In what Targeted Industry(ies) does the proposed project operate?[5]:**   Home centers, treating plants, retailers and export markets

**F. Break down the project's primary function(s) and the corresponding wages:**

| Business Unit Activities | 5 Digit NAICS Code(s) | Project Function (total = 100%) | Annualized Wage ($) |
|---|---|---|---|
| Saw Milling /planing operation | 321113 | 100% | $10.05mil |
|  |  | % | $ |
|  |  | % | $ |

**G. What is the project's proposed location address:**

| Street Address |
|---|

Live Oak                                            FL
City                                          State              Zip Code
**What is the project's current location address (if different):**

| Street Address |
|---|

City                                          State              Zip Code

**H. Is the project location within a current or proposed Brownfield site / area?**
Yes ☐   No ☐   If yes, attach a copy of the official document designating the Brownfield area.
**Is the project location in an Enterprise Zone?**
Yes ☒   No ☐   If yes, which zone? _____
**Is the project location in a designated Rural area?**
Yes ☒   No ☐   If yes, which Rural area?  Suwannee County
**Is the project location in an Urban area[6]?**
Yes ☐   No ☒   If yes, describe?

**I. Which of the following describes the applicant's operations** (select all that apply):
☒   Multi-state business enterprise
☐   Multinational business enterprise

---

[4] Incentives may not be used in connection with a project that involves the relocation of jobs from one Florida community to another except in certain circumstances as described in statute.
[5] Refer to the QTI Target Industry list.
[6] An Urban area may include a Community Redevelopment Area (CRA), Urban Job Tax Credit eligible area, Urban Enterprise Zone, Federal Empowerment Zone, an Urban revitalization area, etc.

# GENERAL PROJECT OVERVIEW

☐    Florida business enterprise (eligible for Brownfield Redevelopment Bonus incentive only)

**J. Which of the following describes this business unit (select all that apply):**
☐    Regional headquarters office
☐    National headquarters office
☐    International headquarters office
☒    This is not a dedicated headquarters office

**K. What is the estimated percentage of gross receipts or final sales resulting from this project that will be made outside of Florida** (If sales is not a reasonable measure, use another basis for measure and provide explanation below):
90%        Explain, if necessary: _____

## 3. JOB AND WAGE OVERVIEW

**A. How many Florida jobs[7] are expected to be created as part of this project?**        350

**B. If an existing business unit, how many Florida jobs are expected to be retained as part of this project?** (Jobs in jeopardy of leaving Florida should only be included here; these jobs are not eligible for QTI)        ∅

**C. What is the anticipated annualized average wage (excluding benefits) of the new to Florida jobs created as part of this project?** (Cash payments to the employees such as performance bonuses and overtime should be included. The wage reported here is only an estimate of the average wage to be paid and will not be used in the certification, agreement, and claim evaluation process.)        $30,000

**D. What is the annualized average value of benefits associated with each new job created as part of this project?**        $8000

**E. What benefits are included in this value?** (health insurance, 401(k) contributions, vacation and sick leave, etc.)
Health/dental/life co-share, approved leaves, 401k or other retirement scheme

## 4. CAPITAL INVESTMENT OVERVIEW

**A. Describe the capital investment in real and personal property** (Examples: construction of new facility; remodeling of facility; upgrading, replacing, or buying new equipment.):
$96mil in machinery/equipment; $54 mil in buildings, property and property improvements

**B. Will this facility be:**
☐    Leased space with renovations or build out
☒    Land purchase and construction of a new building
☐    Purchase of existing building(s) with renovations
☐    Addition to existing building(s) (already owned)
☐    Other (please describe in 4A above)

**C. List the anticipated amount and type of major capital investment to be made by the applicant in connection with this project:**

---
[7] A "full time equivalent job" means at least 35 hours of paid work per week.

# GENERAL PROJECT OVERVIEW

*PER Email 6/1/10*

| Calendar Year : | 2011 | 2012 | | | | Total |
|---|---|---|---|---|---|---|
| Land or Building Purchase | $ | $ | $ | $ | $ | $ |
| Construction / Renovations | $ 5m | $ | $ | $ | $ | $ 54 m |
| Manufacturing Equipment | $ | $95mil | $ | $ | $ | $ 95 m |
| R&D Equipment | $ | $ | $ | $ | $ | $ |
| Other Equipment (computer equipment, office furniture, etc.) | $ | $1mil | $ | $ | $ | $ 1 m |
| Total Capital Investment | $ 54m | $ 96m | $ | $ | $ | $ 150 m |

**D. What is the estimated cost of machinery and equipment or other resources for this project expected to be purchased underline outside of Florida?**

$95mil

**E. Describe the type(s) of machinery and / or other resources to be purchased underline outside of Florida.**

Saw line and planing equipment

**F. What is the estimated square footage of the new or expanded facility?**

100 Acres

**G. When is the final location decision anticipated (date)?**

June 30, 2011

**H. What is the anticipated date construction will begin?**

Once EPA complete

**I. What is the anticipated date operations will commence?**

8 months from start

## 5. COMPETITIVE LANDSCAPE

**A. What role will the incentive(s) play in the business unit's decision to locate, expand, or remain in Florida?**

Incentives, when combined with log source, is a primary factor for decision makers

**B. How will the incentive dollars be used by the business?**

To cover land improvements and offset taxes

**C. What other cities, states, or countries are being considered for this project?**

NC, VA, SC

**D. What advantages or incentives offered by these locations do you consider important in your decision?**

Land and Cash grants for land improvements

**E. What advantages or disadvantages offered by the proposed Florida location do you consider important in your decision?**

Property tax and corporate tax rates were higher in FL.

**F. Indicate any additional internal or external competitive issues impacting this project's location decision?**

External competitive issues exist for the commodity we produced and the Florida incentives will help us to quickly establish our operations..

## 6. ECONOMIC IMPACT AND CORPORATE RESPONSIBILITY

**A. Provide a brief synopsis of the special impacts the project is expected to stimulate in the community, the state, and the regional economy.** Include the impact on indicators such as unemployment rate, poverty rate, and per capita income.

# GENERAL PROJECT OVERVIEW

The location in a rural area that has high unemployment.  The project will greatly impact the community in which it operates through hiring of unemployed and ancillary benefits to local businesses  Additionally, the proposed operations will be state of the art, with production five time greater than any existing mill and comparable to the inputs of a pulp mill.  Timber market conditions will be greatly enhanced through this site which will increase timber land values and the attraction of other wood cluster synergy operations.

**B. Provide a summary of past activities in Florida and in other states.** For example, what kind of corporate citizen has the applicant been? Also list awards or commendations. Klausner Group has always been a good corporate citizen in the communities in which it operates worldwide.  The Group has won numerous production awards in its European locations which has instilled a sense of pride amongst workers and the community.

**C. List and explain any criminal or civil fines or penalties, recent or ongoing investigations and lawsuits, federal, state and/or local tax liens, and environmental issues that have been imposed upon the company, its executives, or its affiliates and any recent bankruptcy proceedings of the applicant or its parent company.** Failure to disclose relevant information may mean automatic disqualification. If there are no issues to be identified, answer "None". Do not leave this question blank.
None

**D. Provide any additional information you wish to be considered as part of this incentive application or items that may provide supplementary background information on your project or company.**

## 7. CONFIDENTIALITY

**A. You may request that your project information (including information contained in this application) be confidential per F.S. 288.075, Confidentiality of Records for a 12 month period, with an additional 12 month extension available upon request for projects still under consideration.**

**Please indicate your confidentiality preference:** (Does not apply to SDST sales tax exemption applicants)

☒ Yes
☐ No

**\*\*\*Be sure to attach the proper incentive attachment sheet(s)\*\*\***

# GENERAL PROJECT OVERVIEW

## 8. SIGNATURES

**Application Completed By:**

**To the best of my knowledge, the information included in this application is accurate.**

_____
Signature

_____
Signature (Authorized Company Officer)
REQUIRED

06/06/2011
Date

06/06/2011
Date

Thomas Mende
Name

Thomas Mende
Name

President
Title

President
Title

Klausner Trading USA, Inc
Company

Klausner Trading USA, Inc
Company

same
Address, if different than mailing address

_____
Address, if different than mailing address

843.626.9600
Phone Number

843.626.9600
Phone Number

_____
Fax Number

_____
Fax Number

Jeanne.Lynch@Klausner-Group.com
Email Address

Thomas.Mende@Klausner-Group.com
Email Address

_____
Name of contact person, if different than above

_____
Phone Number

_____
Address

_____
Email Address



**STATE OF FLORIDA**
**Department of Financial Services – Chief Financial Officer**
Bureau of Accounting, 200 East Gaines Street, Tallahassee, FL 32399-0354
Telephone (850) 413-5519 Fax (850) 413-5550
**Substitute Form W-9**

In order to comply with IRS regulations, we are requesting Taxpayer Identification information that will be used to determine whether you will receive a Form 1099 for payment(s) made to you by an agency of the State of Florida. For questions regarding this form, please use the address or telephone number provided above. In order to comply with the IRS rules, please provide us with your social security (SSN) or federal employer identification number (FEIN). This is not a request for state sales tax exemption.

In the event this information is not provided, or should the IRS notify us that the provided information is incorrect, all payments made to you may become subject to a 28% Backup Withholding Tax Rate. Please print clearly or type.

**PART 1** – Please provide the correct Tax Identification Number **(TIN)**, be it FEIN **–or–** SSN, and the applicable name and address **as shown on your income tax return.**

### The TIN is (check one) X FEIN _____ SSN

Federal Employer Identification Number (FEIN) 26-0256374 or -
                                        Example 9 9 – 9 9 9 9 9 9 9

Social Security Number (SSN)

                                        ████████ -- 9 9 9 9

NAME (as shown on your income tax return) Klausner Lumber One (name to change to United Pine)

Business name if sole proprietor _____

ADDRESS 1230 Peachtree Street

CITY, STATE, ZIP Atlanta, GA 30309

**PART 2** - Below, circle one number that accurately describes the business or the individual:
**1 - CORPORATION, PROFESSIONAL ASSOCIATION OR PROFESSIONAL CORPORATION**
   (A corporation formed under the laws of any state within the United States.)
**2 - NOT FOR PROFIT CORPORATION** (Section 501(c) (3) Internal Revenue Code)
**3 - PARTNERSHIP, JOINT VENTURE, ESTATE, TRUST OR MULTIPLE MEMBER LLC**
**4 - INDIVIDUAL, SOLE PROPRIETOR, SELF EMPLOYED OR SINGLE MEMBER LLC**
   (Circle #4 if you are an individual that benefited from a student loan forgiveness payment)
**5 - NONCORPORATE RENTAL AGENT**
**6 - GOVERNMENTAL ENTITY** (City, County, State or U.S. Government)
**7 - FOREIGN CORPORATION OR ENTITY** (A foreign entity formed under the laws of a country other than the United States.) If YES is marked below, complete and attach Form W-8ECI.
   Is income effectively connected with business in the United States? _____YES _____NO
**8 - NONRESIDENT ALIEN** (An individual temporarily in the U. S. who is not a U.S. citizen or resident.)

Under the penalties of perjury, I certify that I have examined this request and to the best of my knowledge and belief, it is true, correct and complete.

| | | |
|---|---|---|
| Signature | 6/5/2011 | 843.626.9600 |
| | Date | Telephone Number |

*Jeanne Lynch*

Title : Controller                    Jeanne.Lynch@Klausner-Group.com
                                        email (optional)

# Quick Action Closing Fund
## Attachment to the General Project Overview

### United Pine (Not yet Finalized)
**Name of Business**

| FOR EFI USE ONLY | | |
|---|---|---|
| 6/9/11 | | 6/9/11 |
| Date Received | Date Revised | Date Completed |

*Must be a separate __business unit__ or reporting unit of a __business unit__ that is or will be registered with the State of Florida for unemployment compensation purposes.*

**IMPORTANT NOTE:** This application must be filed and the incentive approved ***prior*** to making the decision to expand an existing Florida business unit or to locate a new business unit in Florida.

**\* \* \*Be sure to attach the General Project Overview\* \* \***

## 1. PROJECT OVERVIEW

**A.** Site location decision date:                                    JUNE 30 2011

**B.** What is the total number of net new full-time equivalent Florida jobs to be <u>created</u> and/or <u>retained</u> by the project at the business unit?

Jobs Created:        1350   350  } see below

Jobs Retained:        350  ∅

**C.** Provide the job creation schedule to which you commit: (Please limit job creation to no less than ten jobs in the first year and the phases to a maximum of three consecutive years unless extraordinary circumstances warrant consideration of additional phases).

*per 6/8/11 email from company* {

| Phase | Number of net new full-time equivalent Florida Jobs | | Date by which jobs will be implemented |
|---|---|---|---|
| | **Created** | **Retained** | |
| I | 1000**see below | 0 | 12/31/2012 |
| II | 150 | 350 | 12/31/2013 |
| III | 200 | | 12/31/2014 |
| Total | 350 | | |

**\*\***includes indirect job creation, site construction, administration, etc. · *not included in company commitment*

**D.** For the purposes of certification, agreement, and claim review, indicate the average wage to which you commit:                                    $30,000.

## 2. PROJECT NEEDS AND IMPACTS

**A.** Provide a quantitative measure of Florida's competitive disadvantage and identify the major  source(s) of that disadvantage:
Transportation and road infrastructure increased cost $4mil; Lack of trained workforce $1mil,  Local and state taxes higher than other bid states ($2mil over 10years), climate – use of more energy to operate facility ($3mil est over 10 years),

**B.** Indicate the type and amount of financial or other support to be provided by the local community for this project:
Donated/graded site including the full infrastructure (full rail layout, roads, utilities), and ad-valorem tax abatement.

**C.** Specify the project needs that will be satisfied by the requested funds:
See B.

# Quick Action Closing Fund
# Attachment to the General Project Overview

**D.** **Identify special impacts the facility is expected to stimulate in a particular business sector, the state or regional economy, and in state universities and community colleges:**

The establishment of this type of facility will impact forestry due to supply the mill would remove from the current market; trucking for the transportation of logs and finished product; rail for exported products; and local retail for the influx of employees, vendors and customers.

## 3. SIGNATURES

Signature of Individual Completing this Attachment     6/8/2011
(if different from General Project Overview)     Date

Address (if different)

843 626 9600
Phone Number (if different)

Signature (Authorized Company Officer) REQUIRED     June 8, 2011
    Date

Thomas Mende, President, Klausner Trading USA, Inc.

**Name and Title of Authorized Officer**

## 4. KEY QUICK ACTION CLOSING FUND PROGRAM INFORMATION

- The Quick Action Closing Fund is a grant paid to a business upon achievement of pre-defined "payment criteria". Enterprise Florida will work with the company and OTTED to determine appropriate payment criteria for this project.
- Enterprise Florida will also work with the company and OTTED to determine "performance criteria", which are criteria that must be met in order for the company to retain the funds. If the performance criteria are not met, penalty sanctions may be imposed that include repayment of a portion or the entire Closing Fund award, with interest.
- Projects eligible for receipt of funds from the Quick Action Closing Fund shall:
  A. Be in an industry as referenced in s. 288.106 [Qualified Target Industry].
  B. Have a positive payback ratio of at least 5 to 1.
  C. Be an inducement to the project's location or expansion in the state.
  D. Pay an average annual wage of at least 125 percent of the areawide or statewide private sector average wage.
  E. Be supported by the local community in which the project is to be located.
- Quick Action Closing Fund: Section 288.1088, Florida Statutes

## Marty Wilson

| | |
|---|---|
| **From:** | Lynch, Jeanne <Jeanne.Lynch@klausner-group.com> |
| **Sent:** | Thursday, June 09, 2011 4:45 PM |
| **To:** | Marty Wilson |
| **Cc:** | Mende, Thomas |
| **Subject:** | FW: Applications - financials to follow |
| **Attachments:** | QTIAttach.docx |

Hello Marty,

Please see comments below -

-----Original Message-----
From: Marty Wilson [mailto:mwilson@eflorida.com]
Sent: Thursday, June 09, 2011 1:58 PM
To: Lynch, Jeanne; Mende, Thomas
Cc: Joel Gunter
Subject: RE: Applications - financials to follow

Jeanne & Thomas, <<QTIAttach.docx>>

I have a few follow-up questions after reviewing the applications. I have also drafted
some proposed payment and performance criteria for the $3 million Closing Fund incentive
(also below). The process here is the $3 million would be placed into an escrow account
once the first two items below are achieved (execution of agreement and submission of air
permit). These must be achieved by August 31, 2011, due to state budget requirements. The
second three items are the milestones that will trigger the $3 million to be paid to
United Pine from the escrow account and the last three items are the ultimate performance
conditions. The first five items may be adjusted, just let me know what you would like to
see instead.

Application Questions:

- Question 2D of the General Project Overview references an attachment. Is this
attachment something we already have or is there an additional document? Already attached
- 3 slides

- Question 1B of the QTI Attachment - given the significant scope of this project, I want
to be sure the end of 2012 is sufficient time to create the first phase of 200 new jobs.
Just for the purposes of the incentives, you might want to consider consolidating the job
schedule into 2013 in order to give a little more time to create the jobs.

Marty – thanks point well taken    QACF made consistent w/ QTI

We based our dates on critical paths - But as you note, it is ambitious - we need
permitting first and then we do not want to be in the middle of grading during hurricane
season - so can we move it to the end of 2013 for all the eventualities. I revised the
numbers - can you switch out the pages

-There is one more short document we need to have completed (attached). Please complete,
sign and send back at your convenience.

1

- Can you explain more about the corporate structure of Klausner Trading USA, Klausner Holdings USA JV and United Pine? Will United Pine be a subsidiary of Klausner Holdings USA JV? What role does Södra play in these entities?

Klausner Holding USA is the holding company of Klausner Trading USA.  It is owned by a holding in Europe which in turn is owned singularly by Mr. Klausner.  Soedra is proposing to purchase 50% of Klausner Holding USA from the European Holding company and therefore 50% of KTU.  The company Klausner Holding USA will then become United Pine Holding and KTU will become United Pine Trading USA.

Closing Fund Payment:

Payment of the $3,000,000 Closing Fund award on behalf of United Pine is to be paid from the State into an escrow account managed by Enterprise Florida, Inc. upon achievement of the following:

1.      Execution of the Closing Fund Agreement with OTTED prior to June 30, 2011; and

2.      Submission of air permit application to the U.S. Environmental Protection Agency for the proposed project in Suwannee County, FL.

Payment of $3 million in escrowed funds will be released from Enterprise Florida, Inc. to United Pine upon achievement of the following:

1.      Public announcement of the project's location in Suwannee County, FL;

2.      Acquisition (ownership) of the land (approximately 100 to 175 acres) in Suwannee County, Florida; and

3.      Capital investment of at least $12 million toward site preparation and other costs associated with construction of the new facility in Suwannee County, Florida;

Performance conditions that must be met to avoid sanctions will include achievement of the following project goals:

1.      Creation of 350 new jobs in accordance with the QTI Tax Refund Agreement;

2.      Average wage of at least $30,000 for all 350 jobs; and

3.      Capital investment for this project of at least $150 million by December 31, 2013. (2015)

Standard sanctions to include repayment of funds plus interest will apply and be delineated in the Closing Fund Agreement. Payment criteria must be achieved prior to August 31, 2011.

Thank you very much and I look forward to hearing back from you.

Regards,

Marty

-----Original Message-----

From: Lynch, Jeanne [mailto:Jeanne.Lynch@klausner-group.com]

Sent: Thursday, June 09, 2011 12:22 PM

To: Joel Gunter; Marty Wilson

Cc: Mende, Thomas

Subject: Applications - financials to follow

Hello Joel, Marty

Financials to follows

Best regards

Jeanne Lynch

Controller

Klausner Trading USA, Inc.

1297 Professional Drive, Suite 202

Myrtle Beach, SC 29577

USA

P: +1 843 443 9625

F: +1 843 626 9629

C: +1 434 391 4955

jeanne.lynch@klausner-group.com

www.klausner-group.com

NOTICE: This message (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. § 2510-2521, is CONFIDENTIAL, and is intended only for the individual to whom it is addressed. If you are not the named addressee or an employee or agent responsible for delivering this message to the named addressee, you are hereby notified that you have received this message in error and that any review, retention, dissemination, distribution, copying or use of this communication is strictly prohibited. Please reply to the sender that you received this message in error and then delete it. Thank you.

-----Original Message-----

From: ktucop1@klausner-group.com [mailto:ktucop1@klausner-group.com]

Sent: Donnerstag, 9. Juni 2011 13:11

To: Lynch, Jeanne

Subject: Scan from KTUCOP1[1/2]

Number of Images: 15

March 10, 2011

**JOEL GUNTER**
**Director, Business Development**
**Business Retention and Recruitment**
Enterprise Florida
800 N. Magnolia Ave. Suite 1100
Orlando, Florida 32803

Dear JOEL:

We request that any and all documents, records, reports, correspondence, conversations, applications, data and other sources of information concerning our business plans, interests, or intentions to evaluate or locate in Florida be kept confidential as authorized in Section 288.075, Florida Statutes.

Sincerely,

(Authorized Signature)

Thomas Mende
President
International Business Development
Klausner Trading USA, Inc.

**Budget Amendment Request**
**Fiscal Year 2010-11**
**Current Status: Approved -**
**EOG Log Number: B0710**
**Executive Office of the Governor**

**Agency Log Number**   2011-037

**Request Type(s)**

GM - Establish General Revenue budget from unbudgeted reserve - Quick Action Closing (QAC) in Excess of $2,000,000 - Stat. Auth.288.1088 (3)(c), F.S.

**Request Summary**

Request Release for the Quick Action Closing Fund Pursuant to s. 288.1088, F.S.

**LBC Approval is required**

**Consultation/Review Period**   14 Consecutive Day Consultation                **Dates:** 6/15/2011 - 6/29/2011

**Signature**

_____

**Kelley Sasso**

**Executive Office of the Governor**                                                        **6/14/2011 6:33:08 PM**

**Agency Fund Summary**

| Fund Title | Net Total for this Request | | |
|---|---|---|---|
| | Appropriation | Reserve | Release |
| General Revenue Fund | $0 | ($3,000,000) | $3,000,000 |

**Agency Budget Detail**

| Req Type | Line Item # | Budget Entity | Appropriation Category | Acct Code Yr | Fund | Cert Fwd | Appropriation | Reserve | Release |
|---|---|---|---|---|---|---|---|---|---|
| **Governor, Executive Office** | | | | | | | | | |
| **Pgm: Tour, Trade/Econo Dev** | | | | | | | | | |
| GM | 2656 | 31800600 Economic Dev Pgms & Proj | 100259 Quick Action Closing Fund | 0000 | 1000 General Revenue Fund | | $0 | ($3,000,000) | $3,000,000 |
| | | | | | | Total | $0 | ($3,000,000) | $3,000,000 |

**Agency Problem Statement**

The Quick Action Closing Fund was created to help attract, retain, and provide favorable conditions for the growth of high-impact business facilities which provide widespread economic benefits to the state.  Diversifying Florida's economy helps to foster a sustainable business environment, leading to quality employment opportunities for Floridians. In the global economy, there exists competition for these facilities, and in most instances, when all available resources for economic development have been used, the state continues to encounter competitive disadvantages in competing for these business facilities.

The Quick Action Closing Fund provides the state the ability to offer incentives to recruit businesses to the state.  When local communities are vying for high-value projects, these funds are used to overcome a documented competitive disadvantage as compared to other non-Florida locations. The Legislature appropriated $16,000,000 for the Quick Action Closing Fund for the 2010-2011 fiscal year to respond to extraordinary economic opportunities and to compete effectively for these high impact business facilities.

Pursuant to section 288.1088, Florida Statutes, the Office of Tourism, Trade, and Economic Development (OTTED) may request approval for the release of funds as needed.  OTTED is prepared to enter into a contract with the prospective business, referred to for confidentiality purposes as "Project Christmas".   Contract payments are estimated at $3,000,000 based on preliminary negotiations.

**Agency Request**

The Executive Office of the Governor requests a release of $3,000,000 from unbudgeted reserve in the General Revenue Fund to execute a Quick Action Closing Fund contract.

**Fiscal Impact**

Amendment requests the release of General Revenue funds from unbudgeted reserve.

**Other Considerations**

| Uploaded Documents | Description | Uploaded By | Uploaded On |
|---|---|---|---|
| Ledger11-b0710.txt | appropriation ledger | CJR | 6/15/2011  8:01:20AM |

**Criteria for Approval**

The agency certifies that this request complies with all Criteria for Approval.

**OPB Budget Detail**

| Req Type | Line Item # | Budget Entity | Appropriation Category | Acct Code Yr | Fund | Cert Fwd | Appropriation | Reserve | Release |
|---|---|---|---|---|---|---|---|---|---|
| **Governor, Executive Office** | | | | | | | | | |
| **Pgm: Tour, Trade/Econo Dev** | | | | | | | | | |
| GM | 2656 | 31800600 Economic Dev Pgms & Proj | 100259 Quick Action Closing Fund | 0000 | 1000 General Revenue Fund | | $0 | ($3,000,000) | $3,000,000 |
| | | | | | | Total | $0 | ($3,000,000) | $3,000,000 |

**OPB Budget Explanation/Purpose**

Provides for the release of General Revenue funds from unbudgeted reserve to allow the Office of Tourism, Trade and Economic Development (OTTED), within the Executive Office of the Governor, to execute a Quick Action Closing Fund contract.

**OPB Problem Statement**

The Quick Action Closing Fund was created to help attract, retain, and provide favorable conditions for the growth of high-impact business facilities which provide widespread economic benefits to the state. Diversifying Florida's economy helps to foster a sustainable business environment, leading to quality employment opportunities for Floridians. In the global economy, there exists competition for these facilities, and in most instances, when all available resources for economic development have been used, the state continues to encounter competitive disadvantages in competing for these business facilities.

The Quick Action Closing Fund provides the state the ability to offer incentives to recruit businesses to the state. When local communities are vying for high-value projects, these funds are used to overcome a documented competitive disadvantage as compared to other non-Florida locations. The Legislature appropriated $16,000,000 for the Quick Action Closing Fund for the 2010-2011 fiscal year to respond to extraordinary economic opportunities and to compete effectively for these high impact business facilities.

Pursuant to section 288.1088, Florida Statutes, the Office of Tourism, Trade, and Economic Development (OTTED), within the Executive Office of the Governor, may request approval for the release of funds as needed. OTTED is prepared to enter into a contract with the prospective business, referred to for confidentiality purposes as "Project Christmas." Contract payments are estimated at $3,000,000 based on preliminary negotiations.

**OPB Agency Request**

The Executive Office of the Governor requests a release of $3,000,000 from unbudgeted reserve in the General Revenue Fund to execute a Quick Action Closing Fund contract.

**OPB Fiscal Impact**

Amendment requests the release of General Revenue funds from unbudgeted reserve.

**OPB Other Considerations**

The Governor approved this project after consulting with legislative leadership.

**LBC Budget Detail**

| Line Item | Budget Entity | Appropriation Category | Acct Code Yr | Fund | Cert Fwd | Appropriation | Reserve | Release |
|---|---|---|---|---|---|---|---|---|
| **Governor, Executive Office** | | | | | | | | |
| **Pgm: Tour, Trade/Econo Dev** | | | | | | | | |
| 2656 | 31800600 Economic Dev Pgms & Proj | 100259 Quick Action Closing Fund | 0000 | 1000 General Revenue Fund | | $0 | ($3,000,000) | $3,000,000 |
| | | | | | Total | $0 | ($3,000,000) | $3,000,000 |

**LBC Problem Statement**

The Quick Action Closing Fund was created to help attract, retain, and provide favorable conditions for the growth of high-impact business facilities which provide widespread economic benefits to the state.  Diversifying Florida's economy helps to foster a sustainable business environment, leading to quality employment opportunities for Floridians. In the global economy, there exists competition for these facilities, and in most instances, when all available resources for economic development have been used, the state continues to encounter competitive disadvantages in competing for these business facilities.

The Quick Action Closing Fund provides the state the ability to offer incentives to recruit businesses to the state. When local communities are vying for high-value projects, these funds are used to overcome a documented competitive disadvantage as compared to other non-Florida locations. The Legislature appropriated $16,000,000 for the Quick Action Closing Fund for the 2010-2011 fiscal year to respond to extraordinary economic opportunities and to compete effectively for these high impact business facilities.

Pursuant to section 288.1088, Florida Statutes, the Office of Tourism, Trade, and Economic Development (OTTED), within the Executive Office of the Governor, may request approval for the release of funds as needed.  OTTED is prepared to enter into a contract with the prospective business, referred to for confidentiality purposes as "Project Christmas."   Contract payments are estimated at $3,000,000 based on preliminary negotiations.

**LBC Agency Request**

The Executive Office of the Governor requests a release of $3,000,000 from unbudgeted reserve in the General Revenue Fund to execute a Quick Action Closing Fund contract.

**Summary of the Governor's Recommendations**

Recommend approval to release $3,000,000 in General Revenue funds from unbudgeted reserve to execute a Quick Action Closing Fund contract.

Recommend approval to release $3,000,000 in General Revenue funds from unbudgeted reserve to execute a Quick Action Closing Fund contract.

CONFIDENTIAL: Per section 288.075,           'a Statutes                June LBC            ing DRAFT—Subject to Updates

**CONFIDENTIAL Name:  Project Christmas**
**Company:  Klausner Trading International GmbH**

| | |
|---|---|
| Headline: | Sawmill Operations Location Project. |
| Options: | Suwannee County or North Carolina and South Carolina. |
| Jobs Created: | 350 |
| Jobs Retained: | 0 |
| Total Jobs: | 350 |
| Capital Investment: | $150,000,000 |
| Average Wage: | $30,000 (119% of Suwannee County and 75% of the statewide average wage) |
| Closing Fund Request: | $3,000,000 |

The Klausner-Group is one of the largest wood-industry companies in the world. The company operates four sawmills in Germany and is Europe's second largest supplier of soft woods. The company sells lumber products worldwide: mainly in Europe, North America and Asia. As part of an effort to diversify operations and tap into the US lumber market, Södra plans on purchasing a 50 percent stake in Klausner Holding USA (and therefore Klausner Trading USA). The new entity will be United Pine Holding (with United Pine Trading USA as the new subsidiary). The two companies are looking to establish one of the largest sawmill operations in the world at the rural catalyst site in Suwannee County Florida, which will ultimately be operated by United Pine. Both the North Carolina and South Carolina sites are reportedly 250 acres (75 acres larger than the proposed Florida site) and are being offered to the company at no cost and complete with all necessary infrastructure in place. Several of Florida's incentives originally proposed for this project will have no value and therefore were removed as part of the incentive package. While this demonstrates Florida's low-tax based structure, both North Carolina and South Carolina offer incentives that rebate a portion of employees' personal income tax withholding. This is a direct benefit to the Company and is in addition to offsets of other taxes such as corporate income and ad valorem. The company advised that without the funds provided through the QACF program they will not be able to undertake this project in Florida.

This project **does not meet the average wage requirement in s.288.1088, F.S.** and will require a waiver.

| | | | | |
|---|---|---|---|---|
| Tax Abatement | $ 8,860,000 | QTI Tax Refund | $ 1,680,000 |
| Regional Workforce Board Grant | $ 250,000 | Sales Tax Exemption | $ 7,189,000 |
| Land Donation | $ 3,500,000 | Quick Response Training Grant | $ 875,000 |
| Total Local Incentives | $12,610,000 | Incumbent Worker Training Grant | $ 150,000 |
| | | Governor Exigency Fund | $ 125,000 |
| | | EDTF | $ 3,000,000 |
| | | Rural Infrastructure Fund | $ 395,000 |
| | | Closing Fund | $ 3,000,000 |
| | | Total State Incentives | $16,414,000 |
| | | | |
| | | Total Incentives: | $29,024,000 |

The 10 year payback ratio on the State's investment is 2.96 to 1, and **does not meet the ratio required in s.288.1088, F.S.** and will require a waiver.

_____          / 6/14/2011
(OTTED Director's Signature)                  (Date)

**GOVERNOR'S DECISION:**

☑ Concur and approve this Quick Action Closing application at: $3,000,000. I have approved this project after consulting with the President of the Senate and Speaker of the House.

☐ Do not concur and find:_____

_____          _____
(Signature)                                      (Date)

# EXHIBIT   B

# EXHIBIT B

# SPECIAL AUDIT REQUIREMENTS

The administration of funds awarded by the Office of Tourism, Trade, and Economic Development (OTTED) to Klausner Holding USA Inc. may be subject to audits and/or monitoring by OTTED, as described in this section.

## MONITORING

By entering into this agreement, Klausner Holding USA Inc. agrees to comply and cooperate with any monitoring procedures/processes deemed appropriate by OTTED. In the event OTTED determines that a limited scope audit of the recipient is appropriate, Klausner Holding USA Inc. agrees to comply with any additional instructions provided by OTTED to Klausner Holding USA Inc. regarding such audit. Klausner Holding USA Inc. further agrees to comply and cooperate with any inspections, reviews, investigations, or audits deemed necessary by the Chief Financial Officer, Auditor General, or Chief Inspector General. Klausner Holding USA Inc. shall permit access to its records and independent auditor's working papers as necessary to comply with the requirements of this Agreement.

## AUDITS

1. In the event that Klausner Holding USA Inc. expends a total amount of State awards (i.e., State financial assistance provided to the recipient to carry out a State project) equal to or in excess of $500,000 in any fiscal year of Klausner Holding USA Inc., must have a State single or project-specific audit for such fiscal year in accordance with Section 215.97, Florida Statutes (the Single Audit Act); applicable rules of the Executive Office of the Governor and the Chief Financial Officer, and Chapter 691-5, Rules of the Department of Financial Services. In determining the State financial assistance expended in its fiscal year, Klausner Holding USA Inc. shall consider all sources of State awards, including State funds received from OTTED, except that State financial assistance received by a non-state entity for Federal program matching requirements shall be excluded from consideration.

2. In connection with the audit requirements, Klausner Holding USA Inc. shall ensure that the audit complies with the requirements of Section 215.97(8), Florida Statutes. This includes submission of a reporting package as defined by Section 215.97(8)(g), Florida Statutes, and Chapter 691-5, Rules of the Department of Financial Services.

3. If Klausner Holding USA Inc. expends less than $500,000 in State financial assistance in its fiscal year, an audit conducted in accordance with the provisions of the Single Audit Act is not required. In the event that Klausner Holding USA Inc. expends less than $500,000 in State financial assistance in its fiscal year and elects to have an audit conducted in accordance with the provisions of the Single Audit Act, the cost of the audit must be paid from non-State funds (i.e., the cost of such an audit must be paid from Klausner Holding USA Inc. funds obtained from other-than-State entities).

**Exhibit B**
**Special Audit Requirements**
**Page Two**

4.  Klausner Holding USA Inc. must include the record keeping requirements found herein in sub-recipient contracts and subcontracts entered into by Klausner Holding USA Inc. for work required under terms of this Agreement.  In the executed subcontract, Klausner Holding USA Inc. shall provide each sub-recipient of state financial assistance the information needed by the sub-recipient to comply with the requirements of the Single Audit Act.  Pursuant to Section 215.97(7), Florida Statutes, Klausner Holding USA Inc. shall review and monitor sub-recipient audit reports and perform other procedures as specified in the agreement with the sub-recipient, which may include onsite visits. Klausner Holding USA Inc. shall require sub-recipients, as a condition of receiving state financial assistance, to permit the independent auditor of the recipient, the state awarding agency, the Chief Financial Officer, the Chief Inspector General, and the Auditor General access to the sub-recipient's records and independent auditor's working papers as necessary to comply with the requirements of the Single Audit Act.

5.  For information regarding the Florida Single Audit Act, including the Florida Catalog of State Financial Assistance (CSFA), Klausner Holding USA Inc. should access the website for the Florida Department of Financial Services located at https://apps.fldfs.com/fsaa/ for assistance.  In addition to the above website, the following websites may be accessed for additional information:  The Florida Legislature's website http://www.leg.state.fl.us/ and the Florida Auditor General's website http://www.state.fl.us/audgen.

6.  The CSFA number for this project is: 31.009.

**REPORT SUBMISSION**

Copies of audit reports conducted in accordance with the audit requirements contained herein shall be submitted to the parties set out below. The annual financial audit report shall include all management letters and Klausner Holding USA Inc.'s response to all findings, including corrective actions to be taken.  The annual financial audit report shall include a schedule of financial assistance specifically identifying all Agreement and other revenue by sponsoring agency and Agreement number.

**Exhibit B**
**Special Audit Requirements**
**Page Three**


The complete financial audit report, including all items specified above, shall be sent directly to:

Ms. Alberta Simmons
Sharpton, Brunson and Company, P.A.
215 South Monroe Street, Suite 750
Tallahassee, Florida 32301

**And**

State of Florida Auditor General
Attn: Marilyn Rosetti
Room 574, Claude Pepper Building
111 West Madison Street
Tallahassee, Florida 32302-1450


## RECORD RETENTION

**Klausner Holding USA Inc.** shall retain all grant records and shall ensure the retention of its independent auditor's working papers for a period of five (5) years from the date of submission of the final project report.  If any litigation, claim, negotiation, audit, or other action involving the records has been started before the expiration of the five (5) year period, the records shall be retained until completion of the action and resolution of all issues which arise from it, or until the end of the five (5) years period, whichever is later.

**EXHIBIT B**
**ATTACHMENT 1**

FUNDS AWARDED TO THE RECIPIENT PURSUANT TO THIS AGREEMENT CONSIST OF THE FOLLOWING:

**State Resources Awarded to the Recipient Pursuant to this Agreement Consist of the Following Resources Subject to Section 215.97, F.S.:**

| State Program Number | Funding Source | State Fiscal Year | CSFA Number | CSFA Title or Funding Source Description | Funding Amount | State Appropriation Category |
|---|---|---|---|---|---|---|
| 11-00129 | QACF | 2010/11 | 31.009 | Quick Action Closing Fund | $3,000,000.00 | 100259 |
| | | | | | | |
| | | | | | | |
| | | | | Total Award | $3,000,000.00 | |

For each program identified above, the recipient shall comply with the program requirements described in the Catalog Florida Catalog of State Financial Assistance (CSFA) [https://apps.fldfs.com/fsaa/catalog.aspx]. The services/purposes for which the funds are to be used are included in the Contract scope of services/work. Any match required by the recipient is clearly indicated in the Contract.

# EXHIBIT   C

# EXHIBIT C

Klausner Holding USA Inc.

Criteria for Measurement of Achievement of Terms for
New Full-time Equivalent Jobs, Average Annual Wage
(where applicable)

Annual certification, as authorized in Section 7.0(c) of this Agreement, must be made in a **letter format clearly certifying the applicable requirements set in 5.0(d),** which shall include the following information and documentation. (For Closing Fund Awardees certified as a QTI Business, submittal of the required QTI Claim Application and relevant documentation is required.) Section I of this Exhibit explains how the Annual Certification Period, used in the calculation of full-time equivalent jobs, average annual wages and the Base Period for those jobs, is determined. Sections II, III, and IV explain the method that will to be used to determine the number of **full-time equivalent jobs** working on the project and the **average annual wage** of those project jobs, and the **documentation required** for jobs and wages.

*Although it is not necessary to submit copies of all documentation to support information included in Annual Certifications (information such as project jobs and related wages/salaries), the Closing Fund Awardee must maintain all related forms and supporting documentation and make these materials available to OTTED as required in Sections 7.0(f) and 19.0 of this Agreement.*

## Section I.  REFUND AND BASE PERIODS

A. Annual Certification Period -- The Annual Certification Period, for purposes of this Agreement, is the period from the month the previous certification was submitted until the effective date of the current certification. For the first certification, the Annual Certification Period is defined as the period from October 1 to December 31 of the year the first new jobs are scheduled to be measured as specified in Paragraph 5.0(b) of this Agreement.

For subsequent years the Annual Certification Period is January 1 to December 31 of the current certification year. (See Sections II and III for more detailed discussion of the method that will be use to evaluate jobs and wages for these periods.)

B. Base Period -- The Base Period will be used to calculate the net new jobs. The Base Period will be the 12 months preceding the effective date of the Letter of Certification, or, if applicable, the Preservation of Inducement, unless otherwise specified within this agreement.

Exhibit C
Klausner Holding USA Inc.
Quick Action Closing Fund
Page 2

## Section II. PROJECT JOBS DETERMINATION

The following definitions and procedures must be used in determining and reporting the number of full-time equivalent jobs dedicated to the project. The full-time equivalent jobs must work at the project location within the local government area indicated in Paragraph 5.0(a).

A.    Job Definitions:

1.  Full-time equivalent jobs -- A "full-time equivalent job" for purposes of this Agreement means at least 35 hours of paid work a week. In tabulating hours worked, any paid leave an employee takes during the pay period, such as vacation or sick leave, may be included. The total number of full-time equivalent jobs may include **both direct and support** jobs for this project.

2.  Direct jobs -- For purposes of this Agreement, "direct jobs" may include operational or production and related workers assigned directly to the Closing Fund project.

3.  Support jobs -- For purposes of this Agreement, "support jobs" include non-production, support or overhead workers, such as legal, administrative and clerical, working at the Closing Fund-approved business unit. The concept for support jobs is generally only relevant for businesses working on defense or other government contracts or sub-contracts.

4.  New Full-time Equivalent Job -- Full-time equivalent jobs may be counted as new full-time equivalent jobs only if they result in a net increase in full-time equivalent jobs at the Closing Fund business over the average full-time equivalent jobs for the base period, unless otherwise specified in this Agreement. In no case may jobs or job functions be counted as new, full-time equivalent project jobs if they are moved from a related business in Florida (including a business related by virtue of a merger, purchase, or any form of acquisition) to the Closing Fund Awardee, from another Florida location of the Closing Fund Awardee to the project location, or from any other Florida business unit. In addition, no temporary construction jobs involved with the construction of facilities for the project nor any jobs which have been previously included in any approved application for annual certification or claims under Sections 288.104, 288.1045 288.106 or 288.1088, Florida Statutes, may be included in full-time equivalent project jobs.

5.  Full-time equivalent direct project jobs -- Full-time equivalent **direct** jobs for the project may be counted as (a) all direct employees working full time (at least 35 hours a week) on the project, such as production or related work, assigned to and working exclusively on the project described in this Agreement or (b) the total of the hours of direct production or related work assigned to the project divided by 35.

Exhibit C
Klausner Holding USA Inc.
Quick Action Closing Fund
Page 3

6. <u>Full-time equivalent support project jobs</u> -- Full-time equivalent support jobs may be counted for the project if they are (a) exclusively assigned to and working at least 35 hours a week on the project described in this Agreement or (b) they may be estimated by multiplying the **total number of all full-time "support** jobs" at the business by the **ratio** of the number of **"full-time direct"** project jobs to the total of **all "full-time direct" jobs** at the business.

B.     <u>Full-Time Equivalent Jobs Calculation</u>:

The following method, or a method approved by OTTED which will yield comparable results, should be used to determine full-time-equivalent employment for each period.

1. **Total** <u>full-time equivalent project jobs for the Base Period and Annual Certification Period</u> – For each week in the period, the number of full-time equivalent project **support** jobs (as defined above) may be added to the number of full-time equivalent **direct** project jobs (as defined above) to obtain total **full-time equivalent project employment for each pay period**.

2. **Average** <u>full-time equivalent project jobs for the Base Period and Annual Certification Period</u> – Add the project full-time equivalent employment for all pay periods and divide by the number of pay periods to determine the average full-time equivalent project employment for the period.  This is the full-time equivalent project jobs that should be reported as annual certification.

3. <u>Net New Job Calculation</u> – To qualify for the annual certification, the difference between Annual Certification Period and the Base Period, the net increase in jobs, must be at least as great as the number of full-time equivalent net new jobs specified in Section 5.0(d)(1) of this Agreement for the Annual Certification Period.

If the job creation schedule in the Agreement specifies an increase in net new jobs as a result of a new employment phase since the previous Annual Certification Period, the actual average employment for the new Annual Certification Period will be **evaluated against** an adjusted employment requirement. This **adjusted employment requirement** is obtained by averaging the required full time equivalent employment specified for the previous employment phase for the first nine months of the year and the new employment phase for last three months of the year.  That is, the Closing Fund Awardee will be expected to maintain the employment established for the first phase of the project throughout the year, but will only be evaluated against the additional jobs for the new phase for the final 3 months of the year.  Averages are used rather than a strict month-to-month comparison because it is understood that there are month-to-month fluctuations in employment due to turnover and other reasons beyond the control of the business.

Exhibit C
Klausner Holding USA Inc.
Quick Action Closing Fund
Page 4

**Example:** If the Closing Fund project involved the expansion of an existing Florida business with a base full time equivalent employment of 200 and the business had agreed to create 50 net new jobs by December 31 of the first year and an additional 65 net new jobs by December 31 of second year, the annual certification would be evaluated as follows:

1. The evaluation for the first year would compare average employment for period October 1 through December 31 of year 1 against a required number of jobs of 250 (the 200 base jobs, plus the 50 net new jobs scheduled in the agreement).

2. The second year evaluation would compare the average of actual employment for the period October 1 through December 31 against the 315 cumulative jobs scheduled for that phase. In addition, to be sure that the jobs for the previous phase were maintained throughout the year, the average of actual full time equivalent jobs for the period January 1 through December 31 of the second year would be compared to an adjusted job requirement obtained by averaging the scheduled employment for the previous employment phase for nine months and the new employment phase for three months. In this example the adjusted job requirement for the second year would be an average of 250 for nine months and 315 for three months or $((9*250+3*315)/12) = 266$.

Once the final phase of a project is reached, the evolution of the remaining certification will be based on a simple comparison of the actual full time equivalent employment against the maintenance of the cumulative full time equivalent employment specified for the final phase.

Worksheets, hard copy and electronic format (MS Excel format preferred), showing these calculations should be submitted with the certification. All hard copies of worksheets should be signed.

**Exhibit C**
**Klausner Holding USA Inc.**
**Quick Action Closing Fund**
**Page 5**

## Section III.  AVERAGE ANNUAL WAGE DETERMINATION

A.   <u>Definition</u> – In calculating the project's average annual wage for the Annual Certification Period (the average wage is not required for the Base Period), the following payments may be included for all project jobs as determined in Section II of this Exhibit:

Wages
Salaries
Commissions
Bonuses
Drawing Accounts (advances to employees against future earnings)
Prizes and Awards (if given by employer for employment)
Vacation Pay
Payment to Employees of Difference Between Regular Pay and Jury Pay
Payments to Employees Temporarily Absent While in Military Service
Wages Earned Before Death but Paid After Death
Dismissal Pay
Sick Pay (not made under a plan or system)
Supplemental Payments (difference between workers' compensation and
   employee's salary).

Other benefits may only be included in the wage calculation **IF**, as a business policy, the employee has the option of accepting the value of the benefits in the form of cash payments, or can convert the benefit to cash within 12 months of receipt of the benefit.

B.   <u>Calculation of the Average Annual Wage per Full-Time Equivalent Job</u>:

The average annual wage for the Annual Certification Period must be determined in a manner consistent with the following procedure:

1.   <u>Total project wages for certification period</u> -- Actual wages, salaries and other payments (as listed in Paragraph A above) for **all full-time equivalent direct project jobs** (as defined in Section II-A. of this Exhibit) for each pay period during the certification period are **added to an estimate of support project wages** (as determined in Paragraph 2 of this section).

2.   <u>Support project wages for certification period</u> -- The total of wages, salaries and other payments (as listed in Paragraph A) for all **support** jobs at the business (as defined in Section II-A.) times the **ratio** of the number of "full-time direct" project jobs to the total of all "full-time direct" jobs at the business, calculated in Section II-A.3. of this Exhibit.

**Exhibit C**
**Klausner Holding USA Inc.**
**Quick Action Closing Fund**
**Page 6**

    a. If the Closing Fund Awardee defined in this agreement meets the conditions outlined in Section IV-A. below, the Closing Fund Awardee may simply sum the quarterly payroll figures reported for unemployment compensation purposes and divide by the average number of employees (presumed to be full time equivalent employees if the conditions specified in Section IV-A. exist). If the number of quarters is less than four, this number should be multiplied by the inverse of the ratio of the number of quarters in the Annual Certification Period to four. If any of the quarters in the period has fewer than three months of employment, that quarter's payroll data should first be adjusted by multiplying the reported payroll for that period by the inverse of the ratio of the number of months for which employment data is reported to three.

3. <u>Annualized project wages</u> – Since the first Annual Certification Period is less than 12 months and some employees may work for less than 12 months during any Annual Certification Period, it is sometimes necessary to annualize the average wage for the Closing Fund Awardee or the wages of individual employees used to calculate the average annual wage. One of the following methods should be used for that purpose:

    a. If the Closing Fund Awardee does not meet the conditions outlined in Section IV-A, the Closing Fund Awardee must submit the information indicated in Section IV-B and calculate the average wage by annualizing the actual wages paid to all Closing Fund Awardee employees during the Annual Certification Period and summing those figures to obtain a "total annualize payroll" for the period and dividing by the total number of employees included in the calculation of the "total annualized payroll" for that Annual Certification Period. (Note: The total number of employees used in the annualized payroll calculation may be substantially larger than the average employment for the Annual Certification Period.

Worksheets, hard copy and electronic format (MS Excel format preferred), showing these calculations should be submitted with the claim. All hard copies of worksheets should be signed.

Exhibit C
Klausner Holding USA Inc.
Quick Action Closing Fund
Page 7

## Section IV.  EMPLOYMENT AND WAGE DOCUMENTATION

Documentation to support both **base period** jobs and **refund period** jobs should include the following information:

A. If the Closing Fund Awardee is registered as a separate business unit or worksite, for unemployment compensation purposes, and the employment information reported reflects the number of full-time-equivalent employees at the business unit or worksite, the Closing Fund Awardee may simply submit a copy of the forms that have been submitted for unemployment compensation purposes (the forms are due to the unemployment compensation agency on the fifteenth of the month following the end of each quarter) with the applicable certification documents. The reports submitted should cover the Base Period defined in Section 5.0(1)(a) of this agreement, and the twelve months preceding the December 31 certification date.

B. If the Closing Fund Awardee is not registered as a separate business or reporting unit, or if there is substantial part-time employment or employee turnover during pay periods, then in addition to the information listed in Section IV-A above for the Closing Fund Awardee, or the business unit of which the Closing Fund Awardee is a part, the Closing Fund Awardee must submit a list of all employees at the business unit or reporting unit, identifying those employees working at the Closing Fund business during the Base Period **and** for the twelve months proceeding the December 31 annual certification date.

   If an employee was not employed for a full 12 month period, the list should include the date employment began and/or ended.   The list should also identify the employee's position, title, or job description.  If the employee is paid by the hour, the list should include the number of hours the employee actually worked during each pay period during the Base Period and during the 12 months preceding the December 31 annual certification date.

This information should be supplied in both the signed hard copy and electronic format. (See also wage and salary information referenced in Section III-B3. that needs to be included in this list.)  In addition, the Closing Fund Awardee should clearly explain, as a part of the Closing Fund submission, how the information they are submitting may be different from the information submitted for unemployment compensation purposes.  For example, it might be the case that the business has a number of part time workers and therefore the unemployment compensation information overstates the number of full-time equivalent employees and understates the average wage.  Or, it may be the case that the Closing Fund business is a part of a larger or statewide reporting unit and the Closing Fund Awardee cannot be identified within the information submitted for unemployment compensation purposes.  A situation such as this should be clearly explained in the documentation.

**Exhibit C**
**Klausner Holding USA Inc.**
**Quick Action Closing Fund**
**Page 8**

## Section V.  INVESTMENT

Investment must be documented on a spreadsheet that lists the items, vendors, payment dates, amount of payments, and check numbers or unique identification of other means of payment and is accompanied with copies of canceled checks (or documentation of other forms of payment) for each item.  Please submit a signed hard copy as well as an electronic version of the spreadsheet (MS Excel format preferred).

# EXHIBIT   D

# ESCROW AGREEMENT

By and Between

## THE GOVERNOR'S OFFICE OF TOURISM, TRADE, AND ECONOMIC DEVELOPMENT (OTTED)
(RE:  OTTED Contract OT11-283)

AND

## ENTERPRISE FLORIDA, INC. (EFI)
as Escrow Agent

AND

## KLAUSNER HOLDING USA INC.
as Closing Fund Awardee

**Dated as of:   June 30, 2011   .**

## TABLE OF CONTENTS

Page

Section  1.    Appointment of Escrow Agent ........................................................... 1
Section  2.    Establishment of Escrow ................................................................. 2
Section  3.    Term o Escrow Agreement ............................................................... 2
Section  4.    Direction of Escrow Agent ............................................................... 2
Section  5.    Holding of the Award Funds ............................................................. 2
Section  6.    Receipt ............................................................................................. 2
Section  7.    Rights in the Escrow Account ........................................................... 3
Section  8.    Disbursement Into Court ................................................................. 3
Section  9.    Resignation and Removal of Escrow Agent ....................................... 3
Section 10.    Liability of Escrow Agent ............................................................... 4
Section 11.    Miscellaneous ................................................................................. 4
         11.1   Expenses ......................................................................................... 4
         11.2   Dispute Resolution ......................................................................... 4
         11.3   Notice ............................................................................................. 4
         11.4   Amendment or Waiver .................................................................... 5
         11.5   Severability .................................................................................... 5
         11.6   Governing Law ............................................................................... 5
         11.7   Entire Agreement: Assignment ....................................................... 5
         11.8   Binding Effect ................................................................................ 6
         11.9   Execution in Counterparts .............................................................. 6
         11.10  Descriptive Headings ..................................................................... 6
         11.11  Person and Gender ......................................................................... 6
         11.12  Construction ................................................................................... 6

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT (the "Escrow Agreement"), dated as of ___June 30___, 2011, by and among (i) The Office of Tourism, Trade, and Economic Development ("OTTED"), (ii) Enterprise Florida, Inc., a Florida corporation ("Enterprise Florida" or "Escrow Agent")., and (iii) Klausner Holding USA Inc. (the "Closing Fund Awardee").

Capitalized terms used herein without definition shall have the meanings set forth in the Funding Agreement (as hereinafter defined).

## WITNESSETH:

WHEREAS, the Florida Legislature established the Quick Action Closing Fund pursuant to Section 288.1088, Florida Statutes (the "Closing Fund"), to ensure that sufficient resources are available to allow the State to respond expeditiously to extraordinary economic opportunities and to compete effectively for high-value research and development and innovation business projects;

WHEREAS, the Closing Fund Awardee and OTTED have entered into a Quick Action Closing Fund Agreement (the "Funding Agreement"), which awards to the Closing Fund Awardee  DOLLARS ($) (the "Award Funds") pursuant to the Quick Action Closing Fund Program;

WHEREAS, the Florida Legislature created Enterprise Florida pursuant to Section 288.901 *et. al.*, Florida Statutes, to serve as the principal economic development organization for the State and delegated to it the responsibility to provide leadership for business development in Florida by aggressively assisting in the creation of new businesses;

WHEREAS, the Funding Agreement sets forth certain conditions that the Closing Fund Awardee must meet before the payment of certain portions of the Award Funds;

WHEREAS, OTTED, on behalf of the Executive Office of the Governor, recommended the approval of the project and the release of the funds pursuant to the legislative review requirements set forth in Section 216.177, Florida Statutes.

WHEREAS, OTTED received the Award Funds from the Legislature and has agreed to transfer the said Funds to Enterprise Florida, which shall be held by Enterprise Florida in escrow for the sole purpose of disbursing Funds to the Closing Fund Awardee in accordance with the Funding Agreement; and

NOW, THEREFORE, in consideration of the consummation of the transactions contemplated by the Funding Agreement and the mutual covenants and agreements contained herein, the parties hereto agree as follows:

Section 1.     Appointment of Escrow Agent   OTTED and Closing Fund Awardee hereby appoint Enterprise Florida as the Escrow Agent under this Escrow Agreement. The Escrow Agent is hereby authorized to take any and all actions indicated in this Escrow Agreement to be taken by the Escrow Agent and all such further actions consistent herewith as it shall deem necessary or desirable to implement the provisions hereof. The Escrow Agent represents and warrants to OTTED and the Closing Fund Awardee that it has all legal power and authority to act in the manner contemplated by this Escrow Agreement. OTTED and the Closing Fund Awardee agree that the authorization and designation of the Escrow Agent under this Section 1 shall be irrevocable and shall be binding upon their successors and assigns.

Section 2.     Establishment of Escrow   Upon completion of the conditions set forth in Section 5 (b) of the Funding Agreement, OTTED shall transfer the Award Funds to the Escrow Agent, which shall immediately deposit and invest any and all funds advanced by OTTED for payments in an independent and separate interest bearing account(s).  The Escrow Agent shall hold the Award Funds solely for the purpose of disbursing the Award Funds to the Closing Fund Awardee in accordance with the terms and conditions set forth in the Funding Agreement and herein.  Escrow Agent shall provide OTTED the account number(s) of all such accounts, and shall also provide all other information regarding the account(s) as OTTED requests.

Section 3.     Term of Escrow Agreement   This Escrow Agreement shall continue in effect from the date hereof until the Award Funds have been fully disbursed pursuant to Section 5 hereof.

Section 4.     Direction of Escrow Agent   All directions made to the Escrow Agent to take or refrain from taking any action pursuant to this Escrow Agreement shall be made in writing and shall be executed by OTTED and the Closing Fund Awardee and the Escrow Agent shall be entitled to conclusively rely on such instruction without further investigation of any kind.

Section 5.     Holding of the Award Funds   With respect to the request for Award Funds, OTTED shall submit to the Escrow Agent the following: (i) a completed written disbursement request, received from the Closing Fund Awardee, executed by the President of the Closing Fund Awardee or other authorized officer, substantially in the form attached hereto as Exhibit A and (ii) a written acknowledgment executed by the Director of OTTED, substantially in the form attached hereto as Exhibit B, that certifies that the Closing Fund Awardee has satisfied the conditions set forth in the Funding Agreement for disbursement of the requested Award Funds.

(b)     Escrow Agent shall return to OTTED all interest income derived from the interest bearing account, on a quarterly basis, based on fiscal year quarters.  Enterprise Florida shall remit such amounts in the form of checks payable to the State of Florida and mailed to OTTED at the address provided in Article 1 above, Attention: Timothy E. Proctor.  The payments shall be accompanied by (i) the amount of interest earned by the deposits, the name of the depository(ies), and interest rate(s); (ii) copies of all bank or investment statements and computational worksheets; and (iii) any other applicable information requested by OTTED.

(c)     Any and all cash remaining after payment of all amounts due to the Closing Fund Awardee pursuant to the Funding Agreement shall be distributed to OTTED.

Section 6.     Receipt  Delivery by the Escrow Agent of a signed and dated signature page hereto shall serve as acknowledgment by the Escrow Agent of receipt of the Award Funds (and any related instruments of transfer) on the date hereof and acceptance of the Award Funds in escrow.

Section 7.     Rights in the Escrow Account  While any amount of the Award Funds is held by the Escrow Agent, and pending the release thereof in accordance with Section 5 hereof, OTTED shall retain all right, title and interest in and to the Award Funds.

Section 8.     Disbursement Into Court  If, at any time, there shall exist any dispute between OTTED and the Closing Fund Awardee with respect to the holding or disposition of any portion of the Award Funds or any other obligations of Escrow Agent hereunder, or if at any time Escrow Agent is unable to determine, to Escrow Agent's sole satisfaction, the proper disposition of any portion of the Award Funds or Escrow Agent's proper actions with respect to its obligations hereunder, or if OTTED has not within thirty (30) days of the furnishing by Escrow Agent of a notice of resignation pursuant to Section 9 hereof, appointed a successor Escrow Agent to act hereunder, then Escrow Agent may, in its sole discretion, take either or both of the following actions:

(a)     suspend the performance of any of its obligations under this Escrow Agreement until such dispute or uncertainty shall be resolved to the sole satisfaction of Escrow Agent or until a successor Escrow Agent shall have been appointed (as the case may be); and/or

(b)     petition (by means of an interpleader action or any other appropriate method) any court of competent jurisdiction in Leon County, Florida, for instructions with respect to such dispute or uncertainty.

Escrow Agent shall have no liability to OTTED or the Closing Fund Awardee or to any other person with respect to any such suspension of performance or disbursement into court, specifically including any liability or claimed liability that may arise, or be alleged to have arisen, out of or as a result of, any delay in the disbursement of the Award Funds or any delay in or with respect to any other action required or requested of Escrow Agent.

Section 9.    Resignation and Removal of Escrow Agent    Escrow Agent may resign from the performance of its duties hereunder at any time by giving sixty (60) days' prior written notice to OTTED and the Closing Fund Awardee or may be removed, with or without cause, by OTTED, at any time by the giving of sixty (60) days prior written notice to Escrow Agent. Such resignation or removal shall take effect upon the appointment of a successor Escrow Agent as provided herein below. Upon any such notice of resignation or removal, OTTED shall appoint a successor Escrow Agent hereunder. Upon the acceptance in writing of any appointment as Escrow Agent hereunder by a successor Escrow Agent, such successor Escrow Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Escrow Agent, and the retiring Escrow Agent shall be discharged from its duties and obligations under this Escrow Agreement, but shall not be discharged from any liability for actions taken as Escrow Agent hereunder prior to such succession. After any retiring Escrow Agent's resignation or removal, the provisions of this Escrow Agreement shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Escrow Agent under this Escrow Agreement.

Section 10.    Liability of Escrow Agent.

(a)    Escrow Agent shall have no liability or obligation with respect to the Award Funds, except for Escrow Agent's willful misconduct or gross negligence. Escrow Agent's sole responsibility shall be for the safekeeping and disbursement of the Award Funds in accordance with the terms of this Escrow Agreement. Escrow Agent shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. Escrow Agent may rely upon any instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall in good faith believe to be genuine, to have been signed or presented by the person or parties purporting to sign the same and to conform to the provisions of this Escrow Agreement. Escrow Agent shall not be obligated to take any legal action or commence any proceeding in connection with the Award Funds, this Escrow Agreement or the Funding Agreement, or to appear in, prosecute or defend any such legal action or proceeding. Escrow Agent may consult legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or of any other agreement or of its duties hereunder, and shall incur no liability whatsoever in acting in accordance with the opinion or instruction of such counsel.

(b)    The Escrow Agent is authorized, in its sole discretion, to comply with orders issued or process entered by any court with respect to the Award Funds. If any portion of the Award Funds is at any time attached, garnished or levied upon under any court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any court order, or in case any order, judgment or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, the Escrow Agent is authorized, in its sole discretion, to rely upon and comply with any such order, writ, judgment or decree, which it is advised by legal counsel selected by it, is binding upon it, without the need for appeal or other action; and if the Escrow Agent complies with any such order, writ, judgment or decree, it shall not be liable to any of the parties hereto or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

Section 11.    Miscellaneous.

11.1.    Expenses.  All costs and expenses incurred in connection with this Escrow Agreement and the transactions contemplated hereby shall be paid by the party incurring such expenses.

11.2.    Dispute Resolution.  Any controversy or claim arising out of or relating to this Escrow Agreement, or any alleged breach hereof, shall be resolved in accordance with Florida Law.

11.3.    Notice.  All notices and other communications hereunder shall be in writing and shall be deemed to have been validly served, given or delivered five (5) days after deposit in the United States mails, by certified mail with return receipt requested and postage prepaid, when delivered personally, one (1) day after delivery to any overnight courier, or when transmitted by facsimile transmission facilities, and addressed to the party to be notified as follows:

If to OTTED to:

> EOG/OTTED
> 400 South Monroe Street
> The Capitol, Suite 2001
> Tallahassee, Florida 32399-0001
> Attn: Timothy E. Proctor
> Fax: (850) 487-3014

If to Closing Fund Awardee, to:

> Klausner Holding USA Inc.
> 1297 Professional Drive, Suite 202
> Myrtle Beach, SC 29577
> Attn:   Thomas Mende        .
> Fax:

If to Escrow Agent, to:

> Enterprise Florida, Inc.
> 800 North Magnolia Avenue, Suite 1100
> Orlando, Florida 32803
> Attn: Louis Laubscher
> Fax: (407) 316-4599

11.4.    Amendment or Waiver.  This Escrow Agreement may be changed, waived, discharged or terminated only by a writing signed by each of OTTED, Closing Fund Awardee, and Escrow Agent.  No delay or omission by any party in exercising any right with respect hereto shall operate as a waiver.  A waiver on any one occasion shall not be construed as a bar to, or waiver of, any right or remedy on any future occasion.

11.5.    Severability.   To the extent any provision of this Escrow Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Escrow Agreement.

11.6.    Governing Law.  This Escrow Agreement shall be construed and interpreted in accordance with the internal laws of the State of Florida without giving effect to the conflict of laws principles thereof.

11.7.    Entire Agreement: Assignment.  This Escrow Agreement (a) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, among the parties or any of them, with respect to the subject matter hereof; (b) is not intended to confer upon any other person any rights or remedies hereunder; and (c) shall not be assigned by operation of law or otherwise except in accordance with its terms.

11.8.    Binding Effect.  All of the terms of this Escrow Agreement, as amended from time to time, shall be binding upon, inure to the benefit of, and be enforceable by the respective heirs, successors and assigns of OTTED, Closing Fund Awardee, and Escrow Agent.

11.9.    Execution in Counterparts.  This Escrow Agreement and any Joint Written Direction may be executed in two or more counterparts, which when so executed shall constitute one and the same agreement or direction.

11.10.    Descriptive Headings.  The headings contained in this Escrow Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Escrow Agreement.

11.11.   Person and Gender.   The masculine gender shall include the feminine and neuter genders, the singular shall include the plural.

11.12.   Construction.   This Escrow Agreement shall be interpreted without regard to any presumption or rule requiring construction against the party causing this Escrow Agreement to be drafted.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals on the day first above written.

| OFFICE OF TOURISM, TRADE AND ECONOMIC DEVELOPMENT | KLAUSNER ~~TRADING INTERNATIONAL GMBH~~ Holding USA Inc. |
|---|---|
| By: _____ (signature) | By: _____ (signature) |
| Name: Michelle L Dennard | Name: Richard Buick |
| Title: Sr Attorney | Title: Treasurer |
| ENTERPRISE FLORIDA, INC., a Florida corporation By: _____ (signature) | |
| Name: Louis E. Landseher | |
| Title: SVP & COO | |

# STATE OF FLORIDA
## DEPARTMENT OF ECONOMIC OPPORTUNITY
### DIVISION OF STRATEGIC BUSINESS DEVELOPMENT
#### *QUICK ACTION CLOSING FUND AGREEMENT*

## AMENDMENT NUMBER 1

This First Amendment to DSBD Agreement OT11-283 is made and entered into this _31_ day of _August_, 2011, by and between the State of Florida, Department of Economic Opportunity's Division of Strategic Business Development, hereinafter referred to as "DSBD," and Klausner Holding USA Inc., hereinafter referred to as "Closing Fund Awardee," pursuant to Section 288.1088, Florida Statutes. DSBD and the Closing Fund Awardee are sometimes also hereinafter referred to as a "Party" and collectively as the "Parties."

This Amendment is entered into for the purpose of modifying the Agreement as requested by the Closing Fund Awardee and consistent with DSBD policy. The Parties wish to amend the Agreement to ensure that the terms of the Agreement comply with current law and DSBD office procedures. The number of jobs to be created and the funding amount the Closing Fund Awardee is eligible to receive shall remain the same as initially agreed upon.

The Enterprise Florida, Inc. Quick Action Closing Fund Request for Consideration and the Closing Fund Awardee documentation, including any attachments, submitted in lieu of an application, are attached hereto and incorporated as an integral part of this agreement, and will be referred to as "Exhibit 1."

In consideration of the mutual promises and agreements contained herein, the Parties agree to amend the Agreement as follows:

1. Paragraph 5.0(b)(3) is hereby deleted and replaced by the following:

(3) Submission of modeling protocol to the Florida Department of Environmental Protection for the proposed project in Suwannee County, FL, as a precursor to the air permit by August 30, 2011.

**DUPLICATE ORIGINALS**: This Agreement is executed in duplicate originals.

In Witness whereof, DSBD and the Closing Fund Awardee have caused this agreement to be executed and delivered by their duly authorized representatives.

STATE OF FLORIDA
DIVISION OF STRATEGIC
BUSINESS DEVELOPMENT

AUTHORIZED SIGNATURE                     Date

TITLE:  Senior Attorney
        Division Director

WITNESSES:

KLAUSNER HOLDING USA INC.

AUTHORIZED SIGNATURE                     Date

TITLE: PRESIDENT

WITNESSES:

List of Exhibits:

| | |
|---|---|
| Exhibit 1 | Original Quick Action Closing Fund Agreement |
| Exhibit 2 | Special Audit Requirements |
| Exhibit 3: | Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable) |

2

# STATE OF FLORIDA
# DEPARTMENT OF ECONOMIC OPPORTUNITY
## *QUICK ACTION CLOSING FUND AGREEMENT*

## AMENDMENT NUMBER TWO

This Second Amendment to DSBD Agreement OT11-283 is made and entered into this _9_ day of _January_____, 2012, by and between the State of Florida, Department of Economic Opportunity's Division of Strategic Business Development, hereinafter referred to as "DSBD," and Klausner Holding USA, Inc., hereinafter referred to as "Closing Fund Awardee," pursuant to Section 288.1088, Florida Statutes. DSBD and the Closing Fund Awardee are sometimes also hereinafter referred to as a "Party" and collectively as the "Parties."

    This Amendment is entered into for the purpose of modifying the Agreement as requested by the Closing Fund Awardee and consistent with DSBD policy. The Parties wish to amend the Agreement to extend by one year the job-creation and capital investment schedules; adjust the annual job-creation commitments; and update the terms of the Agreement to comply with current law and DSBD policies. The number of jobs to be created and the funding amount the Closing Fund Awardee is eligible to receive shall remain the same as initially agreed upon.

    The initial Agreement executed June 30, 2011, and all of its attachments and Exhibits are attached hereto and incorporated as an integral part of this agreement, and will be referred to as "Exhibit 1."

    In consideration of the mutual promises and agreements contained herein, the Parties agree to amend the Agreement as follows:

1

1. Section 1.0 is hereby deleted and replaced by the following:

   **1.0 PARTIES:** The parties and their respective addresses for purposes of this Agreement are as follows:

   > STATE OF FLORIDA
   > DEPARTMENT OF ECONOMIC OPPORTUNITY
   > DIVISION OF STRATEGIC BUSINESS DEVELOPMENT
   > THE CAPITOL, SUITE 2001
   > TALLAHASSEE, FLORIDA 32399-0001
   >
   > KLAUSNER HOLDING USA, INC.
   > 1297 PROFESSIONAL DRIVE, SUITE 202
   > MYRTLE BEACH, SC 29577

2. Section 2.0 is hereby deleted and replaced by the following:

   **2.0 ADMINISTRATORS:**

   The State's Closing Fund Agreement administrator is:

   Karl Blischke, Chief Analyst

   The Closing Fund Awardee Agreement administrator is:

   All approvals and notifications referenced in this Agreement must be obtained in writing from the parties' agreement administrators or their duly authorized designees.

3. Section 3.0 is hereby deleted and replaced by the following:

   **3.0 TERM:** The term of this Agreement shall commence upon the date of execution of this Agreement, and continue through June 30, 2020, for all terms except for the record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0), unless terminated prior to that time as provided for in this Agreement. The record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0) of the Closing Fund Awardee shall continue through June 30, 2025, unless terminated prior to that time as provided for in this Agreement.

**4. Paragraphs 5.0(d) and 5.0(e) are hereby deleted and replaced by the following:**

**5.0 PROJECT DESCRIPTION AND AWARD CONDITIONS:**

(d) In order to remain qualified for the Closing Fund award payment authorized in this Agreement and to avoid sanctions, the Closing Fund Awardee must meet the conditions below:

(1) Creation and maintenance of at least 350 net new project jobs in Suwannee County, Florida, by December 31, 2015, in accordance with the schedule provided in the QTI Tax Refund Application. These jobs will be phased in, with the first phase consisting of the creation of at least 86 net-new full-time equivalent project jobs in Florida, fully implemented by December 31, 2013; the second phase, consisting of the creation of at least an additional 164 net-new project jobs for a cumulative total of at least 250 net-new full-time equivalent project jobs in Florida, fully implemented by December 31, 2014; and the third phase, consisting of the creation of at least an additional 100 net-new project jobs for a cumulative total of at least 350 full-time equivalent project jobs in Florida, fully implemented by December 31, 2015. These jobs must be maintained for at least an additional three years, until December 31, 2018.

(2) The Base Period for this project's jobs remains June 1, 2010 through May 31, 2011;

(3) The average annual wage of project jobs specified in Paragraph 5.0(d)(1) above will remain at least $30,000, excluding benefits; and

(4) The Closing Fund Awardee must invest a total of at least $150,000,000 in the new facility in Suwannee County by December 31, 2015, and maintain that investment for an additional three (3) years, until December 31, 2018. Documentation of this investment must

be presented to DSBD or its agent by January 31, 2016, and continue to be presented to DSBD each year thereafter until January 31, 2019.

(e) The Closing Fund Awardee has made a one-time election to extend the job creation and investment schedule by one year.  Execution of this Amendment eliminates the Closing Fund Awardee's eligibility for another extension of the term of the performance requirements and sanctions.

5.  **Paragraphs 7.0(c) and 7.0(d) are hereby deleted and replaced by the following, and Paragraph 7.0(g) is added:**

(c) Submit annual certification of its employment and annual average wage payment using a Qualified Target Industry Tax Refund (QTI) Claim application or alternate equivalent documentation acceptable to DSBD, every State of Florida fiscal year by January 31 of said year.  The QTI claim application or alternate equivalent documentation must be submitted annually through January 31, 2019.

(d) Certify and submit documentation that at least 80 percent of the total investment specified in Paragraph 5.0(c)(4) has been made in the facility in Suwannee County, Florida, as of December 31, 2015, and continues to be located in Suwannee County, Florida, as of December 31, 2018.

(g) Expend the award on purposes consistent with Project commitments.

6.  **Paragraph 19.0(b) is hereby deleted and replaced by the following:**

(b) The books, records, documents and other evidence shall be subject at all times to inspection, review, or audit by DSBD or its designee, or by state personnel of the Office of the Auditor General or Department of Financial Services.  Copies of the reporting package required

by this agreement shall be submitted by or on behalf of the recipient to DSBD and the State of Florida Auditor General.

7. **Section 20.0 is hereby deleted and replaced by the following:**

20.0 **PUBLIC RECORDS**: All public records made or received by the Closing Fund Awardee in conjunction with the Quick Action Closing Fund Award are subject to the provisions of Chapter 119, Florida Statutes. Materials that relate to methods of manufacture or production, potential trade secrets, potentially patentable material, actual trade secrets, business transactions, financial and proprietary information, and agreements or proposals to receive funding that are received, generated, ascertained, or discovered by DSBD, as exempted in Section 288.9520, Florida Statutes, or as exempted under Sections 288.075 and/or 288.9520, Florida Statutes shall remain confidential and exempt from public disclosure. Such confidential and exempt information should be marked by the Closing Fund Awardee as confidential.

8. **This Amendment is not intended to increase the maximum amount that may be paid to the Closing Fund Awardee under the original Agreement.**

9. **The Parties reaffirm all portions of Exhibit 1 not in conflict with this Amendment. Performance in accordance with this Amendment will be considered performance of the Agreement.**

5

**DUPLICATE ORIGINALS**: This Agreement is executed in duplicate originals.

In Witness whereof, DSBD and the Closing Fund Awardee have caused this agreement to be executed and delivered by their duly authorized representatives.

**STATE OF FLORIDA
DIVISION OF STRATEGIC
BUSINESS DEVELOPMENT**

_____ 1.9.13
AUTHORIZED SIGNATURE        Date

TITLE:       Division Director

WITNESSES:

_____

**KLAUSNER HOLDING USA,
INC.**

_____ _____
AUTHORIZED SIGNATURE        Date

TITLE: _____

WITNESSES:

_____

Approved as to form and legal
sufficiency, subject only to full and
proper execution by the parties

Office of the General Counsel
Department of Economic Opportunity

By: _____

Approved Date: 01/08/2013

List of Exhibits:

| Exhibit 1 | Original Quick Action Closing Fund Agreement |
| Exhibit 2 | Special Audit Requirements |
| Exhibit 3: | Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable) |

6

**DUPLICATE ORIGINALS**: This Agreement is executed in duplicate originals.

In Witness whereof, DSBD and the Closing Fund Awardee have caused this agreement to be executed and delivered by their duly authorized representatives.

**STATE OF FLORIDA
DIVISION OF STRATEGIC
BUSINESS DEVELOPMENT**

**KLAUSNER HOLDING USA, INC.**

_____
**AUTHORIZED SIGNATURE        Date**

_____
**AUTHORIZED SIGNATURE        Date**

**TITLE:**        Division Director

**TITLE:**   *Director*

**WITNESSES:**

**WITNESSES:**

_____

_____

_____

_____

Approved as to form and legal
sufficiency, subject only to full and
proper execution by the parties

**Office of the General Counsel
Department of Economic Opportunity**

**By:**

**Approved Date:**

**List of Exhibits:**

| | |
|---|---|
| **Exhibit 1** | **Original Quick Action Closing Fund Agreement** |
| **Exhibit 2** | **Special Audit Requirements** |
| **Exhibit 3:** | **Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable)** |

6

# STATE OF FLORIDA
# DEPARTMENT OF ECONOMIC OPPORTUNITY
## *QUICK ACTION CLOSING FUND AGREEMENT*

### AMENDMENT NUMBER 3

This Third Amendment to Agreement OT11-283 ("Agreement") is made and entered into this _17_ day of _October_, 2013, by and between the State of Florida's Department of Economic Opportunity, Division of Strategic Business Development ("DSBD") and Klausner Holding USA, Inc. ("Closing Fund Awardee"). DSBD and the Closing Fund Awardee are sometimes also hereinafter referred to individually as a "Party" and collectively as the "Parties."

**WHEREAS**, pursuant to 288.0656, Florida Statutes, it is the Legislature's intent to "encourage and facilitate the location and expansion of major economic development projects of significant scale" in rural communities;

**WHEREAS**, this project is locating in Suwannee County, Florida, a designated "rural area of critical concern", within a "catalyst site" as defined in 288.0656(2)(b), Florida Statutes;

**WHEREAS**, this project is a designated "catalyst project" as defined in 288.0656(2)(a), Florida Statutes;

**WHEREAS**, Suwannee County and the Closing Fund Awardee acknowledge this project has been delayed due to circumstances beyond their control (necessary site preparation due to possibility of sinkhole activity); and,

**WHEREAS**, DSBD, in an effort to facilitate the location and success of this project in a rural area of critical concern, is amending this Agreement to extend the time by which the

1

Closing Fund Awardee may request its Closing Fund award from the Enterprise Florida, Inc. escrow account and meet its subsequent Performance Conditions.

     **NOW THEREFORE**, in consideration of the mutual covenants and obligations set forth herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to amend the Agreement as follows:

1. **Section 1.0 is hereby deleted and replaced by the following:**

     **1.0 <u>PARTIES</u>:** The parties and their respective addresses for purposes of this Agreement are as follows:

> **STATE OF FLORIDA**
> **DEPARTMENT OF ECONOMIC OPPORTUNITY**
> **DIVISION OF STRATEGIC BUSINESS DEVELOPMENT**
> **107 EAST MADISON STREET**
> **THE CALDWELL BUILDING, MSC-80**
> **TALLAHASSEE, FLORIDA 32399**
> **FAX NUMBER: (850) 410-4770**
>
> **KLAUSNER HOLDING USA, INC.**
> **1297 PROFESSIONAL DRIVE, SUITE 202**
> **MYRTLE BEACH, SOUTH CAROLINA  29577**
> **FAX NUMBER: (843) 626-9629**

2. **Section 2.0 is hereby deleted and replaced by the following:**

     **2.0 <u>ADMINISTRATORS</u>:**

The State's Closing Fund Agreement administrator is:

     Karl Blischke, Chief for Bureau of Compliance & Accountability

The Closing Fund Awardee Agreement administrator is:

All approvals and notifications referenced in this Agreement must be obtained in writing from the parties' agreement administrators or their duly authorized designees.

2



3. **Section 3.0 is hereby deleted and replaced by the following:**

    **3.0 TERM**: The term of this Agreement shall commence upon the date of execution of this Agreement, and continue through June 30, 2021, for all terms except for the record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0), unless terminated prior to that time as provided for in this Agreement.  The record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0) of the Closing Fund Awardee shall continue through June 30, 2026, unless terminated prior to that time as provided for in this Agreement.

4. **Paragraphs 5.0(c) and 5.0(d) are hereby deleted and replaced by the following:**

    **5.0 PROJECT DESCRIPTION AND AWARD CONDITIONS**:

    (c) The "Award Conditions" for the release and payment of $3,000,000 from the EFI escrow account to the Closing Fund Awardee shall be met when the following have occurred:

    (1) Public announcement of the project's location in Suwannee County, Florida;

    (2) Acquisition (ownership) by the Closing Fund Awardee of the land (approximately 100 to 175 acres) in Suwannee County, Florida; and,

    (3) Capital investment of at least $12 million toward site preparation and other costs associated with construction of the new facility in Suwannee County, Florida.

    Supporting documentation shall be submitted to DSBD for verification of the aforementioned conditions.  Verification must be complete to DSBD's satisfaction prior to disbursement of the payment.  To receive payment from the EFI escrow account, Award Conditions shall be met and payment shall be requested no later than June 30, 2014.

3



(d) In order to remain qualified for the Closing Fund award payment authorized in this Agreement and to avoid sanctions, the Closing Fund Awardee must meet the conditions below:

(1) Creation and maintenance of at least 350 net new project jobs by December 31, 2016, in accordance with the schedule provided in the QTI Tax Refund Application, if applicable. (These jobs will be phased in, with the first phase consisting of the creation of at least 86 net new full-time equivalent project jobs in Florida, fully implemented by December 31, 2014; the second phase, consisting of the creation of at least an additional 164 project jobs for a cumulative total of at least 250 full-time equivalent project jobs in Florida, fully implemented by December 31, 2015; and, the third and final phase, consisting of the creation of at least an additional 100 project jobs for a cumulative total of at least 350 full-time equivalent project jobs in Florida, fully implemented by December 31, 2016. These jobs must be maintained (averaged over each reporting year) for at least an additional three (3) years, until December 31, 2019.

(2) The Base Period for this project's jobs is June 1, 2010, through May 31, 2011, and the Base Job number is set to zero (0);

(3) The average annual wage of project jobs specified in Paragraph 5.0(d)(1) above is at least $30,000, excluding benefits; **and**

(4) The Closing Fund Awardee must invest a total of at least $150,000,000 in the new facility by December 31, 2016, and maintain that investment for an additional three (3) years, until December 31, 2019. Documentation of this investment must be presented to DSBD by January 31, 2017, and continue to be presented to DSBD each year thereafter until January 31, 2020.

4



(e) As reflected in Amendment Two, the Closing Fund Awardee used the one-time extension that was available to the Closing Fund Awardee to extend the job creation and investment schedule by one year. However, as additional delay has resulted from site conditions discovered at the catalyst site after entering the Agreement, in furtherance of the stated objective of section 288.0565, F.S., to encourage and facilitate the location and expansion of major economic development projects of significant scale in rural areas of critical economic concern, the Closing Fund Awardee's job creation and investment schedule requirements have been extended an additional year.

5. **Paragraphs 7.0(c) and 7.0(d) are hereby deleted and replaced by the following:**

(c) Submit annual certification of its employment and annual average wage payment using a Qualified Target Industry Tax Refund (QTI) Claim application or alternate equivalent documentation acceptable to DSBD, every State of Florida fiscal year by January 31 of said year. The QTI claim application or alternate equivalent documentation must be submitted annually through January 31, 2020.

(d) Certify and submit documentation that at least 80 percent of the total investment specified in Paragraph 5.0(d)(4) has been made in the facility in Suwannee County, Florida as of December 31, 2016, and continues to be located in Suwannee County, Florida as of December 31, 2019.

6. **Section 8.0 is hereby deleted and replaced by the following:**

8.0 **INDEMNIFICATION:** The Closing Fund Awardee shall be fully liable for the actions of its agents, employees, partners, or subcontractors and shall fully indemnify, defend, and hold harmless the State and DEO, and their officers, agents, and employees, from suits, actions, damages, and costs of every name and description, including attorneys' fees, arising



from or relating to: (i) personal injury and damage to real or personal tangible property alleged to be caused in whole or in part by the Closing Fund Awardee, its agents, employees, partners, or subcontractors, provided, however, that the Closing Fund Awardee shall not indemnify for that portion of any loss or damages proximately caused by the negligent act or omission of the State or DEO; (ii) the breach of any representation, warranty, covenant or agreement made by the Closing Fund Awardee in this Agreement or the application for the Closing Fund award, or any allegation by a third party that, if true, would constitute such a breach; and, (iii) any arrangement made by or on behalf of the Closing Fund Awardee or any of its affiliates with any broker, finder or agent in connection with this Agreement or the transactions contemplated hereby.

7. **Paragraph 10.0(h) is hereby deleted and replaced by the following:**

(h) The interest rate shall be determined by the annualized interest rate received by the State on funds in the State's Special Purpose Investment Account in January of the year in which the performance standard was not satisfied by the Closing Fund Awardee. This rate is published online at http://fltreasury.org/fs_01.html

8. **Section 14.0 is hereby deleted and replaced by the following:**

14.0 **UNAUTHORIZED ALIENS**: DSBD will consider the knowing employment by the Closing Fund Awardee of unauthorized aliens, as described in 8 U. S. C. Section 1324a of the Immigration and Naturalization Act, cause for termination of this Agreement.

9. **Paragraph 17.0 is hereby deleted and replaced by the following:**

17.0 **EXPENSES**: All costs and expenses incurred by the Closing Fund Awardee in connection with this Agreement and the transactions contemplated hereby shall be the responsibility of the Closing Fund Awardee.



**10. Section 19.0, Accounting, Reports, and Audits, is hereby deleted and replaced by the following:**

### 19.0 RECORD-KEEPING AND AUDIT-RELATED OBLIGATIONS:

(a) Records pertaining to this Agreement, which include, without limitation, supporting documentation for the application process, the General Project Overview and its attachment, documentation pertaining to the Award, and records sufficient to demonstrate compliance with the terms of this Agreement, including personnel and financial records and reports related to the Project Job, Average Project Wage and Capital Investment Requirements, shall be retained by the Closing Fund Awardee for the longer of (i) five (5) state fiscal years after the term of this Agreement, which includes satisfaction of all reporting requirements and receipt of all payments due under this Agreement; provided, that all applicable audits have been released, or (ii) five (5) years after the date that the last audit report is released. If any litigation, claim, negotiation, or other action involving records has been started before the expiration of the controlling period as identified above, the records shall be retained until completion of the action and resolution of all issues which arise from it, or until the end of the controlling period as identified above, whichever is longer. The Closing Fund Awardee shall maintain these records according to generally accepted accounting principles, procedures, and practices.

(b) The records identified in Section 19.0(a) shall be subject at all times to inspection, review, or audit by DSBD or its designee, or by state personnel of the Office of the Auditor General or Department of Financial Services, or by other state personnel. Copies of the reporting package required by this Agreement shall be submitted by or on behalf of the Closing Fund Awardee to DSBD and the State of Florida Auditor General. The Closing Fund Awardee shall, upon the request of DSBD, afford to DSBD and each of its respective employees, advisors, counsel and other authorized representatives, during normal business hours, reasonable access, upon reasonable advance notice, to all of the books, records and properties of the Closing Fund Awardee are reasonably related to this Agreement and to all managers and employees of the Closing Fund Awardee reasonably necessary to conduct such on-site inspection, review, or audit.

7



11. Section 20.0 is hereby deleted and replaced by the following:

20.0 **PUBLIC RECORDS**: The Closing Fund Awardee shall allow public access to all records made or received by the Closing Fund Awardee in conjunction with the Quick Action Closing Fund or this Agreement, unless such records are exempt from section 24(a) of Article 1 of the State Constitution and Subsection 119.07(1), Florida Statutes. It is expressly understood that DSBD may unilaterally cancel this Agreement for the Closing Fund Awardee's refusal to comply with this provision. If the Closing Fund Awardee submits records to DSBD that are confidential and exempt from public disclosure pursuant to Section 288.075, Florida Statutes, as trade secrets or proprietary confidential business information, such records should be marked by the Closing Fund Awardee as confidential prior to submittal to DSBD.

12. Section 22.0 is hereby deleted and replaced by the following:

22.0 **NON-ASSIGNMENT**: The Closing Fund Awardee shall not assign, sublicense, nor otherwise transfer its rights, duties, or obligations under this Agreement without the prior written consent of DSBD, which consent will not be unreasonably withheld. DSBD will at all times be entitled to assign or transfer its rights, duties, or obligations under this Agreement to another governmental agency in the State of Florida, upon giving prior written notice to the Closing Fund Awardee. In the event that DSBD approves transfer of the Closing Fund Awardee's obligations, the Closing Fund Awardee remains responsible for all work performed and all expenses incurred in connection with this Agreement.

13. All references in the Agreement and its Exhibits to the "Executive Office of the Governor" are hereby replaced with the "Department of Economic Opportunity" and all references in the Agreement and its Exhibits to the "Office of Tourism, Trade, and



Economic Development" or "OTTED" are hereby replaced with the "Division of Strategic Business Development" or "DSBD", respectively.

14.   This Amendment does not increase the maximum amount that may be paid to the Closing Fund Awardee under the original Agreement.

15.   Exhibit 2 of Amendment Two (2), Special Audit Requirements, is hereby deleted and replaced with Attachment 1, titled, "Exhibit B, Special Audit Requirements," and incorporated by reference herein.

16.   **Exhibit 3 of Amendment Two (2), Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Wage, is hereby deleted and replaced with the Attachment 2, titled "Exhibit C, Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Wage," and incorporated by reference herein.**

17.   **The Parties reaffirm all portions of Agreement OT11-283 not in conflict with this Amendment.   Performance in accordance with this Amendment will be considered performance of the Agreement.**

18.   **Section 12.0, Legal Requirements, is hereby incorporated by reference as if fully restated herein.**

*[The remainder of this page has been intentionally left blank.]*

9



**COUNTERPARTS**: This Amendment may be executed in one or more counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts taken together will constitute one and the same instrument.

**IN WITNESS WHEREOF,** by their signatures below, the signatories affirm the approval of all paragraphs contained herein, attest to their authority to bind their respective Parties to this Amendment, and cause this Amendment to be executed.

**STATE OF FLORIDA DEPARTMENT OF ECONOMIC OPPORTUNITY, DIVISION OF STRATEGIC BUSINESS DEVELOPMENT**

_____   10.17.13
AUTHORIZED SIGNATURE         Date

TITLE: _____ Division Director _____

**KLAUSNER HOLDINGS USA, INC.**

_____   _____
AUTHORIZED SIGNATURE         Date

TITLE: _____

List of Attachments:
    Attachment 1: Exhibit B,   Special Audit Requirements
    Attachment 2: Exhibit C,   Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable)

Approved as to form and legal sufficiency, subject only to full and proper execution by the Parties

Office of the General Counsel
Department of Economic Opportunity

By: _____

Approved Date: 10 - 15 - 13

**STATE OF FLORIDA**
**DEPARTMENT OF ECONOMIC OPPORTUNITY**
*QUICK ACTION CLOSING FUND*
*AGREEMENT*

**AMENDMENT NUMBER FOUR**

This Amendment (the "Amendment") amends that certain Quick Action Closing Fund (QACF) Agreement (OT11-283) dated as of October 17, 2013, as amended (the "Agreement"), by and between the Division of Strategic Business Development of the Florida Department of Economic Opportunity ("DSBD") and Klausner Holding USA, Inc, and any Subsidiary QACF Business and Affiliate QACF Business (as such terms are hereinafter defined) (collectively with the Company, the "QACF Business" and collectively with DSBD, the "Parties"). Capitalized terms used, but not otherwise defined, in this Amendment shall have the meanings ascribed to such terms in the Agreement.

**RECITALS**

WHEREAS, this Amendment is entered into for the purposed of modifying the Agreement as requested by the QACF Business and consistent with DSBD policy; and

WHEREAS, the number of jobs to be created, annual average wages to be paid, and capital investment to be made shall remain the same as initially agreed upon.

NOW THERFORE, in consideration of the mutual covenants and obligations set forth herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to amend the Agreement as follows:

1. **Paragraph 5.0(d)(4) is hereby deleted and replaced by the following:**

(4)    The Closing Fund Awardee shall provide evidence satisfactory to DSBD in its reasonable discretion that a capital investment (excluding the acquisition or leasing of real property) of at least $150,000,000 in Suwannee County, Florida, as determined in accordance with this Agreement, has been made by or on behalf of the Closing Fund Awardee in connection with the Project by no later than December 31, 2016 (the "Capital Investment Schedule") and maintain that investment for an additional three (3) years until December 31, 2019.

2. **The Parties reaffirm all portions of Agreement OT11-283 as previously amended not in conflict with this Amendment.**

*[The remainder of this page has been intentionally left blank]*

**COUNTERPARTS**. This Amendment may be executed in one or more counterparts, any one of which need not contain the signature of more than one Party, but all such counterparts taken together will constitute one and the same instrument.

**IN WITNESS WHEREOF**, the Parties have duly executed and delivered this Amendment as of the date last executed, below.

**QACF BUSINESS**

**KLAUSNER HOLDING USA, INC.**

By: _____

    Name:  Stephan

    Title:   CEO

    Date:   Sep. 11 / 2019

**DSBD**

**FLORIDA DEPARTMENT OF ECONOMIC OPPORTUNITY, DIVISION OF STRATEGIC BUSINESS DEVELOPMENT**

By: _____

    Name:  Brian McManus

    Title:   Chief of Staff

    Date:   9-19-19

**Approved as to form and legal sufficiency, subject only to full and proper execution by the Parties.**

**Office of the General Counsel Department of Economic Opportunity**

By: _____

**Approved Date:** 09/13/2019



# LEON COUNTY Receipt of Transaction
## Receipt #    1602173

GWEN MARSHALL
Clerk of Court and Comptroller
LEON COUNTY, FLORIDA

**Received From:**
Ausley McMullen
P.O. Box 391
Tallahassee, FL  32302

**On Behalf Of:**

,

On: 11/8/2021  8:57:28AM
Transaction # 100867214
Cashiered by: Y SMITH

| CaseNumber   2021 CA 001720 |
|---|

**Judge   ANGELA C DEMPSEY**

**FLORIDA DEPARTMENT OF ECONOMIC OPPORTUNITY   *VS*   KLAUSNER HOLDING USA INC**

Comments:

| Fee Description | Fee | Prior Paid | Waived | Due | Paid | Balance |
|---|---|---|---|---|---|---|
| (COMP_CA) COMPLAINT | 400.00 | 0.00 | 400.00 | 0.00 | 0.00 | 0.00 |
| (SUIS) SUMMONS ISSUED | 10.00 | 0.00 | 0.00 | 10.00 | 10.00 | 0.00 |
| (SUIS) SUMMONS ISSUED | 10.00 | 0.00 | 10.00 | 0.00 | 0.00 | 0.00 |
| Total: | 420.00 | 0.00 | 410.00 | 10.00 | 10.00 | 0.00 |

| | Grand Total: | 420.00 | 0.00 | 410.00 | 10.00 | 10.00 | 0.00 |
|---|---|---|---|---|---|---|---|

| PAYMENTS |
|---|

| Payment Type | Reference | | Amount | Refund | Overage | Change | Net Amount |
|---|---|---|---|---|---|---|---|
| CREDIT CARD EFILE | 138021146 | OK | 10.00 | 0.00 | 0.00 | 0.00 | 10.00 |
| | Payments Total: | | 10.00 | 0.00 | 0.00 | 0.00 | 10.00 |

# VERIFIED RETURN OF NON-SERVICE

**State of Florida** **County of Leon** **Circuit Court**

Case Number: 2021 CA 001720

Plaintiff:
**STATE OF FLORIDA DEPARTMENT OF ECONOMIC OPPORTUNITY**

vs.

Defendant:
**KLAUSNER HOLDING USA, INC.**

For:
Erik M. Figlio
Ausley McMullen
P.O. Box 391
Tallahassee, FL 32301

Received by Capital Court Services on the 7th day of October, 2021 at 2:15 pm to be served on **Klausner Holding USA, Inc. c/o Leopold Stephan, 17152 46th Trace, Live Oak, FL 32060**.

I, Mike Fisch, do hereby affirm that on the **8th day of November, 2021** at **7:15 am, I:**

**NON-SERVED** the **Summons; Uniform Order for Active, Differential Case Management; Complaint with Exhibits** for the reason that I failed to find **Klausner Holding USA, Inc. c/o Leopold Stephan** or any information to allow further search. Read the comments below for further details.

**Additional Information pertaining to this Service:**
10/9/2021 1:54 pm Attempted service at 17152 46th Trace, Live Oak, FL 32060, Server was informed by management that the concrete plant was purchased by a new company. Klausner Holdings is no longer in business.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served and no notary is required under F.S. 92.525 (2).



**Mike Fisch**
2021-004

**Capital Court Services**
**221 W. Park Avenue**
**#1682**
**Tallahassee, FL 32302**
**(850) 273-8508**

Our Job Serial Number: ERN-2021001965

Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.2e

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT,
IN AND FOR LEON COUNTY, FLORIDA

STATE OF FLORIDA,
DEPARTMENT OF ECONOMIC OPPORTUNITY,

      Plaintiff,

v.                                  Case No.: 2021-CA-001720

KLAUSNER HOLDING USA, INC.,

      Defendant.

_____/

## **AFFIDAVIT OF SERVICE OF PROCESS**

STATE OF FLORIDA
COUNTY OF LEON

      BEFORE ME, the undersigned authority, this day personally appeared ALEXANDRA E. AKRE, who being by me first duly sworn, deposes and says under penalty of perjury:

      1.     I am over the age of eighteen (18) and am otherwise competent to make the statements in this Affidavit. I am an attorney for the plaintiff State of Florida Department of Economic Opportunity (the "Department") in this action.

      2.     This action was originally filed on October 5, 2021. Service was attempted at the last known address for Defendant Klausner Holding USA, Inc ("Klausner Holding"), a foreign for-profit company who has engaged in business in the State of Florida, but was unsuccessful. *See* Ex. "A." A copy of the complaint was also emailed to Klausner Holding's last known officers, which, upon information and belief was read, *see* Ex. "B," and mailed to Klausner Holding's parent company's last known business address which, upon information and belief was delivered, *see* Ex. "C." Undersigned counsel also contacted counsel for Klausner Holding in an unrelated action, and the last known officers for Klausner Holding, again, via email, attaching a copy of the

complaint and requesting an address at which the Department could effectuate service, however no address was provided. *See* Ex. "D."

3.     On November 5, 2021, the Department filed an amended complaint setting forth the basis for substituted service. A copy of the amended complaint was emailed to the last known officers for Klausner Holding, with a request for an address at which the Department could effectuate service. *See* Ex. "E." Upon information and belief the email was read, however, no response was received. *Id.*

4.     Thereafter, undersigned counsel caused a copy of the amended process and complaint in this action to be sent to the Secretary of State of Florida with the statutory fee. It was received and accepted by the Secretary of State. *See* Ex. "F." Within several days of receiving the notice of acceptance, undersigned counsel mailed the notice of service of process to Klausner Holding at its last known addresses with a copy of the process and complaint in this action by certified mail, return receipt requested. *See* Ex. "G." The return receipts returned by the United States Postal Service were returned undelivered. *See* Ex. "H." In light of the foregoing, despite a diligent search and inquiry to discover the principal place of business and status of the defendant, upon information and belief the defendant is concealing itself so that process cannot be served upon it so as to bind the corporation.

5.     Under penalties of perjury, I declare that I have read the foregoing affidavit and the facts stated in it are true.

Dated this 1st day of February, 2022.

By: _____
       Alexandra E. Akre
       Attorney for the Plaintiff

*[Notarized on Following Page]*

2

STATE OF FLORIDA
COUNTY OF LEON

The foregoing Affidavit of Service of Process was acknowledged before me by means of

[✓] physical presence or [___] online notarization, this ⎽1st⎽ day of February, 2022, by

ALEXANDRA E. AKRE, who [✓] is personally known to me or [___] produced

_____ as identification.



NOTARY PUBLIC

My Commission Expires: _____

CYNTHIA B. SULLIVAN
MY COMMISSION # GG 939576
EXPIRES: December 22, 2023
Bonded Thru Notary Public Underwriters

3

## VERIFIED RETURN OF NON-SERVICE

| | | |
|---|---|---|
| **State of Florida** | **County of Leon** | **Circuit Court** |

Case Number: 2021 CA 001720

Plaintiff:
**STATE OF FLORIDA DEPARTMENT OF ECONOMIC OPPORTUNITY**

vs.

Defendant:
**KLAUSNER HOLDING USA, INC.**

For:
Erik M. Figlio
Ausley McMullen
P.O. Box 391
Tallahassee, FL 32301

Received by Capital Court Services on the 7th day of October, 2021 at 2:15 pm to be served on **Klausner Holding USA, Inc. c/o Leopold Stephan, 17152 46th Trace, Live Oak, FL 32060**.

I, Mike Fisch, do hereby affirm that on the **8th day of November, 2021** at **7:15 am, I:**

**NON-SERVED** the **Summons; Uniform Order for Active, Differential Case Management; Complaint with Exhibits** for the reason that I failed to find **Klausner Holding USA, Inc. c/o Leopold Stephan** or any information to allow further search.  Read the comments below for further details.

**Additional Information pertaining to this Service:**
10/9/2021  1:54 pm  Attempted service at 17152 46th Trace, Live Oak, FL  32060, Server was informed by management that the concrete plant was purchased by a new company.  Klausner Holdings is no longer in business.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served and no notary is required under F.S. 92.525 (2).

**Mike Fisch**
2021-004

**Capital Court Services**
**221 W. Park Avenue**
**#1682**
**Tallahassee, FL 32302**
**(850) 273-8508**

Our Job Serial Number: ERN-2021001965

Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.2e

EXHIBIT "A"

**From:**         Stephan, Leopold <Leopold.Stephan@klausner-group.com>
**To:**           Cynthia Sullivan
**Sent:**         Saturday, October 9, 2021 8:02 AM
**Subject:**      Read: State of Florida, Department of Economic Opportunity v. Klausner Holding USA, Inc.


Your message

  To: Stephan, Leopold
  Subject: State of Florida, Department of Economic Opportunity v. Klausner Holding USA, Inc.
  Sent: Friday, October 8, 2021 9:25:24 PM (UTC+01:00) Amsterdam, Berlin, Bern, Rome, Stockholm, Vienna

 was read on Saturday, October 9, 2021 2:01:48 PM (UTC+01:00) Amsterdam, Berlin, Bern, Rome, Stockholm, Vienna.

**From:**      Stephan, Leopold <Leopold.Stephan@klausner-group.com>
**To:**        Cynthia Sullivan
**Sent:**      Saturday, October 9, 2021 8:02 AM
**Subject:**   Read: State of Florida, Department of Economic Opportunity v. Klausner Holding USA, Inc.

Your message

  To: Stephan, Leopold
  Subject: State of Florida, Department of Economic Opportunity v. Klausner Holding USA, Inc.
  Sent: Friday, October 8, 2021 9:25:24 PM (UTC+01:00) Amsterdam, Berlin, Bern, Rome, Stockholm, Vienna

 was read on Saturday, October 9, 2021 2:01:48 PM (UTC+01:00) Amsterdam, Berlin, Bern, Rome, Stockholm, Vienna.

EXHIBIT "B"

# USPS Tracking®

FAQs >

## Track Another Package  +

**Tracking Number:** EH022511377US

Remove ✕

Your item was delivered in AUSTRIA at 12:30 pm on October 19, 2021.

## ⊘ Delivered

October 19, 2021 at 12:30 pm
AUSTRIA

**Get Updates** ⌄

---

| | |
|---|---|
| **Text & Email Updates** | ⌄ |

| | |
|---|---|
| **Tracking History** | ⌄ |

| | |
|---|---|
| **Product Information** | ⌄ |

**See Less** ⌃

Feedback

EXHIBIT "C"



**UNITED STATES POSTAL SERVICE** ®

## USPS Customs Declaration and Dispatch Note

- Print in English using blue or black ink.
- Complete all **SHADED** fields before acceptance.
- See the Privacy Notice on the reverse of Copy 4.

EH022511377US

**SENDER**

| Full Last Name | Full First Name | MI |
|---|---|---|
| Fulip | Kirk | |



Business Name (If applicable): Ainsley McMullen law firm

Sender's Telephone: 850-224-9115

Address-1: 123 S. Calhoun St

Address-2:

| City | State | ZIP Code™ |
|---|---|---|
| Tallahassee | FL | 32301 |

**ADDRESSEE'S INFORMATION**

| Full Last Name | Full First Name | MI |
|---|---|---|
| Stephen | Leppon | |

Business Name (If applicable): Klausner Neidmeike Enteilgung Heller Embh

Address-1: Parachuver 9 St Johann In Tirol V-80

Address-2:

| City | State/Province | Country |
|---|---|---|
| | | Austria |

Postal Code:

**SHIPMENT INFORMATION**

**1.** Category of Items (Check all that apply)
- ☑ Document
- ☐ Commercial Sample
- ☐ Merchandise
- ☐ Dangerous Goods
- ☐ Gift
- ☐ Returned Goods
- ☐ Humanitarian Donation
- ☐ Other

**2.** Detailed Description of Contents (Enter only one item per line)

| Detailed Description | 3. Quantity | 4. Net Weight (Ea) Lbs. Oz. | 5. Value (Ea) U.S. $ |
|---|---|---|---|
| Legal Documents | 5 | | |
| | | | |
| | | | |
| **6.** Total | | | |

**SHIPMENT INFORMATION** (*CONTINUED*) — BOXED AREA IS FOR USPS-USE ONLY

| USPS Official Use | USPS Corporate Account | EMS Scheduled Delivery Date / / |
|---|---|---|
| Total Postage/Fees (U.S. $) | Insured Value (U.S. $) | Insured Fee (U.S. $) |

**7.** Sender's Email Address

**8.** Addressee's Email Address

**9.** Exporter's Reference (If applicable and known)

**10.** Exporter's Telephone (If applicable and known)

**11.** Importer's Reference (If applicable and known)

**12.** Importer's Telephone (If applicable and known)

**13.** AES ITN (If applicable)

**14.** AES Exemption — NOEEI§ (Check one if applicable)
- ☐ § 30.36
- ☐ § 30.37 (a)
- ☐ § 30.37 (h)
- ☐ § 30.37 (y)
- ☐ Other _____

**15.** License Number (If applicable)

**16.** Certificate Number (If applicable)

**17.** Invoice Number (If applicable)

**18.** Length (Inches)

**19.** Width (Inches)

**20.** Height (Inches)

**21.** Restrictions (If applicable — check all that apply)
- ☐ Quarantine
- ☐ Sanitary/Phytosanitary Inspection

**22.** Nondelivery Instructions (Check one)
- ☐ Return to Sender
- ☐ Treat as Abandoned

**23.** Sender's Signature and Date

I certify the particulars given in this customs declaration are correct. This package does not contain any undeclared dangerous items, or items prohibited by legislation or by postal or customs regulations. I have met all applicable export filing requirements under federal law and regulations.

For Business Mailers, for items in Block 2 (if the information is known)

**24.** HS Tariff Number

**25.** Country of Origin

PS Form **2976-R**, April 2016   PSN 7530-17-000-7992          IMPORTANT: This package may be opened officially.          **4 – Sender's Copy**

**From:**          Daniel Astin <dastin@ciardilaw.com>
**Sent:**          Tuesday, October 19, 2021 5:42 PM
**To:**            Rick Figlio; Walter Gouldsbury; Alexandra Akre
**Subject:**       Re: State of Florida Department of Economic Opportunity v. Klausner Holding USA

We don't represent them on this matter at this point please don't try to leverage them through us.  We are at the moment a stranger to your st
suit we are not your conduit - I realize you know that. We were limited in our engagement in the BK case.

Daniel K. Astin
Managing Partner
Ciardi Ciardi & Astin, LLC
(302)-384-9541 (Direct)
• Wilmington • Philadelphia
• San Diego • Cherry Hill
www.ciardilaw.com

**From:** Rick Figlio <RFiglio@ausley.com>
**Sent:** Tuesday, October 19, 2021 3:44:48 PM
**To:** Walter Gouldsbury <wgouldsbury@ciardilaw.com>; Alexandra Akre <AAkre@ausley.com>; Daniel Astin <dastin@ciardilaw.com>
**Subject:** RE: State of Florida Department of Economic Opportunity v. Klausner Holding USA

You don't often get email from rfiglio@ausley.com. Learn why this is important

Walter – thank you for the response, and I understand.

If the client refuses to authorize you to accept service, will you ask them about providing us with other instructions?  Another counsel?  Someone else who will accept service directly?

Otherwise, we will need to note the same in an amended pleading and utilize the substituted service provisions in Florida statutes.  In other words, while I am not suggesting that they are intentionally avoiding service at this point, if they do decide to intentionally avoid service, I believe the complaint can nonetheless be served.

If you have any questions about that, please let me know. I do appreciate your response and willingness to raise the question with your client.

Best,



1

EXHIBIT "D"



**From:** Walter Gouldsbury <wgouldsbury@ciardilaw.com>
**Sent:** Tuesday, October 19, 2021 4:36 PM
**To:** Alexandra Akre <AAkre@ausley.com>; Daniel Astin <dastin@ciardilaw.com>
**Cc:** Rick Figlio <RFiglio@ausley.com>
**Subject:** Re: State of Florida Department of Economic Opportunity v. Klausner Holding USA

You don't often get email from wgouldsbury@ciardilaw.com. Learn why this is important

I have a call in with a client contact and will revert.    We are not authorized to accept service at this time.

Get Outlook for iOS

**From:** Alexandra Akre <AAkre@ausley.com>
**Sent:** Friday, October 15, 2021 3:07 PM
**To:** Daniel Astin; Walter Gouldsbury
**Cc:** Rick Figlio
**Subject:** State of Florida Department of Economic Opportunity v. Klausner Holding USA

Some people who received this message don't often get email from aakre@ausley.com. Learn why this is important

Good afternoon,

My colleague Rick Figlio just left you a voicemail regarding this matter, and I thought it would be helpful to follow up with an email. We represent the State of Florida Department of Economic Opportunity in a case filed in Leon County circuit court against Klausner Holding USA. A copy of the complaint is attached. We are reaching out because we understand that you are counsel of record for Klausner Holding in an unrelated bankruptcy matter, and would like to know if you would accept service on their behalf, or, in the alternative, if you could provide any guidance as to how to effect service.

We look forward to speaking with you.

Sincerely,

| | |
|---|---|
| **From:** | Alexandra Akre |
| **Sent:** | Monday, October 25, 2021 4:16 PM |
| **To:** | 'leopold.stephan@klausner-group.com'; 'michael.almberger@klausner-group.com' |
| **Cc:** | Rick Figlio |
| **Subject:** | State of Florida, Department of Economic Opportunity v. Klausner Holding USA, Inc. |
| **Attachments:** | 2021.10.5 Complaint.pdf |

| **Tracking:** | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | 'leopold.stephan@klausner-group.c | | |
| | 'michael.almberger@klausner-grou| | |
| | Rick Figlio | Delivered: 10/25/2021 4:18 PM | Read: 10/25/2021 4:22 PM |

Good afternoon,

I am an attorney, and I, along with my colleague Rick Figlio, represent the State of Florida, Department of Economic Opportunity in a lawsuit filed by the Department against Klausner Holding USA, Inc. related to the Quick Action Closing Fund. A copy of the complaint is attached. We have been attempting to effect formal service of the complaint, and would appreciate you answering the following questions:

1. Is Klausner Holding USA, Inc. represented by counsel in this matter?
2. If so, will you please provide the contact information of your counsel?
3. If not, will you please let us know how you would like us to serve the attached complaint?

We believe that we can effect legal service irrespective of your cooperation, but we would prefer to work cooperatively with you or your counsel as this action proceeds forward. We look forward to hearing from you.

Sincerely,





1

**From:** Almberger, Michael <Michael.Almberger@klausner-group.com>
**To:** Alexandra Akre
**Sent:** Thursday, October 28, 2021 5:59 AM
**Subject:** Read: State of Florida, Department of Economic Opportunity v. Klausner Holding USA, Inc.

Your message

   To: Almberger, Michael
   Subject: State of Florida, Department of Economic Opportunity v. Klausner Holding USA, Inc.
   Sent: Monday, October 25, 2021 8:16:18 PM (UTC+00:00) Monrovia, Reykjavik

 was read on Thursday, October 28, 2021 9:59:06 AM (UTC+00:00) Monrovia, Reykjavik.

**From:** Stephan, Leopold <Leopold.Stephan@klausner-group.com>
**To:** Alexandra Akre
**Sent:** Monday, October 25, 2021 5:50 PM
**Subject:** Read: State of Florida, Department of Economic Opportunity v. Klausner Holding USA, Inc.

Your message

To: Stephan, Leopold
Subject: State of Florida, Department of Economic Opportunity v. Klausner Holding USA, Inc.
Sent: Monday, October 25, 2021 10:16:18 PM (UTC+01:00) Amsterdam, Berlin, Bern, Rome, Stockholm, Vienna

was read on Monday, October 25, 2021 11:50:26 PM (UTC+01:00) Amsterdam, Berlin, Bern, Rome, Stockholm, Vienna.

| | |
|---|---|
| **From:** | Alexandra Akre |
| **Sent:** | Friday, November 5, 2021 4:20 PM |
| **To:** | 'leopold.stephan@klausner-group.com'; 'michael.almberger@klausner-group.com' |
| **Cc:** | Rick Figlio |
| **Subject:** | RE: State of Florida, Department of Economic Opportunity v. Klausner Holding USA, Inc. |
| **Attachments:** | Amended Complaint.pdf; Summons To Be Issued By Clerk.pdf |
| | |
| **Importance:** | High |

| **Tracking:** | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | 'leopold.stephan@klausner-group.c | | |
| | 'michael.almberger@klausner-group | | |
| | Rick Figlio | Delivered: 11/5/2021 4:21 PM | Read: 11/5/2021 4:25 PM |

Good afternoon,

Please see the attached amended complaint and summons. Please let us know an address to send the amended complaint via certified mail, or, alternatively, please let us know if you have retained counsel in this matter and their contact information so that we can communicate through them.

Thank you,





---

**From:** Alexandra Akre
**Sent:** Monday, October 25, 2021 4:16 PM
**To:** 'leopold.stephan@klausner-group.com' <leopold.stephan@klausner-group.com>; 'michael.almberger@klausner-group.com' <michael.almberger@klausner-group.com>
**Cc:** Rick Figlio <RFiglio@ausley.com>
**Subject:** State of Florida, Department of Economic Opportunity v. Klausner Holding USA, Inc.

Good afternoon,

I am an attorney, and I, along with my colleague Rick Figlio, represent the State of Florida, Department of Economic Opportunity in a lawsuit filed by the Department against Klausner Holding USA, Inc. related to the Quick Action Closing

EXHIBIT "E"

Fund. A copy of the complaint is attached. We have been attempting to effect formal service of the complaint, and would appreciate you answering the following questions:

1. Is Klausner Holding USA, Inc. represented by counsel in this matter?
2. If so, will you please provide the contact information of your counsel?
3. If not, will you please let us know how you would like us to serve the attached complaint?

We believe that we can effect legal service irrespective of your cooperation, but we would prefer to work cooperatively with you or your counsel as this action proceeds forward. We look forward to hearing from you.

Sincerely,

**From:**             Almberger, Michael <Michael.Almberger@klausner-group.com>
**To:**               Alexandra Akre
**Sent:**            Friday, November 5, 2021 4:50 PM
**Subject:**       Read: RE: State of Florida, Department of Economic Opportunity v. Klausner Holding
                          USA, Inc.

Your message

  To: Almberger, Michael
  Subject: RE: State of Florida, Department of Economic Opportunity v. Klausner Holding USA, Inc.
  Sent: Friday, November 5, 2021 8:20:07 PM (UTC+00:00) Monrovia, Reykjavik

 was read on Friday, November 5, 2021 8:49:45 PM (UTC+00:00) Monrovia, Reykjavik.

**From:** Stephan, Leopold <Leopold.Stephan@klausner-group.com>
**To:** Alexandra Akre
**Sent:** Friday, November 5, 2021 5:49 PM
**Subject:** Read: RE: State of Florida, Department of Economic Opportunity v. Klausner Holding USA, Inc.

Your message

  To: Stephan, Leopold
  Subject: RE: State of Florida, Department of Economic Opportunity v. Klausner Holding USA, Inc.
  Sent: Friday, November 5, 2021 9:20:07 PM (UTC+01:00) Amsterdam, Berlin, Bern, Rome, Stockholm, Vienna

 was read on Friday, November 5, 2021 10:49:08 PM (UTC+01:00) Amsterdam, Berlin, Bern, Rome, Stockholm, Vienna.



## FLORIDA DEPARTMENT OF STATE
### Division of Corporations

December 2, 2021

ERIK M. FIGLIO, ESQ
P.O. BOX 391
TALLAHASSEE, FL  32302

Pursuant to Chapter 48.181, Florida Statutes, a copy of the process and initial pleading, case number 2021CA001720, was accepted for KLAUSNER HOLDING USA, INC., and was filed on November 29, 2021, at 04:00 PM.

Plaintiff(s)

 STATE OF FLORIDA, DEPARTMENT OF ECONOMIC OPPORTUNITY,

-vs-

Defendant(s)

 KLAUSNER HOLDING USA, INC.,

THE SECRETARY OF STATE DOES NOT FORWARD DOCUMENTATION TO THE DEFENDANT.

All inquiries on behalf of the defendant should be made to the attorneys involved.

Bradley J Beech
Processor of Service
DIVISION OF CORPORATIONS

Letter No. 921A00028968

EXHIBIT "F"

Division of Corporations - P.O. BOX 6327 -Tallahassee, Florida 32314

# IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT,
## IN AND FOR LEON COUNTY, FLORIDA

STATE OF FLORIDA,
DEPARTMENT OF ECONOMIC OPPORTUNITY,

     Plaintiff,

v.                              Case No.: 2021-CA-001720

KLAUSNER HOLDING USA, INC.,

     Defendant.

_____/

## SUMMONS

**TO:  KLAUSNER HOLDING USA, INC.**
      **c/o Secretary of State**
      **P.O. Box 6327**
      **Tallahassee, FL  32314**

### IMPORTANT

A lawsuit has been filed against you in this court.  You have 20 calendar days after receiving this summons to file your written response to the attached complaint.  This response must be filed with the clerk of the court at the address below.

If you do not file your response on time, you may lose your case.  (The court could enter a judgment in favor of the plaintiff and you could lose wages, money and property without further warning).

You may want to contact an attorney right away, as court proceedings can get involved and advice of counsel could be very important to you.  If you do not know an attorney, you may call an attorney referral service or a legal aid office listed in the telephone directory.  If you do not hire an attorney and chose to represent yourself in court, make sure that your response contains the case number and the names of the parties (as shown at the top of this page).

**The original of your response must be filed with:**
      **Gwen Marshall - Leon County Clerk of Court**
      **ATTN: Circuit Civil Division**
      **Leon County Courthouse**
      **301 South Monroe Street, Room 232**
      **Post Office Box 726**
      **Tallahassee, Florida   32301**

EXHIBIT "G"

**A copy of your response must also be mailed or delivered to the plaintiff's attorney:**
**Erik M. Figlio**
**Ausley & McMullen, P.A.**
**Post Office Box 391**
**Tallahassee, Florida  32302**
**(850) 224-9115**

Remember to keep a copy of your response for your own referral.

## IMPORTANTE

    Usted ha sido demandado legalmente.  Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, pueded llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

    Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANTE

    Des poursuites judiciares ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce tribunal.  Un simple coup de telephone est insuffisant pour vous proteger.  Vous etes obliges de deposer votre response ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause.  Si vous ne deposez pas votre response ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

    Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalegment, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre response ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

**In accordance with the Americans With Disabilities Act, persons with disabilities needing a special accommodation to participate in this proceeding should contact Court Administration, at the Leon County Courthouse, Clerk of the Circuit Court, Tallahassee, Florida  32301, telephone number (850) 577-4000, not later than seven (7) days prior to the proceeding.  If hearing impaired (TDD) 1-800-955-8771, or Voice (V) 1-800-955-8770, via Florida Relay Service.**

**THE STATE OF FLORIDA**

**TO EACH SHERIFF OF THE STATE:** You are commanded to serve this Summons and a copy of the Complaint in this lawsuit on the above-named Defendant.

**WITNESS MY HAND AND SEAL OF SAID COURT:**

**Dated on** ___11/8/2021___

                                               **GWEN MARSHALL**
                                               **CLERK OF THE CIRCUIT COURT**

                                         **By:** _____
                                                 **Deputy Clerk**



# AUSLEY MCMULLEN

ATTORNEYS AND COUNSELORS AT LAW

123 SOUTH CALHOUN STREET
P.O. BOX 391 (ZIP 32302)
TALLAHASSEE, FLORIDA 32301
(850) 224-9115  FAX (850) 222-7560

November 22, 2021

**CERTIFIED MAIL**

Klausner Holding USA, Inc.
c/o Florida Secretary of State
P.O. Box 6327
Tallahassee, FL  32314

Re:     Florida Department of Economic Opportunity v. Klausner Holding USA, Inc.
        Case No.: 2021-CA-001720

Dear Sir/Madam:

        Pursuant to section 48.181, Florida Statutes, and for the reasons alleged in the Amended Complaint, the Division of Corporations is authorized to accept service in this matter.  Two copies of the Summons and Amended Complaint, along with a copy of the Affidavit of Non-Service and our firm's check #143562 in the amount of $8.75 is enclosed herewith.

                        Sincerely,

                        Alexandra E. Akre

AEA/cds

Enclosures



**FLORIDA DEPARTMENT OF STATE**
Division of Corporations

December 2, 2021

ERIK M. FIGLIO, ESQ
P.O. BOX 391
TALLAHASSEE, FL  32302

Pursuant to Chapter 48.181, Florida Statutes, a copy of the process and initial pleading, case number 2021CA001720, was accepted for KLAUSNER HOLDING USA, INC., and was filed on November 29, 2021, at 04:00 PM.

Plaintiff(s)

 STATE OF FLORIDA, DEPARTMENT OF ECONOMIC OPPORTUNITY,

-vs-

Defendant(s)

 KLAUSNER HOLDING USA, INC.,

THE SECRETARY OF STATE DOES NOT FORWARD DOCUMENTATION TO THE DEFENDANT.

All inquiries on behalf of the defendant should be made to the attorneys involved.

Bradley J Beech
Processor of Service
DIVISION OF CORPORATIONS

Letter No. 921A00028968

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT,
IN AND FOR LEON COUNTY, FLORIDA**

STATE OF FLORIDA,
DEPARTMENT OF ECONOMIC OPPORTUNITY,

     Plaintiff,

v.                                       Case No.: 2021-CA-1720

KLAUSNER HOLDING USA, INC.,

     Defendant**.**

_____/

### AMENDED COMPLAINT

     Plaintiff, STATE OF FLORIDA DEPARTMENT OF ECONOMIC OPPORTUNITY

("DEO"), files this amended complaint against Defendant, KLAUSNER HOLDING USA, INC.

("Klausner"), and, in support thereof, alleges as follows:

I.
INTRODUCTION

     1.    This action arises out of Klausner's failure to perform its material contractual

obligations under the Quick Action Closing Fund Agreement (the "Agreement"), attached hereto

as Exhibit "A."

II.
THE PARTIES

     2.    Plaintiff, DEO is an agency of the Executive Branch of the State of Florida, created

pursuant to section 20.60, Florida Statutes. DEO is the successor agency to the Office of Tourism,

Trade, and Economic Development the original signatory on the Agreement. Among the agency's

directives is to facilitate economic growth in Florida by promoting innovation, a pro-business

climate, and business opportunity, utilizing a number of tools, including economic incentives. The

Quick Action Closing Fund (the "QACF") is one such incentive administered by DEO, through which DEO enters into a performance-based contract with a recipient that receives an up-front cash incentive that can be retained if specific milestones, outlined in the contract, are achieved.

3.      Defendant, Klausner, is a foreign for-profit holding company of Klausner Trading USA, Inc. The Klausner Group, of which Klausner and Klausner Trading USA, Inc, are a part of, includes: Klausner Holding Deutschland GmbH, a parent company of Klausner Hobelwerk GmbH and Klausner Holz Thuringen GmbH, a parent company of Klausner Holz Niedersachsen GmbH and Klausner Holz Sachsen GmbH; Klausner Trading International GmbH; and Klausner Nordamerika Beteiligungs Holding GmbH, a parent company for Klausner Trading USA, Inc., and Klausner Lumber One, Inc. The Klausner Group is or was one of the largest wood-industry companies in the world. The Klausner Group sells or sold lumber products worldwide including in Europe, North America, and Asia. Pursuant to the Agreement, the Klausner Group established a sawmill in Suwannee County, Florida. Klausner Lumber One, LLC, was the name of the company located in Suwannee County, and was a 100% subsidiary of Klausner. Klausner's application for the QACF, the parties' communications, and a September 2019 amendment to the Agreement makes clear that the business relationship is between DEO and the Klausner Group, as a whole.

III.
JURISDICTION AND VENUE

4.      This is an action involving claims for damages in excess of $30,000.00, exclusive of attorneys' fees and costs.

5.      This Court has subject matter jurisdiction pursuant to article V, section 5(b) of the Florida Constitution.

2

6.     This Court has personal jurisdiction over Klausner under section 48.193(l)(a)(7), Florida Statutes, because Klausner breached a contract in this state by failing to perform acts required by a contract to be performed in this state.

7.     Venue is proper in Leon County, by agreement of the parties, pursuant to Paragraph 12(a) of the Agreement.

8.     All conditions precedent have occurred, been performed, and/or been waived or excused by the acts and/or omissions of Klausner.

9.     Pursuant to section 48.181, Florida Statutes, substitute service is proper. Klausner is a foreign corporation that conducted business in the State of Florida, and that does not have a resident agent or officer in the state, and, therefore, through its actions, has appointed the Florida Secretary of State as its agent on whom all process in any action or proceeding against it arising out of any transaction or operation connected with or incidental to the business or business venture may be served.

10.    Further, upon information and belief, Klausner is no longer a resident of the state, or is otherwise concealing its whereabouts.

11.    The Department has exercised due diligence in attempting to locate Klausner. Specifically, the Department initially attempted to serve Klausner on October 9, 2021, at the "principal office address" listed on Georgia's corporation division's website.

12.    Thereafter, the Department attempted to contact counsel that represents Klausner in an unrelated case, and, after several phone calls and emails, was informed by counsel that they did not represent Klausner in this matter.

13.     The Department asked counsel for an address to which the Department could serve the complaint, or, alternatively, the identity of Klausner's counsel in this matter, if any, but received no response.

14.     On October 25, 2021, the Department, using the last known email addresses of Klausner's officers, contacted Klausner directly asking for an address to effect service or the contact information for counsel. Upon information and belief, this email was read, but no response was received.

15.     Contemporaneously, the Department served via email evidence preservation letters on Klausner, and its affiliated entities, with a copy of the complaint attached and instructions to contact the undersigned counsel. Upon information and belief, officers for Klausner read the email, but failed to respond.

16.     Thus, to the extent there is a failure of delivery, that failure is directly and solely attributable to Klausner.

17.     Upon information and belief, the individuals upon whom service was attempted are actually aware of this action, and the Department's attempts to serve them, and are avoiding service.

IV.
FACTS

18.     In 1999, the Florida Legislature created the QACF in order to ensure that sufficient resources were "available to respond to extraordinary economic opportunities and to compete effectively for these high-impact business facilities." § 288.1088, Florida Statutes (2011). The QACF was intended to be a "deal closing" tool in highly competitive negotiations for projects where Florida's traditional incentives are not enough to win the deal. All QACF projects include

a performance-based contract with the state, which outlines specific milestones that must be achieved.

19.     To be eligible for receipt of funds under the QACF, the business must, among other things, have a positive economic benefit ratio of at least 5:1, pay an average annual wage of at least 125 percent of the areawide or statewide private sector average wage, and be supported by the local community in which the project is to be located.

20.     After receiving an application, DEO, in conjunction with Enterprise Florida Inc. ("EFI"), must review the application and make a recommendation to the Governor.

21.     If the application is approved, DEO and the awardee are to enter into a performance-based contract providing for the payment of cash incentives in exchange for an agreed-upon number of new Florida jobs at an-above average wage and the investment of a specified amount of capital.

22.     The contract is also required by statute to provide for sanctions for failure to meet these agreed-upon metrics.

23.     In or around June 2011, "United Pine," a to-be-formed subsidiary of Klausner, applied for an award of funds under the QACF. Ultimately, the entity was named "Klausner Lumber One, LLC," however the Agreement is between Klausner and the Department.

24.     As justification for the award, Klausner stated that it intended to establish a state of the art saw and planing mill, including $150 million in capital investments. Klausner stated that it expected to create 350 jobs to support the sawmill, with an annualized average wage of $30,000. Klausner explained that that the proposed location for the sawmill in Florida, Suwannee County, had high unemployment, and that the proposed project would greatly impact the community by creating jobs, and bringing ancillary benefits to local businesses.

25.     In its application, Klausner also stated that it was considering locating the sawmill in North Carolina, Virginia, and South Carolina, but noted that any incentive awards from the State of Florida would help cover land improvements, offset taxes, and help Klausner quickly establish its sawmill operations. Klausner stated to DEO that without the funds provided through the QACF, Klausner would not have located its sawmill in the State of Florida.

26.     Klausner also stated that the Klausner Group had always been a good corporate citizen in the communities in which it operated worldwide, and had won numerous production awards in the European communities where it was located.

27.     Indeed, Klausner's application relied upon the Klausner Group's past experiences and credentials. When questioned about the relationship between Klausner and the Klausner Group, a representative from Klausner Trading USA, Inc., explained that Klausner was a holding company for Klausner Trading USA, Inc., which was owned by the European holding company, which was owned entirely by Fritz Klausner.

28.     Based on Klausner's application and the commitments contained therein, as well as the result of the economic impact analysis, DEO and EFI jointly recommended approving Klausner for an QACF award. The recommendation memorandum explained the history of the Klausner Group and noted the expected economic benefits.

29.     On June 24, 2011, Governor Rick Scott approved an award of $3,000,000, pursuant to the QACF, to "Klausner Trading International GmbH."  The award was conditioned upon, among other things, Klausner meeting its job-creation, wage, and capital equipment investment requirements.

30.     On June 30, 2011, DEO and Klausner executed the Agreement, which sets out the terms of the parties' obligations. The Agreement was amended a total of four times—on August 31, 2011, on January 9, 2013, on October 17, 2013, and on September 19, 2019.

31.     The Agreement, as amended, provided that Klausner would need to meet certain requirements before receiving full payment, and that it would need to meet other enumerated requirements in order to avoid sanctions and/or termination of the Agreement.

32.     Particularly relevant to this matter, the Agreement required Klausner to fulfill various annual reporting requirements, to create 350 new net full-time equivalent jobs by December 31, 2016, to maintain an average annual wage of at least $30,000, excluding benefits, and to invest a total of at least $150,000,000 in the new facility by December 31, 2016, and maintain that investment for an additional three years until December 31, 2019.

33.     With respect to the job and wage requirements, the job creation schedule was as follows: 86 jobs by December 31, 2014, a total of 250 jobs by December 31, 2015, and a total of 350 jobs by December 31, 2016. Klausner was obligated to maintain these jobs for additional three years, or at least until December 31, 2019.

34.     With respect to the capital investment requirements, the Agreement, as amended, required Klausner to submit evidence satisfactory to DEO, in its reasonable discretion, that Klausner made a capital investment (excluding the acquisition or leasing of real property) of least $150,000,000 in Suwannee County Florida, by no later than December 31, 2016, and that Klausner maintained that investment for an additional three years, until December 31, 2019.

35.     With respect to reporting requirements, Exhibit C of the Agreement specifically outlines what information must be submitted as employment and wage documentation on an annual basis. Klausner was also required to maintain personnel and financial records and reports

related to jobs, wages, and capital investments, and submit an annual certification of its employment and annual average wage payment by January 31 of each fiscal year. Klausner further agreed to comply and cooperate with any monitoring procedures deemed appropriate by DEO.

36.     The Agreement specified that upon the failure of Klausner to comply with a material term or condition, including terms in the Agreement relating to reporting and compliance monitoring, DEO was entitled to terminate the Agreement and seek repayment of the entire award amount and a penalty. Interest is to be calculated based on the interest rate received by the State on mid-term investments at the time payment is due.

37.     For example, in any year in which Klausner failed to create at least 80% of the required jobs, Klausner was subject to a sanction equal to one-fifth of the QACF payment, plus interest.

38.     Similarly, if Klausner did not reach 80% of its capital investment requirement by December 31, 2016, Klausner was required to repay a prorated share of the closing fund award, plus interest.

39.     The Agreement also mandated that any requirement repayment, interest, or penalty was due within sixty days of receipt of written notice from DEO.

40.     The Agreement was executed on June 30, 2011, and, thereafter, DEO fulfilled its primary obligation under the Agreement by releasing $3,000,000 from an escrow account to Klausner.

41.     Several years following execution of the Agreement, Klausner ceased complying with its obligations under the Agreement. Namely, Klausner refused to cooperate with compliance monitoring procedures, and failed to provide satisfactory evidence that it had met its capital investment requirements for calendar years 2016, 2017, 2018, and 2019.

42.     Indeed, Klausner blatantly flouted its contractual obligations owed to DEO, both through its nonperformance of mandatory duties required by the Agreement and through its repeated refusal to respond in a timely manner, or respond at all, to letters from DEO demanding performance and ultimately imposing sanctions.

43.     For its failure to provide requested information relating to its 2016 performance, and, ultimately, for its failure to confirm that it satisfied its 2016 capital investment obligations, DEO sanctioned Klausner in the amount of $1,082,322.08.

44.     DEO notified Klausner of the sanction on June 17, 2020, and specified that payment was to be made within 60 days of receipt of the demand.

45.     Klausner received the demand on June 26, 2020. The demand went unanswered and unpaid.

46.     For its failure to provide requested information relating to its 2017 performance, and, ultimately, for its failure to confirm that it satisfied its 2017 capital investment obligations, DEO sanctioned Klausner in the amount of $1,086,606.90.

47.     DEO notified Klausner of the sanction on July 15, 2020, and specified that payment was to be made within 60 days of receipt of the demand.

48.     Klausner received the demand on July 21, 2020. The demand went unanswered and unpaid.

49.     For its failure to provide requested information relating to its 2018 performance, and, ultimately, for its failure to confirm that it satisfied its 2018 capital investment obligations, DEO sanctioned Klausner in the amount of $889,930.30.

50.     DEO notified Klausner of the sanction on September 23, 2020, and specified that payment was to be made within 60 days of receipt of the demand.

51.     Klausner received the demand on October 15, 2020. The demand went unanswered and unpaid.

52.     In January 2021, DEO sent Klausner and Klausner Trading International GmbH a final demand letter. The letter identified the previous demand letters and noted that these letters were only sent after multiple attempted by DEO to validate Klausner's satisfaction of the performance requirements set forth in the Agreement.

53.     As provided for under the Agreement, DEO demanded full repayment of the QACF award, plus interest, in the amount of $3,052,859.28, within 10 business days of the date of the letter. Klausner did not even acknowledge receipt of the letter.

54.     In light of Klausner's nonperformance, DEO is entitled to full repayment of the QACF award, plus interest, in accordance with the unambiguous terms of the Agreement.

55.     Moreover, because of Klausner's nonperformance, DEO has not received the expected return on investment and the expected economic benefit.

V.
<u>COUNT I – BREACH OF CONTRACT</u>

56.     DEO incorporates by reference the allegations previously set forth above.

57.     This is an action for breach of the Agreement between DEO and Klausner wherein Klausner materially failed to perform under the Agreement.

58.     DEO and Klausner entered into a valid contract.

59.     DEO has satisfied all of its material obligations under the Agreement.

60.     All conditions required by the Agreement for Klausner's performance have occurred.

61.     Without legal justification or excuse, Klausner has materially breached the contract by failing to meet the capital investment requirements under the Agreement, by failing to provide

DEO the necessary documentation to demonstrate performance under the Agreement, and by failing to cooperate with monitoring procedures deemed appropriate by DEO.

62.     Without legal justification or excuse, Klausner has also materially breached the contract by failing to remit the sanction amount assessed in 2020, and by failing to return the full amount of QACF award, in the amount of $3,052,859.28, upon demand in 2021.

63.     DEO has suffered damages as a result of Klausner's breach.

WHEREFORE DEO requests that judgment be entered in its favor and against Klausner for damages, interest, costs, and such other relief as the Court deems just and proper.

## VI.
## PRAYER FOR RELIEF

WHEREFORE, the State of Florida, Department of Economic Opportunity, respectfully requests this Court:

a.   Enter judgment against Klausner, for breach of contract and award reliance and/or expectation damages to DEO resulting from said breach, as well as any interest owed, as required by the Agreement;

b.   Award DEO the reasonable costs and expenses incurred by DEO in prosecuting this action, and reasonable attorneys' fees if lawfully permitted;

c.   Grant any further relief the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Dated this 5th day of November, 2021.

Respectfully submitted,

/s/ *Erik M. Figlio*
Robert N. Clarke, Jr.
Fla. Bar No. 592900
Erik M. Figlio
Fla. Bar No: 745251
Alexandra E. Akre
Fla Bar. No. 125179
AUSLEY McMULLEN, P.A.
123 South Calhoun Street
P.O. Box 391 (zip 32302)
Tallahassee, Florida 32301
(850) 224-9115 – telephone
(850) 222-7560 – facsimile
rfiglio@ausley.com
aakre@ausley.com
ATTORNEYS FOR PLAINTIFF

# EXHIBIT A

# STATE OF FLORIDA
# OFFICE OF THE GOVERNOR
## *QUICK ACTION CLOSING FUND AGREEMENT*

## AGREEMENT

**THIS AGREEMENT** (OT11-283) is made and entered into this ___30___ day of ___June___, 2011, by and between the State of Florida, Executive Office of the Governor's Office of Tourism, Trade, and Economic Development, hereinafter referred to as "OTTED," and Klausner Holding USA Inc., hereinafter referred to as the "Closing Fund Awardee," pursuant to Section 288.1088, Florida Statutes.

OTTED has determined that the Closing Fund Awardee has met all of the requirements necessary to become certified to participate in the Quick Action Closing Fund (Closing Fund) and that all statutorily required reviews and approvals have been obtained pursuant to Section 288.1088, Florida Statutes, and

The Enterprise Florida, Inc. Quick Action Closing Fund Request for Consideration and the Closing Fund Awardee documentation, including any attachments, submitted in lieu of an application, are attached hereto and incorporated as an integral part of this agreement, and will be referred to as "Exhibit A."

**This Agreement is neither a general obligation of the State of Florida, nor is it backed by the full faith and credit of the State of Florida. Payment of Closing Fund Awards are conditioned on and subject to specific annual appropriations by the Florida Legislature of funds sufficient to pay amounts authorized in Section 288.1088, Florida Statutes, and**

1

In consideration for the mutual promises and agreements contained herein, and other valuable and good consideration, OTTED and the Closing Fund Awardee agree as follow:

**1.0 PARTIES**: The parties and their respective addresses for purposes of this Agreement are as follows:

> STATE OF FLORIDA
> OFFICE OF THE GOVERNOR
> OFFICE OF TOURISM, TRADE, AND ECONOMIC DEVELOPMENT
> THE CAPITOL, SUITE 2001
> TALLAHASSEE, FLORIDA 32399-0001
> FAX NUMBER: (850) 487-3014
>
> KLAUSNER HOLDING USA INC.
> 1230 PEACHTREE STREET, SUITE 3100
> ATLANTA, GA 30309
> FAX NUMBER: _____

**2.0 ADMINISTRATORS**:

The State's Closing Fund Agreement administrator is:

Timothy E. Proctor, Chief Analyst _____.

The Closing Fund Awardee Agreement administrator is:

_____

All approvals and notifications referenced in this Agreement must be obtained in writing from the parties' agreement administrators or their duly authorized designees.

**3.0 TERM**: The term of this Agreement shall commence upon the date of execution of this Agreement, and continue through June 30, 2019, for all terms except for the record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0), unless terminated prior to that time as provided for in this Agreement. The record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0) of the Closing Fund Awardee shall continue through June 30, 2024, unless terminated prior to that time as provided for in this Agreement.

## 4.0 CLOSING FUND AWARDEE DESCRIPTION:

(a) The Closing Fund Awardee is or will be an operating unit of Klausner Holding USA Inc..  It is identified for unemployment compensation purposes under the unit name(s) of Klausner    Holding    USA    Inc.                          ;    account    number(s), _____.

(b) The Closing Fund Awardee understands and agrees that the requirements in Paragraphs 7.0, 9.0, 10.0 and 19.0 of this Agreement pertain only to the project described in Paragraph 5.0(a) of this Agreement for the business unit described in Paragraph 4.0(a) of this Agreement.

## 5.0 PROJECT DESCRIPTION AND AWARD CONDITIONS:

(a) This project will include the location of the Closing Fund Awardee's sawmill manufacturing operation in Suwannee County, Florida, as described in "Exhibit A."

(b) The "Award Conditions" for the release and placement of $3,000,000 to an Enterprise Florida, Inc. (EFI) escrow account to be held for future payment to the Closing Fund Awardee shall be met when the following have occurred:

(1) Execution of the Closing Fund Agreement on or prior to June 30, 2011;

(2) Execution of an Enterprise Florida, Inc. Escrow Agreement on or prior to June 30, 2011; and,

(3) Submission of an air permit application to the U.S. Environmental Protection Agency for the proposed project in Suwannee County, FL by August 30, 2011.

Unless otherwise noted, these conditions are expected to be achieved and supporting documentation submitted to OTTED for verification prior to September 1, 2011.

(c) The "Award Conditions" for the release and payment of $3,000,000 from the EFI escrow account to the Closing Fund Awardee shall be met when the following have occurred:

(1) Public announcement of the project's location in Suwannee County, Florida;

(2) Acquisition (ownership) by the Closing Fund Awardee of the land (approx. 100 to 175 acres) in Suwannee County, Florida; and,

(3) Capital investment of at least $12 million toward site preparation and other costs associated with construction of the new facility in Suwannee County, Florida.

Supporting documentation shall be submitted to OTTED for verification of the aforementioned conditions. Verification must be complete to OTTED's satisfaction prior to the disbursement of the payment. To receive payment, conditions are expected to be met by June 30, 2012; however, this date may be extended to no later than September 1, 2012, with the express written approval of OTTED.

(d) In order to remain qualified for the Closing Fund award payment authorized in this Agreement and to avoid sanctions, the Closing Fund Awardee must meet the conditions below:

(1) The total number of new full-time equivalent jobs in Suwannee County, Florida that the Closing Fund Awardee is, or will be, dedicating to this project is at least 350, and these jobs will be fully implemented by December 31, 2014. These jobs will be phased in, with the first phase consisting of the creation of at least 150 net new full-time equivalent

project jobs in Florida, fully implemented by December 31, 2013; and, the second and final phase consisting of the creation of at least an additional 200 project jobs for a cumulative total of at least 350 full-time equivalent project jobs in Florida, fully implemented by December 31, 2014; and maintain these jobs for an additional three (3) years or until at least December 31, 2017.

(2) The Base Period for this project's jobs will be the twelve full months June 1, 2010, through May 31, 2011;

(3) The average annual wage of project jobs specified in Paragraph 5.0(d)(1) above will be at least $30,000, excluding benefits; **and**

(4) The Closing Fund Awardee must invest a total of at least $150,000,000 in the new facility by December 31, 2014, and maintain that investment for an additional three (3) years, until December 31, 2017. Documentation of this investment must be presented to OTTED or its agent by January 31, 2015, and continue to be presented to OTTED each year thereafter until January 31, 2018.

(e) The Closing Fund Awardee may make a one-time election to extend the job creation and investment schedule by one year. This election must be communicated to OTTED, and approved by OTTED, in writing. Exercising this option shall result in a one-year extension of the term of the performance requirements and sanctions.

6.0 **NOTICES**: All notices pertaining to this Agreement are in effect upon receipt by OTTED, shall be in writing and shall be transmitted either by personal hand delivery; United States Post Office, return receipt requested; or, overnight express mail delivery. E-mail and facsimile transmission may be used if the notice is also transmitted by one of the preceding forms of delivery. The addresses set forth above for the respective Parties shall be the places where notices shall be sent, unless prior written notice of change of address is given.

**7.0 DUTIES OF THE CLOSING FUND AWARDEE**: The Closing Fund Awardee agrees that to qualify and remain qualified for the Closing Fund Award payment authorized herein, the Closing Fund Awardee must:

(a) Undertake the project and meet all of the Award Conditions as specified in Paragraphs 5.0(b) and 5.0(c), as applicable, of this Agreement.

(b) Submit its request for the Closing Fund Award payment authorized in Section 9.0 of this Agreement in a letter format and clearly state that it certifies each of the specific requirements in Paragraphs 5.0(b) or 5.0(c), as applicable, of this Agreement have been met, and provide supporting documentation acceptable to OTTED.

(c) Submit annual certification of its employment and annual average wage payment using a Qualified Target Industry Tax Refund (QTI) Claim application or alternate equivalent documentation acceptable to OTTED, every State of Florida fiscal year by January 31 of said year. The QTI claim application or alternate equivalent documentation must be submitted annually through January 31, 2018.

(d) Certify and submit documentation that at least 80 percent of the total investment specified in Paragraph 5.0(d)(4) has been made in the facility in Suwannee County, Florida as of December 31, 2014, and continues to be located in Suwannee County, Florida as of December 31, 2017.

(e) Notify OTTED in writing of any material developments that impact the implementation or operation of this Agreement or the project that this Agreement covers. Such material developments will include, but not be limited to: announcements with regard to the project, cancellation of the project, or change in ownership of the Closing Fund Awardee.

(f) Maintain personnel and financial records and reports related to the jobs, wages, and cumulative investment that are the subject of this Agreement and submit reports to OTTED as requested.

**8.0 <u>LIABILITY AND INDEMNIFICATION</u>:** OTTED will not assume any liability for the acts, omissions to act, or negligence of the Closing Fund Awardee, its agents, servants, or employees; nor will the Closing Fund Awardee exclude liability for its own acts, omissions to act, or negligence to OTTED. In addition, the Closing Fund Awardee agrees to be responsible for any injury or property damage resulting from any activities conducted by the Closing Fund Awardee.

To the extent permitted by law, the Closing Fund Awardee agrees to indemnify and hold OTTED harmless from and against any and all claims or demands for damages resulting from personal injury, including death or damage to property, arising out of any activities performed under this Agreement and will investigate all claims at its own expense. However, neither OTTED nor any agency or subdivision of the State of Florida waives any defense of sovereign immunity or increases the limits of its liability upon entering into this contractual relationship.

**9.0 <u>DUTIES OF OTTED</u>:** OTTED agrees that the Closing Fund Awardee will be eligible to receive a total amount of **THREE MILLION DOLLARS ($3,000,000)** from the Quick Action Closing Fund contingent upon meeting the requirements established in Paragraphs 5.0(b) and 5.0(c), as applicable, of this Agreement. The payment will be paid within 30 days of verification by OTTED, or OTTED's designee, that the Closing Fund Awardee has met the conditions in Paragraphs 5.0(b) and 5.0(c), as applicable, of this Agreement, for the project specified in Paragraph 5.0(a) of this Agreement.

### 10.0 <u>TERMINATION AND SANCTIONS</u>:

(a) This Agreement may be terminated by OTTED upon failure of the Closing Fund Awardee to comply with any material term or condition of this Agreement or a decision by the Closing Fund Awardee either not to proceed with the project defined in Paragraph 5.0(a) of this Agreement or to proceed with that project in a location outside of Suwannee County, Florida.

(b) A termination will result in the loss of eligibility for receipt of the Closing Fund Award payment previously authorized.  If the Closing Fund Award has been paid, the Closing Fund Awardee may be required to repay the grant amount and a penalty, as outlined below in (d), (e), (f), (g), and (h) of this section.

(c) Notwithstanding Paragraphs (a) and (b) above, in the event that OTTED fails to pay the Closing Fund Awardee a Closing Fund Award payment, to which the Closing Fund Awardee is entitled under this Agreement, as a result of insufficient state funds or for any reason whatsoever, the Closing Fund Awardee shall have the right to terminate this Agreement and may retain any Closing Fund Award payment that is not subject to conditions/sanctions under Paragraphs (d), (e), (f), (g), and (h) of this Section and was previously paid or awarded to the Closing Fund Awardee by OTTED under this Agreement.

(d) In any year in which the actual number of jobs for a job creation or maintenance phase scheduled in Paragraph 5.0(d)(1) of this agreement falls below 80 percent of the number of jobs so scheduled, the Closing Fund Awardee shall repay an amount equal to one-fifth of the Closing Fund Award payment plus interest on the amount repaid.

(e) If in any year the actual number of jobs is at least 80 percent of the jobs scheduled in Paragraph 5.0(d)(1) of this Agreement, but less than the required number of jobs, the Closing Fund Awardee shall repay a pro rated share of one-fifth of the Closing Fund Award payment plus interest, as determined in Paragraph 10.0(h), on the amount repaid.

(f) In any year the average wage falls below the average wage agreed to in Paragraph 5.0(d)(3) of this Agreement, the Closing Fund Awardee shall repay one-fifth of the Closing Fund Award plus interest, as determined in Paragraph 10.0(h), on the amount repaid.

(g) If the capital investment for the project specified in Paragraph 5.0(a) of this Agreement has not reached 80 percent of the investment scheduled in Paragraph 5.0(d)(4) of this Agreement by the periods specified in Paragraph 5.0(d)(4) of this Agreement, the Closing Fund Awardee shall repay a prorated share of the Closing Fund Award payment plus interest, as determined in Paragraph 10.0(h), on the amount repaid.

(h) The interest rate shall be determined by the average interest rate received by the State on mid-term investments at the time payment is due.

(i) In no year shall the amount required to be repaid exceed the larger of the individual amounts determined in Paragraphs 10.0(d), (e), (f), or (g), and total cumulative payments shall never exceed the value of the total award plus interest as determined in Paragraph 10.0.

(j) Any required repayment, interest and/or penalty, is due to OTTED within sixty (60) days of receipt of written notice from OTTED.

(k) OTTED, or its designated agent, may conduct on site visits of the Suwannee County, Florida facility to verify the Closing Fund Awardee's investment, employment and wage records.

9

**11.0 <u>INDEPENDENT CAPACITY OF THE CLOSING FUND AWARDEE</u>**: The parties agree that the Closing Fund Awardee, its officers, agents, and employees, in performance of this Agreement, will act in the capacity of an independent contractor and not as an officer, employee, or agent of the State. The Closing Fund Awardee is not entitled to accrue any benefits of State employment, including retirement benefits and any other rights or privileges connected with employment. The Closing Fund Awardee agrees to take such steps as may be necessary to ensure that each subcontractor of the Closing Fund Awardee will be deemed to be an independent contractor and will not be considered or permitted to be an agent of the State.

The Closing Fund Awardee has no authority to, and shall not pledge the State's credit or make OTTED a guarantor of payment or surety for any contract, debt, obligation, judgment lien, or any form of indebtedness.

**12.0 <u>LEGAL REQUIREMENTS</u>**:

(a) This Agreement is executed and entered into in the State of Florida, and will be construed, performed, and enforced in all respects in strict conformity with local, state, and federal laws, rules, and regulations. Each party will perform its obligations in accordance with the terms and conditions of this Agreement. Any and all litigation arising under this Agreement shall be brought in the appropriate court in Leon County, Florida, applying Florida law.

(b) If any term or provision of this Agreement is found to be illegal and unenforceable, the remainder of this Agreement will remain in full force and effect and such term or provision will be deemed stricken.

**13.0 <u>PUBLIC ENTITY CRIMES</u>**: The Closing Fund Awardee affirms that it is aware of the provisions of Section 287.133(2)(a), Florida Statutes, and that at no time has the Closing Fund Awardee been convicted of a Public Entity Crime. The Closing Fund Awardee agrees that

it shall not violate such law and further acknowledges and agrees that any conviction during the term of this Agreement may result in the termination of this Agreement.

**14.0   UNAUTHORIZED ALIENS**: OTTED will consider the employment of unauthorized aliens, by any contractor or subcontractor, as described by Section 274A(e) of the Immigration and Nationalization Act, cause for termination of this Agreement.

**15.0   NON-DISCRIMINATION**: The Closing Fund Awardee will not discriminate against any employee employed in the performance of this agreement, or against any applicant for employment because of age, ethnicity, race, religious belief, disability, national origin, or sex. The Closing Fund Awardee shall provide a harassment-free workplace, with any allegation of harassment given priority attention and action by management. The Closing Fund Awardee shall insert a similar provision in all subcontracts for services by this Agreement.

The Closing Fund Awardee affirms that it is aware of the provisions of Section 287.134(2)(a), Florida Statutes, and that at no time has the Closing Fund Awardee been placed on the Discriminatory Vendor List. The Closing Fund Awardee further agrees that it shall not violate such law and acknowledges and agrees that placement on the list during the term of this Agreement may result in the termination of this Agreement.

**16.0 ATTORNEY FEES**: Unless authorized by law and agreed to in writing by OTTED, OTTED will not be liable to pay attorney fees, interest, or cost of collection.

**17.0 TRAVEL**: There shall be no reimbursement of travel expenses exceeding the all-inclusive funds allocated in this Closing Fund Agreement.

**18.0 <u>PRESERVATION OF REMEDIES:</u>** No delay or omission to exercise any right, power, or remedy accruing to either party upon breach or default by either party under this Agreement, will impair any such right, power or remedy of either party; nor will such delay or omission be construed as a waiver of any breach or default or any similar breach or default.

**19.0 <u>ACCOUNTING AND AUDITS</u>:** The Closing Fund Awardee agrees:

(a) To maintain books, records, documents and other evidence according to generally accepted accounting principles, procedures, and practices that sufficiently and properly reflect all costs of any nature expended in the performance of this Agreement, and retain said copies for a period of five (5) years after termination of the conclusion of this Agreement. If any litigation, claim, negotiation, audit or other action involving the records has been started before the expiration of the five (5) years, the records shall be retained until completion of the action and resolution of all issues which arise from it.

(b) To make the books, records, documents and other evidence available for inspection, review, or audit by state personnel of the Office of the Auditor General, Department of Financial Services, or other state personnel authorized by OTTED. Copies of the reporting package required by this agreement shall be submitted by or on behalf of the recipient to OTTED and the State of Florida Auditor General.

(c) To include the aforementioned audit and record keeping requirements and the provisions contained in "Exhibit B" in contracts and sub-contracts entered into by the Closing Fund Awardee with any party for work required in the performance of this Agreement.

**20.0 <u>PUBLIC RECORDS</u>:** The Closing Fund Awardee must allow public access to all public records made or received by the Closing Fund Awardee in conjunction with the Closing Fund Award payment subject to the provisions of Chapter 119, Florida Statutes, except materials

that relate to methods of manufacture or production, potential trade secrets, potentially patentable material, actual trade secrets, business transactions, financial and proprietary information, and agreements or proposals to receive funding that are received, generated, ascertained, or discovered by OTTED, as exempted in Section 288.9520, Florida Statutes, or as exempted under Sections 288.075 and/or 288.9520, Florida Statutes.  Refusal of the Closing Fund Awardee to allow access to records as provided in this Agreement shall constitute grounds for unilateral cancellation of this Agreement.

The Closing Fund Awardee must make publicly available, upon request, the following information:  the name of the business, the amount of the Closing fund Award payment, the number of actual new full-time equivalent jobs created, and the amount of capital investment completed.

**21.0 LOBBYING:**  Payments obtained under this Agreement may not be used for the purpose of lobbying the Legislature, the judicial branch, or a state agency, pursuant to Section 216.347, Florida Statutes.

**22.0 NON-ASSIGNMENT:** Neither party may assign, sublicense, nor otherwise transfer its rights, duties, or obligations under this Agreement without the prior written consent of the other party, which consent will not be unreasonably withheld.  Any assignment, sublicense, or transfer occurring will be null and void; provided, however that OTTED will at all times be entitled to assign or transfer its rights, duties, or obligations under this Agreement to another governmental agency in the State of Florida, upon giving prior written notice to the Closing Fund Awardee.  In the event that OTTED approves transfer of the Closing Fund Awardee's obligations, the Closing Fund Awardee remains responsible for all work performed and all expenses incurred in connection with this Agreement.

23.0 **ENTIRE AGREEMENT:** This instrument embodies the entire agreement of the parties. There are no provisions, terms, condition, or obligations other than those contained in this agreement; and this agreement supersedes all previous communication, representation, or agreement, either verbal or written, between the parties. No amendment will be effective unless reduced to writing and signed by an authorized officer of the Closing Fund Awardee and the authorized agent of OTTED.

**DUPLICATE ORIGINALS**: This Agreement is executed in duplicate originals.

In Witness whereof, OTTED and the Closing Fund Awardee have caused this agreement to be executed and delivered by their duly authorized representatives.

**STATE OF FLORIDA**
**OFFICE OF TOURISM, TRADE,**
**AND ECONOMIC DEVELOPMENT**

_____  6-30-11
AUTHORIZED SIGNATURE          Date

TITLE: _____

WITNESSES: _____

_____

**KLAUSNER HOLDING USA INC.**

_____  29th june 2011
AUTHORIZED SIGNATURE          Date

TITLE: Treasurer

WITNESSES: _____

_____

List of Exhibits:

    Exhibit A: Enterprise Florida, Inc.'s Quick Action Closing Fund Request for Consideration and documentation from the Closing Fund Awardee in lieu of an application.

    Exhibit B: Special Audit Requirements

    Exhibit C: Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable)

    Exhibit D: Enterprise Florida, Inc. Escrow Agreement between Enterprise Florida, the Closing Fund Awardee, and the Office of Tourism, Trade and Economic Development.

15

**DUPLICATE ORIGINALS**: This Agreement is executed in duplicate originals.

In Witness whereof, OTTED and the Closing Fund Awardee have caused this agreement to be executed and delivered by their duly authorized representatives.

**STATE OF FLORIDA**
**OFFICE OF TOURISM, TRADE,**
**AND ECONOMIC DEVELOPMENT**

**KLAUSNER HOLDING USA INC.**

_____      _____
**AUTHORIZED SIGNATURE**          **Date**      **AUTHORIZED SIGNATURE**          **Date**

29th June 2011

**TITLE:** _____      **TITLE:** _Treasurer_ _____

**WITNESSES:** _____      **WITNESSES:** _____

_____      _____

_____      _____

List of Exhibits:

Exhibit A: Enterprise Florida, Inc.'s Quick Action Closing Fund Request for Consideration and documentation from the Closing Fund Awardee in lieu of an application.

Exhibit B: Special Audit Requirements

Exhibit C: Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable)

Exhibit D: Enterprise Florida, Inc. Escrow Agreement between Enterprise Florida, the Closing Fund Awardee, and the Office of Tourism, Trade and Economic Development.

15

# EXHIBIT   A

# GENERAL PROJECT OVERVIEW

United Pine (to be finalized)
**Name of Business**

**Project Christmas**
**Project Title or Code Name (1-5 word description)**

---

**FOR EFI USE ONLY**

6|9|11
**Date Received**

6|9|11
**Date Revised**

6/9/11
**Date Completed**

11-02129
**EFI Project Number**

---

Contact Enterprise Florida to discuss your project and application **before** submitting a formal proposal. The completed and signed application must be filed with:



*Enterprise Florida*

**The Atrium Building, Suite 201 ● 325 John Knox Road**
**Tallahassee, Florida 32303**
**Phone: 850.298.6620 ● Fax: 850.298.6659**
http://www.eflorida.com/

# GENERAL PROJECT OVERVIEW

## 1. BUSINESS INFORMATION

**A. Name of Applicant / Business Unit:**   United Pine (to be finalized)
*This should be the entity that will be party to the QTI agreement with the State of Florida. If multiple affiliates are involved, include an attachment listing affiliate name(s), Federal Employer Identification Number(s), Unemployment Compensation Number(s) and relationship to applicant.*

**B. Mailing Address:**   1297 Professional Drive, Suite 202
*Street Address*

| | | |
|---|---|---|
| Myrtle Beach | SC | 29577 |
| *City* | *State* | *Zip Code* |

**C. Name of Parent Company:**   Klausner Holdings USA JV

**D. Primary Business Unit Contact:**   Thomas Mende

**Title:**   President, Klausner Trading USA

**Mailing Address:**   1297 Professional Drive, Suite 202
*Street Address*

| | | |
|---|---|---|
| Myrtle Beach | SC | 29577 |
| *City* | *State* | *Zip Code* |

**Telephone:** 843.626.9600          **Fax:**

**Email:** Thomas.mende@klausner-group.com          **Website:** www.Klausner-Group.com

**E. Business Unit's Federal Employer Identification Number:**
(Please complete either the substitute W-9 Form at the end of this application or attach a completed IRS Form W-9.)          26-0256374

**F. Business Unit's Unemployment Compensation Number[1]:**   Not yet applied

**G. Business Unit's Florida Sales Tax Registration Number:**   Not yet applied

**H. Is the business unit minority owned?**

Yes ☐   No ☒   If yes, explain: _____

**I. What is the business unit's tax year** (ex: Jan 1 to Dec 31):   June 30

**J. Has this business unit, or any related entities, applied for and/or been approved for State incentives in the past?**

Yes ☐   No ☒   If yes, explain: _____

## 2. PROJECT OVERVIEW

**A. Which of the following best describes this business unit[2]:**
☒   New business unit to Florida
☐   Existing Florida business creating and / or retaining jobs[3].
        If an expansion, how many jobs are currently in the expanding business unit?
_____

**B. How many individuals are employed at all Florida locations?**   350

---

[1] If multiple unemployment compensation reporting units or multiple worksites are involved, contact Enterprise Florida to discuss this structure or include an attachment listing the additional units and their relationship to the applicant.
[2] Must be a separate business unit or reporting unit of a business unit that is or will be registered with the State of Florida for unemployment compensation purposes.
[3] A QTI Tax Refund award cannot be granted for existing Florida jobs.

# GENERAL PROJECT OVERVIEW

**C.  Are any jobs being transferred from other Florida locations[4]?**

Yes ☐    No ☒    If yes, how many jobs and from where? _____

Why are these jobs moving and why is it justified in light of the statutory language governing the applicable incentive program(s)?

**D.  Give a <u>full</u> description of this project, including a company overview, the primary activities / functions of this business unit and project, and the reasons for contemplating an expansion in / relocation to Florida.**

Establish saw and planing mill; purchasing logs from local sources, cutting logs into desired lengths, drying rough cuts and then planing into final product.  Expansion in the US due to supply of raw materials, ability to service US customer base and exports.   See attachment

**E.  In what Targeted Industry(ies) does the proposed project operate?[5]:**    Home centers, treating plants, retailers and export markets

**F.  Break down the project's primary function(s) and the corresponding wages:**

| Business Unit Activities | 5 Digit NAICS Code(s) | Project Function (total = 100%) | Annualized Wage ($) |
|---|---|---|---|
| Saw Milling /planing operation | 321113 | 100% | $10.05mil |
|  |  | % | $ |
|  |  | % | $ |

**G.  What is the project's proposed location address:**

| | |
|---|---|
| *Street Address* | |
| Live Oak | FL |
| *City* | *State*          *Zip Code* |

**What is the project's current location address (if different):**

| | |
|---|---|
| *Street Address* | |
| | |
| *City* | *State*          *Zip Code* |

**H.  Is the project location within a current or proposed Brownfield site / area?**

Yes ☐    No ☐    If yes, attach a copy of the official document designating the Brownfield area.

**Is the project location in an Enterprise Zone?**

Yes ☒    No ☐    If yes, which zone? _____

**Is the project location in a designated Rural area?**

Yes ☒    No ☐    If yes, which Rural area?  Suwannee County

**Is the project location in an Urban area[6]?**

Yes ☐    No ☒    If yes, describe? _____

**I.  Which of the following describes the applicant's operations** (select all that apply):

☒    Multi-state business enterprise
☐    Multinational business enterprise

---

[4] Incentives may not be used in connection with a project that involves the relocation of jobs from one Florida community to another except in certain circumstances as described in statute.
[5] Refer to the QTI Target Industry list.
[6] An Urban area may include a Community Redevelopment Area (CRA), Urban Job Tax Credit eligible area, Urban Enterprise Zone, Federal Empowerment Zone, an Urban revitalization area, etc.

# GENERAL PROJECT OVERVIEW

☐ Florida business enterprise (eligible for Brownfield Redevelopment Bonus incentive only)

**J.** **Which of the following describes this business unit** (select all that apply):
- ☐ Regional headquarters office
- ☐ National headquarters office
- ☐ International headquarters office
- ☒ This is not a dedicated headquarters office

**K.** **What is the estimated percentage of gross receipts or final sales resulting from this project that will be made outside of Florida** (If sales is not a reasonable measure, use another basis for measure and provide explanation below):

90%   Explain, if necessary: _____

## 3. JOB AND WAGE OVERVIEW

**A.** **How many Florida jobs[7] are expected to be created as part of this project?**   350

**B.** **If an existing business unit, how many Florida jobs are expected to be retained as part of this project?** (jobs in jeopardy of leaving Florida should only be included here; these jobs are not eligible for QTI)   ∅

**C.** **What is the anticipated annualized average wage (excluding benefits) of the new to Florida jobs created as part of this project?** (Cash payments to the employees such as performance bonuses and overtime should be included. The wage reported here is only an estimate of the average wage to be paid and will not be used in the certification, agreement, and claim evaluation process.)   $30,000

**D.** **What is the annualized average value of benefits associated with each new job created as part of this project?**   $8000

**E.** **What benefits are included in this value?** (health insurance, 401(k) contributions, vacation and sick leave, etc.)
Health/dental/life co-share, approved leaves, 401k or other retirement scheme

## 4. CAPITAL INVESTMENT OVERVIEW

**A.** **Describe the capital investment in real and personal property** (Examples: construction of new facility; remodeling of facility; upgrading, replacing, or buying new equipment.):
$96mil in machinery/equipment; $54 mil in buildings, property and property improvements

**B.** **Will this facility be:**
- ☐ Leased space with renovations or build out
- ☒ Land purchase and construction of a new building
- ☐ Purchase of existing building(s) with renovations
- ☐ Addition to existing building(s) (already owned)
- ☐ Other (please describe in 4A above)

**C.** **List the anticipated amount and type of major capital investment to be made by the applicant in connection with this project:**

---

[7] A "full time equivalent job" means at least 35 hours of paid work per week.

# GENERAL PROJECT OVERVIEW

PER Emma 6/1/10

| Calendar Year : | 2011 | 2012 | | | | Total |
|---|---|---|---|---|---|---|
| Land or Building Purchase | $ | $ | $ | $ | $ | $ |
| Construction / Renovations | $ ~5m | $ | $ | $ | $ | $ 5Y m |
| Manufacturing Equipment | $ | $95mil | $ | $ | $ | $ 9C m |
| R&D Equipment | $ | $ | $ | $ | $ | $ |
| Other Equipment (computer equipment, office furniture, etc.) | $ | $1mil | $ | $ | $ | $ 1 m |
| Total Capital Investment | $9m | $ 96m | $ | $ | $ | $ 150m |

D. What is the estimated cost of machinery and equipment or other resources for this project expected to be purchased **outside** of Florida?

$95mil

E. Describe the type(s) of machinery and / or other resources to be purchased **outside** of Florida.

Saw line and planing equipment

F. What is the estimated square footage of the new or expanded facility?

100 Acres

G. When is the final location decision anticipated (date)?

June 30, 2011

H. What is the anticipated date construction will begin?

Once EPA complete

I. What is the anticipated date operations will commence?

8 months from start

## 5. COMPETITIVE LANDSCAPE

A. What role will the incentive(s) play in the business unit's decision to locate, expand, or remain in Florida?

Incentives, when combined with log source, is a primary factor for decision makers

B. How will the incentive dollars be used by the business?

To cover land improvements and offset taxes

C. What other cities, states, or countries are being considered for this project?

NC, VA, SC

D. What advantages or incentives offered by these locations do you consider important in your decision?

Land and Cash grants for land improvements

E. What advantages or disadvantages offered by the proposed Florida location do you consider important in your decision?

Property tax and corporate tax rates were higher in FL.

F. Indicate any additional internal or external competitive issues impacting this project's location decision?

External competitive issues exist for the commodity we produced and the Florida incentives will help us to quickly establish our operations..

## 6. ECONOMIC IMPACT AND CORPORATE RESPONSIBILITY

A. Provide a brief synopsis of the special impacts the project is expected to stimulate in the community, the state, and the regional economy. Include the impact on indicators such as unemployment rate, poverty rate, and per capita income.

# GENERAL PROJECT OVERVIEW

The location in a rural area that has high unemployment. The project will greatly impact the community in which it operates through hiring of unemployed and ancillary benefits to local businesses. Additionally, the proposed operations will be state of the art, with production five time greater than any existing mill and comparable to the inputs of a pulp mill. Timber market conditions will be greatly enhanced through this site which will increase timber land values and the attraction of other wood cluster synergy operations.

**B. Provide a summary of past activities in Florida and in other states.** For example, what kind of corporate citizen has the applicant been? Also list awards or commendations. Klausner Group has always been a good corporate citizen in the communities in which it operates worldwide. The Group has won numerous production awards in its European locations which has instilled a sense of pride amongst workers and the community.

**C. List and explain any criminal or civil fines or penalties, recent or ongoing investigations and lawsuits, federal, state and/or local tax liens, and environmental issues that have been imposed upon the company, its executives, or its affiliates and any recent bankruptcy proceedings of the applicant or its parent company.** Failure to disclose relevant information may mean automatic disqualification. If there are no issues to be identified, answer "None". Do not leave this question blank.
None

**D. Provide any additional information you wish to be considered as part of this incentive application or items that may provide supplementary background information on your project or company.**

## 7. CONFIDENTIALITY

**A. You may request that your project information (including information contained in this application) be confidential per F.S. 288.075, Confidentiality of Records for a 12 month period, with an additional 12 month extension available upon request for projects still under consideration.**

**Please indicate your confidentiality preference:** (Does not apply to SDST sales tax exemption applicants)

☒     Yes
☐     No

## ***Be sure to attach the proper incentive attachment sheet(s)***

# GENERAL PROJECT OVERVIEW

## 8. SIGNATURES

**Application Completed By:**

**To the best of my knowledge, the information included in this application is accurate.**

_____
Signature

_____
Signature (Authorized Company Officer)
**REQUIRED**

06/06/2011
Date

06/06/2011
Date

Thomas Mende
Name

Thomas Mende
Name

President
Title

President
Title

Klausner Trading USA, Inc
Company

Klausner Trading USA, Inc
Company

same
Address, if different than mailing address

_____
Address, if different than mailing address

843.626.9600
Phone Number

843.626.9600
Phone Number

_____
Fax Number

_____
Fax Number

Jeanne.Lynch@Klausner-Group.com
Email Address

Thomas.Mende@Klausner-Group.com
Email Address

_____
Name of contact person, if different than above

_____
Phone Number

_____
Address

_____
Email Address



**STATE OF FLORIDA**
**Department of Financial Services – Chief Financial Officer**
Bureau of Accounting, 200 East Gaines Street, Tallahassee, FL 32399-0354
Telephone (850) 413-5519 Fax (850) 413-5550
**Substitute Form W-9**

In order to comply with IRS regulations, we are requesting Taxpayer Identification information that will be used to determine whether you will receive a Form 1099 for payment(s) made to you by an agency of the State of Florida. For questions regarding this form, please use the address or telephone number provided above. In order to comply with the IRS rules, please provide us with your social security (SSN) or federal employer identification number (FEIN). This is not a request for state sales tax exemption.

In the event this information is not provided, or should the IRS notify us that the provided information is incorrect, all payments made to you may become subject to a 28% Backup Withholding Tax Rate. Please print clearly or type.

**PART 1** – Please provide the correct Tax Identification Number (TIN), be it FEIN –or- SSN, and the applicable name and address **as shown on your income tax return.**

**The TIN is (check one) X FEIN _____ SSN**

Federal Employer Identification Number (FEIN) 26-0256374 or -
Example 9 9 – 9 9 9 9 9 9 9

Social Security Number (SSN)
Example 9 9 9 – 9 9 – 9 9 9 9

NAME (as shown on your income tax return) Klausner Lumber One (name to change to United Pine)

Business name if sole proprietor _____

ADDRESS 1230 Peachtree Street

CITY, STATE, ZIP Atlanta, GA 30309

**PART 2** - Below, circle one number that accurately describes the business or the individual:
**1 - CORPORATION, PROFESSIONAL ASSOCIATION OR PROFESSIONAL CORPORATION**
(A corporation formed under the laws of any state within the United States.)
**2 - NOT FOR PROFIT CORPORATION** (Section 501(c) (3) Internal Revenue Code)
**3 - PARTNERSHIP, JOINT VENTURE, ESTATE, TRUST OR MULTIPLE MEMBER LLC**
**4 - INDIVIDUAL, SOLE PROPRIETOR, SELF EMPLOYED OR SINGLE MEMBER LLC**
(Circle #4 if you are an individual that benefited from a student loan forgiveness payment)
**5 - NONCORPORATE RENTAL AGENT**
**6 - GOVERNMENTAL ENTITY** (City, County, State or U.S. Government)
**7 - FOREIGN CORPORATION OR ENTITY** (A foreign entity formed under the laws of a country other than the United States.) If YES is marked below, complete and attach Form W-8ECI.
Is income effectively connected with business in the United States? _____YES _____NO
**8 - NONRESIDENT ALIEN** (An individual temporarily in the U. S. who is not a U.S. citizen or resident.)

Under the penalties of perjury, I certify that I have examined this request and to the best of my knowledge and belief, it is true, correct and complete.

| | | |
|---|---|---|
| Signature | 6/5/2011 | 843.626.9600 |
| | Date | Telephone Number |

_Jeanne Lynch_

Title : Controller                Jeanne.Lynch@Klausner-Group.com
                                 email (optional)

# Quick Action Closing Fund
## Attachment to the General Project Overview

### United Pine (Not yet Finalized)
**Name of Business**

| FOR EFI USE ONLY | | |
|---|---|---|
| 6/9/11 | | 6/9/11 |
| Date Received | Date Revised | Date Completed |

*Must be a separate __business unit__ or reporting unit of a __business unit__ that is or will be registered with the State of Florida for unemployment compensation purposes.*

**IMPORTANT NOTE:** This application must be filed and the incentive approved *prior* to making the decision to expand an existing Florida business unit or to locate a new business unit in Florida.

* * *Be sure to attach the General Project Overview* * *

## 1. PROJECT OVERVIEW

**A.** Site location decision date:                                JUNE 30 2011

**B.** What is the total number of net new full-time equivalent Florida jobs to be **created** and/or **retained** by the project at the business unit?

Jobs Created:          1350    350 ⟩ see below

Jobs Retained:          350₂  ∅

**C.** Provide the job creation schedule to which you commit: (Please limit job creation to no less than ten jobs in the first year and the phases to a maximum of three consecutive years unless extraordinary circumstances warrant consideration of additional phases).

| Phase | Number of net new full-time equivalent Florida Jobs | | Date by which jobs will be implemented |
|---|---|---|---|
| | **Created** | **Retained** | |
| I | 1000**seebelow | 0 | 12/31/2012 |
| II | 150 | 350— | 12/31/2013 |
| III | 200 | | 12/31/2014 |
| Total | 350 | | |

*per 6/9/11 email from Company*

**Includes indirect job creation, site construction, administration, etc. · not included in Company commitment

**D.** For the purposes of certification, agreement, and claim review, indicate the average wage to which you commit:          $30,000.

## 2. PROJECT NEEDS AND IMPACTS

**A.** Provide a quantitative measure of Florida's competitive disadvantage and identify the major source(s) of that disadvantage:
Transportation and road infrastructure increased cost $4mil; Lack of trained workforce $1mil,  Local and state taxes higher than other bid states ($2mil over 10years), climate – use of more energy to operate facility ($3mil est over 10 years),

**B.** Indicate the type and amount of financial or other support to be provided by the local community for this project:
Donated/graded site including the full infrastructure (full rail layout, roads, utilities), and ad-valorem tax abatement.

**C.** Specify the project needs that will be satisfied by the requested funds:
See B.

# Quick Action Closing Fund
## Attachment to the General Project Overview

D. **Identify special impacts the facility is expected to stimulate in a particular business sector, the state or regional economy, and in state universities and community colleges:**

The establishment of this type of facility will impact forestry due to supply the mill would remove from the current market; trucking for the transportation of logs and finished product; rail for exported products; and local retail for the influx of employees, vendors and customers.

### 3. SIGNATURES

_____

Signature of Individual Completing this Attachment
(if different from General Project Overview)

6/8/2011

Date

_____

Address (if different)

843 626 9600
_____
Phone Number (if different)

_____

Signature (Authorized Company Officer) REQUIRED

June 8, 2011

Date

Thomas Mende, President, Klausner Trading USA, Inc.
_____

**Name and Title of Authorized Officer**

### 4. KEY QUICK ACTION CLOSING FUND PROGRAM INFORMATION

- The Quick Action Closing Fund is a grant paid to a business upon achievement of pre-defined "payment criteria". Enterprise Florida will work with the company and OTTED to determine appropriate payment criteria for this project.
- Enterprise Florida will also work with the company and OTTED to determine "performance criteria", which are criteria that must be met in order for the company to retain the funds. If the performance criteria are not met, penalty sanctions may be imposed that include repayment of a portion or the entire Closing Fund award, with interest.
- Projects eligible for receipt of funds from the Quick Action Closing Fund shall:
  A. Be in an industry as referenced in s. 288.106 [Qualified Target Industry].
  B. Have a positive payback ratio of at least 5 to 1.
  C. Be an inducement to the project's location or expansion in the state.
  D. Pay an average annual wage of at least 125 percent of the areawide or statewide private sector average wage.
  E. Be supported by the local community in which the project is to be located.
- Quick Action Closing Fund: Section 288.1088, Florida Statutes

## Marty Wilson

| | |
|---|---|
| **From:** | Lynch, Jeanne <Jeanne.Lynch@klausner-group.com> |
| **Sent:** | Thursday, June 09, 2011 4:45 PM |
| **To:** | Marty Wilson |
| **Cc:** | Mende, Thomas |
| **Subject:** | FW: Applications - financials to follow |
| **Attachments:** | QTIAttach.docx |

Hello Marty,

Please see comments below –

-----Original Message-----
From: Marty Wilson [mailto:mwilson@eflorida.com]
Sent: Thursday, June 09, 2011 1:58 PM
To: Lynch, Jeanne; Mende, Thomas
Cc: Joel Gunter
Subject: RE: Applications - financials to follow

Jeanne & Thomas, <<QTIAttach.docx>>

I have a few follow-up questions after reviewing the applications. I have also drafted
some proposed payment and performance criteria for the $3 million Closing Fund incentive
(also below). The process here is the $3 million would be placed into an escrow account
once the first two items below are achieved (execution of agreement and submission of air
permit). These must be achieved by August 31, 2011, due to state budget requirements. The
second three items are the milestones that will trigger the $3 million to be paid to
United Pine from the escrow account and the last three items are the ultimate performance
conditions. The first five items may be adjusted, just let me know what you would like to
see instead.

Application Questions:

- Question 2D of the General Project Overview references an attachment. Is this
attachment something we already have or is there an additional document? Already attached
– 3 slides

- Question 1B of the QTI Attachment – given the significant scope of this project, I want
to be sure the end of 2012 is sufficient time to create the first phase of 200 new jobs.
Just for the purposes of the incentives, you might want to consider consolidating the job
schedule into 2013 in order to give a little more time to create the jobs.

Marty – thanks point well taken       *QACF made Consistent w/ QTI*

We based our dates on critical paths – But as you note, it is ambitious – we need
permitting first and then we do not want to be in the middle of grading during hurricane
season – so can we move it to the end of 2013 for all the eventualities. I revised the
numbers – can you switch out the pages

-There is one more short document we need to have completed (attached). Please complete,
sign and send back at your convenience.

- Can you explain more about the corporate structure of Klausner Trading USA, Klausner Holdings USA JV and United Pine? Will United Pine be a subsidiary of Klausner Holdings USA JV? What role does Södra play in these entities?

Klausner Holding USA is the holding company of Klausner Trading USA.  It is owned by a holding in Europe which in turn is owned singularly by Mr. Klausner.  Soedra is proposing to purchase 50% of Klausner Holding USA from the European Holding company and therefore 50% of KTU.  The company Klausner Holding USA will then become United Pine Holding and KTU will become United Pine Trading USA.

Closing Fund Payment:

Payment of the $3,000,000 Closing Fund award on behalf of United Pine is to be paid from the State into an escrow account managed by Enterprise Florida, Inc. upon achievement of the following:

1.      Execution of the Closing Fund Agreement with OTTED prior to June 30, 2011; and

2.      Submission of air permit application to the U.S. Environmental Protection Agency for the proposed project in Suwannee County, FL.

Payment of $3 million in escrowed funds will be released from Enterprise Florida, Inc. to United Pine upon achievement of the following:

1.      Public announcement of the project's location in Suwannee County, FL;

2.      Acquisition (ownership) of the land (approximately 100 to 175 acres) in Suwannee County, Florida; and

3.      Capital investment of at least $12 million toward site preparation and other costs associated with construction of the new facility in Suwannee County, Florida;

Performance conditions that must be met to avoid sanctions will include achievement of the following project goals:

1.      Creation of 350 new jobs in accordance with the QTI Tax Refund Agreement;

2.      Average wage of at least $30,000 for all 350 jobs; and

3.      Capital investment for this project of at least $150 million by December 31, 2013. (2015)

Standard sanctions to include repayment of funds plus interest will apply and be delineated in the Closing Fund Agreement. Payment criteria must be achieved prior to August 31, 2011.

Thank you very much and I look forward to hearing back from you.

Regards,

Marty

-----Original Message-----

From: Lynch, Jeanne [mailto:Jeanne.Lynch@klausner-group.com]

Sent: Thursday, June 09, 2011 12:22 PM

To: Joel Gunter; Marty Wilson

Cc: Mende, Thomas

Subject: Applications - financials to follow


Hello Joel, Marty

Financials to follows

Best regards

Jeanne Lynch

Controller

Klausner Trading USA, Inc.

1297 Professional Drive, Suite 202

Myrtle Beach, SC 29577

USA

P: +1 843 443 9625

F: +1 843 626 9629

C: +1 434 391 4955

jeanne.lynch@klausner-group.com

www.klausner-group.com

NOTICE: This message (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. § 2510-2521, is CONFIDENTIAL, and is intended only for the individual to whom it is addressed. If you are not the named addressee or an employee or agent responsible for delivering this message to the named addressee, you are hereby notified that you have received this message in error and that any review, retention, dissemination, distribution, copying or use of this communication is strictly prohibited. Please reply to the sender that you received this message in error and then delete it. Thank you.

-----Original Message-----

From: ktucop1@klausner-group.com [mailto:ktucop1@klausner-group.com]

Sent: Donnerstag, 9. Juni 2011 13:11

To: Lynch, Jeanne

Subject: Scan from KTUCOP1[1/2]

Number of Images: 15

March 10, 2011

**JOEL GUNTER**
**Director, Business Development**
**Business Retention and Recruitment**
Enterprise Florida
800 N. Magnolia Ave. Suite 1100
Orlando, Florida 32803

Dear JOEL:

We request that any and all documents, records, reports, correspondence, conversations, applications, data and other sources of information concerning our business plans, interests, or intentions to evaluate or locate in Florida be kept confidential as authorized in Section 288.075, Florida Statutes.

Sincerely,

(Authorized Signature)

Thomas Mende
President
International Business Development
Klausner Trading USA, Inc.

**Budget Amendment Request**
**Fiscal Year 2010-11**
**Current Status: Approved -**
**EOG Log Number: B0710**
**Executive Office of the Governor**

**Agency Log Number**   2011-037

**Request Type(s)**

GM - Establish General Revenue budget from unbudgeted reserve - Quick Action Closing (QAC) in Excess of $2,000,000 - Stat. Auth.288.1088 (3)(c), F.S.

**Request Summary**

Request Release for the Quick Action Closing Fund Pursuant to s. 288.1088, F.S.

**LBC Approval is required**

**Consultation/Review Period**      14 Consecutive Day Consultation          **Dates:** 6/15/2011 - 6/29/2011

**Signature**

_____

**Kelley Sasso**

**Executive Office of the Governor**                                      6/14/2011 6:33:08 PM

**Agency Fund Summary**

| Fund Title | Net Total for this Request | | |
| --- | --- | --- | --- |
| | Appropriation | Reserve | Release |
| General Revenue Fund | $0 | ($3,000,000) | $3,000,000 |

**Agency Budget Detail**

| Req Type | Line Item # | Budget Entity | Appropriation Category | Acct Code Yr | Fund | Cert Fwd | Appropriation | Reserve | Release |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | **Governor, Executive Office** | | | | | | | |
| | | **Pgm: Tour, Trade/Econo Dev** | | | | | | | |
| GM | 2656 | 31800600 Economic Dev Pgms & Proj | 100259 Quick Action Closing Fund | 0000 | 1000 General Revenue Fund | | $0 | ($3,000,000) | $3,000,000 |
| | | | | | | Total | $0 | ($3,000,000) | $3,000,000 |

**Agency Problem Statement**

The Quick Action Closing Fund was created to help attract, retain, and provide favorable conditions for the growth of high-impact business facilities which provide widespread economic benefits to the state.  Diversifying Florida's economy helps to foster a sustainable business environment, leading to quality employment opportunities for Floridians. In the global economy, there exists competition for these facilities, and in most instances, when all available resources for economic development have been used, the state continues to encounter competitive disadvantages in competing for these business facilities.

The Quick Action Closing Fund provides the state the ability to offer incentives to recruit businesses to the state.  When local communities are vying for high-value projects, these funds are used to overcome a documented competitive disadvantage as compared to other non-Florida locations. The Legislature appropriated $16,000,000 for the Quick Action Closing Fund for the 2010-2011 fiscal year to respond to extraordinary economic opportunities and to compete effectively for these high impact business facilities.

Pursuant to section 288.1088, Florida Statutes, the Office of Tourism, Trade, and Economic Development (OTTED) may request approval for the release of funds as needed.  OTTED is prepared to enter into a contract with the prospective business, referred to for confidentiality purposes as "Project Christmas".   Contract payments are estimated at $3,000,000 based on preliminary negotiations.

**Agency Request**

The Executive Office of the Governor requests a release of $3,000,000 from unbudgeted reserve in the General Revenue Fund to execute a Quick Action Closing Fund contract.

**Fiscal Impact**

Amendment requests the release of General Revenue funds from unbudgeted reserve.

**Other Considerations**

| Uploaded Documents | Description | Uploaded By | Uploaded On |
|---|---|---|---|
| Ledger11-b0710.txt | appropriation ledger | CJR | 6/15/2011  8:01:20AM |

**Criteria for Approval**

The agency certifies that this request complies with all Criteria for Approval.

**OPB Budget Detail**

| Req Type | Line Item # | Budget Entity | Appropriation Category | Acct Code Yr | Fund | Cert Fwd | Appropriation | Reserve | Release |
|---|---|---|---|---|---|---|---|---|---|
| Governor, Executive Office | | | | | | | | | |
| Pgm: Tour, Trade/Econo Dev | | | | | | | | | |
| GM | 2656 | 31800600 Economic Dev Pgms & Proj | 100259 Quick Action Closing Fund | 0000 | 1000 General Revenue Fund | | $0 | ($3,000,000) | $3,000,000 |
| | | | | | | Total | $0 | ($3,000,000) | $3,000,000 |

**OPB Budget Explanation/Purpose**

Provides for the release of General Revenue funds from unbudgeted reserve to allow the Office of Tourism, Trade and Economic Development (OTTED), within the Executive Office of the Governor, to execute a Quick Action Closing Fund contract.

**OPB Problem Statement**

The Quick Action Closing Fund was created to help attract, retain, and provide favorable conditions for the growth of high-impact business facilities which provide widespread economic benefits to the state. Diversifying Florida's economy helps to foster a sustainable business environment, leading to quality employment opportunities for Floridians. In the global economy, there exists competition for these facilities, and in most instances, when all available resources for economic development have been used, the state continues to encounter competitive disadvantages in competing for these business facilities.

The Quick Action Closing Fund provides the state the ability to offer incentives to recruit businesses to the state. When local communities are vying for high-value projects, these funds are used to overcome a documented competitive disadvantage as compared to other non-Florida locations. The Legislature appropriated $16,000,000 for the Quick Action Closing Fund for the 2010-2011 fiscal year to respond to extraordinary economic opportunities and to compete effectively for these high impact business facilities.

Pursuant to section 288.1088, Florida Statutes, the Office of Tourism, Trade, and Economic Development (OTTED), within the Executive Office of the Governor, may request approval for the release of funds as needed. OTTED is prepared to enter into a contract with the prospective business, referred to for confidentiality purposes as "Project Christmas." Contract payments are estimated at $3,000,000 based on preliminary negotiations.

**OPB Agency Request**

The Executive Office of the Governor requests a release of $3,000,000 from unbudgeted reserve in the General Revenue Fund to execute a Quick Action Closing Fund contract.

**OPB Fiscal Impact**

Amendment requests the release of General Revenue funds from unbudgeted reserve.

**OPB Other Considerations**

The Governor approved this project after consulting with legislative leadership.

**LBC Budget Detail**

| Line Item | Budget Entity | Appropriation Category | Acct Code Yr | Fund | Cert Fwd | Appropriation | Reserve | Release |
|---|---|---|---|---|---|---|---|---|
| Governor, Executive Office | | | | | | | | |
| Pgm: Tour, Trade/Econo Dev | | | | | | | | |
| 2656 | 31800600 Economic Dev Pgms & Proj | 100259 Quick Action Closing Fund | 0000 | 1000 General Revenue Fund | | $0 | ($3,000,000) | $3,000,000 |
| | | | | | Total | $0 | ($3,000,000) | $3,000,000 |

**LBC Problem Statement**

The Quick Action Closing Fund was created to help attract, retain, and provide favorable conditions for the growth of high-impact business facilities which provide widespread economic benefits to the state.  Diversifying Florida's economy helps to foster a sustainable business environment, leading to quality employment opportunities for Floridians. In the global economy, there exists competition for these facilities, and in most instances, when all available resources for economic development have been used, the state continues to encounter competitive disadvantages in competing for these business facilities.

The Quick Action Closing Fund provides the state the ability to offer incentives to recruit businesses to the state. When local communities are vying for high-value projects, these funds are used to overcome a documented competitive disadvantage as compared to other non-Florida locations. The Legislature appropriated $16,000,000 for the Quick Action Closing Fund for the 2010-2011 fiscal year to respond to extraordinary economic opportunities and to compete effectively for these high impact business facilities.

Pursuant to section 288.1088, Florida Statutes, the Office of Tourism, Trade, and Economic Development (OTTED), within the Executive Office of the Governor, may request approval for the release of funds as needed.  OTTED is prepared to enter into a contract with the prospective business, referred to for confidentiality purposes as "Project Christmas."   Contract payments are estimated at $3,000,000 based on preliminary negotiations.

**LBC Agency Request**

The Executive Office of the Governor requests a release of $3,000,000 from unbudgeted reserve in the General Revenue Fund to execute a Quick Action Closing Fund contract.

**Summary of the Governor's Recommendations**

Recommend approval to release $3,000,000 in General Revenue funds from unbudgeted reserve to execute a Quick Action Closing Fund contract.

Recommend approval to release $3,000,000 in General Revenue funds from unbudgeted reserve to execute a Quick Action Closing Fund contract.

CONFIDENTIAL: Per section 288.075, 'a Statutes                     June LBC  ing DRAFT—Subject to Updates

**CONFIDENTIAL Name: Project Christmas**
**Company: Klausner Trading International GmbH**

| | |
|---|---|
| Headline: | Sawmill Operations Location Project. |
| Options: | Suwannee County or North Carolina and South Carolina. |
| Jobs Created: | 350 |
| Jobs Retained: | 0 |
| Total Jobs: | 350 |
| Capital Investment: | $150,000,000 |
| Average Wage: | $30,000 (119% of Suwannee County and 75% of the statewide average wage) |
| Closing Fund Request: | $3,000,000 |

The Klausner-Group is one of the largest wood-industry companies in the world. The company operates four sawmills in Germany and is Europe's second largest supplier of soft woods. The company sells lumber products worldwide: mainly in Europe, North America and Asia. As part of an effort to diversify operations and tap into the US lumber market, Södra plans on purchasing a 50 percent stake in Klausner Holding USA (and therefore Klausner Trading USA). The new entity will be United Pine Holding (with United Pine Trading USA as the new subsidiary). The two companies are looking to establish one of the largest sawmill operations in the world at the rural catalyst site in Suwannee County Florida, which will ultimately be operated by United Pine. Both the North Carolina and South Carolina sites are reportedly 250 acres (75 acres larger than the proposed Florida site) and are being offered to the company at no cost and complete with all necessary infrastructure in place. Several of Florida's incentives originally proposed for this project will have no value and therefore were removed as part of the incentive package. While this demonstrates Florida's low-tax based structure, both North Carolina and South Carolina offer incentives that rebate a portion of employees' personal income tax withholding. This is a direct benefit to the Company and is in addition to offsets of other taxes such as corporate income and ad valorem. The company advised that without the funds provided through the QACF program they will not be able to undertake this project in Florida.

This project **does not meet the average wage requirement in s.288.1088, F.S.** and will require a waiver.

| Local Incentives | | State Incentives | |
|---|---|---|---|
| Tax Abatement | $ 8,860,000 | QTI Tax Refund | $ 1,680,000 |
| Regional Workforce Board Grant | $ 250,000 | Sales Tax Exemption | $ 7,189,000 |
| Land Donation | $ 3,500,000 | Quick Response Training Grant | $ 875,000 |
| Total Local Incentives | $12,610,000 | Incumbent Worker Training Grant | $ 150,000 |
| | | Governor Exigency Fund | $ 125,000 |
| | | EDTF | $ 3,000,000 |
| | | Rural Infrastructure Fund | $ 395,000 |
| | | Closing Fund | $ 3,000,000 |
| | | Total State Incentives | $16,414,000 |
| | | | |
| | | Total Incentives: | $29,024,000 |

The 10 year payback ratio on the State's investment is 2.96 to 1, and **does not meet the ratio required in s.288.1088, F.S.** and will require a waiver.

_Michael Dennel_

_____ / 6/14/2011
(OTTED Director's Signature)        (Date)

**GOVERNOR'S DECISION:**

☑ Concur and approve this Quick Action Closing application at: $3,000,000. I have approved this project after consulting with the President of the Senate and Speaker of the House.

☐ Do not concur and find:_____

_____ / _____
(Signature)                    (Date)

# EXHIBIT   B

# EXHIBIT B

# SPECIAL AUDIT REQUIREMENTS

The administration of funds awarded by the Office of Tourism, Trade, and Economic Development (OTTED) to Klausner Holding USA Inc. may be subject to audits and/or monitoring by OTTED, as described in this section.

## MONITORING

By entering into this agreement, Klausner Holding USA Inc. agrees to comply and cooperate with any monitoring procedures/processes deemed appropriate by OTTED. In the event OTTED determines that a limited scope audit of the recipient is appropriate, Klausner Holding USA Inc. agrees to comply with any additional instructions provided by OTTED to Klausner Holding USA Inc. regarding such audit. Klausner Holding USA Inc. further agrees to comply and cooperate with any inspections, reviews, investigations, or audits deemed necessary by the Chief Financial Officer, Auditor General, or Chief Inspector General. Klausner Holding USA Inc. shall permit access to its records and independent auditor's working papers as necessary to comply with the requirements of this Agreement.

## AUDITS

1. In the event that Klausner Holding USA Inc. expends a total amount of State awards (i.e., State financial assistance provided to the recipient to carry out a State project) equal to or in excess of $500,000 in any fiscal year of Klausner Holding USA Inc., must have a State single or project-specific audit for such fiscal year in accordance with Section 215.97, Florida Statutes (the Single Audit Act); applicable rules of the Executive Office of the Governor and the Chief Financial Officer, and Chapter 69I-5, Rules of the Department of Financial Services. In determining the State financial assistance expended in its fiscal year, Klausner Holding USA Inc. shall consider all sources of State awards, including State funds received from OTTED, except that State financial assistance received by a non-state entity for Federal program matching requirements shall be excluded from consideration.

2. In connection with the audit requirements, Klausner Holding USA Inc. shall ensure that the audit complies with the requirements of Section 215.97(8), Florida Statutes. This includes submission of a reporting package as defined by Section 215.97(8)(g), Florida Statutes, and Chapter 69I-5, Rules of the Department of Financial Services.

3. If Klausner Holding USA Inc. expends less than $500,000 in State financial assistance in its fiscal year, an audit conducted in accordance with the provisions of the Single Audit Act is not required. In the event that Klausner Holding USA Inc. expends less than $500,000 in State financial assistance in its fiscal year and elects to have an audit conducted in accordance with the provisions of the Single Audit Act, the cost of the audit must be paid from non-State funds (i.e., the cost of such an audit must be paid from Klausner Holding USA Inc. funds obtained from other-than-State entities).

**Exhibit B**
**Special Audit Requirements**
**Page Two**

4. Klausner Holding USA Inc. must include the record keeping requirements found herein in sub-recipient contracts and subcontracts entered into by Klausner Holding USA Inc. for work required under terms of this Agreement. In the executed subcontract, Klausner Holding USA Inc. shall provide each sub-recipient of state financial assistance the information needed by the sub-recipient to comply with the requirements of the Single Audit Act. Pursuant to Section 215.97(7), Florida Statutes, Klausner Holding USA Inc. shall review and monitor sub-recipient audit reports and perform other procedures as specified in the agreement with the sub-recipient, which may include onsite visits. Klausner Holding USA Inc. shall require sub-recipients, as a condition of receiving state financial assistance, to permit the independent auditor of the recipient, the state awarding agency, the Chief Financial Officer, the Chief Inspector General, and the Auditor General access to the sub-recipient's records and independent auditor's working papers as necessary to comply with the requirements of the Single Audit Act.

5. For information regarding the Florida Single Audit Act, including the Florida Catalog of State Financial Assistance (CSFA), Klausner Holding USA Inc. should access the website for the Florida Department of Financial Services located at https://apps.fldfs.com/fsaa/ for assistance. In addition to the above website, the following websites may be accessed for additional information: The Florida Legislature's website http://www.leg.state.fl.us/ and the Florida Auditor General's website http://www.state.fl.us/audgen.

6. The CSFA number for this project is: 31.009.

**REPORT SUBMISSION**

Copies of audit reports conducted in accordance with the audit requirements contained herein shall be submitted to the parties set out below. The annual financial audit report shall include all management letters and Klausner Holding USA Inc.'s response to all findings, including corrective actions to be taken. The annual financial audit report shall include a schedule of financial assistance specifically identifying all Agreement and other revenue by sponsoring agency and Agreement number.

**Exhibit B**
**Special Audit Requirements**
**Page Three**


The complete financial audit report, including all items specified above, shall be sent directly to:

Ms. Alberta Simmons
Sharpton, Brunson and Company, P.A.
215 South Monroe Street, Suite 750
Tallahassee, Florida 32301

**And**

State of Florida Auditor General
Attn: Marilyn Rosetti
Room 574, Claude Pepper Building
111 West Madison Street
Tallahassee, Florida 32302-1450


## RECORD RETENTION

**Klausner Holding USA Inc.** shall retain all grant records and shall ensure the retention of its independent auditor's working papers for a period of five (5) years from the date of submission of the final project report. If any litigation, claim, negotiation, audit, or other action involving the records has been started before the expiration of the five (5) year period, the records shall be retained until completion of the action and resolution of all issues which arise from it, or until the end of the five (5) years period, whichever is later.

**EXHIBIT B**
**ATTACHMENT 1**

FUNDS AWARDED TO THE RECIPIENT PURSUANT TO THIS AGREEMENT CONSIST OF THE FOLLOWING:

**State Resources Awarded to the Recipient Pursuant to this Agreement Consist of the Following Resources Subject to Section 215.97, F.S.::**

| State Program Number | Funding Source | State Fiscal Year | CSFA Number | CSFA Title or Funding Source Description | Funding Amount | State Appropriation Category |
|---|---|---|---|---|---|---|
| 11-00129 | QACF | 2010/11 | 31.009 | Quick Action Closing Fund | $3,000,000.00 | 100259 |
| | | | | | | |
| | | | | | | |
| | | | | Total Award | $3,000,000.00 | |

For each program identified above, the recipient shall comply with the program requirements described in the Catalog Florida Catalog of State Financial Assistance (CSFA) [https://apps.fldfs.com/fsaa/catalog.aspx]. The services/purposes for which the funds are to be used are included in the Contract scope of services/work. Any match required by the recipient is clearly indicated in the Contract.

# EXHIBIT   C

## EXHIBIT C

Klausner Holding USA Inc.

Criteria for Measurement of Achievement of Terms for
New Full-time Equivalent Jobs, Average Annual Wage
(where applicable)

Annual certification, as authorized in Section 7.0(c) of this Agreement, must be made in a **letter format clearly certifying the applicable requirements set in 5.0(d),** which shall include the following information and documentation.  (For Closing Fund Awardees certified as a QTI Business, submittal of the required QTI Claim Application and relevant documentation is required.)  Section I of this Exhibit explains how the Annual Certification Period, used in the calculation of full-time equivalent jobs, average annual wages and the Base Period for those jobs, is determined.  Sections II, III, and IV explain the method that will to be used to determine the number of **full-time equivalent jobs** working on the project and the **average annual wage** of those project jobs, and the **documentation required** for jobs and wages.

> *Although it is not necessary to submit copies of all documentation to support information included in Annual Certifications (information such as project jobs and related wages/salaries), the Closing Fund Awardee must maintain all related forms and supporting documentation and make these materials available to OTTED as required in Sections 7.0(f) and 19.0 of this Agreement.*

## Section I.  REFUND AND BASE PERIODS

A.  Annual Certification Period -- The Annual Certification Period, for purposes of this Agreement, is the period from the month the previous certification was submitted until the effective date of the current certification.  For the first certification, the Annual Certification Period is defined as the period from October 1 to December 31 of the year the first new jobs are scheduled to be measured as specified in Paragraph 5.0(b) of this Agreement.

For subsequent years the Annual Certification Period is January 1 to December 31 of the current certification year.  (See Sections II and III for more detailed discussion of the method that will be use to evaluate jobs and wages for these periods.)

B.  Base Period -- The Base Period will be used to calculate the net new jobs.  The Base Period will be the 12 months preceding the effective date of the Letter of Certification, or, if applicable, the Preservation of Inducement, unless otherwise specified within this agreement.

Exhibit C
Klausner Holding USA Inc.
Quick Action Closing Fund
Page 2


Section II. PROJECT JOBS DETERMINATION
The following definitions and procedures must be used in determining and reporting the number of full-time equivalent jobs dedicated to the project. The full-time equivalent jobs must work at the project location within the local government area indicated in Paragraph 5.0(a).

A.   Job Definitions:
   1.   Full-time equivalent jobs -- A "full-time equivalent job" for purposes of this Agreement means at least 35 hours of paid work a week. In tabulating hours worked, any paid leave an employee takes during the pay period, such as vacation or sick leave, may be included. The total number of full-time equivalent jobs may include **both direct and support** jobs for this project.

   2.   Direct jobs -- For purposes of this Agreement, "direct jobs" may include operational or production and related workers assigned directly to the Closing Fund project.

   3.   Support jobs -- For purposes of this Agreement, "support jobs" include non-production, support or overhead workers, such as legal, administrative and clerical, working at the Closing Fund-approved business unit. The concept for support jobs is generally only relevant for businesses working on defense or other government contracts or sub-contracts.

   4.   New Full-time Equivalent Job -- Full-time equivalent jobs may be counted as new full-time equivalent jobs only if they result in a net increase in full-time equivalent jobs at the Closing Fund business over the average full-time equivalent jobs for the base period, unless otherwise specified in this Agreement. In no case may jobs or job functions be counted as new, full-time equivalent project jobs if they are moved from a related business in Florida (including a business related by virtue of a merger, purchase, or any form of acquisition) to the Closing Fund Awardee, from another Florida location of the Closing Fund Awardee to the project location, or from any other Florida business unit. In addition, no temporary construction jobs involved with the construction of facilities for the project nor any jobs which have been previously included in any approved application for annual certification or claims under Sections 288.104, 288.1045 288.106 or 288.1088, Florida Statutes, may be included in full-time equivalent project jobs.

   5.   Full-time equivalent direct project jobs -- Full-time equivalent **direct** jobs for the project may be counted as (a) all direct employees working full time (at least 35 hours a week) on the project, such as production or related work, assigned to and working exclusively on the project described in this Agreement or (b) the total of the hours of direct production or related work assigned to the project divided by 35.

Exhibit C
**Klausner Holding USA Inc.**
**Quick Action Closing Fund**
**Page 3**

6. <u>Full-time equivalent support project jobs</u> -- Full-time equivalent support jobs may be counted for the project if they are (a) exclusively assigned to and working at least 35 hours a week on the project described in this Agreement or (b) they may be estimated by multiplying the **total number of all full-time "support** jobs" at the business by the **ratio** of the number of **"full-time direct" project** jobs to the total of **all "full-time direct" jobs** at the business.

B.   <u>Full-Time Equivalent Jobs Calculation</u>:

The following method, or a method approved by OTTED which will yield comparable results, should be used to determine full-time-equivalent employment for each period.

1. **Total** <u>full-time equivalent project jobs for the Base Period and Annual Certification Period</u> – For each week in the period, the number of full-time equivalent project **support** jobs (as defined above) may be added to the number of full-time equivalent **direct** project jobs (as defined above) to obtain total **full-time equivalent project employment for each pay period**.

2. **Average** <u>full-time equivalent project jobs for the Base Period and Annual Certification Period</u> – Add the project full-time equivalent employment for all pay periods and divide by the number of pay periods to determine the average full-time equivalent project employment for the period.  This is the full-time equivalent project jobs that should be reported as annual certification.

3. <u>Net New Job Calculation</u> – To qualify for the annual certification, the difference between Annual Certification Period and the Base Period, the net increase in jobs, must be at least as great as the number of full-time equivalent net new jobs specified in Section 5.0(d)(1) of this Agreement for the Annual Certification Period.

If the job creation schedule in the Agreement specifies an increase in net new jobs as a result of a new employment phase since the previous Annual Certification Period, the actual average employment for the new Annual Certification Period will be **evaluated against** an adjusted employment requirement. This **adjusted employment requirement** is obtained by averaging the required full time equivalent employment specified for the previous employment phase for the first nine months of the year and the new employment phase for last three months of the year.  That is, the Closing Fund Awardee will be expected to maintain the employment established for the first phase of the project throughout the year, but will only be evaluated against the additional jobs for the new phase for the final 3 months of the year.  Averages are used rather than a strict month-to-month comparison because it is understood that there are month-to-month fluctuations in employment due to turnover and other reasons beyond the control of the business.

Exhibit C
Klausner Holding USA Inc.
Quick Action Closing Fund
Page 4

**Example:**  If the Closing Fund project involved the expansion of an existing Florida business with a base full time equivalent employment of 200 and the business had agreed to create 50 net new jobs by December 31 of the first year and an additional 65 net new jobs by December 31 of second year, the annual certification would be evaluated as follows:

1.  The evaluation for the first year would compare average employment for period October 1 through December 31 of year 1 against a required number of jobs of 250 (the 200 base jobs, plus the 50 net new jobs scheduled in the agreement).

2.  The second year evaluation would compare the average of actual employment for the period October 1 through December 31 against the 315 cumulative jobs scheduled for that phase.  In addition, to be sure that the jobs for the previous phase were maintained throughout the year, the average of actual full time equivalent jobs for the period January 1 through December 31 of the second year would be compared to an adjusted job requirement obtained by averaging the scheduled employment for the previous employment phase for nine months and the new employment phase for three months.  In this example the adjusted job requirement for the second year would be an average of 250 for nine months and 315 for three months or $((9*250+3*315)/12) = 266$.

Once the final phase of a project is reached, the evolution of the remaining certification will be based on a simple comparison of the actual full time equivalent employment against the maintenance of the cumulative full time equivalent employment specified for the final phase.

Worksheets, hard copy and electronic format (MS Excel format preferred), showing these calculations should be submitted with the certification.  All hard copies of worksheets should be signed.

Exhibit C
Klausner Holding USA Inc.
Quick Action Closing Fund
Page 5

## Section III.  AVERAGE ANNUAL WAGE DETERMINATION

A.   <u>Definition</u> – In calculating the project's average annual wage for the Annual Certification Period (the average wage is not required for the Base Period), the following payments may be included for all project jobs as determined in Section II of this Exhibit:

Wages
Salaries
Commissions
Bonuses
Drawing Accounts (advances to employees against future earnings)
Prizes and Awards (if given by employer for employment)
Vacation Pay
Payment to Employees of Difference Between Regular Pay and Jury Pay
Payments to Employees Temporarily Absent While in Military Service
Wages Earned Before Death but Paid After Death
Dismissal Pay
Sick Pay (not made under a plan or system)
Supplemental Payments (difference between workers' compensation and
   employee's salary).

Other benefits may only be included in the wage calculation **IF**, as a business policy, the employee has the option of accepting the value of the benefits in the form of cash payments, or can convert the benefit to cash within 12 months of receipt of the benefit.

B.   <u>Calculation of the Average Annual Wage per Full-Time Equivalent Job</u>:

The average annual wage for the Annual Certification Period must be determined in a manner consistent with the following procedure:

1.   <u>Total project wages for certification period</u> -- Actual wages, salaries and other payments (as listed in Paragraph A above) for **all full-time equivalent direct project jobs** (as defined in Section II-A. of this Exhibit) for each pay period during the certification period are **added to an estimate of support project wages** (as determined in Paragraph 2 of this section).

2.   <u>Support project wages for certification period</u> -- The total of wages, salaries and other payments (as listed in Paragraph A) for all **support** jobs at the business (as defined in Section II-A.) times the **ratio** of the number of "full-time direct" project jobs to the total of all "full-time direct" jobs at the business, calculated in Section II-A.3. of this Exhibit.

**Exhibit C**
**Klausner Holding USA Inc.**
**Quick Action Closing Fund**
**Page 6**

a. If the Closing Fund Awardee defined in this agreement meets the conditions outlined in Section IV-A. below, the Closing Fund Awardee may simply sum the quarterly payroll figures reported for unemployment compensation purposes and divide by the average number of employees (presumed to be full time equivalent employees if the conditions specified in Section IV-A. exist). If the number of quarters is less than four, this number should be multiplied by the inverse of the ratio of the number of quarters in the Annual Certification Period to four. If any of the quarters in the period has fewer than three months of employment, that quarter's payroll data should first be adjusted by multiplying the reported payroll for that period by the inverse of the ratio of the number of months for which employment data is reported to three.

3. <u>Annualized project wages</u> – Since the first Annual Certification Period is less than 12 months and some employees may work for less than 12 months during any Annual Certification Period, it is sometimes necessary to annualize the average wage for the Closing Fund Awardee or the wages of individual employees used to calculate the average annual wage. One of the following methods should be used for that purpose:

a. If the Closing Fund Awardee does not meet the conditions outlined in Section IV-A, the Closing Fund Awardee must submit the information indicated in Section IV-B and calculate the average wage by annualizing the actual wages paid to all Closing Fund Awardee employees during the Annual Certification Period and summing those figures to obtain a "total annualize payroll" for the period and dividing by the total number of employees included in the calculation of the "total annualized payroll" for that Annual Certification Period. (Note: The total number of employees used in the annualized payroll calculation may be substantially larger than the average employment for the Annual Certification Period.

Worksheets, hard copy and electronic format (MS Excel format preferred), showing these calculations should be submitted with the claim. All hard copies of worksheets should be signed.

Exhibit C
Klausner Holding USA Inc.
Quick Action Closing Fund
Page 7

# Section IV.  EMPLOYMENT AND WAGE DOCUMENTATION

Documentation to support both **base period** jobs and **refund period** jobs should include the following information:

A.  If the Closing Fund Awardee is registered as a separate business unit or worksite, for unemployment compensation purposes, and the employment information reported reflects the number of full-time-equivalent employees at the business unit or worksite, the Closing Fund Awardee may simply submit a copy of the forms that have been submitted for unemployment compensation purposes (the forms are due to the unemployment compensation agency on the fifteenth of the month following the end of each quarter) with the applicable certification documents. The reports submitted should cover the Base Period defined in Section 5.0(1)(a) of this agreement, and the twelve months preceding the December 31 certification date.

B.  If the Closing Fund Awardee is not registered as a separate business or reporting unit, or if there is substantial part-time employment or employee turnover during pay periods, then in addition to the information listed in Section IV-A above for the Closing Fund Awardee, or the business unit of which the Closing Fund Awardee is a part, the Closing Fund Awardee must submit a list of all employees at the business unit or reporting unit, identifying those employees working at the Closing Fund business during the Base Period **and** for the twelve months proceeding the December 31 annual certification date.

If an employee was not employed for a full 12 month period, the list should include the date employment began and/or ended.   The list should also identify the employee's position, title, or job description.  If the employee is paid by the hour, the list should include the number of hours the employee actually worked during each pay period during the Base Period and during the 12 months preceding the December 31 annual certification date.

This information should be supplied in both the signed hard copy and electronic format. (See also wage and salary information referenced in Section III-B3. that needs to be included in this list.)  In addition, the Closing Fund Awardee should clearly explain, as a part of the Closing Fund submission, how the information they are submitting may be different from the information submitted for unemployment compensation purposes.  For example, it might be the case that the business has a number of part time workers and therefore the unemployment compensation information overstates the number of full-time equivalent employees and understates the average wage.  Or, it may be the case that the Closing Fund business is a part of a larger or statewide reporting unit and the Closing Fund Awardee cannot be identified within the information submitted for unemployment compensation purposes.   A situation such as this should be clearly explained in the documentation.

**Exhibit C**
**Klausner Holding USA Inc.**
**Quick Action Closing Fund**
**Page 8**

## Section V.  INVESTMENT

Investment must be documented on a spreadsheet that lists the items, vendors, payment dates, amount of payments, and check numbers or unique identification of other means of payment and is accompanied with copies of canceled checks (or documentation of other forms of payment) for each item.  Please submit a signed hard copy as well as an electronic version of the spreadsheet (MS Excel format preferred).

# EXHIBIT   D

**ESCROW AGREEMENT**

By and Between

**THE GOVERNOR'S OFFICE OF TOURISM, TRADE,
AND ECONOMIC DEVELOPMENT (OTTED)**
(RE:  OTTED Contract OT11-283)

AND

**ENTERPRISE FLORIDA, INC. (EFI)**
as Escrow Agent

AND

**KLAUSNER HOLDING USA INC.**
as Closing Fund Awardee

**Dated as of:   June 30, 2011  .**

# TABLE OF CONTENTS

Page

Section  1.   Appointment of Escrow Agent ................................................................. 1
Section  2.   Establishment of Escrow ....................................................................... 2
Section  3.   Term o Escrow Agreement .................................................................... 2
Section  4.   Direction of Escrow Agent ..................................................................... 2
Section  5.   Holding of the Award Funds .................................................................. 2
Section  6.   Receipt ................................................................................................. 2
Section  7.   Rights in the Escrow Account ............................................................... 3
Section  8.   Disbursement Into Court ....................................................................... 3
Section  9.   Resignation and Removal of Escrow Agent .......................................... 3
Section 10.   Liability of Escrow Agent ..................................................................... 4
Section 11.   Miscellaneous ..................................................................................... 4
        11.1   Expenses ............................................................................................. 4
        11.2   Dispute Resolution .............................................................................. 4
        11.3   Notice.................................................................................................. 4
        11.4   Amendment or Waiver ......................................................................... 5
        11.5   Severability ......................................................................................... 5
        11.6   Governing Law .................................................................................... 5
        11.7   Entire Agreement: Assignment ............................................................ 5
        11.8   Binding Effect...................................................................................... 6
        11.9   Execution in Counterparts .................................................................. 6
        11.10  Descriptive Headings........................................................................... 6
        11.11  Person and Gender............................................................................... 6
        11.12  Construction......................................................................................... 6

i

# ESCROW AGREEMENT

THIS ESCROW AGREEMENT (the "Escrow Agreement"), dated as of ___June 30___, 2011, by and among (i) The Office of Tourism, Trade, and Economic Development ("OTTED"), (ii) Enterprise Florida, Inc., a Florida corporation ("Enterprise Florida" or "Escrow Agent")., and (iii) Klausner Holding USA Inc. (the "Closing Fund Awardee").

Capitalized terms used herein without definition shall have the meanings set forth in the Funding Agreement (as hereinafter defined).

## WITNESSETH:

WHEREAS, the Florida Legislature established the Quick Action Closing Fund pursuant to Section 288.1088, Florida Statutes (the "Closing Fund"), to ensure that sufficient resources are available to allow the State to respond expeditiously to extraordinary economic opportunities and to compete effectively for high-value research and development and innovation business projects;

WHEREAS, the Closing Fund Awardee and OTTED have entered into a Quick Action Closing Fund Agreement (the "Funding Agreement"), which awards to the Closing Fund Awardee  DOLLARS ($) (the "Award Funds") pursuant to the Quick Action Closing Fund Program;

WHEREAS, the Florida Legislature created Enterprise Florida pursuant to Section 288.901 *et. al.*, Florida Statutes, to serve as the principal economic development organization for the State and delegated to it the responsibility to provide leadership for business development in Florida by aggressively assisting in the creation of new businesses;

WHEREAS, the Funding Agreement sets forth certain conditions that the Closing Fund Awardee must meet before the payment of certain portions of the Award Funds;

WHEREAS, OTTED, on behalf of the Executive Office of the Governor, recommended the approval of the project and the release of the funds pursuant to the legislative review requirements set forth in Section 216.177, Florida Statutes.

WHEREAS, OTTED received the Award Funds from the Legislature and has agreed to transfer the said Funds to Enterprise Florida, which shall be held by Enterprise Florida in escrow for the sole purpose of disbursing Funds to the Closing Fund Awardee in accordance with the Funding Agreement; and

NOW, THEREFORE, in consideration of the consummation of the transactions contemplated by the Funding Agreement and the mutual covenants and agreements contained herein, the parties hereto agree as follows:

**Section 1.**      **Appointment of Escrow Agent**   OTTED and Closing Fund Awardee hereby appoint Enterprise Florida as the Escrow Agent under this Escrow Agreement. The Escrow Agent is hereby authorized to take any and all actions indicated in this Escrow Agreement to be taken by the Escrow Agent and all such further actions consistent herewith as it shall deem necessary or desirable to implement the provisions hereof. The Escrow Agent represents and warrants to OTTED and the Closing Fund Awardee that it has all legal power and authority to act in the manner contemplated by this Escrow Agreement. OTTED and the Closing Fund Awardee agree that the authorization and designation of the Escrow Agent under this Section 1 shall be irrevocable and shall be binding upon their successors and assigns.

**Section 2.**      **Establishment of Escrow**   Upon completion of the conditions set forth in Section 5 (b) of the Funding Agreement, OTTED shall transfer the Award Funds to the Escrow Agent, which shall immediately deposit and invest any and all funds advanced by OTTED for payments in an independent and separate interest bearing account(s).  The Escrow Agent shall hold the Award Funds solely for the purpose of disbursing the Award Funds to the Closing Fund Awardee in accordance with the terms and conditions set forth in the Funding Agreement and herein.  Escrow Agent shall provide OTTED the account number(s) of all such accounts, and shall also provide all other information regarding the account(s) as OTTED requests.

**Section 3.**      **Term of Escrow Agreement**   This Escrow Agreement shall continue in effect from the date hereof until the Award Funds have been fully disbursed pursuant to Section 5 hereof.

**Section 4.**      **Direction of Escrow Agent**   All directions made to the Escrow Agent to take or refrain from taking any action pursuant to this Escrow Agreement shall be made in writing and shall be executed by OTTED and the Closing Fund Awardee and the Escrow Agent shall be entitled to conclusively rely on such instruction without further investigation of any kind.

**Section 5.**      **Holding of the Award Funds** With respect to the request for Award Funds, OTTED shall submit to the Escrow Agent the following: (i) a completed written disbursement request, received from the Closing Fund Awardee, executed by the President of the Closing Fund Awardee or other authorized officer, substantially in the form attached hereto as Exhibit A and (ii) a written acknowledgment executed by the Director of OTTED, substantially in the form attached hereto as Exhibit B, that certifies that the Closing Fund Awardee has satisfied the conditions set forth in the Funding Agreement for disbursement of the requested Award Funds.

(b)     Escrow Agent shall return to OTTED all interest income derived from the interest bearing account, on a quarterly basis, based on fiscal year quarters.  Enterprise Florida shall remit such amounts in the form of checks payable to the State of Florida and mailed to OTTED at the address provided in Article 1 above, Attention: Timothy E. Proctor.  The payments shall be accompanied by (i) the amount of interest earned by the deposits, the name of the depository(ies), and interest rate(s); (ii) copies of all bank or investment statements and computational worksheets; and (iii) any other applicable information requested by OTTED.

(c)     Any and all cash remaining after payment of all amounts due to the Closing Fund Awardee pursuant to the Funding Agreement shall be distributed to OTTED.

Section 6.     Receipt   Delivery by the Escrow Agent of a signed and dated signature page hereto shall serve as acknowledgment by the Escrow Agent of receipt of the Award Funds (and any related instruments of transfer) on the date hereof and acceptance of the Award Funds in escrow.

Section 7.     Rights in the Escrow Account   While any amount of the Award Funds is held by the Escrow Agent, and pending the release thereof in accordance with Section 5 hereof, OTTED shall retain all right, title and interest in and to the Award Funds.

Section 8.     Disbursement Into Court   If, at any time, there shall exist any dispute between OTTED and the Closing Fund Awardee with respect to the holding or disposition of any portion of the Award Funds or any other obligations of Escrow Agent hereunder, or if at any time Escrow Agent is unable to determine, to Escrow Agent's sole satisfaction, the proper disposition of any portion of the Award Funds or Escrow Agent's proper actions with respect to its obligations hereunder, or if OTTED has not within thirty (30) days of the furnishing by Escrow Agent of a notice of resignation pursuant to Section 9 hereof, appointed a successor Escrow Agent to act hereunder, then Escrow Agent may, in its sole discretion, take either or both of the following actions:

(a)     suspend the performance of any of its obligations under this Escrow Agreement until such dispute or uncertainty shall be resolved to the sole satisfaction of Escrow Agent or until a successor Escrow Agent shall have been appointed (as the case may be); and/or

(b)     petition (by means of an interpleader action or any other appropriate method) any court of competent jurisdiction in Leon County, Florida, for instructions with respect to such dispute or uncertainty.

Escrow Agent shall have no liability to OTTED or the Closing Fund Awardee or to any other person with respect to any such suspension of performance or disbursement into court, specifically including any liability or claimed liability that may arise, or be alleged to have arisen, out of or as a result of, any delay in the disbursement of the Award Funds or any delay in or with respect to any other action required or requested of Escrow Agent.

Section 9.   Resignation and Removal of Escrow Agent   Escrow Agent may resign from the performance of its duties hereunder at any time by giving sixty (60) days' prior written notice to OTTED and the Closing Fund Awardee or may be removed, with or without cause, by OTTED, at any time by the giving of sixty (60) days prior written notice to Escrow Agent. Such resignation or removal shall take effect upon the appointment of a successor Escrow Agent as provided herein below.  Upon any such notice of resignation or removal, OTTED shall appoint a successor Escrow Agent hereunder. Upon the acceptance in writing of any appointment as Escrow Agent hereunder by a successor Escrow Agent, such successor Escrow Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Escrow Agent, and the retiring Escrow Agent shall be discharged from its duties and obligations under this Escrow Agreement, but shall not be discharged from any liability for actions taken as Escrow Agent hereunder prior to such succession.  After any retiring Escrow Agent's resignation or removal, the provisions of this Escrow Agreement shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Escrow Agent under this Escrow Agreement.

Section 10.   Liability of Escrow Agent.

(a)   Escrow Agent shall have no liability or obligation with respect to the Award Funds, except for Escrow Agent's willful misconduct or gross negligence.  Escrow Agent's sole responsibility shall be for the safekeeping and disbursement of the Award Funds in accordance with the terms of this Escrow Agreement.  Escrow Agent shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein.  Escrow Agent may rely upon any instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall in good faith believe to be genuine, to have been signed or presented by the person or parties purporting to sign the same and to conform to the provisions of this Escrow Agreement.  Escrow Agent shall not be obligated to take any legal action or commence any proceeding in connection with the Award Funds, this Escrow Agreement or the Funding Agreement, or to appear in, prosecute or defend any such legal action or proceeding.  Escrow Agent may consult legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or of any other agreement or of its duties hereunder, and shall incur no liability whatsoever in acting in accordance with the opinion or instruction of such counsel.

(b)   The Escrow Agent is authorized, in its sole discretion, to comply with orders issued or process entered by any court with respect to the Award Funds.  If any portion of the Award Funds is at any time attached, garnished or levied upon under any court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any court order, or in case any order, judgment or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, the Escrow Agent is authorized, in its sole discretion, to rely upon and comply with any such order, writ, judgment or decree, which it is advised by legal counsel selected by it, is binding upon it, without the need for appeal or other action; and if the Escrow Agent complies with any such order, writ, judgment or decree, it shall not be liable to any of the parties hereto or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

Section 11.    Miscellaneous.

11.1.    Expenses.  All costs and expenses incurred in connection with this Escrow Agreement and the transactions contemplated hereby shall be paid by the party incurring such expenses.

11.2.    Dispute Resolution.  Any controversy or claim arising out of or relating to this Escrow Agreement, or any alleged breach hereof, shall be resolved in accordance with Florida Law.

11.3.    Notice.  All notices and other communications hereunder shall be in writing and shall be deemed to have been validly served, given or delivered five (5) days after deposit in the United States mails, by certified mail with return receipt requested and postage prepaid, when delivered personally, one (1) day after delivery to any overnight courier, or when transmitted by facsimile transmission facilities, and addressed to the party to be notified as follows:

If to OTTED to:

> EOG/OTTED
> 400 South Monroe Street
> The Capitol, Suite 2001
> Tallahassee, Florida 32399-0001
> Attn: Timothy E. Proctor
> Fax: (850) 487-3014

If to Closing Fund Awardee, to:

> Klausner Holding USA Inc.
> 1297 Professional Drive, Suite 202
> Myrtle Beach, SC 29577
> Attn:   Thomas Mende        .
> Fax:

If to Escrow Agent, to:

> Enterprise Florida, Inc.
> 800 North Magnolia Avenue, Suite 1100
> Orlando, Florida 32803
> Attn: Louis Laubscher
> Fax: (407) 316-4599

11.4.    Amendment or Waiver.  This Escrow Agreement may be changed, waived, discharged or terminated only by a writing signed by each of OTTED, Closing Fund Awardee, and Escrow Agent.  No delay or omission by any party in exercising any right with respect hereto shall operate as a waiver.  A waiver on any one occasion shall not be construed as a bar to, or waiver of, any right or remedy on any future occasion.

11.5.    Severability.   To the extent any provision of this Escrow Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Escrow Agreement.

11.6.    Governing Law.  This Escrow Agreement shall be construed and interpreted in accordance with the internal laws of the State of Florida without giving effect to the conflict of laws principles thereof.

11.7.    Entire Agreement: Assignment.  This Escrow Agreement (a) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, among the parties or any of them, with respect to the subject matter hereof; (b) is not intended to confer upon any other person any rights or remedies hereunder; and (c) shall not be assigned by operation of law or otherwise except in accordance with its terms.

11.8.    Binding Effect.  All of the terms of this Escrow Agreement, as amended from time to time, shall be binding upon, inure to the benefit of, and be enforceable by the respective heirs, successors and assigns of OTTED, Closing Fund Awardee, and Escrow Agent.

11.9.    Execution in Counterparts.  This Escrow Agreement and any Joint Written Direction may be executed in two or more counterparts, which when so executed shall constitute one and the same agreement or direction.

11.10.    Descriptive Headings.  The headings contained in this Escrow Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Escrow Agreement.

11.11.   <u>Person and Gender</u>.   The masculine gender shall include the feminine and neuter genders, the singular shall include the plural.

11.12.   <u>Construction</u>.   This Escrow Agreement shall be interpreted without regard to any presumption or rule requiring construction against the party causing this Escrow Agreement to be drafted.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals on the day first above written.

| OFFICE OF TOURISM, TRADE AND ECONOMIC DEVELOPMENT | KLAUSNER ~~TRADING~~ *Helding USA Inc.* ~~INTERNATIONAL GMBH~~ |
|---|---|
| By: _____ (signature) | By: _____ (signature) |
| Name: *Michelle L Dennard* | Name: *Richard Bujok* |
| Title: *Sr Attorney* | Title: *Treasurer* |
| ENTERPRISE FLORIDA, INC., a Florida corporation By: _____ (signature) | |
| Name: *Louis E. Landscher* | |
| Title: *Sr VP & COO* | |

# STATE OF FLORIDA
## DEPARTMENT OF ECONOMIC OPPORTUNITY
### DIVISION OF STRATEGIC BUSINESS DEVELOPMENT
*QUICK ACTION CLOSING FUND AGREEMENT*

## AMENDMENT NUMBER 1

This First Amendment to DSBD Agreement OT11-283 is made and entered into this _31_ day of _August_, 2011, by and between the State of Florida, Department of Economic Opportunity's Division of Strategic Business Development, hereinafter referred to as "DSBD," and Klausner Holding USA Inc., hereinafter referred to as "Closing Fund Awardee," pursuant to Section 288.1088, Florida Statutes. DSBD and the Closing Fund Awardee are sometimes also hereinafter referred to as a "Party" and collectively as the "Parties."

This Amendment is entered into for the purpose of modifying the Agreement as requested by the Closing Fund Awardee and consistent with DSBD policy. The Parties wish to amend the Agreement to ensure that the terms of the Agreement comply with current law and DSBD office procedures. The number of jobs to be created and the funding amount the Closing Fund Awardee is eligible to receive shall remain the same as initially agreed upon.

The Enterprise Florida, Inc. Quick Action Closing Fund Request for Consideration and the Closing Fund Awardee documentation, including any attachments, submitted in lieu of an application, are attached hereto and incorporated as an integral part of this agreement, and will be referred to as "Exhibit 1."

In consideration of the mutual promises and agreements contained herein, the Parties agree to amend the Agreement as follows:

1. **Paragraph 5.0(b)(3) is hereby deleted and replaced by the following:**

   (3) Submission of modeling protocol to the Florida Department of Environmental Protection for the proposed project in Suwannee County, FL, as a precursor to the air permit by August 30, 2011.

**DUPLICATE ORIGINALS**: This Agreement is executed in duplicate originals.

In Witness whereof, DSBD and the Closing Fund Awardee have caused this agreement to be executed and delivered by their duly authorized representatives.

**STATE OF FLORIDA**
**DIVISION OF STRATEGIC**
**BUSINESS DEVELOPMENT**

AUTHORIZED SIGNATURE                    Date

TITLE: Senior Attorney ~~Division Director~~

WITNESSES:

**KLAUSNER HOLDING USA INC.**

AUTHORIZED SIGNATURE                    Date

TITLE: PRESIDENT

WITNESSES:

List of Exhibits:

| | |
|---|---|
| Exhibit 1 | Original Quick Action Closing Fund Agreement |
| Exhibit 2 | Special Audit Requirements |
| Exhibit 3: | Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable) |

2

# STATE OF FLORIDA
# DEPARTMENT OF ECONOMIC OPPORTUNITY
## *QUICK ACTION CLOSING FUND AGREEMENT*

## AMENDMENT NUMBER TWO

This Second Amendment to DSBD Agreement OT11-283 is made and entered into this 9 day of January , 2012, by and between the State of Florida, Department of Economic Opportunity's Division of Strategic Business Development, hereinafter referred to as "DSBD," and Klausner Holding USA, Inc., hereinafter referred to as "Closing Fund Awardee," pursuant to Section 288.1088, Florida Statutes. DSBD and the Closing Fund Awardee are sometimes also hereinafter referred to as a "Party" and collectively as the "Parties."

This Amendment is entered into for the purpose of modifying the Agreement as requested by the Closing Fund Awardee and consistent with DSBD policy. The Parties wish to amend the Agreement to extend by one year the job-creation and capital investment schedules; adjust the annual job-creation commitments; and update the terms of the Agreement to comply with current law and DSBD policies. The number of jobs to be created and the funding amount the Closing Fund Awardee is eligible to receive shall remain the same as initially agreed upon.

The initial Agreement executed June 30, 2011, and all of its attachments and Exhibits are attached hereto and incorporated as an integral part of this agreement, and will be referred to as "Exhibit 1."

In consideration of the mutual promises and agreements contained herein, the Parties agree to amend the Agreement as follows:

1

1. Section 1.0 is hereby deleted and replaced by the following:

    **1.0 PARTIES**: The parties and their respective addresses for purposes of this Agreement are as follows:

> STATE OF FLORIDA
> DEPARTMENT OF ECONOMIC OPPORTUNITY
> DIVISION OF STRATEGIC BUSINESS DEVELOPMENT
> THE CAPITOL, SUITE 2001
> TALLAHASSEE, FLORIDA 32399-0001
>
> KLAUSNER HOLDING USA, INC.
> 1297 PROFESSIONAL DRIVE, SUITE 202
> MYRTLE BEACH, SC 29577

2. Section 2.0 is hereby deleted and replaced by the following:

    **2.0 ADMINISTRATORS**:

The State's Closing Fund Agreement administrator is:

    Karl Blischke, Chief Analyst

The Closing Fund Awardee Agreement administrator is:

    All approvals and notifications referenced in this Agreement must be obtained in writing from the parties' agreement administrators or their duly authorized designees.

3. Section 3.0 is hereby deleted and replaced by the following:

    **3.0 TERM**: The term of this Agreement shall commence upon the date of execution of this Agreement, and continue through June 30, 2020, for all terms except for the record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0), unless terminated prior to that time as provided for in this Agreement. The record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0) of the Closing Fund Awardee shall continue through June 30, 2025, unless terminated prior to that time as provided for in this Agreement.

4. **Paragraphs 5.0(d) and 5.0(e) are hereby deleted and replaced by the following:**

**5.0 PROJECT DESCRIPTION AND AWARD CONDITIONS:**

(d) In order to remain qualified for the Closing Fund award payment authorized in this Agreement and to avoid sanctions, the Closing Fund Awardee must meet the conditions below:

(1) Creation and maintenance of at least 350 net new project jobs in Suwannee County, Florida, by December 31, 2015, in accordance with the schedule provided in the QTI Tax Refund Application. These jobs will be phased in, with the first phase consisting of the creation of at least 86 net-new full-time equivalent project jobs in Florida, fully implemented by December 31, 2013; the second phase, consisting of the creation of at least an additional 164 net-new project jobs for a cumulative total of at least 250 net-new full-time equivalent project jobs in Florida, fully implemented by December 31, 2014; and the third phase, consisting of the creation of at least an additional 100 net-new project jobs for a cumulative total of at least 350 full-time equivalent project jobs in Florida, fully implemented by December 31, 2015. These jobs must be maintained for at least an additional three years, until December 31, 2018.

(2) The Base Period for this project's jobs remains June 1, 2010 through May 31, 2011;

(3) The average annual wage of project jobs specified in Paragraph 5.0(d)(1) above will remain at least $30,000, excluding benefits; and

(4) The Closing Fund Awardee must invest a total of at least $150,000,000 in the new facility in Suwannee County by December 31, 2015, and maintain that investment for an additional three (3) years, until December 31, 2018. Documentation of this investment must

be presented to DSBD or its agent by January 31, 2016, and continue to be presented to DSBD each year thereafter until January 31, 2019.

(e) The Closing Fund Awardee has made a one-time election to extend the job creation and investment schedule by one year.  Execution of this Amendment eliminates the Closing Fund Awardee's eligibility for another extension of the term of the performance requirements and sanctions.

**5.  Paragraphs 7.0(c) and 7.0(d) are hereby deleted and replaced by the following, and Paragraph 7.0(g) is added:**

(c) Submit annual certification of its employment and annual average wage payment using a Qualified Target Industry Tax Refund (QTI) Claim application or alternate equivalent documentation acceptable to DSBD, every State of Florida fiscal year by January 31 of said year.   The QTI claim application or alternate equivalent documentation must be submitted annually through January 31, 2019.

(d) Certify and submit documentation that at least 80 percent of the total investment specified in Paragraph 5.0(c)(4) has been made in the facility in Suwannee County, Florida, as of December 31, 2015, and continues to be located in Suwannee County, Florida, as of December 31, 2018.

(g) Expend the award on purposes consistent with Project commitments.

**6.  Paragraph 19.0(b) is hereby deleted and replaced by the following:**

(b) The books, records, documents and other evidence shall be subject at all times to inspection, review, or audit by DSBD or its designee, or by state personnel of the Office of the Auditor General or Department of Financial Services.  Copies of the reporting package required

4

by this agreement shall be submitted by or on behalf of the recipient to DSBD and the State of Florida Auditor General.

7. **Section 20.0 is hereby deleted and replaced by the following:**

20.0 **PUBLIC RECORDS**: All public records made or received by the Closing Fund Awardee in conjunction with the Quick Action Closing Fund Award are subject to the provisions of Chapter 119, Florida Statutes.  Materials that relate to methods of manufacture or production, potential trade secrets, potentially patentable material, actual trade secrets, business transactions, financial and proprietary information, and agreements or proposals to receive funding that are received, generated, ascertained, or discovered by DSBD, as exempted in Section 288.9520, Florida Statutes, or as exempted under Sections 288.075 and/or 288.9520, Florida Statutes shall remain confidential and exempt from public disclosure.  Such confidential and exempt information should be marked by the Closing Fund Awardee as confidential.

8. **This Amendment is not intended to increase the maximum amount that may be paid to the Closing Fund Awardee under the original Agreement.**

9. **The Parties reaffirm all portions of Exhibit 1 not in conflict with this Amendment. Performance in accordance with this Amendment will be considered performance of the Agreement.**

5

**DUPLICATE ORIGINALS**: This Agreement is executed in duplicate originals.

In Witness whereof, DSBD and the Closing Fund Awardee have caused this agreement to be executed and delivered by their duly authorized representatives.

**STATE OF FLORIDA**
**DIVISION OF STRATEGIC**
**BUSINESS DEVELOPMENT**

_____  1.9.13
AUTHORIZED SIGNATURE          Date

TITLE:         Division Director

WITNESSES:

**KLAUSNER HOLDING USA, INC.**

_____  _____
AUTHORIZED SIGNATURE          Date

TITLE:

WITNESSES:

Approved as to form and legal
sufficiency, subject only to full and
proper execution by the parties

Office of the General Counsel
Department of Economic Opportunity

By: _____

Approved Date:   01/08/2013

List of Exhibits:

| | |
|---|---|
| Exhibit 1 | Original Quick Action Closing Fund Agreement |
| Exhibit 2 | Special Audit Requirements |
| Exhibit 3: | Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable) |

6

**DUPLICATE ORIGINALS**: This Agreement is executed in duplicate originals.

In Witness whereof, DSBD and the Closing Fund Awardee have caused this agreement to be executed and delivered by their duly authorized representatives.

**STATE OF FLORIDA**
**DIVISION OF STRATEGIC**
**BUSINESS DEVELOPMENT**

**KLAUSNER HOLDING USA, INC.**

_____
**AUTHORIZED SIGNATURE**          **Date**

**AUTHORIZED SIGNATURE**          **Date**

**TITLE:**       **Division Director**

**TITLE:** _Director_

**WITNESSES:**

**WITNESSES:**

Approved as to form and legal
sufficiency, subject only to full and
proper execution by the parties

Office of the General Counsel
Department of Economic Opportunity

By:

Approved Date:

List of Exhibits:

Exhibit 1      **Original Quick Action Closing Fund Agreement**
Exhibit 2      **Special Audit Requirements**
Exhibit 3:     **Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Annual Wage (where applicable)**

# STATE OF FLORIDA
# DEPARTMENT OF ECONOMIC OPPORTUNITY
## *QUICK ACTION CLOSING FUND AGREEMENT*

### AMENDMENT NUMBER 3

This Third Amendment to Agreement OT11-283 ("Agreement") is made and entered into this _17_ day of _October_, 2013, by and between the State of Florida's Department of Economic Opportunity, Division of Strategic Business Development ("DSBD") and Klausner Holding USA, Inc. ("Closing Fund Awardee"). DSBD and the Closing Fund Awardee are sometimes also hereinafter referred to individually as a "Party" and collectively as the "Parties."

WHEREAS, pursuant to 288.0656, Florida Statutes, it is the Legislature's intent to "encourage and facilitate the location and expansion of major economic development projects of significant scale" in rural communities;

WHEREAS, this project is locating in Suwannee County, Florida, a designated "rural area of critical concern", within a "catalyst site" as defined in 288.0656(2)(b), Florida Statutes;

WHEREAS, this project is a designated "catalyst project" as defined in 288.0656(2)(a), Florida Statutes;

WHEREAS, Suwannee County and the Closing Fund Awardee acknowledge this project has been delayed due to circumstances beyond their control (necessary site preparation due to possibility of sinkhole activity); and,

WHEREAS, DSBD, in an effort to facilitate the location and success of this project in a rural area of critical concern, is amending this Agreement to extend the time by which the

1

Closing Fund Awardee may request its Closing Fund award from the Enterprise Florida, Inc. escrow account and meet its subsequent Performance Conditions.

NOW THEREFORE, in consideration of the mutual covenants and obligations set forth herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to amend the Agreement as follows:

1. **Section 1.0 is hereby deleted and replaced by the following:**

   1.0 <u>PARTIES</u>: The parties and their respective addresses for purposes of this Agreement are as follows:

   > STATE OF FLORIDA
   > DEPARTMENT OF ECONOMIC OPPORTUNITY
   > DIVISION OF STRATEGIC BUSINESS DEVELOPMENT
   > 107 EAST MADISON STREET
   > THE CALDWELL BUILDING, MSC-80
   > TALLAHASSEE, FLORIDA 32399
   > FAX NUMBER: (850) 410-4770
   >
   > KLAUSNER HOLDING USA, INC.
   > 1297 PROFESSIONAL DRIVE, SUITE 202
   > MYRTLE BEACH, SOUTH CAROLINA  29577
   > FAX NUMBER: (843) 626-9629

2. **Section 2.0 is hereby deleted and replaced by the following:**

   2.0 <u>ADMINISTRATORS</u>:

   The State's Closing Fund Agreement administrator is:

   Karl Blischke, Chief for Bureau of Compliance & Accountability

   The Closing Fund Awardee Agreement administrator is:

   All approvals and notifications referenced in this Agreement must be obtained in writing from the parties' agreement administrators or their duly authorized designees.



3. Section 3.0 is hereby deleted and replaced by the following:

3.0 **TERM**: The term of this Agreement shall commence upon the date of execution of this Agreement, and continue through June 30, 2021, for all terms except for the record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0), unless terminated prior to that time as provided for in this Agreement. The record-keeping and audit-related obligations (Paragraphs 7.0(f) and 19.0) of the Closing Fund Awardee shall continue through June 30, 2026, unless terminated prior to that time as provided for in this Agreement.

4. Paragraphs 5.0(c) and 5.0(d) are hereby deleted and replaced by the following:

5.0 **PROJECT DESCRIPTION AND AWARD CONDITIONS**:

(c) The "Award Conditions" for the release and payment of $3,000,000 from the EFI escrow account to the Closing Fund Awardee shall be met when the following have occurred:

(1) Public announcement of the project's location in Suwannee County, Florida;

(2) Acquisition (ownership) by the Closing Fund Awardee of the land (approximately 100 to 175 acres) in Suwannee County, Florida; and,

(3) Capital investment of at least $12 million toward site preparation and other costs associated with construction of the new facility in Suwannee County, Florida.

Supporting documentation shall be submitted to DSBD for verification of the aforementioned conditions. Verification must be complete to DSBD's satisfaction prior to disbursement of the payment. To receive payment from the EFI escrow account, Award Conditions shall be met and payment shall be requested no later than June 30, 2014.

3



(d) In order to remain qualified for the Closing Fund award payment authorized in this Agreement and to avoid sanctions, the Closing Fund Awardee must meet the conditions below:

(1) Creation and maintenance of at least 350 net new project jobs by December 31, 2016, in accordance with the schedule provided in the QTI Tax Refund Application, if applicable. (These jobs will be phased in, with the first phase consisting of the creation of at least 86 net new full-time equivalent project jobs in Florida, fully implemented by December 31, 2014; the second phase, consisting of the creation of at least an additional 164 project jobs for a cumulative total of at least 250 full-time equivalent project jobs in Florida, fully implemented by December 31, 2015; and, the third and final phase, consisting of the creation of at least an additional 100 project jobs for a cumulative total of at least 350 full-time equivalent project jobs in Florida, fully implemented by December 31, 2016. These jobs must be maintained (averaged over each reporting year) for at least an additional three (3) years, until December 31, 2019.

(2) The Base Period for this project's jobs is June 1, 2010, through May 31, 2011, and the Base Job number is set to zero (0);

(3) The average annual wage of project jobs specified in Paragraph 5.0(d)(1) above is at least $30,000, excluding benefits; **and**

(4) The Closing Fund Awardee must invest a total of at least $150,000,000 in the new facility by December 31, 2016, and maintain that investment for an additional three (3) years, until December 31, 2019. Documentation of this investment must be presented to DSBD by January 31, 2017, and continue to be presented to DSBD each year thereafter until January 31, 2020.

4



(e) As reflected in Amendment Two, the Closing Fund Awardee used the one-time extension that was available to the Closing Fund Awardee to extend the job creation and investment schedule by one year. However, as additional delay has resulted from site conditions discovered at the catalyst site after entering the Agreement, in furtherance of the stated objective of section 288.0565, F.S., to encourage and facilitate the location and expansion of major economic development projects of significant scale in rural areas of critical economic concern, the Closing Fund Awardee's job creation and investment schedule requirements have been extended an additional year.

**5. Paragraphs 7.0(c) and 7.0(d) are hereby deleted and replaced by the following:**

(c) Submit annual certification of its employment and annual average wage payment using a Qualified Target Industry Tax Refund (QTI) Claim application or alternate equivalent documentation acceptable to DSBD, every State of Florida fiscal year by January 31 of said year. The QTI claim application or alternate equivalent documentation must be submitted annually through January 31, 2020.

(d) Certify and submit documentation that at least 80 percent of the total investment specified in Paragraph 5.0(d)(4) has been made in the facility in Suwannee County, Florida as of December 31, 2016, and continues to be located in Suwannee County, Florida as of December 31, 2019.

**6. Section 8.0 is hereby deleted and replaced by the following:**

**8.0 INDEMNIFICATION:** The Closing Fund Awardee shall be fully liable for the actions of its agents, employees, partners, or subcontractors and shall fully indemnify, defend, and hold harmless the State and DEO, and their officers, agents, and employees, from suits, actions, damages, and costs of every name and description, including attorneys' fees, arising



from or relating to: (i) personal injury and damage to real or personal tangible property alleged to be caused in whole or in part by the Closing Fund Awardee, its agents, employees, partners, or subcontractors, provided, however, that the Closing Fund Awardee shall not indemnify for that portion of any loss or damages proximately caused by the negligent act or omission of the State or DEO; (ii) the breach of any representation, warranty, covenant or agreement made by the Closing Fund Awardee in this Agreement or the application for the Closing Fund award, or any allegation by a third party that, if true, would constitute such a breach; and, (iii) any arrangement made by or on behalf of the Closing Fund Awardee or any of its affiliates with any broker, finder or agent in connection with this Agreement or the transactions contemplated hereby.

7. **Paragraph 10.0(h) is hereby deleted and replaced by the following:**

(h) The interest rate shall be determined by the annualized interest rate received by the State on funds in the State's Special Purpose Investment Account in January of the year in which the performance standard was not satisfied by the Closing Fund Awardee. This rate is published online at http://fltreasury.org/fs_01.html

8. **Section 14.0 is hereby deleted and replaced by the following:**

14.0 <u>**UNAUTHORIZED ALIENS**</u>: DSBD will consider the knowing employment by the Closing Fund Awardee of unauthorized aliens, as described in 8 U. S. C. Section 1324a of the Immigration and Naturalization Act, cause for termination of this Agreement.

9. **Paragraph 17.0 is hereby deleted and replaced by the following:**

17.0 <u>**EXPENSES**</u>: All costs and expenses incurred by the Closing Fund Awardee in connection with this Agreement and the transactions contemplated hereby shall be the responsibility of the Closing Fund Awardee.

6



**10. Section 19.0, Accounting, Reports, and Audits, is hereby deleted and replaced by the following:**

### 19.0 <u>RECORD-KEEPING AND AUDIT-RELATED OBLIGATIONS</u>:

(a) Records pertaining to this Agreement, which include, without limitation, supporting documentation for the application process, the General Project Overview and its attachment, documentation pertaining to the Award, and records sufficient to demonstrate compliance with the terms of this Agreement, including personnel and financial records and reports related to the Project Job, Average Project Wage and Capital Investment Requirements, shall be retained by the Closing Fund Awardee for the longer of (i) five (5) state fiscal years after the term of this Agreement, which includes satisfaction of all reporting requirements and receipt of all payments due under this Agreement; provided, that all applicable audits have been released, or (ii) five (5) years after the date that the last audit report is released. If any litigation, claim, negotiation, or other action involving records has been started before the expiration of the controlling period as identified above, the records shall be retained until completion of the action and resolution of all issues which arise from it, or until the end of the controlling period as identified above, whichever is longer. The Closing Fund Awardee shall maintain these records according to generally accepted accounting principles, procedures, and practices.

(b) The records identified in Section 19.0(a) shall be subject at all times to inspection, review, or audit by DSBD or its designee, or by state personnel of the Office of the Auditor General or Department of Financial Services, or by other state personnel. Copies of the reporting package required by this Agreement shall be submitted by or on behalf of the Closing Fund Awardee to DSBD and the State of Florida Auditor General. The Closing Fund Awardee shall, upon the request of DSBD, afford to DSBD and each of its respective employees, advisors, counsel and other authorized representatives, during normal business hours, reasonable access, upon reasonable advance notice, to all of the books, records and properties of the Closing Fund Awardee are reasonably related to this Agreement and to all managers and employees of the Closing Fund Awardee reasonably necessary to conduct such on-site inspection, review, or audit.

7



11. Section 20.0 is hereby deleted and replaced by the following:

20.0 **PUBLIC RECORDS**: The Closing Fund Awardee shall allow public access to all records made or received by the Closing Fund Awardee in conjunction with the Quick Action Closing Fund or this Agreement, unless such records are exempt from section 24(a) of Article 1 of the State Constitution and Subsection 119.07(1), Florida Statutes. It is expressly understood that DSBD may unilaterally cancel this Agreement for the Closing Fund Awardee's refusal to comply with this provision. If the Closing Fund Awardee submits records to DSBD that are confidential and exempt from public disclosure pursuant to Section 288.075, Florida Statutes, as trade secrets or proprietary confidential business information, such records should be marked by the Closing Fund Awardee as confidential prior to submittal to DSBD.

12. Section 22.0 is hereby deleted and replaced by the following:

22.0 **NON-ASSIGNMENT**: The Closing Fund Awardee shall not assign, sublicense, nor otherwise transfer its rights, duties, or obligations under this Agreement without the prior written consent of DSBD, which consent will not be unreasonably withheld. DSBD will at all times be entitled to assign or transfer its rights, duties, or obligations under this Agreement to another governmental agency in the State of Florida, upon giving prior written notice to the Closing Fund Awardee. In the event that DSBD approves transfer of the Closing Fund Awardee's obligations, the Closing Fund Awardee remains responsible for all work performed and all expenses incurred in connection with this Agreement.

13. All references in the Agreement and its Exhibits to the "Executive Office of the Governor" are hereby replaced with the "Department of Economic Opportunity" and all references in the Agreement and its Exhibits to the "Office of Tourism, Trade, and

8



Economic Development" or "OTTED" are hereby replaced with the "Division of Strategic Business Development" or "DSBD", respectively.

14.   This Amendment does not increase the maximum amount that may be paid to the Closing Fund Awardee under the original Agreement.

15.   Exhibit 2 of Amendment Two (2), Special Audit Requirements, is hereby deleted and replaced with Attachment 1, titled, "Exhibit B, Special Audit Requirements," and incorporated by reference herein.

16.   **Exhibit 3 of Amendment Two (2), Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Wage, is hereby deleted and replaced with the Attachment 2, titled "Exhibit C, Criteria for Measurement of Achievement of Terms for New Full-time Equivalent Jobs and Average Wage," and incorporated by reference herein.**

17.   **The Parties reaffirm all portions of Agreement OT11-283 not in conflict with this Amendment.   Performance in accordance with this Amendment will be considered performance of the Agreement.**

18.   **Section 12.0, Legal Requirements, is hereby incorporated by reference as if fully restated herein.**

*[The remainder of this page has been intentionally left blank.]*



**COUNTERPARTS**: This Amendment may be executed in one or more counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts taken together will constitute one and the same instrument.

**IN WITNESS WHEREOF,** by their signatures below, the signatories affirm the approval of all paragraphs contained herein, attest to their authority to bind their respective Parties to this Amendment, and cause this Amendment to be executed.

**STATE OF FLORIDA
DEPARTMENT OF ECONOMIC
OPPORTUNITY, DIVISION OF
STRATEGIC BUSINESS DEVELOPMENT**

_____ 10.17.13
AUTHORIZED SIGNATURE          Date

TITLE: _____Division Director_____

**KLAUSNER HOLDINGS USA, INC.**

_____ _____
AUTHORIZED SIGNATURE          Date

TITLE: _____

List of Attachments:
    Attachment 1: Exhibit B,   Special Audit Requirements
    Attachment 2: Exhibit C,   Criteria for Measurement of Achievement of Terms for
        New Full-time Equivalent Jobs and Average Annual Wage (where
        applicable)

Approved as to form and legal
sufficiency, subject only to full and
proper execution by the Parties

Office of the General Counsel
Department of Economic Opportunity

By: _____

Approved Date: 10-15-13

10

**STATE OF FLORIDA**
**DEPARTMENT OF ECONOMIC OPPORTUNITY**
*QUICK ACTION CLOSING FUND*
*AGREEMENT*

**AMENDMENT NUMBER FOUR**

This Amendment (the "Amendment") amends that certain Quick Action Closing Fund (QACF) Agreement (OT11-283) dated as of October 17, 2013, as amended (the "Agreement"), by and between the Division of Strategic Business Development of the Florida Department of Economic Opportunity ("DSBD") and Klausner Holding USA, Inc, and any Subsidiary QACF Business and Affiliate QACF Business (as such terms are hereinafter defined) (collectively with the Company, the "QACF Business" and collectively with DSBD, the "Parties"). Capitalized terms used, but not otherwise defined, in this Amendment shall have the meanings ascribed to such terms in the Agreement.

**RECITALS**

WHEREAS, this Amendment is entered into for the purposed of modifying the Agreement as requested by the QACF Business and consistent with DSBD policy; and

WHEREAS, the number of jobs to be created, annual average wages to be paid, and capital investment to be made shall remain the same as initially agreed upon.

NOW THERFORE, in consideration of the mutual covenants and obligations set forth herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to amend the Agreement as follows:

1. **Paragraph 5.0(d)(4) is hereby deleted and replaced by the following:**

(4)     The Closing Fund Awardee shall provide evidence satisfactory to DSBD in its reasonable discretion that a capital investment (excluding the acquisition or leasing of real property) of at least $150,000,000 in Suwannee County, Florida, as determined in accordance with this Agreement, has been made by or on behalf of the Closing Fund Awardee in connection with the Project by no later than December 31, 2016 (the "Capital Investment Schedule") and maintain that investment for an additional three (3) years until December 31, 2019.

2. **The Parties reaffirm all portions of Agreement OT11-283 as previously amended not in conflict with this Amendment.**

*[The remainder of this page has been intentionally left blank]*

**COUNTERPARTS.** This Amendment may be executed in one or more counterparts, any one of which need not contain the signature of more than one Party, but all such counterparts taken together will constitute one and the same instrument.

**IN WITNESS WHEREOF,** the Parties have duly executed and delivered this Amendment as of the date last executed, below.

QACF BUSINESS

**KLAUSNER HOLDING USA, INC.**

By: _____

    Name:  Stephan

    Title:   CEO

    Date:   Sep. 11 / 2019

**DSBD**

**FLORIDA DEPARTMENT OF ECONOMIC OPPORTUNITY, DIVISION OF STRATEGIC BUSINESS DEVELOPMENT**

By: _____

    Name:  Brian McManus

    Title:   Chief of Staff

    Date:   9-19-19

**Approved as to form and legal sufficiency, subject only to full and proper execution by the Parties.**

**Office of the General Counsel**

**Department of Economic Opportunity**

By: _____

**Approved Date:** 09/13/2019



CERTIFIED MAIL

7015 3010 0000 3289 0906

U.S. POSTAGE PITNEY BOWES

$01.59
ZIP 32301
02 4W
0003500333DEC

Return to Sender
 by...

AUSLEY McMULLEN
ATTORNEYS AND COUNSELORS AT LAW
POST OFFICE BOX 391
TALLAHASSEE, FLORIDA 32302

TO

LAU230   326 C0 1   C7201/04/22
UNABLE TO FORWARD/FOR REVIEW
****######****

EXHIBIT "H"

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Klausner Holding USA Inc.
Attn: Leopold Stephen
Attn: Michael Almberger
297 Professional Dr. Ste 202
Myrtle Beach, SC 29577-5713

9590 9402 6286 0274 0454 22

2. Article Number (Transfer from service label)

7015 3010 0000 3289 0883

PS Form 3811, July 2020 PSN 7530-02-000-9053

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

NIXIE    274    D2    1    0212/24/21

RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

BC: 32302039191    2040N358183-01066

TO

Ausley McMullen
ATTORNEYS AND COUNSELORS AT LAW
POST OFFICE BOX 391
TALLAHASSEE, FLORIDA 32302

Klausner Holding USA, Inc
ATTN: Leopold Stephan
ATTN: Michael Almberger
297 Professional Drive, Suite 202
Myrtle Beach, SC 29577-5713

7015 3010 0000 3289 0883





**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Klausner Holding USA Inc.
Attn: Leopold Stephan
Attn: Michael Almberger
17152 46th Terrace
Live Oak, Fl 32060

9590 9402 6436 0346 0947 64

2. Article Number (Transfer from service label)

7015 3010 0000 3289 0890

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

TO

-R-T-S-  32060-RFS-1N

RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD
RETURN TO SENDER

12/22/21

AUSLEY McMULLEN
ATTORNEYS AND COUNSELORS AT LAW
POST OFFICE BOX 391
TALLAHASSEE, FLORIDA 32302

7015 3010 0000 3289 0890

PRESS FIR[M]

PRIO
M
EXPr

retour, nicht behoben
6372 Oberndorf in Tirol, Post

RICK HEILIG
AISLEY MCMULLEN LAW FIRM
123 S CALHOUN ST
TALLAHASSEE, FL 32301

(850) 224-9115

LEGAL DOCUMENTS

8.M.
bem
12.10.21

OPAL

U.S. POSTAGE PAID
TALLAHASSEE FL
3230[?]
AMOUNT
$0.00
R2304AM111496-77

CP72 CUSTOMS DECLARATION

Not Valid As
Proof Of Payment
For U. S.
Postage

MICHAEL ALMBERGER
KLAUSNER TRADING INTERNATIONAL GMBH
BAHNOFSTRASSE 13
6372 OBERNDORF
AUSTRIA

EH 022 511 111 US

PS10001000006
OD: 12 1/2 x 9 1/2

EP13F May 2020
OD: 12 1/2 x 9 1/2

PRIORITY
★ MAIL ★

UNITED STATES
POSTAL SERVICE
VISIT US AT USPS.COM
ORDER FREE SUPPLIES ONLINE

FROM:
Ausley McMullen Law Firm
Rick Tigao
123 S Calhoun St.
Tallahassee FL 32301

TO: Klausner Trading International GmbH
Gen. Wertrag Almberger
Bahnhofstrasse 13
6372 Oberndorf in Tirol
Austria

Label 228, March 2016

FOR DOMESTIC AND INTERNATIONAL USE

UNITED STATES
POSTAL SERVICE

VZ 1005    EH022511111US

Base: 6380



This packaging is the property of the U.S. Postal Service and is provided solely for use in sending Priority Mail® items. Misuse may be a violation of federal law. This packaging is not for resale. EP14L © U.S. Postal Service; February 2014; All rights reserved.

ZIP 32301  $ 009.00⁰
02 4W
0000350033 OCT 08 2021

OCT 08, 21
$0.00
AMOUNT
R2304M111496-77

32060

1006

PRES

UNITED STATES POSTAL SERVICE®
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

PRIORITY MAIL ★

FROM:

Ausley McMullen Law Firm
Rick Figlio
123 S. Calhoun St.
Tallahassee, FL 32301

TO: Klausner Hotkins USA, Inc
     -R-T-S-  32060-RFS-1N   10/12/21

RETURN TO SENDER
UNABLE TO FORWARD
UNABLE TO FORWARD
RETURN TO SENDER

✳ R
   F ✳
   S

FOR DOMESTIC AND INTERNATIONAL USE

Label 228, March 2016

UNITED STATES POSTAL SERVICE®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

EXPECTED DELIVERY DAY: 10/12/21

USPS TRACKING® #

9505 5129 2383 1281 4053 37

Legal Flat Rate Envelope
EP14L February 2014
OD: 15 x 9.5



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14L © U.S. Postal Service; February 2014; All rights reserved.

U.S. POSTAGE >> PITNEY BOWES

ZIP 32301 $ 009.00⁰
02 4W
0000350033 OCT 08 2021

TALLAHASSEE, FL
32301
OCT 08 '21
AMOUNT
**$0.00**
R2304M111496-77

30309

1006

PRES

UNITED STATES
POSTAL SERVICE®
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

PRIORITY
★ MAIL ★

FROM:

FROM:

Ausley McMullen Law Firm
Rick Figlio
123 S. Calhoun St.
Tallahassee, FL 32301

✱ R E S ✱

* 95  10/18/21

At: LB 30309-RES-1N
- R - T - S -
RETURN  TO  SENDER
UNABLE  TO  FORWARD
RETURN  TO  SENDER

FOR DOMESTIC AND INTERNATIONAL U

Label 228, March 2016

P V T S

UNITED STATES
POSTAL SERVICE®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

: 10/12/21
® #

3 20

EXPECTED
USPS

9505 51

Legal Flat Rate Env
EP14L February 201
OD: 15 x 9.5

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14L © U.S. Postal Service; February 2014; All rights reserved.

PRIORITY
★ MAIL ★

UNITED STATES
POSTAL SERVICE®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:

Ausley McMullen Law Firm
Rick Figlio
123 S. Calhoun St.
Tallahassee, FL 32301

TO: Klausner Trading USA Inc
Attn: Michael Almberger
1000 Professional Drive

-R-T-S- 29577-RFS-1N *95 10/13/21

RETURN TO SENDER
UNABLE TO FORWARD
UNABLE TO FORWARD
RETURN TO SENDER

Label 228, March 2016

FOR DOMESTIC AND INTERNATIONAL USE

UNITED STATES
POSTAL SERVICE®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

Legal Flat Rate Envelope
EP14L February 2014
OD: 15 x 9.5

EXPECTED DELIVERY DAY: 10/13/21

TRACKING® #

4052 90

RETURN TO SENDER

KEY RETURN ZIP CODE

9505

$0.00
AMOUNT

32301
OCT 08, 21

R2304M111496-77

1006    25577

$ 009.00

ZIP 32301
02 4W
0000350Q33 OCT 08 2021



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This package is not for resale. EP14L © U.S. Postal Service; February 2014; All rights reserved.

UNITED STATES
POSTAL SERVICE®

PRIORITY
★ MAIL ★

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:
Ausley McMullen Law Firm
Rick Figlio
123 S. Calhoun St.
Tallahassee, FL 32301

TO: Klausner Trading USA, Inc
Tampa
-R-T-S- 32060-RFS-1N          10/12/21

**✳ R.F.S ✳**

RETURN TO SENDER
UNABLE TO FORWARD
UNABLE TO FORWARD
RETURN TO SENDER

FOR DOMESTIC AND INTERNATIONAL USE

Label 228, March 2016

UNITED STATES
POSTAL SERVICE®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

ZIP 32301        $ 009.00⁰
02 4W
0000350033 OCT 08 2021

OCT 08 21
AMOUNT
$0.00
R2304M11:496-77

1006        32060

EXPECTED DELIVERY DAY: 10/12/21

USPS TRACKING® #

9505 5129 2383 1281 4053 06

Legal Flat Rate Envelope
EP14L February 2014
OD: 15 x 9.5

FROM:

This packaging is for use in sending Priority Mail® items and is the property of the U.S. Postal Service. EP14L February 2014, U.S. Postal Service; February 2014; All Rights reserved. This packaging may be a violation of federal law. This packaging is not for resale. EP14L. © U.S. Postal Service; February 2014; All Rights reserved.

ZIP 32301
02 4W
0000350033 OCT 06 2021

$ 009.00 ⁰

TALLAHASSEE, FL
32301
OCT 08 21
AMOUNT
$0.00
R2304M11496-77

1006    32060

PRIORITY
★ MAIL ★

UNITED STATES
POSTAL SERVICE®
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:

Ausley McMullen Law Firm
Rick Figlio
123 S. Calhoun St.
Tallahassee, FL 32301

TO: K/A Wesner Lumber One, LLC
—R-T-S—    10/12/21
32060-RFS-1N

RETURN   TO   SENDER
UNABLE   TO   FORWARD
UNABLE   TO   FORWARD
RETURN   TO   SENDER



Label 228, March 2016

FOR DOMESTIC AND INTERNATIONAL USE

UNITED STATES
POSTAL SERVICE®

FROM:

EXPECTED DELIVERY DAY: 10/12/21

USPS TRACKING® #

9505 5129 2383 1281 4052 83

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

Legal Flat Rate Envelope
EP14L February 2014
OD: 15 x 9.5

* R F S *

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT IN
AND FOR LEON COUNTY, FLORIDA

FLORIDA DEPARTMENT OF ECONOMIC
OPPORTUNITY,
      Plaintiff,

vs.
                                CASE NO.: 2021 CA 1720

KLAUSNER HOLDINGS USA, INC.,
      Defendant.

_____/

## NOTICE OF INTENT TO DISMISS FOR LACK OF SERVICE AND ORDER OF DISMISSAL

**THIS MATTER** came before this Court upon a review of the docket indicating that no service has been obtained on Defendants within 120 days of filing as required in Fla.R.Civ.P. 1.070(j) on the Complaint filed October 5, 2021. It is therefore

**ORDERED AND ADJUDGED** as follows:

1.    The Plaintiff shall have 30 days from the date of this order to obtain service for Defendants OR within 30 days from the date of this order, the Plaintiff shall file a motion alleging facts that support a finding of good cause for this Court to allow additional time to serve Defendants.

2.    If service is not obtained within 30 days on Defendants and the docket shows no order finding good cause, the case will be dismissed without prejudice without further court order.

**DONE AND ORDERED** in Tallahassee, Florida this 3 day of Feb, 2022

_____
Angela C. Dempsey
Circuit Judge

Copies furnished to:
Erik Figlio, Attorney for Plaintiff

Case 4:22-cv-00133-AW-MAF   Document 1-1   Filed 03/29/22   Page 326 of 331

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT,
IN AND FOR LEON COUNTY, FLORIDA**

STATE OF FLORIDA,
DEPARTMENT OF ECONOMIC OPPORTUNITY,

     Plaintiff,

v.                                    Case No.: 2021-CA-001720

KLAUSNER HOLDING USA, INC.,

     Defendant**.**

_____/

## <u>MOTION FOR DEFAULT</u>

     Plaintiff, State of Florida, Department of Economic Opportunity, hereby moves for entry

of a default by the clerk against Defendant Klausner Holding USA, Inc., for failure to serve any

document on the undersigned or file any document as required by law.

     DATED this 1st day of March, 2022.

                              Respectfully submitted,

                              /s/ *Erik M. Figlio*_____
                              Robert N. Clarke, Jr.
                              Fla. Bar No. 592900
                              Erik M. Figlio
                              Fla. Bar No: 745251
                              Alexandra E. Akre
                              Fla Bar. No. 125179
                              AUSLEY McMULLEN, P.A.
                              123 South Calhoun Street
                              P.O. Box 391 (zip 32302)
                              Tallahassee, Florida 32301
                              (850) 224-9115 – telephone
                              (850) 222-7560 – facsimile
                              rclakre@ausley.com
                              rfiglio@ausley.com
                              aakre@ausley.com
                              ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically to the following this 1st day of March, 2022.

Michael Almberger
Bahnhofstraße 13
6372 Oberndorf in Tirol
Austria
michael.almberger@klausner-group.com

Leopold Stephan
Bahnhofstraße 13
6372 Oberndorf in Tirol
Austria
leopold.stephan@klausner-group.com


*/s/ Erik M. Figlio*_____
Attorney

2

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT,
IN AND FOR LEON COUNTY, FLORIDA**

STATE OF FLORIDA,
DEPARTMENT OF ECONOMIC OPPORTUNITY,

     Plaintiff,

v.                                                                              Case No.: 2021-CA-001720

KLAUSNER HOLDING USA, INC.,

     Defendant**.**

_____/

## DEFAULT

A default is entered in this action against Defendant Klausner Holding USA, Inc., for

failure to serve or file any document as required by law.

     DATED this _*3/3/2022*_ day of March, 2022.

                             Gwen Marshall
                             Clerk of the Court & Comptroller

                           By: _____

                             As Deputy Clerk

IN THE CIRCUIT COURT, SECOND JUDICIAL CIRCUIT, IN AND FOR LEON COUNTY, FLORIDA

CASE NO.:    2021-CA-1720

STATE OF FLORIDA, DEPARTMENT OF ECONOMIC OPPORTUNITY,

                        Plaintiff,

v.

KLAUSNER HOLDING USA, INC.,

                        Defendant.

---

## NOTICE OF APPEARANCE AND DESIGNATION OF PRIMARY AND SECONDARY E-MAIL ADDRESSES FOR SERVICE IN THIS PROCEEDING

Pursuant to Rules 2.505 and 2.516, Florida Rules of General Practice and Judicial Administration, C. H. Houston III of the law firm of Carr, Allison, Oliver & Sisson, P.C., Inc., The Greenleaf and Crosby Building, 208 North Laura Street, Suite 1100, Jacksonville, Florida 32202 hereby gives notice of his limited appearance as counsel for Defendant, Klausner Holding USA, Inc., individually, in the above entitled cause and hereby designates the following primary and secondary e-mail addresses for service of any and all pleadings, papers, filings, or other documents in the above-referenced case:

          Primary Email:        chhouston@carrallison.com

          Secondary Email:     asharpe@carrallison.com

          Secondary Email:     asparks@carrallison.com

***NOTICE OF LIMITED AND SPECIAL APPEARANCE*** - *Defendant Klausner Holding USA, Inc., individually, makes this limited and special appearance, through its undersigned attorney. By filing this Notice, Defendant Klausner Holding USA, Inc., individually, does not*

concede that the Court has jurisdiction over it, does not consent to jurisdiction, does not waive any rights to contest jurisdiction or to contest any claims or allegations against it, and does not concede or waive any rights to contest service of process.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of March, 2022, I electronically filed the foregoing with the Florida Courts E-Filing Portal, which will serve it on the following counsel of record via e-mail:

Robert N. Clarke, Jr.
Erik M. Figlio
Alexandra E. Akre
AUSLEY McMULLEN, P.A.
123 South Calhoun Street
P.O. Box 391 (zip 32302)
Tallahassee, Florida 32301
(850) 224-9115 – telephone
(850) 222-7560 – facsimile
Primary: rclarke@ausley.com
Primary: rfiglio@ausley.com
Primary: aakre@ausley.com

*Attorneys for Plaintiff, State of Florida,*
*Department of Economic Opportunity*

/s/ C. H. Houston III
C. H. Houston III
Florida Bar No. 100268
CARR ALLISON
The Greenleaf and Crosby Building
208 North Laura Street, Suite 1100
Jacksonville, Florida 32202
Telephone: (904) 328-6456
Facsimile: (904) 328-6473
Email: chhouston@carrallison.com
Secondary Email:  asharpe@carrallison.com
Secondary Email:  asparks@carrallison.com

*Attorneys for Defendant, Klausner Holding USA,*
*Inc., individually*

  

**COMPREHENSIVE CASE INFORMATION SYSTEM**
Gwendolyn Marshall, Clerk of the Circuit Court and Comptroller
**LEON COUNTY**

cportalaser

Expand All

| Case Number | Filed Date | Disposition Date | County | Case Type | Status | Contested | Jury Trial |
|---|---|---|---|---|---|---|---|
| 372021CA001720XXXXXX [2021 CA 001720] | 10/05/2021 | | LEON | CONTRACT | OPEN | No | Yes |

| Filing Date | Description | Active | Contested | Judgment Date |
|---|---|---|---|---|
| 10/05/2021 | CONTRACT | YES | NO | - |

| Party Name | Party Type | Attorney | Bar ID |
|---|---|---|---|
| DEMPSEY, ANGELA COTE | JUDGE | | |
| HOUSTON, CLARENCE HAROLD III | ATTORNEY | | |
| FLORIDA DEPARTMENT OF ECONOMIC | PLAINTIFF | FIGLIO, ERIK MATTHEW | 745251 |
| KLAUSNER HOLDING USA INC | DEFENDANT | HOUSTON, CLARENCE HAROLD | 100268 |
| PRO SE | ATTORNEY | | |
| FIGLIO, ERIK MATTHEW | ATTORNEY | | |

**Dockets** ☐

Page : 1 [ ] [ ] [ ]   ALL ∨

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| 🗎 | 13 | 03/02/2022 | NOTICE OF APPEARANCE AND DESIGNATION OF PRIMARY AND SECONDARY E-MAIL ADDRESSES FOR SERVICE IN THIS PROCEEDING | 2 |
| 🗎 | 12 | 03/01/2022 | MOTION FOR DEFAULT AND DEFAULT ISSUED 3/3/2022 | 3 |
| 🗎 | 11 | 02/03/2022 | NOTICE OF INTENT TO DISMISS FOR LACK OF SERVICE AND ORDER OF DISMISSAL | 1 |
| 🗎 | 10 | 02/01/2022 | AFFIDAVIT OF SERVICE OF PROCESS | 125 |
| 🗎 | 9 | 11/10/2021 | RETURN OF SERVICE UNEXECUTED - KLAUSNER HOLDING | 1 |
| 🗎 | 8 | 11/08/2021 | PAYMENT $10.00 RECEIPT #1602173 | 1 |
| 🗎 | 7 | 11/05/2021 | AMENDED COMPLAINT | 93 |
| 🗎 | 6 | 11/05/2021 | SUMMONS ISSUED | 3 |
| 🗎 | 5 | 10/06/2021 | UNIFORM ORDER FOR ACTIVE, DIFFERENTIAL CIVIL CASE MANAGEMENT E-NOTICED via email on 2021-10-06 | 4 |
| | 4 | 10/06/2021 | JUDGE DEMPSEY, ANGELA C: ASSIGNED | |
| 🗎 | 3 | 10/05/2021 | SUMMONS ISSUED | 3 |
| 🗎 | 2 | 10/05/2021 | COMPLAINT | 91 |
| 🗎 | 1 | 10/05/2021 | CIVIL COVER SHEET | 3 |

**Judge Assignment History** ☐

**Court Events** ☐

**Financial Summary** ☐

**Reopen History** ☐